# 12-4671-cv(L)

**12-4708-cv(CON), 12-4765-cv(CON), 13-4719-cv(CON),
13-4750-cv(CON), 13-4751-cv(CON), 13-4752-cv(CON), 14-32-cv(CON),
14-117-cv(CON), 14-119-cv(CON), 14-133-cv(CON), 14-157-cv(CON),
14-159-cv(CON), 14-192-cv(CON), 14-197-cv(CON), 14-219-cv(CON),
14-225-cv(CON), 14-241-cv(CON), 14-250-cv(CON), 14-266-cv(CON),
14-303-cv(CON), 14-331-cv(CON), 14-349-cv(CON), 14-404-cv(CON)
14-422-cv(CON), 14-443-cv(CON),14-480-cv(CON), 14-497-cv(CON),
14-530-cv(CON), 14-567-cv(CON), 14-584-cv(CON), 14-606-cv(CON),
14-663-cv(CON), 14-837-cv(CON)**

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



IN RE PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

*On Appeal from the United States District Court
for the Eastern District of New York*

## JOINT DEFERRED APPENDIX
## VOLUME IV OF XXII
### Pages A751 to A1010

*Submitted on Behalf of All Parties*

# **Table of Contents**

**Page**

## **Volume I**

District Court Docket Entries ..................................................................  A1

## **Volume II**

District Court Docket Entries (cont'd) ...................................................  A251

## **Volume III**

District Court Docket Entries (cont'd) ...................................................  A501

## **Volume IV**

District Court Docket Entries (cont'd) ...................................................  A751

Transfer Order, dated October 20, 2005 [Docket No. 2]........................  A822

Excerpts of First Consolidated Amended Class Action Complaint,
    dated April 24, 2006 [Docket No. 317] ...........................................  A825

Excerpts of Settlement Agreement - *In re Visa Check/MasterMoney
    Antitrust Litigation*, CV-96-5238, dated July 21, 2006
    [Docket No. 455-4] .........................................................................  A844

Excerpts of Settlement Agreement - *In re Visa Check/MasterMoney
    Antitrust Litigation*, CV-96-5238,
    dated July 21, 2006 [Docket No. 455-5].........................................  A850

Excerpts of First Amended Supplemental Class Action Complaint
    (redacted), dated February 20, 2009 [Docket No. 1152]................  A856

Excerpts of Second Consolidated Amended Class Action
    Complaint (redacted), dated February 20, 2009
    [Docket No. 1153] ..........................................................................  A858

i

# **Table of Contents**
## **(continued)**

**Page**

Excerpts of Second Supplemental Class Action Complaint
(redacted), dated February 20, 2009 [Docket No. 1154] ................ A908

Excerpts of Memorandum of Law in Support of Class
Plaintiffs' Motion for Class Certification (redacted),
dated May 8, 2008 [Docket No. 1165] ............................................ A921

Excerpts of Class Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion to Dismiss the Second Consolidated
Amended Class Action Complaint, dated June 2, 2009
[Docket No. 1226] ........................................................................ A929

Excerpts of Class Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion for Summary Judgment (Unannotated)
(redacted), dated October 21, 2011 [Docket No. 1533] ................. A932

Excerpts of Individual Plaintiffs' Statement of Material Undisputed
Facts (redacted), dated October 21, 2011 [Docket No. 1536] ........ A935

Excerpts of Class Plaintiffs' Memorandum of Law in Support of
Their Motion for Summary Judgment (redacted), ated October
21, 2011 [Docket No. 1538] ........................................................... A941

Excerpts of Class Plaintiffs' Statement of Undisputed Facts
Pursuant to Local Rule 56.1 (redacted),
dated December 21, 2011 [Docket No. 1543] ................................ A945

**Volume V**

Excerpts of Class Plaintiffs' Counterstatement of Facts in Response
to Defendants' Rule 56.1 Statement of Facts (Unannotated)
(redacted), dated October 21, 2011 [Docket No. 1545] ................. A1011

**Table of Contents**
**(continued)**

**Page**

Excerpts of Defendants' Counter-Statement in Opposition to Class
    Plaintiffs' Statement of Undisputed Facts, Pursuant to Local
    Rule 56.1(b) (redacted), dated October 21, 2011
    [Docket No. 1550] ........................................................................... A1014

Excerpts of Network Defendants' Memorandum in Opposition to
    the Individual Plaintiffs' Motion for Summary Judgment
    (redacted), dated October 21, 2011 [Docket No. 1551]................. A1030

Excerpts of European Commission Notification Pursuant to Article
    254 of the EC Treaty (redacted), dated November 23, 2011
    [Docket No. 1573-3] ...................................................................... A1032

Notice of Filing of Memorandum of Understanding,
    dated July 13, 2012 [Docket No. 1587] ........................................ A1042

Memorandum of Understanding, dated July 13, 2012
    [Docket No. 1588] .......................................................................... A1043

Excerpts of Class Settlement Agreement, dated July 13, 2012
    [Docket No. 1588-1] ...................................................................... A1061

Letter from Robert Vizas to Jeffrey I. Shinder,
    dated August 21, 2012 [Docket No. 1616-3]................................ A1074

Notice of Class Plaintiffs' Motion for Class Settlement Preliminary
    Approval, dated October 19, 2012 [Docket No. 1656].................. A1086

Excerpts of Appendices to Definitive Class Settlement
    Agreement,dated October 19, 2012 [Docket No. 1656-1]............. A1088

Excerpts of Transcript of Civil Cause for Oral Argument Before the
    Honorable John Gleeson, US District Judge,
    dated November 9, 2012 [Docket No. 1732]................................. A1096

**Table of Contents**
**(continued)**

**Page**

Excerpts of Revised Appendix F2: Notice of Class Action
Settlement Authorized by the U.S. District Court, Eastern
District of New York, dated November 26, 2012
[Docket No. 1740-2] ................................................................. A1098

Class Settlement Preliminary Approval Order,
dated November 27, 2012 [Docket No. 1745] .............................. A1100

Excerpts of Individual Plaintiffs' Opposition to Objecting
Plaintiffs' Motion to Stay Class Settlement Preliminary
Approval Order, dated November 29, 2012 [Docket No. 1751] ... A1111

Letter from Class Counsel to Judge Orenstein,
dated December 10, 2012 [Docket No. 1760] .............................. A1114

Excerpts of Defendants' Memorandum in Support of Final
Approval of Definitive Class Settlement Agreement,
dated April 11, 2013 [Docket No. 2110] ...................................... A1118

Excerpts of Memorandum in Support of Class Plaintiffs'
Motion for Final Approval of Settlement, dated April 11, 2013
[Docket No. 2111-1] ...................................................................... A1120

Declaration of the Honorable Edward A. Infante (Ret.) in Support
of Class Plaintiffs' Motion for Final Approval of Settlement,
dated April 11, 2013 [Docket No. 2111-2] .................................... A1131

Declaration of Eric D. Green, dated April 11, 2013
[Docket No. 2111-3] ...................................................................... A1137

Declaration of Alan S. Frankel, Ph.D. Relating to the Proposed
Class Settlement, dated April 11, 2013 [Docket No. 2111-5] ....... A1145

Excerpts of Declaration of Nicole F. J. Hamann on Class
Administrator's Implementation of Settlement Notice Plan,
dated April 11, 2013 [Docket No. 2111-6] .................................... A1200

iv

# Table of Contents
## (continued)

**Page**

Excerpts of Declaration of Cameron R. Azari, Esq. on
Implementation and Adequacy of Settlement Notice Program,
dated April 11, 2013 [Docket No. 2113-7].................................... A1215

Declaration of Professor Charles Silver Concerning the
Reasonableness of Class Counsel's Request for an Award of
Attorneys' Fees, dated April 11, 2013 [Docket No. 2113-5] ........ A1238

**Volume VI**

Declaration of Professor Charles Silver Concerning the
Reasonableness of Class Counsel's Request for an Award of
Attorneys' Fees, dated April 11, 2013 [Docket No. 2113-5]
(Cont'd)........................................................................... A1251

Declaration of K. Craig Wildfang, Esq. in Support of Class
Plaintiffs' Motion for Final Approval of Settlement and Class
Plaintiffs' Joint Motion for Award of Attorneys' Fees,
Expenses and Class Plaintiffs' Awards,
dated April 11, 2013 [Docket No. 2113-6].................................... A1296

Excerpts of Objection of City of Oakland to Final Approval of
Proposed Settlement, dated May 15, 2013 [Docket No. 2279] ..... A1434

Retailers and Merchants' Objection to Final Approval of the Class
Action Definitive Settlement Agreement, dated May 15, 2013
[Docket No. 2281] ........................................................ A1437

Objection of U.S. Public Interest Research Group to Final
Approval of Proposed Class Settlement, dated May 23, 2013
[Docket No. 2361] ........................................................ A1470

Excerpts of Statement of Objections by Jo-Ann Stores, Inc.,
dated May 23, 2013 [Docket No. 2364] ........................................ A1476

Statement of Objections of B & H Foto Electronics Corp.,
d/b/a B & H Photo, dated May 22, 2013 [Docket No. 2408] ........ A1480

**Table of Contents**
**(continued)**

**Page**

Excerpts of Statement of Objections by Boscov's,
dated May 24, 2013 [Docket No. 2411] ........................................ A1483

Retailers and Merchants' Objection to Final Approval of the Class
Action Definitive Settlement Agreement, dated May 24, 2013
[Docket No. 2421] ........................................................................ A1486

**Volume VII**

Retailers and Merchants' Objection to Final Approval of the Class
Action Definitive Settlement Agreement, dated May 24, 2013
[Docket No. 2421] (cont'd) .......................................................... A1501

Notice of Opt Outs, dated May 24, 2013 [Docket No. 2422] .............. A1512

Excerpts of Objections of First Data Corporation, First Data
Merchant Services, TASQ Technology, Inc., TRS Recovery
Services Inc., First Data Government Solutions, and TeleCheck
Services Inc. to Final Approval of Definitive Class Settlement
Agreement, dated May 24, 2013 [Docket No. 2427] .................... A1528

Excerpts of Objection of Aldo US Inc. to Final Approval of the
Proposed Settlement, dated May 24, 2013 [Docket No. 2432] ..... A1538

Excerpts of Objection of BJ's Wholesale Club, Inc. to Final
Approval of the Settlement, dated May 24, 2013
[Docket No. 2433] ........................................................................ A1541

Excerpts of Objection of David's Bridal to Final Approval of the
Proposed Settlement, dated May 24, 2013 [Docket No. 2434] ..... A1544

Excerpts of Objection of Dillard's, Inc. to Final Approval of the
Proposed Settlement, dated May 24, 2013 [Docket No. 2435] ..... A1553

Declaration of John R. Manna, Vice President Operational
Controller, Lowe's Companies, Inc., dated May 24, 2013
[Docket No. 2437] ........................................................................ A1555

**Table of Contents**
(continued)

**Page**

Excerpts of Objection of RaceTrac Petroleum, Inc. to Final
    Approval of the Proposed Settlement, dated May 24, 2013
    [Docket No. 2438] ........................................................... A1566

Excerpts of Objection of Roundy's Supermarkets, Inc. to Final
    Approval of the Proposed Settlement, dated May 24, 2013
    [Docket No. 2439] ........................................................... A1568

Excerpts of Objection of Family Dollar Stores, Inc. to Final
    Approval of the Proposed Settlement, dated May 24, 2013
    [Docket No. 2441] ........................................................... A1570

Excerpts of Objection of 7-Eleven, Inc. to Final Approval of the
    Proposed Settlement, dated May 25, 2013 [Docket No. 2442] ..... A1575

Objection of The National Railroad Passenger Corporation to
    Final Approval of the Proposed Settlement, dated May 25,
    2013 [Docket No. 2444] ................................................. A1580

Objections of Best Buy Stores, L.P. to Final Approval of the
    Settlement, dated May 25, 2013 [Docket No. 2445] ................. A1588

Excerpts of Objection of Carter's to Final Approval of the
    Settlement, dated May 25, 2013 [Docket No. 2446] ................. A1601

Objection of Coborn's Incorporated to Final Approval of the
    Proposed Settlement, dated May 25, 2013 [Docket No. 2447] ..... A1606

Excerpts of Objection of Costco Wholesale Corporation to
    Final Approval of the Proposed Settlement,
    dated May 25, 2013 [Docket No. 2448] ......................................... A1613

Objection of D'Agostino Supermarkets, Inc. to Final Approval of
    the Settlement, dated May 25, 2013 [Docket No. 2449] ............... A1615

Objection of Alon USA, LP to Final Approval of the Proposed
    Settlement, dated May 25, 2013 [Docket No. 2450] .................... A1621

# **Table of Contents**
## (continued)

**Page**

Excerpts of Objection of Barnes & Noble, Inc. to Final Approval of
the Proposed Settlement, dated May 25, 2013
[Docket No. 2451] ........................................................................  A1627

Objection of IKEA US to Final Approval of the Proposed
Settlement, dated May 25, 2013 [Docket No. 2458] ....................  A1632

Objection of Jetro Holdings, LLC to Final Approval of the
Proposed Settlement, dated May 25, 2013 [Docket No. 2459] .....  A1650

Objection of Michaels Stores, Inc. to Final Approval of the
Proposed Settlement, dated May 25, 2013 [Docket No. 2460] .....  A1656

Objection of NATSO Inc. to Final Approval of the Proposed
Settlement, dated May 25, 2013 [Docket No. 2461] ....................  A1659

Objection of National Restaurant Association to Final Approval of
the Proposed Settlement, dated May 25, 2013
[Docket No. 2464] ........................................................................  A1667

Objection of Panera Bread Company to Final Approval of the
Proposed Settlement, dated May 25, 2013 [Docket No. 2466] .....  A1678

Objection of PetSmart, Inc. to Final Approval of the Proposed
Settlement, dated May 25, 2013 [Docket No. 2467] ....................  A1681

Objection of Retail Industry Leaders Association to Final Approval
of the Settlement, dated May 25, 2013 [Docket No. 2469] ..........  A1690

Excerpts of Objection of Sears Holdings Corp. to Final Approval of
the Proposed Settlement, dated May 25, 2013
[Docket No. 2470] ........................................................................  A1697

Excerpts of Objection of The Wet Seal, Inc. to Final Approval of
the Settlement, dated May 25, 2013 [Docket No. 2471] ..............  A1699

**Table of Contents**
**(continued)**

**Page**

Excerpts of Objection of The Wendy's Company to Final Approval
    of the Proposed Settlement, dated May 25, 2013
        [Docket No. 2473] ........................................................................ A1703

Objection of National Grocers Association to Final Approval of the
    Proposed Settlement, dated May 26, 2013 [Docket No. 2475] ..... A1707

Objection of Petco Animal Supplies, Inc. to Final Approval of the
    Proposed Settlement, dated May 26, 2013 [Docket No. 2491] ..... A1715

Statement of Objections of WellPoint Entities, dated May 27, 2013
    [Docket No. 2493] ........................................................................ A1724

Memorandum in Support of Objections of Putative Rule 23(b)(2)
    Class Members WellPoint, Inc., etc., to the Proposed Rule
    23(b)(2) Settlement Agreement, dated May 27, 2013
    [Docket No. 2493-1] ..................................................................... A1734

Excerpts of Declaration of David Kretschmer in Support of
    Objections of WellPoint Entities, dated May 17, 2013
    [Docket No. 2493-2] ..................................................................... A1746

**Volume VIII**

Statement of Objections of Target Corporation, Target Commercial
    Interiors, Inc., and TCC Cooking Co., dated May 27, 2013
    [Docket No. 2495] ........................................................................ A1752

**Table of Contents**
(continued)

**Page**

Excerpts of Memorandum in Support of Objections of Absent
Putative Rule 23(b)(2) Class Members Target Corporation,
Macy's, Inc., Kohl's Corporation, The TJX Companies, Inc.,
Staples, Inc., J.C. Penney Corporation, Inc., Office Depot, Inc.,
L Brands, Inc., Big Lots Stores, Inc., PNS Stores, Inc., C.S.
Ross Company, Closeout Distribution, Inc., Ascena Retail
Group, Inc., Abercrombie & FitchCo., OfficeMax
Incorporated, Saks Incorporated, The Bon-Ton Stores, Inc.,
Chico's FAS, Inc., Luxottica U.S. Holdings Corp., and
American Signature, Inc. to the Proposed Rule 23(b)(2) Class
and Rule 23(b)(2) Settlement Agreement, dated May 27, 2013
[Docket No. 2495-1] ....................................................................... A1756

Complaint and Demand for Jury Trial, *Target Corporation, et al.,
v. Visa Inc., et al.*, Civil Action No. 13 CV 3477,
dated May 27, 2013 [Docket No. 2495-2] ..................................... A1768

Statement of Objections of J. C. Penney, dated May 27, 2013
[Docket No. 2509] .......................................................................... A1824

Statement of Objections of Macy's, Inc., Macy's Retail Holdings,
Inc., Macy's West Stores Inc., Macy's Florida Stores, LLC,
Macy's Puerto Rico, Inc., Macys.com, Inc., Bloomingdale's,
Inc., Bloomingdale's By Mail, Ltd., and Bloomingdale's The
Outlet Store, Inc., dated May 27, 2013 [Docket No. 2517].......... A1828

Statement of Objections of Office Depot, Inc., Viking Office
Products, Inc., 4Sure.com, Inc., Computers4Sure.com, Inc.,
and Solutions4Sure.com, Inc., dated May 27, 2013
[Docket No. 2519] .......................................................................... A1832

Statement of Objections of Staples, Inc., Staples the Office
Superstore East, Inc., Staples the Office Superstore, LLC,
Staples Contract & Commercial, Inc., Quill Corporation, Quill
Lincolnshire, Inc., Medical Arts Press, Inc., SmileMakers, Inc.,
Thrive Networks, Inc., and SchoolKidz.com,
dated May 27, 2013 [Docket No. 2525] ........................................ A1836

x

**Table of Contents**
**(continued)**

Page

Excerpts of Declaration of Michael S. Weisbach,
dated May 27, 2013 [Docket No. 2533-2].................................... A1841

Excerpts of Objection of Crate & Barrel to Final Approval of the
Settlement, dated May 27, 2013 [Docket No. 2534] .................... A1843

Excerpts of Objection of Gap Inc. to Final Approval of the
Settlement, dated May 27, 2013 [Docket No. 2536] .................... A1847

Objections to Final Approval of Proposed Class Action Settlement
and Notice of Intent to Appear of The Iron Barley Restaurant,
Homestead Restaurant (Historical Homestead, Inc.), The Feral
Pig (KP Group LLC), Paris Beauty Salon, Rachel Mustoe
(d/b/a Tousled Hair Studio), and Kristina Newman – Hair,
dated May 28, 2013 [Docket No. 2537] ......................................... A1850

National Retail Federation Statement of Objection to Final
Approval of the Proposed Rule 23(B)(2) Agreement,
dated May 28, 2013 [Docket No. 2538] ......................................... A1875

Excerpts of Declaration of Mallory Duncan Made Pursuant to
28 U.S.C. § 1746, dated May 28, 2013 [Docket No. 2538-2] ....... A1903

Declaration of Dave's Pet City Made Pursuant to 28 U.S.C. § 1746,
dated May 28, 2013 [Docket No. 2538-20].................................. A1911

Declaration of Lipert International Inc. d/b/a Keith Lippert Gallery
Made Pursuant to 28 U.S.C. § 1746, dated May 28, 2013
[Docket No. 2538-21].................................................................. A1916

Excerpts of State of Objections of Wawa, Inc., dated May 23, 2013
[Docket No. 2540] ........................................................................ A1924

Objection of National Cooperative Grocers Association to Final
Approval of the Proposed Settlement, dated May 28, 2013
[Docket No. 2546] ........................................................................ A1926

**Table of Contents**
**(continued)**

**Page**

Objection of Whole Foods Market Entities to Final Approval of the
Proposed Settlement, dated May 28, 2013 [Docket No. 2559] ..... A1934

Objection of National Association of Convenience Stores to Final
Approval of Proposed Settlement, dated May 28, 2013
[Docket No. 2561] ........................................................................ A1942

Objection of Affiliated Foods Midwest to Final Approval of the
Proposed Settlement, dated May 28, 2013 [Docket No. 2563] ..... A1955

Objection of Foot Locker, Inc. to Final Approval of the Proposed
Settlement, dated May 28, 2013 [Docket No. 2587] .................... A1963

The Home Depot's Statement of Objections to the Proposed Class
Settlement and Memorandum in Support, dated May 28, 2013
[Docket No. 2591] ........................................................................ A1973

**Volume IX**

The Home Depot's Statement of Objections to the Proposed Class
Settlement and Memorandum in Support, dated May 28, 2013
[Docket No. 2591] (Cont'd) .......................................................... A2001

Excerpts of Declaration of Dwaine Kimmet in Support of The
Home Depot's Objection to the Proposed Class Settlement,
dated May 28, 2013 [Docket No. 2591-2] .................................... A2026

Excerpts of Dell Inc.'s Statement of Objection to Final Approval of
Settlement, dated May 28, 2013 [Docket No. 2592] .................... A2028

Objection of Consumers Union of United States, Inc. to Final
Approval of Proposed Class Settlement, dated May 28, 2013
[Docket No. 2598] ........................................................................ A2030

Objection of Amazon.com, Inc. to Final Approval of the Proposed
Settlement, dated May 28, 2013 [Docket No. 2605] .................... A2040

# **Table of Contents**
## (continued)

**Page**

Excerpts of Objection of Starbucks to Final Approval of the
    Proposed Settlement, dated May 28, 2013 [Docket No. 2606] .....   A2047

Objection of 1001 Property Solutions LLC and Temple Eagle
    Partners LLC, dated May 28, 2013 [Docket No. 2613]................   A2053

Declaration of Rick Bandas in Support of Objection to Settlement,
    dated May 28, 2013 [Docket No. 2613-1]....................................   A2075

Objection of National Community Pharmacists Association to Final
    Approval of the Proposed Settlement, dated May 28, 2013
    [Docket No. 2619] .......................................................................   A2107

Statement of Objections and Amici Curiae Brief of States to Final
    Approval of the Settlement, dated May 28, 2013
    [Docket No. 2623] .......................................................................   A2116

Blue Cross and Blue Shield Entities' Objections to Proposed
    Settlement, dated May 28, 2013 [Docket No. 2643] ....................   A2147

Excerpts of Declaration of David Cote in Support of BlueCross
    BlueShield of South Carolina Objections to Proposed
    Settlement, dated May 28, 2013 [Docket No. 2643-3]................   A2178

Excerpts of Declaration of Garrett Calissi in Support of Blue Cross
    and Blue Shield of Arizona, Inc. Objections to Proposed
    Settlement, dated May 28, 2013 [Docket No. 2643-4]................   A2180

Excerpts of Declaration of Matthew Brolly in Support of
    Independence Blue Cross Objections to Proposed Settlement,
    dated May 28, 2013 [Docket No. 2643-6]....................................   A2182

Excerpts of Declaration of William J. Farrell in Support of Blue
    Cross of Northeastern Pennsylvania Objections to Proposed
    Settlement, dated May 28, 2013 [Docket No. 2643-7]................   A2184

**Table of Contents**
**(continued)**

**Page**

Walmart's Objection to the Proposed Settlement, dated May 28,
2013 [Docket No. 2644] .................................................................. A2186

Excerpts of Objection of American Express Company, American
Express Travel Related Services Company, Inc., Travel
Impressions, Ltd., American Express Publishing Corp., Serve
Virtual Enterprises, Inc., ANCA 7 LLC d/b/a Vente Privee,
USA, Amex Assurance Company, and Accertify, Inc. to the
Class Settlement Agreement, dated May 28, 2013 [Docket No.
2648] ........................................................................................... A2213

Declaration of Stephen B. McCurdy in Support of Objections of
American Express, dated May 23, 2013 [Docket No. 2648-1] ..... A2245

**Volume X**

Notice of Motion of DFS Services LLC and Discover Bank to
Intervene, dated May 28, 2013 [Docket No. 2655] ...................... A2249

Excerpts of Declaration of Roger Hochschild, dated May 28, 2013
[Docket No. 2657-6] ...................................................................... A2252

Objection of DFS Services LLC, Discover Loans, Inc., and
Discover Bank to Final Approval of Proposed Settlement,
dated May 28, 2013 [Docket No. 2659] ........................................ A2263

Discover Financial Services' Notice of Intent to Opt-Out of Rule
23(b)(3) Damages Case, dated May 28, 2013
[Docket No. 2663] ......................................................................... A2277

Excerpts of Objecting Plaintiffs' and Objectors' Memorandum in
Opposition to Motion for Final Approval of Settlement, dated
May 28, 2013 [Docket No. 2670] .................................................. A2278

**Table of Contents**
(continued)

Page

Excerpts of Declaration of Jeffrey I. Shinder in Support of
Opposition to Class Plaintiffs' Motion for Final Approval of
the Proposed Class Settlement, dated May 28, 2013
[Docket No. 2670-1]...................................................... A2300

Excerpts of Report of Professor Jerry Hausman,
dated May 28, 2013 [Docket No. 2670-5]..................................... A2302

Excerpts of Exhibits to May 28, 2013 Declaration of Jeffrey I.
Shinder: "Industry Facts Concerning Debit Card Regulation
Under Section 920," by Stephen Craig Mott,
BetterBuyDesigns, on Behalf of the Merchants Payments
Coalition, submitted to Federal Reserve System, October 29,
2010; Attachment F: "2011 Interchange Fee Revenue, Covered
Issuer Costs, and Covered Issuer and Merchant Fraud Losses
Related to Debit Card Transactions," Board of Governors of
the Federal Reserve System, March 5, 2013
[Docket No. 2670-6]...................................................... A2327

Excerpts of Exhibits to May 28, 2013 Declaration of Jeffrey I.
Shinder: Ex. 66: Visa Management Discusses Q3 2012 Results
- Earnings Call Transcript; Ex. 67: "'We Won' vs. 'You Lost':
Reactions to Credit Card Settlement", by Maria Aspan and
Victoria Finkle, American Banker, July 16, 2012; Ex. 68: "An
Analysis of the Proposed Interchange Fee Litigation
Settlement," by Adam J. Levitin, Georgetown Law and
Economics Research Paper No. 12-033, August 21, 2012; Ex.
70: The Nilson Report, February 2013, Issue 1,011; American
Express Merchant Reference Guide - U.S., April 2013; Ex. 73:
"Merchant Surcharging – Understanding Payment Card
Changes," Visa, May 20, 2013; Ex. 76: "Operating Regulations
to Support the U.S. Merchant Litigation Settlement," Visa,
2013; Ex, 77: "Notice of MasterCard Rule Changes,"
MasterCard Worldwide, December 2012; Ex. 78:
Memorandum from Visa Inc. to Merchants in the U.S. and U.S.
Territories, regarding Merchant Class Action Litigation
Settlement – Important Changes to Merchant Acceptance

**Table of Contents**
**(continued)**

Page

Practices, December 20, 2012; Ex. 82: "Visa's CEO Discusses
Q2 2012 Results - Earnings Call Transcript," Visa, May 20,
2013; Ex. 84: "New Visa, MasterCard fees stir debate within
industry," The Green Sheet Online, March 12, 2013; Ex. 94:
MasterCard Incorporated Management Discusses Q2 2012
Results - Earnings Call Transcript, May 20, 2013; Ex. 95:
MasterCard's CEO Discusses Q4 2012 Results - Earnings Call
Transcript, May 20, 2013 [Docket No. 2670-8] ........................... A2339

Excerpts of Exhibits to May 28, 2013 Declaration of Jeffrey I. Shinder:
Ex. 97: "Reform of Australia's Payments System: Preliminary
Conclusions of the 2007/08 Review," Reserve Bank of Australia,
April, 2008; Ex. 108: Amended and Restated Global Restructuring
Agreement [Docket No. 2670-9] .................................................. A2394

Excerpts of Objections of Bridgestone Americas, Inc. to Proposed
Class Settlement Agreement, dated June 5, 2013
[Docket No. 3074] ......................................................................... A2400

Statement of Objection of Heinen's Fine Foods, dated June 5, 2013
[Docket No. 3755] ......................................................................... A2403

Excerpts of Objections of Williams-Sonoma, Inc. to the Proposed
Class Settlement Agreement, dated June 6, 2013
[Docket No. 4237] ......................................................................... A2405

Excerpts of Statement of Objections of the Society of Independent
Gasoline Marketers of America, dated June 7, 2013
[Docket No. 4640] ......................................................................... A2407

Excerpts of Objections of First Data Corporation, First Data
Merchant Services, TASQ Technology, Inc., TRS Recovery
Services Inc., First Data Government Solutions, and TeleCheck
Services Inc. to Final Approval of Definitive Class Settlement
Agreement, dated June 7, 2013 [Docket No. 4654] ...................... A2415

**Table of Contents**
**(continued)**

**Page**

Statement of Objections of Life Time Fitness, Inc.,
    dated June 11, 2013 [Docket No. 5385] ........................................    A2423

Letter from Kenneth A. Gallo to Judge Gleeson,
    dated June 11, 2013 [Docket No. 5406] ...............................    A2433

Letter from Class Plaintiffs' to Judge Gleeson, dated June 12, 2013
    [Docket No. 5651] .........................................................................    A2434

Excerpts of Defendants' Reply Memorandum in Support of
    Final Approval of Definitive Class Settlement Agreement,
    dated August 16, 2013 [Docket No. 5937] ...................................    A2435

Excerpts of Class Plaintiffs' Reply Memorandum of Law in
    Further Support of Settlement Final Approval,
    dated August 16, 2013 [Docket No. 5939] ...................................    A2443

Excerpts of Declaration of Ryan W. Marth, dated August 16, 2013
    [Docket No. 5939-3] ....................................................................    A2448

Excerpts of Reply Declaration of Alan S. Frankel, Ph.D. Relating
    to the Proposed Class Settlement (redacted),
    dated August 16, 2013 [Docket No. 5939-5]................................    A2463

Excerpts of Declaration of H. Theodore Grindal in Support of Class
    Plaintiffs' Motion for Final Approval of the Proposed Class
    Settlement, dated August 16, 2013 [Docket No. 5939-6].............    A2468

Excerpts of Reply Memorandum in Support of Class Plaintiffs'
    Joint Motion for Award of Attorneys' Fees, Expenses and
    Class Plaintiffs' Awards, dated August 16, 2013
    [Docket No. 5940] .........................................................................    A2471

Excerpts of Reply Memorandum in Support of FDC's
    Motion to Opt Out of Rule 23(b)(2) Class Settlement,
    dated August 23, 2013 [Docket No. 5957] ...................................    A2473

xvii

**Table of Contents**
(continued)

**Page**

Report from Court appointed expert Professor Alan O. Sykes,
 dated August 28, 2013 [Docket No. 5965] ................................... A2475

**Volume XI**

Report from Court appointed expert Professor Alan O. Sykes,
 dated August 28, 2013 [Docket No. 5965] (Cont'd) .................... A2501

Excerpts of Class Plaintiffs' Letter to Judge Gleeson Responding to
 Report of Professor Alan O. Sykes, dated September 4, 2013
 [Docket No. 5978] ........................................................ A2526

Excerpts of Response by Professor Jerry Hausman to the Report of
 Professor Alan O. Sykes, dated September 4, 2013
 [Docket No. 5982] ........................................................ A2531

Excerpts of Declaration of Henry Ogden Armour, NACS, to
 Correct Misstatements in Supplemental Declaration of
 Craig Wildfang and in Opposition to Final Approval,
 dated September 10, 2013 [Docket No. 6006-1] .......................... A2536

Excerpts of Declaration of Robynn Shrader, NCGA, to Correct
 Misstatements in Supplemental Declaration of Craig Wildfang
 and in Opposition to Final Approval, dated September 10, 2013
 [Docket No. 6006-2] .................................................... A2543

Excerpts of Declaration of Jennifer T. Mallon, NCPA, to Correct
 Misstatements in Supplemental Declaration of Craig Wildfang
 and in Opposition to Final Approval, dated September 10, 2013
 [Docket No. 6006-3] .................................................... A2549

Excerpts of Declaration of Peter J. Larkin, NGA, to Correct
 Misstatements in Supplemental Declaration of Craig Wildfang
 and in Opposition to Final Approval, dated September 10, 2013
 [Docket No. 6006-4] .................................................... A2553

**Table of Contents**
**(continued)**

**Page**

Excerpts of Transcript of Fairness Heating before the
    Honorable John Gleeson, U.S. District Court Judge,
        dated September 12, 2013 [Docket No. 6094].............................. A2559

Notice of Appeal of Objecting Plaintiffs and Objectors,
        dated December 13, 2013 [Docket No. 6125] ............................... A2587

Notice of Appeal by Home Depot U.S.A., Inc.,
        dated December 13, 2013 [Docket No. 6126] ............................... A2588

Notice of Appeal of Target Group Objectors,
        dated December 13, 2013 [Docket No. 6128] ............................... A2589

Notice of Appeal of National Retail Federation,
        dated January 2, 2014 [Docket No. 6148] .................................... A2590

Notice of Appeal of R & M Objectors, dated January 10, 2014
        [Docket No. 6175] ......................................................... A2591

Notice of Appeal of Blue Cross and Blue Shield Objectors and
    WellPoint Objectors, dated January 10, 2014
        [Docket No. 6176] ......................................................... A2597

Notice of Appeal of Temple Eagle, dated January 10, 2014
        [Docket No. 6178] ......................................................... A2602

Notice of Appeal of First Data Corporation, First Data Merchant
    Services, TASQ Technology, Inc., TRS Recovery Services,
    Inc., First Data Government Solutions, and Telecheck Services,
    Inc., dated January 10, 2014 [Docket No. 6179] .......................... A2605

Notice of Appeal of The Iron Barley Restaurant, Homestead
    Restaurant (Historical Homestead, Inc.), The Feral Pig (KP
    Group LLC), Paris Beauty Salon, Rachel Mustoe (d/b/a
    Tousled Hair Studio), and Kristina Newman – Hair,
        dated January 10, 2014 [Docket No. 6182] ................................. A2606

**Table of Contents**
**(continued)**

Page

Notice of Appeal of U.S. PIRG, dated January 13, 2014
      [Docket No. 6189] ........................................................... A2608

Notice of Appeal of Consumers Union of United States, Inc.,
      dated January 13, 2014 [Docket No. 6190] ................................... A2609

Amended Notice of Appeal of Target Group Objectors,
      dated January 21, 2014 [Docket No. 6212] ................................... A2610

Amended Notice of Appeal of Temple Eagle,
      dated January 13, 2014 [Docket No. 6227] ................................... A2611

Notice of Appeal of National Federation of Independent Business,
      dated February 7, 2014 [Docket No. 6234] ................................... A2614

Subsequent Notice of Appeal by Blue Cross and Blue Shield
      Objectors and WellPoint Objectors, dated February 7, 2014
      [Docket No. 6238] ........................................................... A2615

Amended Notice of Appeal of The Iron Barley Restaurant,
      Homestead Restaurant (Historical Homestead, Inc.), The Feral
      Pig (KP Group LLC), Paris Beauty Salon, Rachel Mustoe
      (d/b/a Tousled Hair Studio), and Kristina Newman – Hair,
      dated February 13, 2014 [Docket No. 6245] .................................. A2620

Amended Notice of Appeal by Home Depot U.S.A., Inc.
      (Amending Notice Of Appeal Filed December 13, 2013),
      dated February 13, 2014 [Docket No. 6248] .................................. A2622

Amended Notice of Appeal of Objecting Plaintiffs and Target
      Group Objectors, dated February 13, 2014 [Docket No. 6249] .... A2623

Notice of Appeal of Retail Industry Leaders Association,
      dated February 13, 2014 [Docket No. 6251] .................................. A2625

**Table of Contents**
**(continued)**

**Page**

Second Amended Notice of Appeal of 1001 Property Solutions
LLC and Temple Eagle Partners LLC, dated February 18, 2014
[Docket No. 6257] ......................................................................... A2626

Amended Notice of Appeal of R & M Objectors,
dated February 25, 2014 [Docket No. 6263] .................................. A2630

Excerpts of Expert Report of Joseph Stiglitz, Ph.D.,
dated June 25, 2009 ...................................................................... A2636

U.S. Government Accountability Office, Pub. No. GAO-10-45,
Credit Cards: *Rising Interchange Fees Have Increased Costs
for Merchants, but Options for Reducing Fees Pose
Challenges*, dated 11/2009 ............................................................ A2638

Final Judgment as to Defendants MasterCard International
Incorporated and Visa Inc., *U.S. v. American Express Co*.,
CV-10-4496 (E.D.N.Y. ), dated July 20, 2011 [Docket No. 10-
CV-4996 DE 143].......................................................................... A2707

Visa International Operating Regulations, dated October 15, 2012 .... A2722

**Volume XII**

Visa International Operating Regulations,
dated October 15, 2012 (Cont'd) ................................................... A2751

**Volume XIII**

Visa International Operating Regulations,
dated October 15, 2012 (Cont'd) ................................................... A3001

**Volume XIV**

Visa International Operating Regulations,
dated October 15, 2012 (Cont'd) ................................................... A3251

# **Table of Contents**
### (continued)

**Page**

### **Volume XV**

Visa International Operating Regulations,
  dated October 15, 2012 (Cont'd) ................................................... A3501

### **Volume XVI**

Visa International Operating Regulations,
  dated October 15, 2012 (Cont'd) ................................................... A3751

### **Volume XVII**

Interlink Network, Inc. Operating Regulations,
  dated November 15, 2012 ............................................................ A4009

### **Volume XVIII**

MasterCard Rules, dated April 11, 2012 .............................................. A4259

### **Volume XIX**

MasterCard Rules, dated April 11, 2012 (Cont'd) ............................... A4501

Excerpts of *Mastercard, Inc. and Others v. Eur. Comm'n*,
  Case T-111/08, Judgment of the General Court
  (Seventh Chamber), dated May 24, 2012 ...................................... A4614

Minute Order deeming all pending motions for relief withdrawn
  without prejudice to reinstatement if the settlement is not
  consummated, dated July 17, 2012 ................................................. A4616

Minute Order upholding Judge Orenstein's order denying
  disclosure of settlement agreement, dated September 19, 2013 .... A4618

Visa Form 10K (Annual Report), dated November 22, 2013 .............. A4620

**Table of Contents**
**(continued)**

**Page**

Excerpts of Class Settlement Agreement, *In re Am. Express
Anti-Steering Rules Antitrust Litig*. (NGG)(RER),
No. 11-md-2221 (E.D.N.Y.), dated January 7, 2014
[Docket No. 11-md-2221 DE 306-2]............................................ A4623

**Volume XX**

Excerpts of Class Settlement Agreement, *In re Am. Express
Anti-Steering Rules Antitrust Litig*. (NGG)(RER),
No. 11-md-2221 (E.D.N.Y.), dated January 7, 2014
[Docket No. 11-md-2221 DE 306-2] (Cont'd)............................... A4751

Class Plaintiffs' Memorandum of Law in Support of Motion for
Final Approval of Class Action Settlement, *In re: American
Express Anti-Steering Rules Antitrust Litig*., 11-md-2221
(NGG)(RER), (Redacted - Public Version), dated April 15,
2014 [Docket No. 11-md-2221 DE 362] ...................................... A4790

Excerpts of Declaration of Alan S. Frankel, Ph.D *In re: American
Express Anti-Steering Rules Antitrust Litig*., 11-md-02221
(NGG)(RER) (redacted), dated April 15, 2014
[Docket No. 11-md-2221 DE 370] ................................................ A4831

Civil Cause for Conference, *In re Payment Card Interchange Fee
and Merchant Discount Antitrust Litig*., No. 14-md-1720
(JG)(JO), dated July 18, 2014
[Docket No. 14-md-1720 DE 104] ................................................ A4834

Transcript of Hearing before Judge Gleeson, *In re Payment Card
Interchange Fee and Merchant Discount Antitrust Litig*.,
No. 14-md-1720 (JG)(JO), dated July 18, 2014
[Docket No. 14-md-1720 DE 105] ................................................ A4836

## **Table of Contents**
### **(continued)**

**Page**

### **Volume XXI**

*MasterCard and Others v. European Comm'n*, Case C-382/12 P,
Judgment of the Court (Third Chamber),
dated September 11, 2014.............................................................    A4925

Third Amended Complaint and Jury Demand, *7-Eleven, Inc. v.
Visa Inc*., Nos. 13-cv-5746 (JG)(JO), 14-md-1720(JG)(JO),
dated September 26, 2014 [Docket No. 13-cv-5746 DE 41].........    A4972

Appellate Docket: *Expressions Hair Design v. Schneiderman*,
No. 13-4537 ...................................................................................    A5076

Excerpts of Card Acceptance Guidelines for Visa Merchants .............    A5085

The MasterCard Convenience Fee Program for Government and
Education ....................................................................................    A5088

Excerpts of Notice of Class Action Settlement Authorized by the
U.S. District Court, Eastern District of New York .......................    A5090

### **Volume XXII**

#### ***Volume Filed Under Seal***

Excerpts of Corrected First Amended Supplemental Complaint
(filed under seal), dated March 27, 2009 [Docket No. 1170-4].....    A5104

Excerpts of Network Defendants' Counter-Statement in Opposition
to Individual Plaintiffs' Statement of Undisputed Facts,
Pursuant to Local Rule 56.1(b) (filed under seal),
dated May 6, 2011 [Docket No. 1477-7] .......................................    A5114

Excerpts of Defendants' Statement of Material Facts as to Which
There is No Genuine Issue to be Tried (filed under seal), dated
February 11, 2011 [Docket No. 1478-4] ........................................    A5125

**Table of Contents**
**(continued)**

Page

Excerpts of Report of Mike McCormack (filed under seal),
 dated July 2, 2009 [Docket No. 2088]............................................ A5135

Excerpts of Expert Report of Professor Kevin M. Murphy (filed
 under seal), dated December 14, 2009 [Docket No. 2088]............ A5137

Excerpts of Report of Professor Kenneth G. Elzinga (filed under
 seal), dated December 14, 2009 [Docket No. 2088]...................... A5177

Excerpts of Declaration of William M. Sheedy (filed under seal),
 dated May 3, 2011 [Docket No. 2088] .......................................... A5183

Excerpts of Declaration of Timothy H. Murphy (filed under seal),
 dated May 3, 2011 [Docket No. 2088] .......................................... A5191

Memorandum of Law in Support of Motion to Intervene of DFS
 Services LLC and Discover Bank (filed under seal), dated May
 28, 2013 [Docket No. 2657-1]........................................................ A5200

Declaration of Jennifer M. Selendy (filed under seal),
 dated May 28, 2013 [Docket No. 2657-3]...................................... A5229

DFS Services LLC v. Visa, Complaint (filed under seal),
 dated May 28, 2013 [Docket No. 2657-4]...................................... A5231

Declaration of Roger Hochschild (filed under seal),
 dated May 28, 2013 [Docket No. 2657-5]...................................... A5250

Exhibit 1 to May 28, 2013 Declaration of Roger Hochschild:
 Notice of Class Action Settlement Authorized by the U.S.
 District Court, Eastern District of New York (filed under seal)
 [Docket No. 2657-7]....................................................................... A5261

Excerpts of Report of Alan S. Frankel, Ph.D. (filed under seal),
 dated July 2, 2009 ......................................................................... A5290

Excerpts of Expert Report of Robert H. Topel (filed under seal),
 dated December 15, 2009 .............................................................. A5295

xxv

**Table of Contents**
**(continued)**

**Page**

Excerpts of Rebuttal Report of Alan S. Frankel (filed under seal),
dated June 22, 2010 ........................................................................ A5297

| 06/11/2013 | 5522 | NOTICE by Joe's Stone Crab of Chicago LLC *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5523 | NOTICE by All Objectors *of Statement of Objections of Barnett Krispin II, LLC DBA Burger King Store #13920 by Thomas Dale Barnett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5524 | NOTICE *by Abbott & Avard, LLC. Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/11/2013) |
| 06/11/2013 | 5525 | NOTICE by Joe's of Las Vegas LLC *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5526 | NOTICE by Phase One LLC *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5527 | NOTICE by All Objectors *of Statement of Objections of Barnett Restaurants-43rd Inc. DBA Burger King Store #7165 by Thomas Dale Barnett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5528 | NOTICE by The Party Factory Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/11/2013) |
| 06/11/2013 | 5529 | NOTICE by All Objectors *of Statement of Objections of SBC Chandler Good Eggs Inc DBA The Good Egg Ancala by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5530 | NOTICE by Make It Special LLC *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5531 | NOTICE by Shaw's Schaumburg LLC *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5532 | NOTICE by All Objectors *of Statement of Objections of Carefree Good Eggs, Inc DBA The Good Egg Carefree by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5533 | NOTICE by TD Roc's Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/11/2013) |
| 06/11/2013 | 5534 | NOTICE by All Objectors *of Statement of Objections of SBCT Good Eggs II, Inc DBA The Good Egg Hayden Park by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5535 | NOTICE by It's A Buffalo Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/11/2013) |
| 06/11/2013 | 5536 | NOTICE by All Objectors *of Statement of Objections of Barnett Krispin 83rd LLC DBA Burger King Store # 9465 by Thomas Dale Barnett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5537 | NOTICE by Seymour Rocs Wing Co. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/11/2013) |
| 06/11/2013 | 5538 | NOTICE by All Objectors *of Statement of Objections of SCB Chandler Good Eggs, Inc. DBA The Good Egg Ray by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5539 | NOTICE by Buzzed on Suds Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/11/2013) |
| 06/11/2013 | 5540 | NOTICE by All Objectors *of Statement of Objections of SBC Chandler Good Eggs, Inc DBA The Good Egg Fulton Ranch by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5541 | NOTICE by All Objectors *of Statement of Objections of BBG Restaurants LLC DBA Central by Thomas Dale Barnett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5542 | NOTICE by All Objectors *of Statement of Objections of Tucson Good Eggs Inc. DBA The Good Egg Sunrise by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |

| 06/11/2013 | 5543 | NOTICE by All Objectors *of Statement of Objections of Uptown Restaurants, Inc. DBA The Good Egg Uptown by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5544 | NOTICE by All Objectors *of Statement of Objections of Sky Ventures LLC by Barry Zelickson Senior Vice President* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5545 | NOTICE by All Objectors *of Statement of Objections of Stop and Compare Inc by Marc Iannotti President* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5546 | NOTICE by All Objectors *of Statement of Objections of Stoenyville Grocery by Kalim Andram, Owner* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5547 | NOTICE by All Objectors *of Statement of Objections of J.H. Saylor Co. Inc. by Jim E. Saylor* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5548 | NOTICE by All Objectors *of Statement of Objections of Lund Food Holdings, Inc,; Lunds Inc.; and Byerly's Inc by Frederic Michael Miller* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5549 | NOTICE by All Objectors *of Statement of Objections and Opt Out Letter of Southern Convenience Stores LLC: Fuel + Mart 1,2,3 & 4 by Thomas Austin Robertson, Chief MGR* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5550 | NOTICE by Vegas Tapas LLC, DBA Stripburger *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5551 | NOTICE by All Objectors *of Statement of Objections of Bravokilo Inc by John C. Firth* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5552 | NOTICE by LGO Santa Monica LLC *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5553 | NOTICE by All Objectors *of Statement of Objections of Coastal Area Stores, Inc by Bobby Gene Edwards, CFO* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5554 | NOTICE by All Objectors *of Statement of Objections of Puckett Oil Co. Inc. by Richard Lee Puckett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5555 | NOTICE by All Objectors *of Opt Out Letter of Puckett Oil Co. Inc. by Richard Lee Puckett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5556 | NOTICE by L. Woods LLC *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5557 | NOTICE by M Street Kitchen LLC *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5558 | NOTICE by Lettuce Entertain You Enterprises, Inc. *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5559 | NOTICE by All Objectors *of Statement of Objections of O'Reilly Automotive Inc by Jeffrey Groves, General Counsel* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5560 | NOTICE by All Objectors *of Statement of Objections of G.E. Foodland, Inc. by Daniel George McCann* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5561 | NOTICE by Lettuce Entertain You Enterprises, Inc. DBA Lettuce Frequent Diner's Club *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5562 | NOTICE by All Objectors *of Statement of Objections of Wagner's Shoes by Matthew Dex Wagner* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5563 | NOTICE by Lettuce Wine Club LLC, DBA Lettuce Wine Cellars *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |

| 06/11/2013 | 5564 | NOTICE by Phase One LLC, DBA M Burger *of Statement of Objections filed by Jay E. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5565 | NOTICE by All Objectors *Wagner's Tuscaloosa Inc. DBA The Athlete's Foot by Matthew Dex Wagner* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5566 | NOTICE by OVS LLC, DBA M Burger Ontario *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5567 | NOTICE by All Objectors *of Statement of Objections of SBC Chandler Good Eggs, Inc. DBA The Good Egg Baseline by Charlie Aaron Syburg* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5568 | NOTICE by M Burger Thompson LLC, DBA M Burger Thompson *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5569 | NOTICE by All Objectors *of Statement of Objections of KLK Restaurants II, LLC DBA Burger King Store # 14956 by Thomas Dale Barnett* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5570 | NOTICE by All Objectors *of Statement of Objections of Caputo's New Farm Produce-Addison, Inc by Dan O'Neill* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5571 | NOTICE by Just B'Claws, Inc. *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5572 | NOTICE by All Objectors *of Statement of Objections of Caputo's New Farm Produce-Hanover Park Inc. by Dan O'Neill* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5573 | NOTICE by All Objectors *of Statement of Objections of R.K.Allen Oil Co. Inc. by Ginny Valentine* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5574 | NOTICE by Water Tower Place Restaurants LP, DBA M Burger Water Tower *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5575 | NOTICE by All Objectors *of Statement of Objections of Quality Dairy Co. by Ronald Belinsky* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5576 | NOTICE by All Objectors *of Statement of Objections of Angel Caputo's Fresh Markets by Dan O'Neill* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5577 | NOTICE by M Street Kitchen LLC, DBA M Street Kitchen *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5578 | NOTICE by Just B'Claws, Inc., DBA Shaw's Crab House - Chicago *of Statement of Objections filed by Jay L Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5579 | NOTICE by All Objectors *of Statement of Objections of Angelo Caputo's Fresh Markets/ 2400 N. Harlem Ave/ Elmwood Park, IL by Dan O'Neill* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5580 | NOTICE by All Objectors *of Statement of Objections of Ruby Tuesday, Inc. by Mindy B. Feagle* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5581 | NOTICE by All Objectors *of Statement of Objections of JAJ Inc. by Jeffrey Allen Jacobs* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5582 | NOTICE by All Objectors *of Statement of Objections of S&J Sports Inc. DBA Play It Again Sports by W.R. Sandy Fortin, CEO* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5583 | NOTICE by All Objectors *of Statement of Objections of MG Markets Inc by Peter Walter Gale* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5584 | NOTICE by Jessica's High Ceilings, Inc. *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |

| 06/11/2013 | 5585 | NOTICE by The Crepe Stand LLC, DBA Magic Pan Crepe Stand *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5586 | NOTICE by All Objectors *of Statement of Objections of Rugged Wearhouse, Inc. by Lori J. Paletta-Davis* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5587 | NOTICE by All Objectors *of Statement of Objections of Wayne Oil Co. Inc. by John Creech Strickland* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5588 | NOTICE by Magic Pan Northbrook LLC, DBA Magic Pan Crepe Stand *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5589 | NOTICE by All Objectors *of Statement of Objections of Gabriel Brothers, Inc. by Lori J. Paletta-Davis* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5590 | NOTICE by All Objectors *of Statement of Objections and Opt Out Letter of AMD Future Inc by Michelle Mary Wright* (Sweeney, Bonny) (Entered: 06/11/2013) |
| 06/11/2013 | 5591 | NOTICE by Osteria Wheeling LLC *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5592 | NOTICE by Magic Pan - Ridgedale LLC, DBA Magic Pan Crepe Stand - Ridgedale *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5593 | NOTICE by Kremeworks Hawaii LLC *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5594 | NOTICE by Water Tower Place Restaurants LP, DBA Mity Nice Grill *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5595 | NOTICE by Kremeworks Oregon LLC *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5596 | NOTICE by Mon Ami Bethesda LLC, DBA Mon Ami Gabi - Bethesda *of Statement of Objections filed by Jay L. Stieber* (Powell, Wesley) (Entered: 06/11/2013) |
| 06/11/2013 | 5597 | NOTICE by Kremeworks Oregon LLC, DBA Krispy Kreme- Clackamas *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5598 | NOTICE by Kremeworks Oregon LLC, DBA Krispy Kreme- Beaverton *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/11/2013) |
| 06/11/2013 | 5850 | NOTICE of Statement of Objections to Settlement filed by David Buchanan - Kwik Mart. (Piper, Francine) (Entered: 06/14/2013) |
| 06/12/2013 | 5599 | NOTICE by All Objectors *Statement of Objections by Angelo Caputo's Fresh Markets* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5600 | NOTICE by All Objectors *Statement of Objections by SDS Furniture Inc. DBA The Furniture Deal* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5601 | NOTICE by All Objectors *Statement of Objections by Black Hills Blend Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5602 | NOTICE by All Objectors *Statement of Objections by Triple S Ranch Supply Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5603 | NOTICE by All Objectors *Statement of Objections by SIDCO Party Store* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5604 | NOTICE by All Objectors *Statement of Objections by Speaks Marathon* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5605 | NOTICE by All Objectors *Statement of Objections by Kaune's Neighborhood Market Inc.* |

| | | |
|---|---|---|
| | | *(formerly known as Kaune Foodtown Inc.)* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5606 | NOTICE by All Objectors *Statement of Objections by E & K Convenience Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5607 | NOTICE by All Objectors *Statement of Objections and Notice of Intent to Appear by Bertha Gutierrez, Esq., sole proprietor of the Law Office of Bertha Gutierrez* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5608 | NOTICE by All Objectors *Statement of Objections by GameStop Corp.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5609 | NOTICE by All Objectors *Statement of Objections and Attachment by Austaco/Taco Bell and 2BAM, Ltd./Pizza Hut* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5610 | NOTICE by All Objectors *Statement of Objections by the Mills Companies: Fleet Wholesale Supply Co., Inc.; Mills Motor, Inc.; Mills Auto Enterprises, Inc.; Willmar Motors, LLC; Mills Auto Center, Inc.; Fleet and Farm of Alexandria, Inc.; Fleet Wholesale Supply of Fergus Falls, Inc.; Fleet and Farm of Green Bay, Inc.; Fleet and Farm of Menomonie, Inc.; Mills Fleet Farm, Inc.; Fleet and Farm of Manitowoc, Inc.; Fleet and Farm of Plymouth, Inc.; Fleet and Farm Supply Company of West Bend, Inc.; Fleet and Farm of Waupaca, Inc.; Mills E-Commerce Enterprises, Inc.; Brainerd Lively Auto LLC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5611 | NOTICE by All Objectors *Statement of Objections by PDQ Food Stores, Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5612 | NOTICE by All Objectors *Statement of Objections by Mom 'N Dad 'N 16 Kids, Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5613 | NOTICE by All Objectors *Statement of Objections by MSJ Enterprises, Inc. dba Baxters General Store* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5614 | NOTICE by All Objectors *Statement of Objections and Attachment by Buchanan Oil Corporation* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5615 | NOTICE by All Objectors *Statement of Objections by K-VA-T Food Stores, Inc., d/b/a Food City, Super Dollar Discount Foods, Food City Express and Food City Wine and Spirits* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5616 | NOTICE by All Objectors *Statement of Objections by National Association of Theatre Owners (NATO)* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5617 | NOTICE by All Objectors *Statement of Objections by City of Galveston Texas filed by Dorothy Palumbo, City Attorney* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5618 | NOTICE by All Objectors *Statement of Objections and attached Schedule A by Larco Enterprises* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5619 | NOTICE by All Objectors *Statement of Objections by City of Missouri City, Texas filed by Edward A. Broussard, City Manager* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5620 | NOTICE by All Objectors *Statement of Objections by LDF Food Group, Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5621 | NOTICE by All Objectors *Statement of Objections by Ashley Furniture Industries, Inc.; Kingswere Furniture, LLC.; Ashley HomeStores, Ltd.; Rockledge Furniture, LLC.; Stoneledge Furniture, LLC.; Southwestern Furniture of Wisconsin, LLC.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5622 | NOTICE by All Objectors *Statement of Objections by SLB of Iowa LC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5623 | NOTICE by All Objectors *Opt-Out Letter and Attachments by SLB of Iowa LC and all related* |

| | | |
|---|---|---|
| | | *entities* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5624 | NOTICE by All Objectors *Statement of Objections by HomeTown Food Markets* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5625 | NOTICE by All Objectors *Statement of Objections by Hallett Cinemas LLC; Bellevue Galleria Cinemas; Majestic Cinemas; Grand Cinemas (Walla Walla, WA) and Grand Cinemas (Sunnyside, WA)* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5626 | NOTICE by All Objectors *Statement of Objections by Domino's F4867 filed by Elvis T. Ancheta* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5627 | NOTICE by All Objectors *Statement of Objections by Save Mart Supermarkets* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5628 | NOTICE by All Objectors *Statement of Objections and Attachments by Reyes Jewelry & Repair* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5629 | NOTICE by All Objectors *Statement of Objections by Englefield Oil Company* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5630 | NOTICE by All Objectors *Statement of Objections and Attachment by OCI, Inc. d/b/a Graft Oil Company* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5631 | NOTICE by All Objectors *Statement of Objections by Super Jock 'N Jill, LLC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5632 | NOTICE by All Objectors *Statement of Objections by Jack Weinsoff DBA Domino's Pizza #7767* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5633 | NOTICE by All Objectors *Statement of Objections by Rastrelli's Restaurant* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5634 | NOTICE by All Objectors *Opt-Out Letter and Statement of Objections by AFM 29118 Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5635 | NOTICE by All Objectors *Statement of Objections by Colomex Inc. dba Taco Bell* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5636 | NOTICE by All Objectors *Statement of Objections by Jafran Ent., Inc. dba Domino's Pizza* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5637 | NOTICE by All Objectors *Statement of Objections by City of Corvallis, Oregon filed by James A. Patterson, City Manager* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5638 | NOTICE by All Objectors *Statement of Objections and Opt-Out Letter by Ten-in-Ten, Inc. dba Domino's Pizza #1427 and Domino's Pizza #2012* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5639 | NOTICE by All Objectors *Statement of Objections by City of Sequin, Texas filed by Andrew L. Quittner, City Attorney* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5640 | NOTICE by All Objectors *Statement of Objections and Notice of Intent to Appear Through Counsel by Alma L. Santos, South Texas Credit Repair and Amy Sarli, Club Fuego* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5641 | NOTICE by All Objectors *Statement of Objections by Polson Theatres, Inc., Showboat Cinema, Mountain Cinema, Cottonwood Cinema and Judith Cinema* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5642 | NOTICE by All Objectors *Statement of Objections by Dolan Foster Enterprises, LLC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5643 | NOTICE by All Objectors *Statement of Objections and Attachment by CenterTwist, Inc. d.b.a. Auntie Anne's Pretzels; CSS Enterprises, d.b.a. Auntie Anne's Pretzels; Tundra Twist* |

| | | |
|---|---|---|
| | | *LLC, d.b.a. Auntie Anne's Pretzels* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5644 | NOTICE by Rocco's Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5645 | NOTICE by All Objectors *Statement of Objections by PRP, Inc. DBA Domino's Pizza* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5646 | NOTICE by All Objectors *Statement of Objections by Sanibel Parking Co., Inc. DBA Bailey's General Store* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5647 | NOTICE by The City of Oak Creek, Wisconsin *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5648 | NOTICE by All Objectors *Statement of Objections by Barnason's Supermarket, Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5649 | NOTICE by All Objectors *Statement of Objections by Ranger Enterprises, Inc. d/b/a Road Ranger* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5650 | NOTICE by All Objectors *Statement of Objections by First Ranger Subway, L.L.C. d/b/a Road Ranger Subway* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5651 | Letter *by Class Plaintiffs Supporting and Joining Defendants' Rsp [DE 5406] re Motion to Intervene filed by Discover DFS Services LLC and Discover Bank [DE 2655]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Montague, H.) (Entered: 06/12/2013) |
| 06/12/2013 | 5652 | NOTICE by All Objectors *Statement of Objections and Attachment by Maybar 101 Associates, LLC; Maybar 102 Associates, LLC; Maybar 103 Associates, LLC; Maybar 104 Associates, LLC; Maybar 105 Associates, LLC; Maybar 106 Associates, LLC; Maybar 107 Associates, LLC; Maybar 108 Associates, LLC; Maybar 109 Associates, LLC; Maybar 110, LLC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5653 | NOTICE by All Objectors *Statement of Objections by Avon Quick Mart* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5654 | NOTICE by Sonic Drive In Restaurants *Opt Out* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5655 | NOTICE by All Objectors *Statement of Objections by Amy's Classic Confections* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5656 | NOTICE by Sonic Drive In Restaurants *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5657 | NOTICE by All Objectors *Statement of Objections by Power Corporation DBA Jeff's Grocery* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5658 | NOTICE by All Objectors *Opt-Out Letter and Statement of Objections by ZAZ Inc. DBA Quik & Easy 4* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5659 | NOTICE by All Objectors *Statement of Objections by North Prairie Petro Center, LLC dba Bill's Self Serve* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5660 | NOTICE by All Objectors *Statement of Objections by V & G Super Foods Inc. dba Riverside Foods* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5661 | NOTICE by All Objectors *Opt-Out Letter and Statement of Objections by Denmar Corporation; DenMart Convenience Stores, #2934 Chevron, #7696 Chevron, #8093 Chevron and #8755 Chevron* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5662 | NOTICE by All Objectors *Statement of Objections by Guadalajara Furniture* (Cohen, Bart) (Entered: 06/12/2013) |

| 06/12/2013 | 5663 | NOTICE by All Objectors *Statement of Objections and Attachment by Herdrich Petroleum Corporation* (Cohen, Bart) (Entered: 06/12/2013) |
|---|---|---|
| 06/12/2013 | 5664 | NOTICE by All Objectors *Opt-Out Letter and Statement of Objections by Element and Renew Therapeutic Massage LLC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5665 | NOTICE by All Objectors *of Statement of Objections of Boone's Furniture and Gifts, Inc by Julie Boone Isley, President* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5666 | NOTICE by All Objectors *of Statement of Objections of Crown Furniture Inc by Charles T. Gibbons* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5667 | NOTICE by All Objectors *of Statement of Objections of Beall''s Inc and Subsidiaries and Affiliates by Brian Crowley, CFO* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5668 | NOTICE by All Objectors *of Statement of Objections of Edward H. Wolf & Sons, Inc. by Craig S. Wolf* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5669 | NOTICE by All Objectors *of Statement of Objections of Thompson's IGA Foods by Mark Francis Thompson* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5670 | NOTICE by All Objectors *of Statement of Objections of Hutt Oil Co., Inc. by Mavis Hutt* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5671 | NOTICE by All Objectors *Statement of Objections by Sportsman Stop, Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5672 | NOTICE by All Objectors *of Statement of Objections of Mark Oil Company, Inc. by William O. Tome, Jr.* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5673 | NOTICE by All Objectors *Statement of Objections by Wonnenberg Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5674 | NOTICE by All Objectors *of Statement of Objections of GES Inc., dba Food Giant by J. Paul Rowton, Vice President* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5675 | NOTICE by All Objectors *of Statement of Objections of U-Gas Inc. by Margaret Amend* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5676 | NOTICE by All Objectors *Statement of Objections by Taco Bell Restaurants (Bellingham, WA) filed by Earl F. Bell* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5677 | NOTICE by Books on B LLC *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5678 | NOTICE by All Objectors *Statement of Objections of Citi Trends, Inc. by Bruce D. Smith, Chief Financial Officer* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5679 | NOTICE by Frisco Shopping Center Inc. *Opt-Out Letter and Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5680 | NOTICE by All Objectors *Statement of Objections by Zemco, LLC* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5681 | NOTICE by All Objectors *of Statement of Objections Lee Wesley Group, LLC by Arthur Lee* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5682 | NOTICE by All Objectors *Statement of Objections by Guertin Enterprises LLC dba Subway* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5683 | NOTICE by Kilgore and Guertin Enterprises *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5684 | NOTICE by All Objectors *of Statement of Objections of Lee Wesley Restaurants, LLC/Burger* |

| | | |
|---|---|---|
| | | *King by Arthur Lee* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5685 | NOTICE by All Objectors *Statement of Objections by Kilgore Inc.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5686 | NOTICE by The Homer Bookstore, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5687 | NOTICE by All Objectors *of Statement of Objections of Burger King Restaurants Grand Forks/Fargo/Jamestown, North Dakota & Park Rapids, Minnesota by Cindy Dahl* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5688 | NOTICE by All Objectors *Statement of Objections by Elden's Fresh Foods* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5689 | NOTICE by All Objectors *of Statement of Objections of Triple S by Steven C. Stanfield* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5690 | NOTICE by La Creme, Inc., DBA Mon Ami Gabi - Chicago *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5691 | NOTICE by The City of Portland, Oregon *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5692 | NOTICE by All Objectors *Statement of Objections by J&T Enterprises, Inc. DBA Omni Foods Supermarkets, Jackson's Star Market and Omni's Crushed Grapes & More* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5693 | NOTICE by All Objectors *of Statement of Objections of Franks Trading Post by Dorothy Ann Frank* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5694 | NOTICE by Mon Ami Bethesda LLC, DBA Mon Ami Gabi - Bethesda *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5695 | NOTICE by New Dixie Oil Corporation *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5696 | NOTICE by Wilderness Acres *Opt Out Letter & Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5697 | NOTICE by Mon Ami Gabi Development LLC, DBA Mon Ami Gabi - Oakbrook *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5698 | NOTICE by All Objectors *of Statement of Objections of Dehn Retail Stores-Little Canada & Coon Rapids, MN by Rick Allen Dehn* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5699 | NOTICE by Mr. Cartender Inc. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5700 | NOTICE by All Objectors *Opt-Out Letter, Statement of Objections and Attachment by Blueox Corporation* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5701 | NOTICE by Mon Ami Reston LLC, DBA Mon Ami Gabi - Reston *of Statement of Objections filed by Jay L. Stieber* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5702 | NOTICE by All Objectors *Statement of Objections by Triple S Petroleum Co.* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5703 | NOTICE by All Objectors *Statement of Objections by Four Lakes Exxon* (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5704 | NOTICE by All Objectors *Statement of Objections by MARCH Enterprises, Inc. d/b/a ROOMAX* (Cohen, Bart) (Entered: 06/12/2013) |

| 06/12/2013 | 5705 | NOTICE by Aoc Food Marts, Inc. Opt Out Letter & Statement of Objections (Boccanfuso, Anthony) (Entered: 06/12/2013) |
|---|---|---|
| 06/12/2013 | 5706 | NOTICE by All Objectors Opt-Out Letter, Statement of Objections and Attachment by Minit Holdings, LLC (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5707 | NOTICE by All Objectors Statement of Objections and Attachment by Glenwood Restaurants (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5708 | NOTICE by NFG Salem, LLC of Opt Out Letter and Statement of Objections filed by Cheryl Reichenberger (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5709 | NOTICE by All Objectors Statement of Objections by Northwind Book & Fiber (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5710 | NOTICE by AAA Foods Inc. Opt Out Letter & Statement of Objections (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5711 | NOTICE by All Objectors Opt-Out Letter and Statement of Objections by O'Neil's Markets, Inc. D/B/A Food for Less (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5712 | NOTICE by NFG Portland, LLC of Opt Out Letter and Statement of Objections filed by Cheryl Reichenberger (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5713 | NOTICE by All Objectors Opt-Out Letter, Statement of Objections and Attachment by Beach Oil Company (Cohen, Bart) (Entered: 06/12/2013) |
| 06/12/2013 | 5714 | NOTICE by All Objectors of Statement of Objections of K & L Foods, Inc. by Robert Mark LeVand (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5715 | NOTICE by NFG Seattle, LLC of Opt Out Letter and Statement of Objections filed by Cheryl Reichenberger (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5716 | NOTICE by Chase's Diner Statement of Objections (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5717 | NOTICE by All Objectors of Opt Out Letter and Statement of Objections of Gordonsville Keystop by George Gebhardt, President (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5718 | NOTICE by Shoker Trading Corp. Statement of Objections (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5719 | NOTICE by E&C Taco, Inc. Statement of Objections (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5720 | NOTICE by All Objectors of Statement of Objections of Clothes Garden, Inc by Connie Kay Templeton (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5721 | NOTICE by Harmony Food Services, LLC Statement of Objections (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5722 | NOTICE by Subway 22896 Statement of Objections (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5723 | NOTICE by All Objectors of Statement of Objections of Welcome Furniture by Weston Lee Wiley (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5724 | NOTICE by Sinclair Oil Corporation Opt-Out Letter (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5725 | NOTICE by French Cafe LLC, DBA Mon Ami Gabi of Statement of Objections filed by Jay L. Stieber (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5726 | NOTICE by Subway 22937 Statement of Objections (Boccanfuso, Anthony) (Entered: 06/12/2013) |

| 06/12/2013 | 5727 | NOTICE by All Objectors *of Statement of Objections of Circle Bar Truck Corral, Inc. by Lisa Ellen Mitchell* (Sweeney, Bonny) (Entered: 06/12/2013) |
| --- | --- | --- |
| 06/12/2013 | 5728 | NOTICE by All Objectors *of Statement of Objections of Mark of Excellence Pizza Company by Matt Benton* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5729 | NOTICE by Seal Pizza, LLC *of Opt Out Letter and Statement of Objections filed by Eric William Christianson* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5730 | NOTICE by All Objectors *of Statement of Objections of HSN, Inc. by Greg Henchel* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5731 | NOTICE by All Objectors *of Statement of Objections of J&K Pizza Inc., dba Primo Pizza by Jason Ryan Holman* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5732 | NOTICE by Subway 38885 *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5733 | NOTICE by All Objectors *of Opt Out Letter and Statement of Objections of White Oak Shell by Charles B, Meet* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5734 | NOTICE by Nacional LLC, DBA NACIONAL 27 *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5735 | NOTICE by All Objectors *of Statement of Objections of Ramco, Inc. dba Minit Mart, Inc.by Robert Allen Morgan* (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5736 | NOTICE by OVS LLC, DBA OSTERIA VIA STATO/PIZZARIA *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5737 | NOTICE by Demeter & Dionysos, Inc. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5738 | NOTICE by Skoglund Oil Company, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5739 | NOTICE by CFM 29101, Inc. *Opt-Out Letter and Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5740 | NOTICE by EMB State LP, DBA PAPAGUS - CHICAGO *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5741 | NOTICE by Inkwood, Inc. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5742 | NOTICE by Papagus Oakbrook, Inc., DBA PAPAGUS - OAKBROOK *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5743 | NOTICE *by Alameda Theatre and Cineplex, Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5744 | NOTICE *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5745 | NOTICE by Petterino's LLC, DBA PETTERINO'S *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5746 | NOTICE by Grand Jete *Opt Out & Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5747 | NOTICE by Oak Brook Seafood LLC, DBA REEL CLUB *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5748 | NOTICE by Lettuce Entertain You Enterprises, Inc., DBA RJ GRUNTS *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |

| 06/12/2013 | 5749 | NOTICE by River North Italian LLC, DBA RPM ITALIAN *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
|---|---|---|
| 06/12/2013 | 5750 | NOTICE by Park Service, Inc. *Opt Out Letter and Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5751 | NOTICE *Statement of Objections by Adolph Store* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5752 | NOTICE by Neptune Enterprises, Inc. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5753 | NOTICE by Rock King L.P. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5754 | NOTICE by Wildfire Eden Prairie LLC, DBA WILDFIRE - EDEN PRAIRIE *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5755 | NOTICE by Oh Management Inc., *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5756 | NOTICE by City of Ann Arbor, Michigan *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5757 | NOTICE by P&H Service Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5758 | NOTICE by Wildfire Glenview LLC, DBA WILDFIRE - GLENVIEW *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5759 | NOTICE by Wildfire, Inc., DBA WILDFIRE - LINCOLNSHIRE *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5760 | NOTICE by Shanel's Freeze Dried Flowers *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5761 | NOTICE by Hap Management LLC *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5762 | NOTICE by Wildfire, Inc., DBA WILDFIRE - OAK BROOK *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5763 | NOTICE by *B&G Food Enterprises, LLC* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5764 | MOTION for Leave to Electronically File Document under Seal *Exhibit A and Digital Images of All Exclusion Requests Received Through June 7th (DVD Format) attached to the Report of the Class Administrator* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A, Report of Exclusion Requests [Sealed Version], # 2 Image of DVD being filed manually under seal) (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5765 | NOTICE by Draughtridge Gas & Oil Company *Opt Out Letter and Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5766 | NOTICE by Wildfire Schaumburg LLC, DBA WILDFIRE - SCHAUMBURG *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5767 | NOTICE by In-n-Out Burgers *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5768 | NOTICE by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation *Notice Regarding the Filing of Sealed Digital Images on DVD* (Attachments: # 1 Image of DVD being filed manually under seal) (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5769 | NOTICE by Wildfire Tysons LLC, DBA WILDFIRE - TYSON *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |

| 06/12/2013 | 5770 | NOTICE by Mt. Shasta Restaurant Co. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
|---|---|---|
| 06/12/2013 | 5771 | NOTICE by Wow Bao Jackson LLC, DBA WOW BAO - JACKSON *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5772 | NOTICE by In-N-Out Burgers *Statement of Objections(Declaration of Valerie Sarigumba)* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5773 | NOTICE by Phestigo Shell *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5774 | NOTICE by LJN Management Corp. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5775 | NOTICE by Riverside Pizza Co. *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5776 | NOTICE by Wow Bao Jackson LLC, DBA WOW BAO WIRELESS - JACKSON *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5777 | NOTICE by Growmark FS, LLC *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5778 | NOTICE by EZ Stop Mobil *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5779 | NOTICE by Wow Bao 225 LLC, DBA WOW BAO-MICHIGAN *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5780 | NOTICE *Statement of Objections by Albert E. Roy, Inc.* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5781 | NOTICE by Syburg-Walker Restaurants, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5782 | NOTICE by Wow Bao State Lake LLC, DBA WOW BAO - STATE AND LAKE *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5783 | DECLARATION *[Report of the Class Administrator]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A, Report of Exclusion Requests [Public Version]) (Sweeney, Bonny) (Entered: 06/12/2013) |
| 06/12/2013 | 5784 | NOTICE by CD Okemos 10 LLC *Statement of Objections* (Mason, Robert) (Entered: 06/12/2013) |
| 06/12/2013 | 5785 | NOTICE by Wow Bao Buns LLC, DBA WOW BAO - WATERTOWER *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5786 | NOTICE *by Biaggi's Ristorante Italiano, LLC. Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5787 | NOTICE by Three Sevens Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5788 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - ISSAQUAH *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5789 | NOTICE by Roland J. Robert, Distributor, Inc. and Super Stop Enterprises, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5790 | NOTICE by OTBP, LLC *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |

| 06/12/2013 | 5791 | NOTICE by TimeSaver Food Stores, Co. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
|---|---|---|
| 06/12/2013 | 5792 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - SPOKANE *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5793 | NOTICE by Purk's Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5794 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - NORTH SEATTLE *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5795 | NOTICE by Opry Bros, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5796 | NOTICE by North State Grocery, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5797 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - SODO *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5798 | NOTICE by Erwin Oil Company, Inc. *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5799 | NOTICE by Papa Murphy's Take and Bake Pizza *Statement of Objections* (Boccanfuso, Anthony) (Entered: 06/12/2013) |
| 06/12/2013 | 5800 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - BURLINGTON *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5801 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - TACOMA *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5802 | NOTICE by Kremeworks Washington LLC, DBA KRISPY KREME - PUYALLUP *of Statement of Objections* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5803 | NOTICE by Payson Professional Management Corp. *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5804 | NOTICE by MCL Main & Alma Restaurant, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5805 | NOTICE by Citgo Quik Mart *of Statement of Objections filed by Ed Francois* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5806 | NOTICE by Christina Wallerstein *of Statement of Objections filed by Christina Wallerstein* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5807 | NOTICE by MCL Catalina Restaurant, Inc. *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5808 | NOTICE by Tucson Restaurants, Inc. *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5809 | NOTICE by MCL Tucson Alvernon Restaurant, Inc. *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5810 | NOTICE by Lincoln Skyline Deli *of Statement of Objections filed by Agueda Balderrama and Terri Schafer* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5811 | NOTICE by MCL Gilbert Road Restaurants, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5812 | NOTICE by MCL Happy Valley Restaurant, LLC *of Statement of Objections filed by Michael* |

| | | |
|---|---|---|
| | | *C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5813 | NOTICE by MCL Camp Verde Restaurant, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5814 | NOTICE by Showtop Restaurants, Inc. *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5815 | NOTICE by MCL River & LaCholla Restaurant, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5816 | NOTICE by Cumberland Farms, Inc & Gulf Oil Limited Partnership *of Statement of Objections filed by Mark G. Howard* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5817 | NOTICE by MCL Country Club Restaurant, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5818 | NOTICE by MCL Prescott Restaurants, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5819 | NOTICE by MCL Enterprises, Inc. *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5820 | NOTICE by MCL Whiteriver Restaurant, LLC *of Statement of Objections filed by Michael C. Laird* (Freimuth, Matthew) (Entered: 06/12/2013) |
| 06/12/2013 | 5821 | NOTICE *by ADFP Management, Inc. of Statement of Objections filed by Colleen F. Dunn* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5822 | NOTICE by Watermark Donut Company DBA Dunkin Donuts *of Statement of Objections filed by Sean R. Sullivan* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5823 | NOTICE by Epstein Porter 2, LLC DBA Dunkin Donuts *of Statement of Objections filed by Sean R. Sullivan* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5824 | NOTICE by Epstein Porter 1, LLC DBA Dunkin Donuts *of Statement of Objections filed by Sean R. Sullivan* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5825 | NOTICE by David Michael's Salon, LLC *of Statement of Objections filed by Michael Latigona* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5826 | NOTICE by Zuri, Inc. DBA Dunkin Donuts / Baskin Robbins *of Statement of Objections filed by Amyn Ali* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5827 | NOTICE by Division "L" DBA Dunkin Donuts *of Statement of Objections filed by Amyn Ali* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/12/2013 | 5828 | NOTICE by Western "L" DBA Dunkin Donuts *of Statement of Objections filed by Amyn Ali* (Powell, Wesley) (Entered: 06/12/2013) |
| 06/13/2013 | 5829 | NOTICE by All Objectors *Limited Objection to Form of Release by City and County of Denver filed by Laurie J. Heydman, Assistant City Attorney* (Cohen, Bart) (Entered: 06/13/2013) |
| 06/13/2013 | | ORDER: in light of the letters from defendants 5406 and Class Plaintiffs 5651 and the absence of opposition to Discover's motion to intervene, the July 9, 2013 oral argument is canceled. Defendants' request that their response to Discover's objections be due on August 16, 2013 is granted.Ordered by Judge John Gleeson on 6/13/2013. (Merle, Natasha) (Entered: 06/13/2013) |
| 06/13/2013 | 5830 | NOTICE by Jordan Pizza, LLC *of Opt Out Letter and Statement of Objections filed by Erick William Christianson* (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5831 | NOTICE by Dakota Direct Furniture, LLC *of Opt Out Letter and Statement of Objections* |

| | | |
|---|---|---|
| | | *filed by Jason Scott Szczawinski* (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5832 | NOTICE by Maverik, Inc. *of Opt Out Letter and Statement of Objections filed by Spencer Clawson Hewlett* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5833 | NOTICE by Equilon Enterprises LLC, Motiva Enterprises LLC *of Statement of Objections filed by Charles Babcock* (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5834 | NOTICE by Shimurima II, Inc., Shimurima, Inc. *of Statement of Objections filed by Amyn Ali* (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5835 | NOTICE by Gourmet Catalog Inc., Old Warsaw Restaurant *of Statement of Objections filed by Gary W. Sibley* (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5836 | NOTICE by Swarovski *of Statement of Objections filed by Edward J. Capobianco* (Attachments: # 1 Exhibit A) (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | 5837 | NOTICE by David Michael's Salon, LLC *of Statement of Objections filed by Michael Latigona* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Freimuth, Matthew) (Entered: 06/13/2013) |
| 06/13/2013 | | ORDER: the court will be meeting with the court-appointed expert Alan Sykes on June 25, 2013 to discuss, among other things, the procedure by which Mr. Sykes will gather the information he needs in order to advise the court. The parties and the objectors are invited to file a *joint* submission, on or before June 24, 2013, to propose such a procedure. Ordered by Judge John Gleeson on 6/13/2013. (Merle, Natasha) (Entered: 06/13/2013) |
| 06/13/2013 | 5838 | Letter MOTION to Seal Document 4048 Notice(Other), 3531 Notice(Other), 4047 Notice (Other), 3331 Notice(Other), 4045 Notice(Other), 3316 Notice(Other), 4442 Notice(Other), 4088 Notice(Other) *and Re-file Redacted* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Cohen, Bart) (Entered: 06/13/2013) |
| 06/14/2013 | | ORDER granting 5838 Motion to Seal Document. The Clerk of Court is respectfully directed to seal docket entries 3316 , 3331 , 3531 , 4045 , 4047 , 4048 , 4088 and 4442 . Ordered by Magistrate Judge James Orenstein on 6/14/2013. (Guy, Alicia) (Entered: 06/14/2013) |
| 06/14/2013 | 5841 | NOTICE by All Objectors *Statement of Objections by Fairview Northland Medical Center - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5842 | NOTICE by All Objectors *OPT-OUT Letter by PAQ, Inc. - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5843 | NOTICE by All Objectors *Statement of Objections and Addendum by Fairview Oxboro Clinics - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5845 | NOTICE by All Objectors *Statement of Objections and Addendum by Fairview Clinics - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5846 | NOTICE by All Objectors *Statement of Objections and Attachment by Fairview Health Services - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5847 | NOTICE by All Objectors *Statement of Objections by Fairview Auxiliary - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5848 | NOTICE by All Objectors *Statement of Objections by Behavioral Healthcare Providers - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5849 | NOTICE by All Objectors *Statement of Objections and Addendum by Fairview Pharmacy Services - Redacted* (Cohen, Bart) (Entered: 06/14/2013) |
| 06/14/2013 | 5859 | NOTICE of Statement of Objections to Settlement filed by Jeanne Graves. (Piper, Francine) (Entered: 06/21/2013) |
| | | |

| 06/17/2013 | 5858 | NOTICE of Opt-Out Letter/Statement of Objections to Settlement filed by Pankau. CHOXSHI. (Piper, Francine) (Entered: 06/21/2013) |
| 06/18/2013 | 5851 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6264760. by Restoration Hardware, Inc.. (Attachments: # 1 Affidavit in Support Affidavit of J. DeMarco, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order) (Demarco, Joe) (Entered: 06/18/2013) |
| 06/18/2013 | 5852 | NOTICE: Further to the Court's May 29, 2013 Order, Representatives for the parties attest that on June 18, 2013 Brian Dillon, account manager for DTI Global, Inc. returned two (2) boxes containing Opt-Outs and Objections related to the Class Settlement Agreement to Clerk of Court for the United States District Court for the Eastern District of New York. (Brown, Marc) (Entered: 06/18/2013) |
| 06/18/2013 | 5853 | Letter *from Trade Association Plaintiffs requesting relief from obligations imposed by Order dated April 24, 2013 (Dkt. #2170)* by NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Restaurant Association, Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO (Attachments: # 1 Declaration of Jeffrey I. Shinder, # 2 Exhibits 1-10) (Shinder, Jeffrey) (Entered: 06/18/2013) |
| 06/19/2013 | 5854 | ORDER granting 5851 Motion for Leave to Appear Pro Hac Vice -- Attorney Justin S. Chang, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By June 26, 2013, Mr. Chang shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Chang shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Chang shall also ensure that the $25 admission fee be submitted to the Clerk's Office. **SEE ATTACHED ORDER.** Ordered by Magistrate Judge James Orenstein on 6/19/2013. (Tarpey, Clare) (Entered: 06/19/2013) |
| 06/19/2013 | 5855 | JPMDL Conditional Transfer Order CTO-6: Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of New York for the reasons stated in the order of October 19, 2005, and, with the consent of that court, assigned to the Honorable John Gleeson. (Marziliano, August) (Entered: 06/19/2013) |
| 06/19/2013 |  | ORDER: Daniel Levitan has failed to establish the requirements to intervene in this matter pursuant to FRCP 24, therefore, his 2230 motion is denied. Ordered by Judge John Gleeson on 6/19/2013. (Merle, Natasha) (Entered: 06/19/2013) |
| 06/20/2013 | 5856 | NOTICE of Appearance by Gregory R. Farkas on behalf of Dell Inc. (aty to be noticed) (Farkas, Gregory) (Entered: 06/20/2013) |
| 06/20/2013 | 5857 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6271301. by The Iron Barley Restaurant. (Miller, Steve) (Entered: 06/20/2013) |
| 06/24/2013 | 5860 | NOTICE of Appearance by Justin S. Chang on behalf of Restoration Hardware, Inc. (aty to be noticed) (Chang, Justin) (Entered: 06/24/2013) |
| 06/24/2013 | 5861 | Letter *from Class Counsel regarding Report of Class Administrator* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Sweeney, Bonny) (Entered: 06/24/2013) |
| 06/24/2013 | 5862 | Letter *to the Honorable Judge John Gleeson* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 06/24/2013) |
| 06/24/2013 | 5863 | NOTICE by Mastercard Incorporated, Mastercard International Incorporated */Joint Submission of the Parties, Objecting Plaintiffs and Objectors in Response to June 13, 2013 Order Regarding Procedures for Providing Information to Dr. Sykes* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Powell, Wesley) (Entered: 06/24/2013) |
| 06/24/2013 | 5864 | Letter dated 6/18/13 from Anne Coleman, NRAI is unable to locate a viable address for the |

| | | entity being served. (Piper, Francine) (Entered: 06/25/2013) |
|---|---|---|
| 06/27/2013 | 5865 | Letter *on behalf of Class Plaintiffs responding to Trade Association Plaintiffs' motion (Dkt. No. 5853)* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Declaration of Ryan W. Marth, # 2 Exhibits 1 - 7) (Wildfang, K.) *(Modified)* (Entered: 06/27/2013) |
| 06/28/2013 | 5866 | Letter *dated June 28, 2013 from Class Plaintiffs Requesting Approval of Settlement Administrative Costs* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A) (Undlin, Thomas) (Entered: 06/28/2013) |
| 06/28/2013 | 5867 | MOTION to Withdraw as Attorney by National Retail Federation. (Pulver, Adam) (Entered: 06/28/2013) |
| 06/28/2013 | | ORDER granting 5867 Motion to Withdraw as Attorney -- The application is granted; attorney Adam R. Pulver terminated. Ordered by Magistrate Judge James Orenstein on 6/28/2013. (Tarpey, Clare) (Entered: 06/28/2013) |
| 07/01/2013 | | ORDER: Class Plaintiffs' request for approval of the Settlement Administrator's request for funding in the amount of $4,172,324.57 from the Cash Settlement Cash Escrow Account is hereby granted. Ordered by Judge John Gleeson on 7/1/2013. (Merle, Natasha) (Entered: 07/01/2013) |
| 07/01/2013 | 5868 | NOTICE of Change of Firm by Michael M. Buchman (Buchman, Michael) (Entered: 07/01/2013) |
| 07/01/2013 | 5869 | MOTION for Leave to Electronically File Document under Seal *[Exhibit A and Digital Images of Exclusion Requests Received from June 7, 2013-June 27, 2013]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A, Report of Exclusion Requests [Sealed], # 2 Image of DVD [filed manually under seal]) (Sweeney, Bonny) (Entered: 07/01/2013) |
| 07/01/2013 | 5870 | NOTICE by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation *[Notice Regarding the Filing of Sealed Digital Images on DVD]* (Attachments: # 1 Image of DVD [filed manually under seal]) (Sweeney, Bonny) (Entered: 07/01/2013) |
| 07/01/2013 | 5871 | DECLARATION re 5870 Notice(Other), 5869 MOTION for Leave to Electronically File Document under Seal *[Exhibit A and Digital Images of Exclusion Requests Received from June 7, 2013-June 27, 2013] [Second Report of The Class Administrator]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A, Report of Exclusion Requests [Public Version]) (Sweeney, Bonny) (Entered: 07/01/2013) |
| 07/02/2013 | | ORDER granting 5869 Motion for Leave to Electronically File Document under Seal. Ordered by Judge John Gleeson on 7/2/2013. (Merle, Natasha) (Entered: 07/02/2013) |
| 07/02/2013 | 5872 | EXHIBIT *A to Second Report of the Class Administrator* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. Related document: Order on Motion for Leave to Electronically File Document under Seal. (Attachments: # 1 Digital Image of DVD [manually filed under seal]) (Sweeney, Bonny) (Entered: 07/02/2013) |
| 07/02/2013 | 5873 | ORDER establishing the procedures for court appointed expert Dr. Alan O. Sykes. Ordered by Judge John Gleeson on 7/2/2013. (Merle, Natasha) (Entered: 07/02/2013) |
| 07/02/2013 | | ORDER granting in Part and Denying in Part Trade Association Plaintiffs' Motion 5853 to be Relieved of Certain Court-Imposed Obligations. The affirmative obligations imposed upon the Trade Association Plaintiffs in my April 11 and April 24, 2013 orders regarding communications with their members and merchants generally are hereby lifted with the exception of the notification obligations established by paragraph 3 of the April 24, 2013 order. The latter notification obligations shall remain in place.Ordered by Judge John Gleeson on 7/2/2013. (Merle, Natasha) (Entered: 07/02/2013) |
| 07/03/2013 | 5876 | Court message dated 6/25/13 from Judge John Gleeson to Dr. Sykes regarding meeting to discuss procedures. (Piper, Francine) (Entered: 07/03/2013) |

| 07/03/2013 | 5877 | NOTICE of Statement of Objections to Settlement filed by George Hauer (Piper, Francine) (Entered: 07/03/2013) |
|---|---|---|
| 07/03/2013 | 5880 | NOTICE of Statement of Objections to Settlement filed by Larry Frenkel. (Piper, Francine) (Entered: 07/09/2013) |
| 07/05/2013 | 5878 | MOTION to Withdraw as Attorney by Einstein Noah Restaurant Group, Inc., Furniture Row BC, Inc., Furniture Row, LLC. (Laudenslager, Kelly) (Entered: 07/05/2013) |
| 07/08/2013 | | ORDER granting 5878 Motion to Withdraw as Attorney -- The application is granted; attorney Kelly A. Laudenslager terminated. Ordered by Magistrate Judge James Orenstein on 7/8/2013. (Tarpey, Clare) (Entered: 07/08/2013) |
| 07/08/2013 | 5879 | Letter *from Jeffrey I. Shinder to Professor Sykes enclosing expert reports* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 07/08/2013) |
| 07/09/2013 | 5881 | ORDER: the parties and objectors shall provide to Dr. Sykes a copy of any material they wish the expert to review on or before July 12, 2013 as described in the attached order. Ordered by Judge John Gleeson on 7/9/2013. (Merle, Natasha) (Entered: 07/09/2013) |
| 07/10/2013 | 5882 | Letter *from Matthew Freimuth to Dr. Sykes enclosing expert reports* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 07/10/2013) |
| 07/10/2013 | 5883 | Letter *from K. Craig Wildfang to Professor Sykes enclosing expert reports* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 07/10/2013) |
| 07/10/2013 | 5884 | Letter *from Jennifer Selendy to Professor Sykes enclosing Court Materials (DE 2659 and 2657)* by DFS Services, LLC, Discover Bank, Discover Financial Services, Discover Home Loans, Inc. (Selendy, Jennifer) (Entered: 07/10/2013) |
| 07/10/2013 | 5885 | Letter *from Owen Glist transmitting materials to Professor Sykes by email* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., |

| | | |
|---|---|---|
| | | Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Glist, Adam) (Entered: 07/10/2013) |
| 07/11/2013 | 5886 | Letter *To Dr. Sykes* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Webner, Robert) (Entered: 07/11/2013) |
| 07/11/2013 | | Email Notification Test - DO NOT REPLY (Entered: 07/11/2013) |
| 07/11/2013 | 5887 | Letter *from Jason A. Yurasek to Dr. Sykes transmitting materials* by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation (Yurasek, Jason) (Entered: 07/11/2013) |
| 07/11/2013 | 5888 | Letter *to Dr. Alan Sykes* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO, Plaintiffs in civil action The Kroger Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO (Blechman, William) (Entered: 07/11/2013) |
| 07/12/2013 | 5889 | Letter *from Matthew Freimuth to Dr. Sykes* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 07/12/2013) |
| 07/12/2013 | 5890 | Letter *[Corrected] from Jason Yurasek to Dr. Sykes forwarding materials [Docket Nos. 1693, 1694 and 2429-2 and 2429-3] for expert review* by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation (Yurasek, Jason) (Entered: 07/12/2013) |
| 07/12/2013 | 5891 | Letter *to Judge Gleeson regarding objectors' submissions* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 07/12/2013) |
| 07/12/2013 | 5892 | Letter *on behalf of Class Plaintiffs to Professor Sykes* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 07/12/2013) |
| 07/12/2013 | 5893 | Letter *to Professor Alan Sykes* by Home Depot U.S.A., Inc. (Neuwirth, Stephen) (Entered: 07/12/2013) |
| 07/12/2013 | 5894 | Letter *Response from Jason Yurasek Regarding Letter Regarding Court Materials to Expert (ECF 5892)* by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation (Yurasek, Jason) (Entered: 07/12/2013) |
| 07/12/2013 | 5895 | Letter *Response from Jason Yurasek to Dr. Sykes Regarding Letter Regarding Court Materials to Expert (ECF 5892)* by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation (Yurasek, Jason) (Entered: 07/12/2013) |
| 07/15/2013 | 5896 | Letter *Response from Objecting Plaintiffs and Objectors to Class Counsels Letters Regarding Submission of Materials to Expert (ECF 5891, 5892)* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven, Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes |

| | | |
|---|---|---|
| | | & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera Bread, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv-5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 07/15/2013) |
| 07/15/2013 | 5897 | Letter *to Judge Gleeson regarding submission of materials to Dr. Sykes* by DFS Services, LLC, Discover Bank, Discover Financial Services, Discover Home Loans, Inc. (Selendy, Jennifer) (Entered: 07/15/2013) |
| 07/15/2013 | 5898 | Letter *to Judge Gleeson regarding Court's July 2 Order* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 07/15/2013) |
| 07/16/2013 | 5899 | MOTION to Withdraw as Attorney by Equilon Enterprises LLC, Motiva Enterprises LLC. (Attachments: # 1 Proposed Order) (Babcock, Charles) (Entered: 07/16/2013) |
| 07/16/2013 | 5900 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 07/16/2013) |
| 07/16/2013 | 5901 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 07/16/2013) |
| 07/16/2013 | | ORDER: The confluence of my July 2 and July 9, 2013 orders engendered some confusion with regard to what may be submitted to Professor Sykes. With apologies to all, in the hope of achieving clarity and fairness, and after consulting with Professor Sykes, I hereby notify the parties that Professor Sykes is interested in reviewing all filings in the case that address the merits of the proposed settlement. To the extent that any party wishes to supply him any such document (and has not already done so), they may do so on or before July 19, 2013. In addition, any economic expert reports previously filed in the case may be supplied to Professor Sykes by July 19, 2013. Ordered by Judge John Gleeson on 7/16/2013. (Merle, Natasha) (Entered: 07/16/2013) |
| 07/17/2013 | 5902 | Letter *from Robert N. Webner to Dr. Sykes enclosing court materials* by WellPoint, Inc. (Webner, Robert) (Entered: 07/17/2013) |
| 07/17/2013 | 5903 | Letter *from Gregory R Farkas to Dr Sykes enclosing copy of Dell's Statement of Objection* by Dell Inc. (Farkas, Gregory) (Entered: 07/17/2013) |
| 07/17/2013 | | ORDER: parties' 5900 stipulation and proposed order is hereby SO ORDERED. Ordered by Judge John Gleeson on 7/17/2013. (Merle, Natasha) (Entered: 07/17/2013) |
| 07/17/2013 | | ORDER: the parties' 5901 stipulation and proposed order is hereby SO ORDERED. Ordered by Judge John Gleeson on 7/17/2013. (Merle, Natasha) (Entered: 07/17/2013) |
| 07/17/2013 | 5904 | Letter *from Matthew Freimuth to Dr. Sykes* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 07/17/2013) |
| 07/18/2013 | 5905 | Letter *from Robert N. Webner to Dr. Sykes enclosing court materials* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Webner, Robert) (Entered: 07/18/2013) |
| 07/18/2013 | 5906 | Letter *from K. Craig Wildfang to Professor Sykes* by Payment Card Interchange Fee and |

| | | |
|---|---|---|
| | | Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 07/18/2013) |
| 07/18/2013 | 5907 | Letter *To Professor Alan O. Sykes* by Metropolitan Transportation Authority (Fromm, Helene) (Entered: 07/18/2013) |
| 07/19/2013 | 5908 | Letter *from Class Counsel to The Honorable Judge John Gleeson* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Sweeney, Bonny) (Entered: 07/19/2013) |
| 07/19/2013 | 5909 | NOTICE of Appearance by Adam P. Feinberg on behalf of Blue Cross Blue Shield entities (aty to be noticed) (Feinberg, Adam) (Entered: 07/19/2013) |
| 07/19/2013 | 5910 | NOTICE of Appearance by Anthony F. Shelley on behalf of Blue Cross Blue Shield entities (aty to be noticed) (Shelley, Anthony) (Entered: 07/19/2013) |
| 07/19/2013 | 5911 | Letter *from A. Shelley to Dr. Sykes* by Blue Cross Blue Shield entities (Shelley, Anthony) (Entered: 07/19/2013) |
| 07/19/2013 | 5912 | Letter *of transmittal from Jeffrey I. Shinder to Professor Sykes enclosing Objecting Plaintiffs and Objectors Memorandum in Opposition to Motion for Final Approval of Settlement and Declaration of Jeffrey I. Shinder, with exhibits* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven, Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera Bread, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv-5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 07/19/2013) |
| 07/23/2013 | 5913 | Letter Motion to Compel Unredacted Documents *form Michael J. Canter to The Honorable John Gleeson* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Canter, Michael) Modified on 7/26/2013 to change to motion.(Piper, Francine). (Entered: 07/23/2013) |
| 07/23/2013 | 5914 | Letter Motion to Compel Unredacted Documents *from Jeffrey I. Shinder concerning the submission of unredacted material to Professor Sykes.* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Einstein Noah Restaurant Group, Inc., Family Dollar, Inc., Foot Locker, Inc., Furniture Row BC, Inc., Furniture Row, LLC, General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., |

| | | |
|---|---|---|
| | | Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) Modified on 7/26/2013 to change to motion. (Piper, Francine). (Entered: 07/23/2013) |
| 07/23/2013 | | ORDER: Class Counsel's letter request 5908 is granted to the extent that they do not have to serve a hard copy of their August 16, 2013 pleadings in support of final approval of the settlement on all entities that have objected. However, Class Counsel is directed to send a letter in advance of the August 16, 2013 filing to all objectors for whom Class Counsel has addresses, informing them of the availability of the filings on the official settlement website.Ordered by Judge John Gleeson on 7/23/2013. (Merle, Natasha) (Entered: 07/23/2013) |
| 07/24/2013 | | ORDER: Proponents of the proposed settlement are directed to respond in writing to Target Objectors' 5913 and Objecting Plaintiffs' 5914 letters by July 25, 2013. Ordered by Judge John Gleeson on 7/24/2013. (Merle, Natasha) (Entered: 07/24/2013) |
| 07/25/2013 | 5915 | NOTICE by Buc-ee's Ltd *of Attorney in Charge* (Merrill, William) (Entered: 07/25/2013) |
| 07/25/2013 | 5916 | Letter *from Class Counsel responding to Dkt. Nos. 5913 and 5914* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 07/25/2013) |
| 07/25/2013 | 5917 | Letter *from M. Freimuth to Judge Gleeson* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 07/25/2013) |
| 07/25/2013 | 5918 | Letter *from M. Freimuth to Judge Gleeson* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 07/25/2013) |
| 07/25/2013 | 5919 | Letter *from Jennifer Selendy to Hon. Judge Gleeson in response to Target Objectors' Letter regarding redacted materials sent to Professor Sykes* by DFS Services, LLC, Discover Bank, Discover Financial Services, Discover Home Loans, Inc. (Selendy, Jennifer) (Entered: 07/25/2013) |
| 07/25/2013 | 5920 | Letter *to Judge Gleeson in Response to Objectors' Request for Individual Plaintiffs' Expert Reports* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO, Plaintiffs in civil action The Kroger Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO (Attachments: # 1 Exhibit 1 - Excerpt 9/27/13 Hrg. Transcript, # 2 Exhibit 2 - Letter Richard Arnold to Judge Orenstein) (Blechman, William) (Entered: 07/25/2013) |
| 07/26/2013 | | ORDER: defendants' letter request 5917 is granted. Ordered by Judge John Gleeson on 7/26/2013. (Merle, Natasha) (Entered: 07/26/2013) |
| 07/26/2013 | | ORDER: Target Objectors' 5913 and Objecting Plaintiffs' 5914 requests for unredacted copies of any materials provided to Professor Sykes is respectfully referred to Magistrate Judge Orenstein. Ordered by Judge John Gleeson on 7/26/2013. (Merle, Natasha) (Entered: 07/26/2013) |
| 07/30/2013 | 5921 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 07/30/2013) |
| 07/31/2013 | | ORDER: parties' stipulation 5921 is SO ORDERED. Ordered by Judge John Gleeson on 7/31/2013. (Merle, Natasha) (Entered: 07/31/2013) |

| | | |
|---|---|---|
| 07/31/2013 | 5922 | Letter *from Gregory A. Clarick* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Clarick, Gregory) (Entered: 07/31/2013) |
| 07/31/2013 | 5923 | Letter *response to Defendants' request for pre-motion conference in 13-cv-3074* by Visa International Service Association, Visa U.S.A. Inc. (Shuster, Michael) (Entered: 07/31/2013) |
| 08/01/2013 | 5924 | NOTICE of Entry of Appearance for St. Louis Airport Taxi, LLC filed by Lawrence C. Sumner. (Counsel has not been added to the docket. Counsel is not admitted in this District) (Piper, Francine) (Entered: 08/05/2013) |
| 08/07/2013 | 5925 | Letter *from Objecting Plaintiffs and Objectors responding to Individual Plaintiffs 7/25/13 letter, Dkt. No. 5920* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 08/07/2013) |
| 08/09/2013 | 5926 | Letter *from Objecting Plaintiffs and Objectors requesting the Courts guidance concerning the conduct of the fairness hearing.* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dell Inc., Dillard's, Inc., Drury Hotels Company, LLC, Einstein Noah Restaurant Group, Inc., Enterprise Holdings, Foot Locker, Inc., Furniture Row, LLC, General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven, Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 08/09/2013) |

| 08/09/2013 | 5927 | Letter *from Michael J. Canter on behalf of Target Objectors requesting the Court's Guidance Concerning the conduct of the fairness hearing* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Rubin, Kenneth) (Entered: 08/09/2013) |
|---|---|---|
| 08/12/2013 | 5928 | ORDER denying 5913 Motion to Compel; denying 5914 Motion to Compel -- for the reasons set forth in the attached document, I deny the motions to compel. Ordered by Magistrate Judge James Orenstein on 8/12/2013. (Orenstein, James) (Entered: 08/12/2013) |
| 08/13/2013 | 5929 | Letter *to Judge Gleeson responding to the requests for the Court's guidance concerning the conduct of the fairness hearing* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 08/13/2013) |
| 08/14/2013 | 5930 | Letter *re: Request To Be Heard At Fairness Hearing* by Home Depot U.S.A., Inc. (Neuwirth, Stephen) (Entered: 08/14/2013) |
| 08/14/2013 | | ORDER granting 5899 Motion to Withdraw as Attorney. -- The motion to withdraw is granted; Attorneys Charles Babcock, David Moran, David Folsom, and Bill Cobb are terminated. Any new counsel seeking to appear on behalf of a party must file a notice of appearance and register to receive electronic notice of all filings in this case via the court's ECF docketing system. Ordered by Magistrate Judge James Orenstein on 8/14/2013. (Tarpey, Clare) (Entered: 08/14/2013) |
| 08/14/2013 | 5931 | Letter *from Matthew Freimuth to Judge Gleeson* by Mastercard Incorporated, Mastercard International Incorporated (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Freimuth, Matthew) (Entered: 08/14/2013) |
| 08/16/2013 | 5932 | Letter requesting an opportunity to present oral argument at 9/12/13 Fairness Hearing. (Gentile, Mitchell) (Entered: 08/16/2013) |
| 08/16/2013 | 5933 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., Genesco Inc., Genesee Co-Op Natural Food Store, Inc.,, 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 08/16/2013) |
| 08/16/2013 | 5934 | MEMORANDUM in Support *of Settlement Reforms* filed by Plaintiffs in civil action Baltimore Avenue Foods, LLC v. Visa U.S.A., Inc. 05-cv-5080 JG-JO, Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO, Plaintiffs in civil action Supervalu Inc. v. Visa U.S.A. Inc. et al 05-cv-4650 JG-JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. Mastercard Incorporated et al 06-cv-2534 JG-JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. |

|            |      | Visa U.S.A., Inc. et al 06-cv-2532 JG-JO, Plaintiffs in civil action Hy-Vee, Inc. v. Visa U.S.A., Inc. et al 05-cv-3925-JG-JO, Plaintiffs in civil action Meijer, Inc. et al v. Visa U.S.A. Inc. et al 05-cv-4131-JG-JO, Plaintiffs in civil action Raley's v. Visa U.S.A. Inc. et al 05-cv-4799 JG-JO, Plaintiffs in civil action Rite Aid Corporation et al. v. Visa U.S.A., Inc. et al. 05-cv-5352 JG-JO, Plaintiffs in civil action The Kroger Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO. (Arnold, Richard) (Entered: 08/16/2013) |
| 08/16/2013 | 5935 | Letter *regarding the fairness hearing* by Cardtronics, Inc. (Shinder, Jeffrey) (Entered: 08/16/2013) |
| 08/16/2013 | 5936 | Letter *to Judge Gleeson requesting page extension* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 08/16/2013) |
| 08/16/2013 | 5937 | REPLY in Support re 2111 MOTION for Settlement *[Notice of Motion and Motion for Class Plaintiffs Final Approval of Settlement]* filed by Visa U.S.A. Inc.. (Mason, Robert) (Entered: 08/16/2013) |
| 08/16/2013 | 5938 | MOTION for Leave to Electronically File Document under Seal by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Declaration Reply Declaration of Alan S. Frankel (Wildfang, K.) (Entered: 08/16/2013) |
| 08/16/2013 | 5939 | REPLY in Support re 2111 MOTION for Settlement *[Notice of Motion and Motion for Class Plaintiffs Final Approval of Settlement]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit Exhibit 1 - Supplemental Declaration of K. Craig Wildfang in Further Support of Final Approval, # 2 Exhibit Exhibit 2 - Declaration of Alexandra S. Bernay, # 3 Exhibit Exhibit 3, part 1 - Declaration of Ryan W. Marth, # 4 Exhibit Exhibit 3, part 2 - Declaration of Ryan W. Marth, # 5 Exhibit Exhibit 4 - Reply Declaration of Alan S. Frankel (Redacted), # 6 Exhibit Exhibit 5 - Declaration of H. Theodore Grindal in Support of Final Approval, # 7 Exhibit Exhibit 6 - August 16, 2013 Report of Mike McCormack) (Wildfang, K.) (Entered: 08/16/2013) |
| 08/16/2013 | 5940 | REPLY in Support re 2113 MOTION for Attorney Fees *[Class Plaintiffs' Notice of Motion and Joint Motion In Support Of Class Plaintiffs' Joint Motion For Award Of Attorneys' Fees, Expenses And Class Plaintiffs' Awards]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit 1 - Supplemental Declaration of Thomas J. Undlin, # 2 Exhibit 2 - Declaration of Nicole F. J. Hamann on Activities of the Class Administrator, # 3 Exhibit 3 - Declaration of Vincent Archer, # 4 Exhibit 4 - Declaration of Peter Baker, # 5 Exhibit 5 - Declaration of Mitch Goldstone, # 6 Exhibit 6 - Declaration of Abraham Harari, # 7 Exhibit 7 - Declaration of Malcolm McDonald, # 8 Exhibit 8 - Declaration of Deborah Opper, # 9 Exhibit 9 - (Joint) Declaration of Miquel R. Rivera, Esq. and Jay Andrews, Esq., # 10 Exhibit 10 - Declartaion of Michael Schumann, # 11 Exhibit 11 - Declaration of Howard Trachtman, # 12 Exhibit 12 - Declaration of Robert Zuritsky) (Wildfang, K.) (Entered: 08/16/2013) |
| 08/16/2013 | 5941 | MEMORANDUM in Opposition re 2533 Notice of MOTION in Limine *to Exclude Valuation Portion of the Declaration of Alan M. Frankel* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Wildfang, K.) (Entered: 08/16/2013) |
| 08/16/2013 | 5942 | Letter *from K. Craig Wildfang to Professor Sykes* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 08/16/2013) |
| 08/19/2013 | 5943 | Letter *Regarding Transmittal of Class Plaintiffs' Final Settlement Materials* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 08/19/2013) |
| 08/19/2013 | 5944 | Letter *to Judge Gleeson from Michael Canter regarding Matthew Freimuth's August 14 Letter Requesting Guidance from the Court* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Rubin, Kenneth) (Entered: 08/19/2013) |

| 08/19/2013 | 5945 | Letter *to Dr. Alan Sykes enclosing copy of Individual Plaintiffs' Memorandum in Support of the Settlement Reforms* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO, Plaintiffs in civil action Supervalu Inc. v. Visa U.S.A. Inc. et al 05-cv-4650 JG-JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. Mastercard Incorporated et al 06-cv-2534 JG-JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. Visa U.S.A., Inc. et al 06-cv-2532 JG-JO, Plaintiffs in civil action Hy-Vee, Inc. v. Visa U.S.A., Inc. et al 05-cv-3925-JG-JO, Plaintiffs in civil action Meijer, Inc. et al v. Visa U.S.A. Inc. et al 05-cv-4131-JG-JO, Plaintiffs in civil action Raley's v. Visa U.S.A. et al 05-cv-4799 JG-JO, Plaintiffs in civil action Rite Aid Corporation et al. v. Visa U.S.A., Inc. et al. 05-cv-5352 JG-JO, Plaintiffs in civil action The Kroger Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO (Blechman, William) (Entered: 08/19/2013) |
|---|---|---|
| 08/19/2013 | 5946 | Letter *from Matthew Freimuth to Dr. Sykes enclosing briefing* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 08/19/2013) |
| 08/20/2013 | 5947 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Clarick, Gregory) (Entered: 08/20/2013) |
| 08/20/2013 | 5948 | Letter *to Professor Sykes attaching Objectors' Recommended Specific Materials from the Existing Case Documents for Professor Sykes' Review* by R&M Objectors (Attachments: # 1 Certificate of Service) (Parker, Jerrold) (Entered: 08/20/2013) |
| 08/21/2013 | 5949 | Letter *from Jennifer Selendy to The Hon. John Glesson requesting opportunity to speak at September 12, 2013 fairness hearing* by DFS Services, LLC, Discover Bank, Discover Financial Services, Discover Home Loans, Inc. (Selendy, Jennifer) (Entered: 08/21/2013) |
| 08/21/2013 | 5950 | Letter *to Judge Gleeson responding to objections made to Judge Orenstein's August 12 Order denying motion to compel production of Individual Plaintiffs' unredacted expert reports* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO (Attachments: # 1 Exhibit 1) (Arnold, Richard) (Entered: 08/21/2013) |
| 08/21/2013 | 5951 | Letter *to Hon. John Gleeson requesting for time to speak at September 12, 2013 fairness hearing* by R&M Objectors (Parker, Jerrold) (Entered: 08/21/2013) |
| 08/22/2013 | 5952 | Letter *from Philip Korologos to the Hon. Judge Gleeson requesting opportunity to speak at the September 12, 2013 fairness hearing* by American Express Co., American Express Publishing Corp., American Express Travel Related Services Company, Inc., Travel Impressions, Ltd. (Korologos, Philip) (Entered: 08/22/2013) |
| 08/22/2013 | | ORDER granting 5938 Motion for Leave to Electronically File Document under Seal Counsel is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at www.nyed.uscourts.gov.. Ordered by Judge John Gleeson on 8/22/2013. (Merle, Natasha) (Entered: 08/22/2013) |
| 08/22/2013 | 5953 | Letter *to Judge Gleeson responding to objections made by Moving Objectors to Judge Orenstein's August 12, 2013 Order* by American Express Travel Related Services Company, Inc. (Korologos, Philip) (Entered: 08/22/2013) |
| 08/22/2013 | 5954 | REPLY in Support re 5947 Appeal of Magistrate Judge Decision to District Court, filed by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. (Clarick, Gregory) (Entered: 08/22/2013) |
| 08/23/2013 | 5955 | AFFIDAVIT/DECLARATION in Support re 2111 MOTION for Settlement *[Notice of Motion and Motion for Class Plaintiffs Final Approval of Settlement] UNDER SEAL - Exhibit 4 to Class Plaintiffs' Reply Memorandum of Law in Further Support of Settlement Final* |

| | | |
|---|---|---|
| | | *Approval* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Wildfang, K.) (Entered: 08/23/2013) |
| 08/23/2013 | | ORDER: The objections 5933 5947 to Judge Orenstein's August 12, 2013 order 5928 are overruled. The order is neither clearly erroneous nor contrary to law. Moreover, in light of the standing offer by counsel for the Individual Plaintiffs to objectors' counsel to review the reports at issue, see ECF No. 5950, which offer shall remain open through the period during which the parties may respond to Dr. Sykes's report, any prejudice to objectors is both minimal and substantially outweighed by the interests protected by the redactions. Ordered by Judge John Gleeson on 8/23/2013. (Merle, Natasha) (Entered: 08/23/2013) |
| 08/23/2013 | 5956 | MOTION for Leave to File *The Rebuttal Report of Professor Jerry Hausman* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc.. (Attachments: # 1 Exhibit 1 - Rebuttal Report of Professor Jerry Hausman) (Shinder, Jeffrey) (Entered: 08/23/2013) |
| 08/23/2013 | 5957 | REPLY in Support *of FDC's Motion to Opt Out of Rule 23(b)(2) Class Settlement* filed by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation, TASQ Technology, Inc., TRS Recovery Services Inc., Telecheck Services Inc.. (Yurasek, Jason) (Entered: 08/23/2013) |
| 08/23/2013 | 5958 | Letter *to Hon. John Gleeson Requesting Opportunity to be Heard at September 12, 2013 Hearing* by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation, TASQ Technology, Inc., TRS Recovery Services Inc., Telecheck Services Inc. (Yurasek, Jason) (Entered: 08/23/2013) |
| 08/26/2013 | 5959 | JPMDL Conditional Transfer Order CTO-8: It appears that the action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of New York and assigned to Judge Gleeson. Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of New York for the reasons stated in the order of October 19, 2005, and, with the consent of that court, assigned to the Honorable John Gleeson. (Attachments: # 1 Letter requesting case transfer, # 2 Email sent to Texas Eatsren) (Marziliano, August) (Entered: 08/26/2013) |
| 08/26/2013 | 5960 | Letter *Class Plaintiffs' Response to Docket No. 5948* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Montague, H.) (Entered: 08/26/2013) |
| 08/26/2013 | 5961 | RESPONSE in Opposition re 5956 MOTION for Leave to File *The Rebuttal Report of Professor Jerry Hausman* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Montague, H.) (Entered: 08/26/2013) |

| 08/26/2013 | | ORDER denying 5956 Motion for Leave to File. Ordered by Judge John Gleeson on 8/26/2013. (Merle, Natasha) (Entered: 08/26/2013) |
|---|---|---|
| 08/26/2013 | 5962 | REPLY in Support re 2533 Notice of MOTION in Limine *to Exclude Valuation Portion of the Declaration of Alan M. Frankel* filed by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. (Attachments: # 1 Declaration of Michael S. Weisbach) (Clarick, Gregory) (Entered: 08/26/2013) |
| 08/26/2013 | 5963 | Letter *from Robert N. Webner to Dr. Sykes enclosing Reply Brief In Support Of Motion In Limine Of The Target Objectors and Reply Declaration of Michael S. Weisbach* by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (Webner, Robert) (Entered: 08/26/2013) |
| 08/27/2013 | 5964 | Letter *from Class Plaintiffs to The Honorable Judge John Gleeson regarding MCAG* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Declaration of Alexandra S. Bernay and Exhibits 1-4 thereto, # 2 Proposed Order) (Bernay, Alexandra) (Entered: 08/27/2013) |
| 08/28/2013 | 5965 | NOTICE: Report from Court appointed expert Professor Alan O. Sykes. (Merle, Natasha) (Entered: 08/28/2013) |
| 08/28/2013 | 5968 | Notice of Related Case (Davis, Kimberly) (Entered: 09/03/2013) |
| 08/29/2013 | 5966 | Letter *correcting factual inaccuracy in Class Plaintiffs' Reply Mem.* by Blue Cross Blue Shield entities, WellPoint, Inc. (Feinberg, Adam) (Entered: 08/29/2013) |
| 08/30/2013 | 5967 | Letter MOTION to Compel *Inspection and Disclosure of Individual Plaintiffs Settlement Agreements pursuant to Fed. R. Civ. P. 23(e)(3)* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv-5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc.. (Shinder, Jeffrey) (Entered: 08/30/2013) |
| 09/03/2013 | 5969 | Letter *in Response to 5964 August 27, 2013 Letter from Class Plaintiffs regarding MCAG* by Managed Care Advisory Group, Inc. (Whatley, Joe) (Entered: 09/03/2013) |
| 09/03/2013 | 5970 | Letter *to Judge Gleeson Requesting Time to Speak at Fairness Hearing* by Enterprise Holdings (Sasse, Daniel) (Entered: 09/03/2013) |

| 09/03/2013 | 5971 | Letter *in Response to the Letter from Class Plaintiffs to The Honorable Judge John Gleeson regarding MCAG (Doc. No 5964) filed on August 27, 2013* by Heartland Payment Systems, Inc. (Attachments: # 1 Declaration of Honora Moore, # 2 Exhibit A, to the Declaration of Honora Moore) (Brown, Jason) (Entered: 09/03/2013) |
| 09/03/2013 | 5972 | Letter *in Response to the Letter from Class Plaintiffs to the Honorable John Gleeson regarding MCAG filed on August 27, 2013 5964* by Global Payments Inc. (Attachments: # 1 Declaration of Kurt Schaeffer, # 2 Exhibit A to Declaration of Kurt Schaeffer, # 3 Exhibit B to Declaration of Kurt Schaeffer, # 4 Exhibit C to Declaration of Kurt Schaeffer) (Wessels-Yen, Amber) (Entered: 09/03/2013) |
| 09/04/2013 | | ORDER re 5967 Letter MOTION to Compel *Inspection and Disclosure of Individual Plaintiffs Settlement Agreements pursuant to Fed. R. Civ. P. 23(e)(3)* -- The Individual and Class Plaintiffs shall respond by September 9, 2013. Ordered by Magistrate Judge James Orenstein on 9/4/2013. (Rambaud, Dennis) (Entered: 09/04/2013) |
| 09/04/2013 | | ORDER REFERRING MOTION: The motion 5967 by objecting named plaintiffs and certain other objecting merchants for production of the Individual Plaintiffs' settlement agreements is respectfully referred to Judge Orenstein. Ordered by Judge John Gleeson on 9/4/2013. (Merle, Natasha) (Entered: 09/04/2013) |
| 09/04/2013 | 5973 | ORDER: The fairness hearing set for September 12 will be conducted as stated in the attached order. Ordered by Judge John Gleeson on 9/4/2013. (Merle, Natasha) (Entered: 09/04/2013) |
| 09/04/2013 | 5974 | NOTICE by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation re 5965 Notice (Other) *Response Of The Target Objectors To The Memorandum Report Of Dr. Alan O. Sykes* (Webner, Robert) (Entered: 09/04/2013) |
| 09/04/2013 | 5975 | ORDER: MCAG, Heartland and Global Payments are ordered to show cause on September 12, 2013 at 12:30 p.m. in courtroom 6C South before Judge John Gleeson, why injunctive relief in substantially the form sought by Class Plaintiffs should not be granted. Class Counsel are ordered to serve a copy of the attached Order to counsel for MCAG, Heartland and Global Payments immediately. Ordered by Judge John Gleeson on 9/4/2013. (Merle, Natasha) (Entered: 09/04/2013) |
| 09/04/2013 | 5976 | Letter *to the Honorable John Gleeson* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 09/04/2013) |
| 09/04/2013 | 5977 | NOTICE by Home Depot U.S.A., Inc. re 5965 Notice (Other) *Response to Memorandum of Professor Alan O. Sykes* (Neuwirth, Stephen) (Entered: 09/04/2013) |
| 09/04/2013 | 5978 | Letter *to The Honorable Judge John Gleeson on behalf of Class Plaintiffs in response to the report of Professor Alan O. Sykes* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 09/04/2013) |
| 09/04/2013 | 5979 | Letter *to Judge Gleeson from Individual Plaintiffs regarding the report of Professor Alan O. Sykes* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO (Arnold, Richard) (Entered: 09/04/2013) |
| 09/04/2013 | 5980 | Letter *[CORRECTED] to The Honorable Judge John Gleeson on behalf of Class Plaintiffs in response to the Report of Professor Alan O. Sykes* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 09/04/2013) |
| 09/04/2013 | 5981 | NOTICE by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., |

| | | |
|---|---|---|
| | | HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. re 5965 Notice (Other) *Response by Objecting Plaintiffs and Objectors to the Report of Professor Alan O. Sykes* (Shinder, Jeffrey) (Entered: 09/04/2013) |
| 09/04/2013 | 5982 | NOTICE by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. re 5965 Notice (Other) *Response by Professor Jerry Hausman to the Report of Professor Alan O. Sykes* (Shinder, Jeffrey) (Entered: 09/04/2013) |
| 09/04/2013 | 6004 | NOTICE from D.P. Defate to Court, requesting class action settlement money. (Piper, Francine) (Entered: 09/10/2013) |
| 09/05/2013 | 5983 | NOTICE by SuperTest Service Stations of IN, Inc. *of Withdrawal of Notice of Intent to Appear at Fairness Hearing* (Bond, Tonya) (Entered: 09/05/2013) |
| 09/05/2013 | 5984 | NOTICE by The Iron Barley Restaurant re 5973 Order *of Withdrawal of Notice of Intent to Appear at Fairness Hearing* (Miller, Steve) (Entered: 09/05/2013) |
| 09/05/2013 | 5985 | Letter *to Judge Gleeson from nonparty American Express in response to the September 4, 2013 letter from Individual Plaintiffs regarding the report of Professor Alan O. Sykes (Docket No. 5979)* by American Express Travel Related Services Company, Inc. (Korologos, Philip) (Entered: 09/05/2013) |
| 09/05/2013 | 6005 | Letter dated 9/2/13 from Alexander Nathan, requesting to be a part of the visa/mastercard lawsuit. (Piper, Francine) (Entered: 09/10/2013) |
| 09/06/2013 | 5986 | Notice of MOTION to Substitute Party *LAJ, Inc., d/b/a Grapevine Wines and Spirits in place of Pinnacle Valley Liquor Store, Inc.* by R&M Objectors. (Parker, Jerrold) (Entered: 09/06/2013) |
| 09/06/2013 | 5987 | MOTION to Withdraw as Attorney *Amelia N. Jadoo* by Payment Card Interchange Fee and |

| | | |
|---|---|---|
| | | Merchant Discount Antitrust Litigation. (Wildfang, K.) (Entered: 09/06/2013) |
| 09/06/2013 | 5988 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 09/06/2013) |
| 09/09/2013 | | ORDER granting 5986 Motion to Substitute Party. LAJ, Inc., d/b/a Grapevine Wines and Spirits added. Pinnacle Valley Liquor Store, Inc. terminated. Ordered by Magistrate Judge James Orenstein on 9/9/2013. (Rambaud, Dennis) (Entered: 09/09/2013) |
| 09/09/2013 | | ORDER granting 5987 Motion to Withdraw as Attorney. Attorney Amelia N. Jadoo terminated. Ordered by Magistrate Judge James Orenstein on 9/9/2013. (Rambaud, Dennis) (Entered: 09/09/2013) |
| 09/09/2013 | | ORDER re 5988 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered. Ordered by Magistrate Judge James Orenstein on 9/9/2013. (Rambaud, Dennis) (Entered: 09/09/2013) |
| 09/09/2013 | 5989 | NOTICE by Etc. Optical re 2666 Notice(Other) *of Withdrawal of Notice of Intent to Appear* (Bacharach, N.) (Entered: 09/09/2013) |
| 09/09/2013 | 5990 | NOTICE by Maison Weiss Inc. *OF WITHDRAWAL OF NOTICE OF INTENT TO APPEAR AT FAIRNESS HEARING* (Warren, James) (Entered: 09/09/2013) |
| 09/09/2013 | | ORDER: the parties' 5988 stipulation is hereby so ordered. Ordered by Judge John Gleeson on 9/9/2013. (Merle, Natasha) (Entered: 09/09/2013) |
| 09/09/2013 | 5991 | Letter *to the Honorable Judge John Gleeson from Class Plaintiffs* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 09/09/2013) |
| 09/09/2013 | | ORDER: The notice to the class required those who wish to speak at the fairness hearing to file a notice of intention to appear by May 28, 2013. The proponents of settlement and Mr. Shinder (on behalf of the objectors) are respectfully directed to confer and to provide the Court with a list of those who timely filed a proper request to speak. To the extent the notices state the topic(s) to be addressed, the list should briefly indicate the topic(s). The list shall be filed on or before 2:00 pm on September 11.Ordered by Judge John Gleeson on 9/9/2013. (Merle, Natasha) (Entered: 09/09/2013) |
| 09/09/2013 | 5992 | ORDER granting 2694 Motion for Leave to Appear Pro Hac Vice -- Attorney Dennis D. Gibson, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By September 16, 2013, Mr. Gibson shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Gibson shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Gibson shall also ensure that the $25 admission fee be submitted to the Clerk's Office. **SEE ATTACHED ORDER.** Ordered by Magistrate Judge James Orenstein on 9/9/2013. (Rambaud, Dennis) (Entered: 09/09/2013) |
| 09/09/2013 | 5993 | ORDER granting 2547 Motion for Leave to Appear Pro Hac Vice -- Attorney Tonya J. Bond, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By September 16, 2013, Ms. Bond shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Ms. Bond shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Ms. Bond shall also ensure that the $25 admission fee be submitted to the Clerk's Office. **SEE ATTACHED ORDER.** Ordered by Magistrate Judge James Orenstein on 9/9/2013. (Rambaud, Dennis) (Entered: 09/09/2013) |
| 09/09/2013 | 5994 | ORDER granting 5857 Motion for Leave to Appear Pro Hac Vice -- Attorney Steve A. Miller, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By September 16, 2013, Mr. Miller shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Miller shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Miller shall also ensure that the $25 admission fee be submitted to the Clerk's Office. **SEE ATTACHED ORDER**. Ordered by Magistrate Judge James Orenstein on 9/9/2013. (Rambaud, Dennis) (Entered: 09/09/2013) |

| 09/09/2013 | 5995 | Letter *from Wesley Powell to Judge Gleeson on behalf of all defendants* by Mastercard Incorporated, Mastercard International Incorporated (Powell, Wesley) (Entered: 09/09/2013) |
|---|---|---|
| 09/09/2013 | 5996 | Letter *in further response to the Letter from Class Plaintiffs to The Honorable Judge John Gleeson regarding MCAG (Doc. No. 5964) filed on August 27, 2013* by Heartland Payment Systems, Inc. (Brown, Jason) (Entered: 09/09/2013) |
| 09/09/2013 | 5997 | Letter *to Judge Orenstein responding to Motion to Compel regarding Individual Plaintiffs' Confidential Settlement Agreement* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO (Arnold, Richard) (Entered: 09/09/2013) |
| 09/09/2013 | 5998 | RESPONSE TO ORDER TO SHOW CAUSE by Managed Care Advisory Group, Inc. (Whatley, Joe) (Entered: 09/09/2013) |
| 09/09/2013 | 5999 | Letter *of John F. Cambria in response to order 5975* by Global Payments Inc. (Attachments: # 1 Exhibit A to John F. Cambria Letter, # 2 Declaration of Kurt Schaeffer, # 3 Exhibit 1 to Scheffer Declaration) (Cambria, John) (Entered: 09/09/2013) |
| 09/09/2013 | 6000 | Letter *from Keila Ravelo to Judge Gleeson on behalf of MasterCard and Visa* by Mastercard Incorporated, Mastercard International Incorporated (Ravelo, Keila) (Entered: 09/09/2013) |
| 09/09/2013 | 6001 | DECLARATION re 5998 Response to Order to Show Cause *(Declaration of Timothy Schmidt)* by Managed Care Advisory Group, Inc. (Whatley, Joe) (Entered: 09/09/2013) |
| 09/09/2013 | 6002 | DECLARATION re 5998 Response to Order to Show Cause *(Declaration of Diana M. Mehochko)* by Managed Care Advisory Group, Inc. (Whatley, Joe) (Entered: 09/09/2013) |
| 09/09/2013 | 6003 | Letter *of John F. Cambria to the Honorable John Gleeson in response to order 5975* by Global Payments Inc. (Attachments: # 1 Exhibit A to John F. Cambria Letter, # 2 Declaration Declaration of Kurt Schaeffer iin Support, # 3 Exhibit 1 to Schaffer Declaration) (Cambria, John) (Entered: 09/09/2013) |
| 09/09/2013 | | ORDER denying 5967 Motion to Compel -- The movants' speculation does not suffice to establish that any agreement among the Individual Plaintiffs and the defendants is an "agreement made in connection with" the proposed settlement of the Class Plaintiffs' claims within the meaning of Federal Rule of Civil Procedure 23(e)(3). I therefore deny the motion without requiring *in camera* review of any confidential settlement agreement. Ordered by Magistrate Judge James Orenstein on September 9, 2013. (Orenstein, James) (Entered: 09/09/2013) |
| 09/10/2013 | 6006 | Letter *enclosing Declarations of Objecting Plaintiffs in Response to Wildfang Reply Declaration and In Opposition to Final Approval* by Coborn's Incorporated, D'Agostino Supermarkets, Affiliated Foods Midwest, NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Restaurant Association, Plaintiffs in civil action National Association of Convenience Stores et v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO (Attachments: # 1 Declaration of Henry Armour of NACS in Response to Wildfang Reply Declaration and in Opposition to Final Approval, # 2 Declaration of Robynn Shrader of NCGA in Response to Wildfang Reply Declaration and in Opposition to Final Approval, # 3 Declaration of Jennifer T. Mallon form NCPA in Response to Wildfang Reply Declaration and in Opposition to Final Approval, # 4 Declaration of Peter J. Larkin of NGA in Response to Wildfang Reply Declaration and in Opposition to Final Approval) (Shinder, Jeffrey) (Entered: 09/10/2013) |
| 09/10/2013 | 6007 | NOTICE of Appearance by Richard E. Norman on behalf of Plaintiffs in Delta Airlines Inc et al v. Visa Inc et al, 1:13-cv-04766-JG-JO (aty to be noticed) (Attachments: # 1 Exhibit) (Norman, Richard) (Entered: 09/10/2013) |
| 09/10/2013 | 6008 | NOTICE of Appearance by Patrick J. Sheehan on behalf of Managed Care Advisory Group, Inc. (aty to be noticed) (Sheehan, Patrick) (Entered: 09/10/2013) |
| 09/10/2013 | 6009 | NOTICE by Dell Inc. *of Withdrawal of Notice of Intention to Appear at Fairness Hearing* |

| | | |
|---|---|---|
| | | (Farkas, Gregory) (Entered: 09/10/2013) |
| 09/10/2013 | 6010 | MOTION for Leave to Appear Pro Hac Vice *of Seth C. Harrington* Filing fee $ 25, receipt number 0207-6422554. by Heartland Payment Systems, Inc.. (Attachments: # 1 Declaration of Seth C. Harrington, # 2 Proposed Order) (Harrington, Seth) (Entered: 09/10/2013) |
| 09/10/2013 | 6011 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. re Order on Motion to Compel,, (Shinder, Jeffrey) (Entered: 09/10/2013) |
| 09/10/2013 | 6012 | ORDER: Attached is an order detailing the seating arrangement for the fairness hearing. Ordered by Judge John Gleeson on 9/10/2013. (Merle, Natasha) (Entered: 09/10/2013) |
| 09/10/2013 | 6013 | Letter *to Honorable Judge Gleeson in support of 5998 MCAG Response to Order to Show Cause [5975]* by Managed Care Advisory Group, Inc. (Attachments: # 1 Declaration of Michael Rosenbaum) (Whatley, Joe) (Entered: 09/10/2013) |
| 09/10/2013 | 6014 | Letter *responding to Defendants 9/9/13 Letter regarding objecting/amici states position at the fairness hearing set for 9/12/13* by Amici Objecting States (Gentile, Mitchell) (Entered: 09/10/2013) |
| 09/11/2013 | 6015 | NOTICE of Appearance by John Felix Cambria on behalf of Global Payments Inc. (aty to be noticed) Associated Cases: 1:05-md-01720-JG-JO et al. (Cambria, John) (Entered: 09/11/2013) |
| 09/11/2013 | 6016 | RESPONSE TO ORDER TO SHOW CAUSE by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Declaration of Alexandra S. Bernay in support thereof, # 2 Exhibit 1-6 to the Declaration of Alexandra S. Bernay, # 3 Declaration of Michael R. O'Connor in Support of August 27, 2013 Letter Motion) (Bernay, Alexandra) (Entered: 09/11/2013) |
| 09/11/2013 | 6017 | Letter *responding to Orders of September 9 and 10, 2013* by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National |

| | | |
|---|---|---|
| | | Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv-5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc. (Shinder, Jeffrey) (Entered: 09/11/2013) |
| 09/11/2013 | 6018 | Letter *Response to Court's Order of Sept. 10, 2013 re Seating Arrangements for the Sept. 12, 2013 fairness hearing* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 09/11/2013) |
| 09/11/2013 | 6019 | MOTION for Leave to Appear Pro Hac Vice *regarding Thomas P. Thrash* Filing fee $ 25, receipt number 0207-6425286. by R&M Objectors. (Attachments: # 1 Proposed Order, # 2 Certificate of Service) (Parker, Jerrold) (Entered: 09/11/2013) |
| 09/11/2013 | 6020 | ORDER granting 6010 Motion for Leave to Appear Pro Hac Vice -- Attorney Seth C. Harrington, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By September 18, 2013, Mr. Harrington shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Harrington shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Harrington shall also ensure that the $25 admission fee be submitted to the Clerk's Office. SEE ATTACHED ORDER. Ordered by Magistrate Judge James Orenstein on 9/11/2013. (Rambaud, Dennis) (Entered: 09/11/2013) |
| 09/11/2013 | 6021 | ORDER granting 6019 Motion for Leave to Appear Pro Hac Vice -- Attorney Thomas P. Thrash, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By September 18, 2013, Mr. Thrash shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Thrash shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Thrash shall also ensure that the $25 admission fee be submitted to the Clerk's Office. SEE ATTACHED DOCUMENT. Ordered by Magistrate Judge James Orenstein on 9/11/2013. (Rambaud, Dennis) (Entered: 09/11/2013) |
| 09/11/2013 | 6022 | Letter *from Matthew Freimuth to Judge Gleeson on Behalf of All Defendants* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 09/11/2013) |
| 09/11/2013 | 6023 | Letter *from Individual Plaintiffs to Judge Gleeson responding to Objections to Judge Orenstein's September 9, 2013 Order* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO (Attachments: # 1 Exhibit A [DE 5997], # 2 Exhibit B [DE 5991, # 3 Exhibit C [DE 6000]) (Arnold, Richard) (Entered: 09/11/2013) |
| 09/11/2013 | 6024 | Letter *from Individual Plaintiffs to Judge Gleeson regarding Objectors' Response to Sykes' Report* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO (Attachments: # 1 Exhibit 1) (Arnold, Richard) (Entered: 09/11/2013) |
| 09/12/2013 | 6025 | NOTICE of Appearance by Jason Brown on behalf of Heartland Payment Systems, Inc. (aty to be noticed) (Brown, Jason) (Entered: 09/12/2013) |
| 09/12/2013 | 6026 | NOTICE of Appearance by Seth C. Harrington on behalf of Heartland Payment Systems, Inc. (notification declined or already on case) (Harrington, Seth) (Entered: 09/12/2013) |
| 09/12/2013 | | Minute Entry for proceedings held before Judge John Gleeson: Order to Show Cause Hearing held on 9/12/2013 regarding the Plaintiffs' Order to Show Cause on *MCAG* 5964 and *MCAG's* response 6016 . The Court has ordered the defendants to stop their conduct immediately and negotiate with class counsel on proposed reliefs to rectify the current situation. The joint |

| | | |
|---|---|---|
| | | proposed relief submission is to be filed to the Court via ECF by no later than 9/27/2013. The parties may also submit separate submissions on any disagreed upon issues by the same date. (Court Reporter Charisse Kitt and Anthony Frisolone.) Associated Cases: 1:05-md-01720-JG-JO et al. (Lee, Ilene) (Entered: 09/12/2013) |
| 09/12/2013 | | Minute Entry for proceedings held before Judge John Gleeson: Fairness Hearing held on 9/12/2013 regarding the finalized settlement agreement. Class Plaintiffs, Defendants, Objectors and Private Merchants were heard. The Court's decision is reserved and will be filed via ECF separately. (Court Reporter Charisse Kitt and Anthony Frisolone.) Associated Cases: 1:05-md-01720-JG-JO et al. (Lee, Ilene) (Entered: 09/12/2013) |
| 09/12/2013 | 6030 | MOTION for Joinder *in the class action settlement*. (Piper, Francine) (Entered: 09/20/2013) |
| 09/13/2013 | 6027 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 09/13/2013) |
| 09/16/2013 | | ORDER re 6027 Stipulation filed by Visa U.S.A. Inc. -- So ordered. Ordered by Magistrate Judge James Orenstein on 9/16/2013. (Rambaud, Dennis) (Entered: 09/16/2013) |
| 09/18/2013 | 6028 | NOTICE of Statement of Objections to Settlement filed by Betsy Elgar (Piper, Francine) (Entered: 09/18/2013) |
| 09/18/2013 | 6029 | *Letter from Keila Ravelo to Judge Gleeson on behalf of MasterCard and Visa* by Mastercard Incorporated, Mastercard International Incorporated (Ravelo, Keila) (Entered: 09/18/2013) |
| 09/18/2013 | 6033 | Letter dated September 16, 2013 from Ciller Waters, requesting participation in the class action case (Piper, Francine) (Entered: 09/25/2013) |
| 09/19/2013 | | ORDER: Objectors' objected to Judge Orenstein's 6011 September 9, 2013 Order denying disclosure of the settlement agreement between MasterCard, Visa, and the Individual Plaintiffs. Because Judge Orenstein's order is not clearly erroneous or contrary to law, and because I agree, objectors' objection is overruled. Ordered by Judge John Gleeson on 9/19/2013. (Merle, Natasha) Modified on 9/23/2013 to correct link.(Piper, Francine). (Entered: 09/19/2013) |
| 09/20/2013 | | ORDER: Class Counsel are directed to respond to Mr. Nathan 6005 and Mr. Davis 6030 regarding their letters.Ordered by Judge John Gleeson on 9/20/2013. (Merle, Natasha) (Entered: 09/20/2013) |
| 09/20/2013 | 6031 | STIPULATION of Dismissal *as to National Cooperative Grocers Association, National Restaurant Association, and Affiliated Foods Midwest Cooperative* by Visa International Service Association, Visa U.S.A. Inc. (Shuster, Michael) (Entered: 09/20/2013) |
| 09/23/2013 | | ORDER: the parties' 6031 stipulation of dismissal is hereby so ordered. Ordered by Judge John Gleeson on 9/23/2013. (Merle, Natasha) (Entered: 09/23/2013) |
| 09/23/2013 | 6032 | Letter by Visa International Service Association, Visa U.S.A. Inc. (Shuster, Michael) (Entered: 09/23/2013) |
| 09/24/2013 | | ORDER re 6032 Letter filed by Visa International Service Association, Visa U.S.A. Inc. -- The application is granted on consent. No later than September 26, 2013, the plaintiffs shall submit a letter stating whether they wish to stay setting a briefing schedule on the proposed motions pending the court's resolution of the motion for class settlement in In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, 05-MD-1720 (JG). If the plaintiffs wish to proceed now, their letter should also propose a briefing schedule and address any preliminary procedural issues affecting the motion about which the parties may disagree. Ordered by Magistrate Judge James Orenstein on 9/24/2013. (Guy, Alicia) (Entered: 09/26/2013) |
| 09/26/2013 | 6034 | JPMDL Conditional Transfer Order CTO10: Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of New York for the reasons stated in the order of October 19, 2005, and, with the consent of that court, assigned to the Honorable John Gleeson. (Attachments: # 1 Email requesting case transfers) |

| | | |
|---|---|---|
| | | (Marziliano, August) (Entered: 09/26/2013) |
| 09/26/2013 | | ORDER: Class Counsel is respectfully directed to respond to Mr. Water's letter 6033 . Ordered by Judge John Gleeson on 9/26/2013. (Merle, Natasha) (Entered: 09/26/2013) |
| 09/26/2013 | 6035 | Letter by Visa International Service Association, Visa U.S.A. Inc. (Shuster, Michael) (Entered: 09/26/2013) |
| 09/27/2013 | 6036 | Letter *from the Parties regarding the Court's September 12, 2013 Order* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit 1-2) (Bernay, Alexandra) (Entered: 09/27/2013) |
| 09/30/2013 | 6037 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6463245. by Cox Communications, Inc., Cox Enterprises, Inc., Cox Media Group LLC, G6 Hospitality LLC, Live Nation Entertainment Inc, Manheim Inc, Motel 6 Operating LP. (Attachments: # 1 Affidavit of Brian R. Strange in support of Pro Hac Vice Motion, # 2 Proposed Order) (Strange, Brian) (Entered: 09/30/2013) |
| 09/30/2013 | 6038 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6463421. by Cox Communications, Inc., Cox Enterprises, Inc., Cox Media Group LLC, G6 Hospitality LLC, Live Nation Entertainment Inc, Manheim Inc, Motel 6 Operating LP. (Attachments: # 1 Affidavit of Keith Butler in supposrt of Pro Hac Vice Motion, # 2 Proposed Order) (Butler, Keith) (Entered: 09/30/2013) |
| 09/30/2013 | 6039 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 09/30/2013) |
| 09/30/2013 | | ORDER re 6039 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered. Ordered by Magistrate Judge James Orenstein on 9/30/2013. (Pollock, David) (Entered: 09/30/2013) |
| 10/01/2013 | 6040 | ORDER granting 6038 Motion for Leave to Appear Pro Hac Vice -- Attorney Keith L. Butler, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By October 8, 2013, Mr. Butler shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Butler shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Butler shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 10/1/2013. (Pollock, David) (Entered: 10/01/2013) |
| 10/01/2013 | | ORDER denying 6037 Motion for Leave to Appear Pro Hac Vice -- The motion is denied without prejudice to renewal in conformity with this court's local rules, which require that an application for admission *pro hac vice* include a certificate from the state court of each state in which the applicant is a member of the bar confirming that the applicant is a member in good standing of the state court's bar. See Loc. Civ. R. 1.3(c). The affidavit in support of the motion is incomplete; counsel is respectfully directed to file a complete application. Ordered by Magistrate Judge James Orenstein on 10/1/2013. (Pollock, David) (Entered: 10/01/2013) |
| 10/02/2013 | 6041 | MOTION for Leave to Appear Pro Hac Vice *by AutoTrader Group, Inc.* Filing fee $ 25, receipt number 0207-6468996. by Cox Communications, Inc., Cox Enterprises, Inc., Cox Media Group LLC, G6 Hospitality LLC, Live Nation Entertainment Inc, Manheim Inc, Motel 6 Operating LP. (Attachments: # 1 Affidavit in support of Pro Hac Vice Motion, # 2 Proposed Order) (Strange, Brian) (Entered: 10/02/2013) |
| 10/02/2013 | 6042 | NOTICE of Appearance by Keith L Butler on behalf of Cox Communications, Inc., Cox Enterprises, Inc., Cox Media Group LLC, G6 Hospitality LLC, Live Nation Entertainment Inc, Manheim Inc, Motel 6 Operating LP (notification declined or already on case) (Butler, Keith) (Entered: 10/02/2013) |
| 10/02/2013 | 6043 | ORDER granting 6041 Motion for Leave to Appear Pro Hac Vice -- Attorney Brian R. Strange, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By October 9, 2013, Mr. Strange shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Strange shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Strange shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge |

| | | James Orenstein on 10/2/2013. (Pollock, David) (Entered: 10/02/2013) |
|---|---|---|
| 10/03/2013 | 6044 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 10/03/2013) |
| 10/03/2013 | 6045 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 10/03/2013) |
| 10/03/2013 | | ORDER re 6044 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered. Ordered by Magistrate Judge James Orenstein on 10/3/2013. (Pollock, David) (Entered: 10/03/2013) |
| 10/03/2013 | | ORDER re 6045 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered. Ordered by Magistrate Judge James Orenstein on 10/3/2013. (Pollock, David) (Entered: 10/03/2013) |
| 10/03/2013 | 6046 | Letter *from Class Plaintiffs to Judge Gleeson* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 10/03/2013) |
| 10/03/2013 | 6047 | Letter *from Class Plaintiffs to Judge Gleeson correcting attached opinion of DKt. No. 6046* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 10/03/2013) |
| 10/04/2013 | 6048 | NOTICE of Appearance by Brian R Strange on behalf of Cox Communications, Inc., Cox Enterprises, Inc., Cox Media Group LLC, G6 Hospitality LLC, Live Nation Entertainment Inc, Manheim Inc, Motel 6 Operating LP (notification declined or already on case) (Strange, Brian) (Entered: 10/04/2013) |
| 10/10/2013 | 6055 | Notice of Statement of Objections to Settlement filed by Robert Towes (Piper, Francine) (Entered: 10/17/2013) |
| 10/16/2013 | 6049 | MOTION for Leave to Appear Pro Hac Vice *on behalf of John C. Goodson* Filing fee $ 25, receipt number 0207-6494375. by E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc.. (McCahill, Matthew) (Entered: 10/16/2013) |
| 10/16/2013 | 6050 | MOTION for Leave to Appear Pro Hac Vice *on behalf of Donald Mattson Keil* Filing fee $ 25, receipt number 0207-6494432. by E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc.. (McCahill, Matthew) (Entered: 10/16/2013) |
| 10/16/2013 | 6051 | MOTION for Leave to Appear Pro Hac Vice *on behalf of George L. McWilliams* Filing fee $ 25, receipt number 0207-6494476. by E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc.. (McCahill, Matthew) (Entered: 10/16/2013) |
| 10/16/2013 | 6052 | ORDER granting 6049 Motion for Leave to Appear Pro Hac Vice -- Attorney John C. Goodson, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By October 23, 2013, Mr. Goodson shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Goodson shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Goodson shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 10/16/2013. (Pollock, David) (Entered: 10/16/2013) |
| 10/16/2013 | 6053 | ORDER granting 6050 Motion for Leave to Appear Pro Hac Vice -- Attorney Donald Mattson Keil, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By October 23, 2013, Mr. Keil shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Keil shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Keil shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 10/16/2013. (Pollock, David) (Entered: 10/16/2013) |
| 10/16/2013 | 6054 | ORDER granting 6051 Motion for Leave to Appear Pro Hac Vice -- Attorney George L. McWilliams, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By October 23, 2013, Mr. McWilliams shall register for ECF. Registration is |

| | | |
|---|---|---|
| | | available online at the EDNY's homepage. Once registered, Mr. McWilliams shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. McWilliams shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 10/16/2013. (Pollock, David) (Entered: 10/16/2013) |
| 10/17/2013 | 6056 | MOTION to Withdraw as Attorney by Capital One Bank, Capital One F S B, Capital One Financial Corp. (Attachments: # 1 Proposed Order, # 2 Certificate of Service) (Murata, Kenneth) (Entered: 10/17/2013) |
| 10/17/2013 | 6057 | Letter *from Class Plaintiffs Requesting Approval of Settlement Administrative Costs* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A- Class Administrator's Funding Request) (Sweeney, Bonny) (Entered: 10/17/2013) |
| 10/17/2013 | | ORDER granting 6056 Motion to Withdraw as Attorney -- The application is granted; Attorney Kenneth T. Murata terminated. Ordered by Magistrate Judge James Orenstein on 10/17/2013. (Pollock, David) (Entered: 10/17/2013) |
| 10/17/2013 | 6058 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6500330.. (Cannata, Sam) (Entered: 10/17/2013) |
| 10/18/2013 | 6059 | ORDER granting 6058 Motion for Leave to Appear Pro Hac Vice -- Attorney Sam P. Cannata, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By October 25, 2013, Mr. Cannata shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Cannata shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Cannata shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 10/18/2013. (Pollock, David) (Entered: 10/18/2013) |
| 10/18/2013 | | ORDER granting Class Plaintiffs' 6057 request for approval of the Class Administrator's request for funding in the amount of $1,247,053.89 from the Cash Settlement Cash Escrow Account. Ordered by Judge John Gleeson on 10/18/2013. (Shahabuddin, Tazneen) (Entered: 10/18/2013) |
| 10/21/2013 | 6060 | JPMDL Transfer Order:n Pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable John Gleeson for inclusion in the coordinated or consolidated pretrial proceedings. (Marziliano, August) (Entered: 10/21/2013) |
| 10/21/2013 | 6061 | NOTICE of Appearance by Donald M. Keil on behalf of E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (aty to be noticed) (Keil, Donald) (Entered: 10/21/2013) |
| 10/21/2013 | 6062 | NOTICE of Appearance by George L McWilliams on behalf of E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (aty to be noticed) (McWilliams, George) (Entered: 10/21/2013) |
| 10/21/2013 | 6063 | NOTICE of Appearance by John C Goodson on behalf of E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (aty to be noticed) (Goodson, John) (Entered: 10/21/2013) |
| 10/22/2013 | 6064 | Letter MOTION for Extension of Time to File Answer by Visa International Service Association, Visa U.S.A. Inc.. (Shuster, Michael) (Entered: 10/22/2013) |
| 10/23/2013 | 6065 | NOTICE by Global Payments Inc. */Notice of Termination of Interested-Party Global Payments Inc.* Associated Cases: 1:05-md-01720-JG-JO et al. (Cambria, John) (Entered: 10/23/2013) |
| 10/23/2013 | | ORDER: Class counsel are directed to respond to Mr. Towes regarding his filed 6055 Notice of Statement of Objections to Settlement. Ordered by Judge John Gleeson on 10/23/2013. (Shahabuddin, Tazneen) (Entered: 10/23/2013) |

| 10/25/2013 | 6066 | RESPONSE in Opposition re 6064 Letter MOTION for Extension of Time to File Answer *Letter Opposing Letter MOTION for Extension of Time to File Answer (Dkt. 6064) and Requesting Scheduling Conference* filed by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc.. (Shinder, Jeffrey) (Entered: 10/25/2013) |
|---|---|---|
| 10/25/2013 | | ORDER: Though the body of Global Payments Inc.'s submission 6065 purports to seek relief, it is billed as a "Notice" and was not docketed as a motion. Therefore, to the extent it seeks relief, that request is denied without prejudice. Ordered by Judge John Gleeson on 10/25/2013. (Shahabuddin, Tazneen) (Entered: 10/25/2013) |
| 10/25/2013 | | ORDER: The Office of the Ohio Attorney General has communicated with court personnel about corrections to the transcript of the September 12, 2013 fairness hearing. The corrections seem appropriate, but the Ohio Attorney General is directed to confer with Class Counsel and Defendants' Counsel with the goal of submitting agreed upon corrections to the court reporter by no later than October 31, 2013. A written status report should be filed by that date. Ordered by Judge John Gleeson on 10/25/2013. (Shahabuddin, Tazneen) (Entered: 10/25/2013) |
| 10/28/2013 | 6067 | NOTICE of Appearance by Jonathan Peter Shaub on behalf of 99 Only Stores (aty to be noticed) (Shaub, Jonathan) (Entered: 10/28/2013) |
| 10/28/2013 | 6068 | NOTICE of Appearance by Jonathan Peter Shaub on behalf of Hermes of Paris, Inc. (aty to be noticed) (Shaub, Jonathan) (Entered: 10/28/2013) |
| 10/28/2013 | 6069 | NOTICE of Appearance by Jonathan Peter Shaub on behalf of Smart & Final Holdings, Inc. (aty to be noticed) (Shaub, Jonathan) (Entered: 10/28/2013) |
| 10/28/2013 | 6070 | Notice of MOTION to Withdraw as Attorney by Smart & Final Holdings, Inc.. (Skinner, Matthew) (Entered: 10/28/2013) |
| 10/28/2013 | 6071 | Notice of MOTION to Withdraw as Attorney by 99 Only Stores. (Skinner, Matthew) (Entered: 10/28/2013) |
| 10/28/2013 | 6072 | Notice of MOTION to Withdraw as Attorney by Hermes of Paris, Inc.. (Skinner, Matthew) (Entered: 10/28/2013) |
| 10/28/2013 | | ORDER granting 6070 , 6071 , 6072 Motion to Withdraw as Attorney -- The applications are granted; attorney Matthew Jared Skinner is terminated. Ordered by Magistrate Judge James Orenstein on 10/28/2013. (Pollock, David) (Entered: 10/30/2013) |
| 10/31/2013 | 6073 | STATUS REPORT *by Class Plaintiffs in Response to the Court's October 25, 2013 Order re Corrections to the Sept 12, 2013 Fairness Hearing Transcript* by Payment Card Interchange |

| | | |
|---|---|---|
| | | Fee and Merchant Discount Antitrust Litigation (Montague, H.) (Entered: 10/31/2013) |
| 11/01/2013 | 6074 | NOTICE of Appearance by Donald R. Hall, Jr on behalf of E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (aty to be noticed) (Hall, Donald) (Entered: 11/01/2013) |
| 11/04/2013 | 6075 | NOTICE of Change of address by Michael M. Buchman *600 Third Avenue, 21st Floor, New York, NY 10016* (Buchman, Michael) (Entered: 11/04/2013) |
| 11/05/2013 | 6076 | MOTION for Leave to Appear Pro Hac Vice *Douglas Matthews* Filing fee $ 25, receipt number 0207-6539004. by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. (Webner, Robert) (Entered: 11/05/2013) |
| 11/05/2013 | 6077 | MOTION for Leave to Appear Pro Hac Vice *Kimberly Weber Herlihy* Filing fee $ 25, receipt number 0207-6539092. by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. (Webner, Robert) (Entered: 11/05/2013) |
| 11/05/2013 | 6078 | MOTION for Leave to Appear Pro Hac Vice *James A. Wilson* Filing fee $ 25, receipt number 0207-6539139. by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. (Webner, Robert) (Entered: 11/05/2013) |
| 11/05/2013 | 6079 | MOTION for Leave to Appear Pro Hac Vice *Alycia Broz* Filing fee $ 25, receipt number 0207-6539168. by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. (Webner, Robert) (Entered: 11/05/2013) |
| 11/06/2013 | 6080 | ORDER granting 6076 Motion for Leave to Appear Pro Hac Vice -- Attorney Douglas R. Matthews, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By November 13, 2013, Mr. Matthews shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Matthews shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Matthews shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 11/6/2013. (Pollock, David) (Entered: 11/06/2013) |
| 11/06/2013 | 6081 | ORDER granting 6077 Motion for Leave to Appear Pro Hac Vice -- Attorney Kimberly Weber Herlihy, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By November 13, 2013, Ms. Herlihy shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Ms. Herlihy shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Ms. Herlihy shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 11/6/2013. (Pollock, David) (Entered: 11/06/2013) |
| 11/06/2013 | 6082 | ORDER granting 6078 Motion for Leave to Appear Pro Hac Vice -- Attorney James A. Wilson, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By November 13, 2013, Mr. Wilson shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Wilson shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Wilson shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 11/6/2013. (Pollock, David) (Entered: 11/06/2013) |

| | | |
|---|---|---|
| 11/06/2013 | 6083 | ORDER granting 6079 Motion for Leave to Appear Pro Hac Vice -- Attorney Alycia N. Broz, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By November 13, 2013, Ms. Broz shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Ms. Broz shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Ms. Broz shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 11/6/2013. (Pollock, David) (Entered: 11/06/2013) |
| 11/08/2013 | 6084 | NOTICE of Appearance by Alycia Nadine Broz on behalf of Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (aty to be noticed) (Broz, Alycia) (Entered: 11/08/2013) |
| 11/08/2013 | 6085 | NOTICE of Appearance by Kimberly Weber Herlihy on behalf of Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (aty to be noticed) (Herlihy, Kimberly) (Entered: 11/08/2013) |
| 11/08/2013 | 6086 | NOTICE of Appearance by James A. Wilson on behalf of Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (aty to be noticed) (Wilson, James) (Entered: 11/08/2013) |
| 11/12/2013 | 6087 | NOTICE of Appearance by Douglas Robert Matthews on behalf of Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation (aty to be noticed) (Matthews, Douglas) (Entered: 11/12/2013) |
| 11/13/2013 | 6092 | NOTICE of Statement of Objections to Settlement filed by Mary Louise King. (Piper, Francine) (Entered: 11/20/2013) |
| 11/14/2013 | 6088 | Letter *from Class Plaintiffs regarding Settlement Recovery Group, LLC* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Declaration of Alexandra S. Bernay in Support Thereof, # 2 Exhibit 1-2, # 3 Proposed Order) (Bernay, Alexandra) (Entered: 11/14/2013) |
| 11/15/2013 | 6089 | NOTICE by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation, TASQ Technology, Inc., TRS Recovery Services Inc., Telecheck Services Inc. *of Supplemental Authority* (Attachments: # 1 Exhibit A) (Yurasek, Jason) (Entered: 11/15/2013) |
| 11/15/2013 | 6090 | Letter *Concerning Access to Documents Previously Filed Under Seal* by Plaintiffs in Target Corporation, et al. v. Visa Inc., et al., 13-cv-03477 (Clarick, Gregory) (Entered: 11/15/2013) |
| 11/18/2013 | | ORDER: The 6090 letter request for access to documents filed under seal is hereby respectfully referred to Magistrate Judge Orenstein. Ordered by Judge John Gleeson on 11/18/2013. (Shahabuddin, Tazneen) (Entered: 11/18/2013) |
| 11/18/2013 | | ORDER TO SHOW CAUSE: I have reviewed Class Counsel's application for injunctive relief 6088 directed at Settlement Recovery Group ("SRG"). Class Counsel is directed to effect service of that application and the supporting Bernay declaration immediately on SRG if it has not already. SRG and its principals are hereby directed to show cause on Monday, November 25 at 2:00 P.M. in courtroom 6C South before Judge John Gleeson why (1) the relief requested by Class Counsel should not be ordered and (2) further, why SRG and its |

| | | |
|---|---|---|
| | | principals should not be enjoined from engaging in any manner in claims processing services (through SRG or any other entity) related to any settlement of this case. Papers in opposition to this order to show cause shall be served and filed by 9:30 A.M. on Thursday, November 21; reply papers shall be served and filed by 5:00 P.M. on Friday, November 23. Ordered by Judge John Gleeson on 11/18/2013. (Shahabuddin, Tazneen) (Entered: 11/18/2013) |
| 11/18/2013 | | ORDER re 6090 Letter filed by Plaintiffs in Target Corporation, et al. v. Visa Inc., et al., 13-cv-03477 -- Any party who wishes to be heard on the instant request may submit a letter setting forth its position by November 21, 2013. Ordered by Magistrate Judge James Orenstein on 11/18/2013. (Pollock, David) (Entered: 11/18/2013) |
| 11/18/2013 | 6091 | Letter *from Alexandra S. Bernay to the Court regarding recording of telephone solicitation received by class members* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A) (Bernay, Alexandra) (Entered: 11/18/2013) |
| 11/20/2013 | 6093 | Letter *from Class Plaintiffs in Response to FDC's Notice of Supplemental Authority (Dkt. No. 6089)* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Montague, H.) (Entered: 11/20/2013) |
| 11/20/2013 | 6094 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 09/12/2013, before Judge John Gleeson. Court Reporter/Transcriber Charisse Kitt, Telephone number 718-613-2606. Email address: FCTranscripts@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/11/2013. Redacted Transcript Deadline set for 12/23/2013. Release of Transcript Restriction set for 2/18/2014. (Kitt, Charisse) (Entered: 11/20/2013) |
| 11/20/2013 | 6095 | Letter *to Judge Orenstein requesting a one day extension of time to respond to the Target Plaintiffs' letter motion (D.E. 6090)* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO (Almon, James) (Entered: 11/20/2013) |
| 11/20/2013 | | ORDER re 6095 Letter filed by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO -- The application is granted; the deadline for the Individual Plaintiffs to respond to the request by the Target Plaintiffs in 6090 is extended until November 22, 2013. Ordered by Magistrate Judge James Orenstein on 11/20/2013. (Pollock, David) (Entered: 11/20/2013) |
| 11/20/2013 | 6096 | REPLY in Opposition *Letter in Response to Nov. 15, 2013 letter by Target and 7-Eleven Concerning Access to Documents Previously Filed Under Seal (D.E. 6090)* filed by American Express. (Korologos, Philip) (Entered: 11/20/2013) |
| 11/20/2013 | 6097 | NOTICE of Appearance by Neil S. Binder on behalf of Settlement Recovery Group, LLC (aty to be noticed) (Binder, Neil) (Entered: 11/20/2013) |
| 11/20/2013 | 6098 | RESPONSE TO ORDER TO SHOW CAUSE by Settlement Recovery Group, LLC (Attachments: # 1 Declaration in Opposition) (Binder, Neil) (Entered: 11/20/2013) |
| 11/21/2013 | | ORDER: Class Counsel is respectfully directed to respond to MS. King's 6092 letter. Ordered by Judge John Gleeson on 11/21/2013. (Shahabuddin, Tazneen) (Entered: 11/21/2013) |
| 11/21/2013 | 6099 | NOTICE of Appearance by Frederic S. Fox on behalf of E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (aty to be noticed) (Fox, Frederic) (Entered: 11/21/2013) |
| 11/21/2013 | 6100 | NOTICE of Appearance by Robert N. Kaplan on behalf of E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (aty to be noticed) (Kaplan, Robert) (Entered: 11/21/2013) |
| 11/21/2013 | 6101 | Letter *setting forth the E-Z Mart plaintiffs' position with respect to the letter recently filed by the plaintiffs in the Target and 7-Eleven actions requesting access to all documents previously filed under seal with this Court in MDL 1720 (D.E. No. 6090)* by E-Z Mart Stores, Inc., Jacksons Food Stores, Inc./PacWest Energy LLC, Kum & Go, L.C., Sheetz, Inc., Susser Holdings Corporation, The Pantry, Inc. (Fox, Frederic) (Entered: 11/21/2013) |

| 11/21/2013 | 6102 | Letter *in Response to Nov. 15, 2013 letter by Target and 7-Eleven Concerning Access to Documents Previously Filed Under Seal (D.E. 6090)* by Visa U.S.A. Inc. (Attachments: # 1 Exhibit A) (Mason, Robert) (Entered: 11/21/2013) |
| 11/21/2013 | 6103 | Letter *in Response to Nov. 15, 2013 letter by Target and 7-Eleven Concerning Access to Documents Previously Filed Under Seal (D.E. 6090)* by DFS Services, LLC, Discover Bank, Discover Financial Services (Selendy, Jennifer) (Entered: 11/21/2013) |
| 11/22/2013 | 6104 | Letter *from Class Plaintiffs in Response to the Court's November 18, 2013 Order to Show Cause* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Declaration of Alexandra S. Bernay in support thereof, # 2 Exhibit 1-2 to the Declaration of Alexandra S. Bernay) (Sweeney, Bonny) (Entered: 11/22/2013) |
| 11/22/2013 | | ORDER: Lane Courkamp, President of Premier Enterprises Group, may participate in the November 25, 2013 hearing telephonically. Class Counsel is directed to bring a phone number where Mr. Courkamp may be reached to the hearing and to notify Mr. Courkamp of this order. Ordered by Judge John Gleeson on 11/22/2013. (Shahabuddin, Tazneen) (Entered: 11/22/2013) |
| 11/22/2013 | 6105 | Letter *to The Honorable John Gleeson* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 11/22/2013) |
| 11/22/2013 | 6106 | Letter *to Judge Orenstein regarding Target and 7-Eleven Plaintiffs' Request for Documents Filed Under Seal* by Plaintiffs in civil action Kroger Co. v. Visa U.S.A., Inc. 05-cv-5078 JG-JO, Plaintiffs in civil action Supervalu Inc. v. Visa U.S.A. Inc. et al 05-cv-4650 JG-JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. Mastercard Incorporated et al 06-cv-2534 JG-JO, Plaintiffs in civil action Bi-Lo, LLC. et al v. Visa U.S.A., Inc. et al 06-cv-2532 JG-JO, Plaintiffs in civil action Hy-Vee, Inc. v. Visa U.S.A., Inc. et al 05-cv-3925-JG-JO, Plaintiffs in civil action Meijer, Inc. et al v Visa U.S.A. Inc. et al 05-cv-4131-JG-JO, Plaintiffs in civil action Publix Supermarkets, Inc. v. Visa U.S.A. Inc. et al 05-cv-4677 -JG-JO, Plaintiffs in civil action Raley's v. Visa U.S.A. Inc. et al 05-cv-4799 JG-JO, Plaintiffs in civil action Rite Aid Corporation et al v. Visa U.S.A. Inc. et al. 05-cv-5352 JG-JO, Plaintiffs in civil action The Kroger Co., et al. v. MasterCard Inc., et al., 06-cv-0039 JG-JO (Blechman, William) (Entered: 11/22/2013) |
| 11/25/2013 | 6107 | Letter MOTION to Substitute Party -- *Motion to Substitute Charming Sales Co. One., Inc. for Figi's, Inc. in Target Corporation, et al. v. Visa Inc., et al.* by Ascena Retail Group, Inc.. (Rubin, Kenneth) (Entered: 11/25/2013) |
| 11/25/2013 | | ORDER As stated at today's conference, Settlement Recovery Group ("SRG") is ordered to turn over to Class Counsel by the end of the day tomorrow, November 26, 2013, SRG's agreement with Premier Enterprises Group ("Premier"). Class Counsel is directed to file a copy with the Court. In addition, SRG shall turn over on that same schedule the list of merchants that have signed up for SRG's services in relation to any settlement of this case. Also, Class Counsel and counsel for SRG shall submit by noon on Wednesday, November 27, 2013, their agreed-upon measures for correcting the misleading statements that gave rise to Class Counsel's application for relief, together with separate submission (if necessary) regarding any disagreements. In addition, Class Counsel was instructed to convey to counsel for Premier and Lane Courkamp an order from the Court directing both Premier and Courkamp to show cause in writing by the end of the day tomorrow, November 26, 2013 why they should not be enjoined from any involvement of any kind in claims processing with respect to any future settlement of this case. Also, in anticipation of an evidentiary hearing regarding which individuals and which entities should be held responsible for misleading the merchants in the putative class, SRG is directed to apprise Class Counsel by Wednesday, November 27, 2013, of all contacts between SRG and Premier relating in any way to this case. On or before December 6, 2013, Class Counsel shall inform the Court whether, in counsels view, discovery is appropriate before such a hearing occurs. Ordered by Judge John Gleeson on 11/25/2013. (Gleeson, John) (Entered: 11/25/2013) |
| 11/25/2013 | 6108 | Letter *to Judge Orenstein Concerning 7-Eleven and Target Plaintiffs Request for Documents Filed Under Seal* by Plaintiffs in Civil Action Target Corporation, et al. v. Visa Inc. et al., 13-cv-4442 (Shinder, Jeffrey) (Entered: 11/25/2013) |

| 11/25/2013 | | Minute Entry for proceedings held before Judge John Gleeson: Class Plaintiffs represented by Alexandra Bernay, Esq. Defendant "SRG" represented by Neil S. Binder, Esq. Show Cause Hearing held on 11/25/2013 regarding the Court's Order to Show Cause dated 11/18/2013. (Court Reporter Lisa Schwam.) Associated Cases: 1:05-md-01720-JG-JO et al. (Lee, Ilene) (Entered: 11/25/2013) |
| 11/25/2013 | | ORDER granting 6107 Motion to Substitute Party -- The application is granted; I respectfully direct the clerk to substitute Charming Sales Co. One, Inc., for Figi's Inc., in docket 13-cv-5745 (JG) Target Corporation, et al v. Visa Inc., et al. Ordered by Magistrate Judge James Orenstein on 11/25/2013. (Pollock, David) Modified on 11/26/2013 (Guy, Alicia). (Entered: 11/25/2013) |
| 11/26/2013 | 6109 | MOTION for Leave to Electronically File Document under Seal *[Class Plaintiffs Motion for Leave to Electronically File Under Seal Exhibit 1 Attached to the November 26, 2013 Letter from Alexandra S. Bernay]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit 1 to November 26, 2013 Letter from Alexandra S. Bernay to the Court) (Bernay, Alexandra) (Entered: 11/26/2013) |
| 11/26/2013 | 6110 | Letter *from Alexandra S. Bernay to the Honorable Judge John Gleeson* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit 1) (Bernay, Alexandra) (Entered: 11/26/2013) |
| 11/26/2013 | 6111 | RESPONSE TO ORDER TO SHOW CAUSE by Lane Courkamp, Permier Enterprises Group Associated Cases: 1:05-md-01720-JG-JO, 1:05-cv-05075-JG-JO (Brown, Daniel) (Entered: 11/26/2013) |
| 11/27/2013 | 6112 | Letter *from Class Plaintiffs' to the Honorable Judge John Gleeson in Response to the Court's November 25, 2013 Order* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit 1, # 2 Proposed Order and Exhibit A thereto) (Sweeney, Bonny) (Entered: 11/27/2013) |
| 11/27/2013 | 6113 | Letter *Regarding the Court's 11-25-13 Order* by Settlement Recovery Group, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Binder, Neil) (Entered: 11/27/2013) |
| 11/27/2013 | | ORDER granting 6109 Motion for Leave to Electronically File Document under Seal. Ordered by Judge John Gleeson on 11/27/2013. (Shahabuddin, Tazneen) (Entered: 11/27/2013) |
| 12/02/2013 | 6114 | EXHIBIT *1 attached to the November 26, 2013 Letter From Alexandra S. Bernay to the Court [Filed Under Seal]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. Related document: 6110 Letter filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, Order on Motion for Leave to Electronically File Document under Seal. (Sweeney, Bonny) (Entered: 12/02/2013) |
| 12/02/2013 | 6115 | NOTICE of Appearance by Jason A. Zweig on behalf of DSW, Inc. (aty to be noticed) Associated Cases: 1:05-md-01720-JG-JO et al. (Zweig, Jason) (Entered: 12/02/2013) |
| 12/03/2013 | 6116 | ORDER: Within 10 days, SRG shall send to all class members who signed up with SRG through its referral agreement with Premier the 6112 proposed draft letter. SRG is directed to provide to Class Counsel any materials it or any party soliciting on its behalf proposes to distribute in connection with this action going forward. An evidentiary hearing will be held on January 17, 2014 at 11:30 AM in courtroom 6C South before Judge John Gleeson. The parties shall agree on appropriate discovery pursuant to this Order and direct any discovery-related issues to Magistrate Judge James Orenstein. Ordered by Judge John Gleeson on 12/3/2013. Ordered by Judge John Gleeson on 12/3/2013. (Shahabuddin, Tazneen) (Entered: 12/03/2013) |
| 12/06/2013 | 6117 | Letter *from Class Counsel in Response to Court's Order of November 25, 2013* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Sweeney, Bonny) (Entered: 12/06/2013) |
| 12/11/2013 | 6118 | STIPULATION *Extending Time to Answer Complaint* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 12/11/2013) |

| 12/11/2013 | | ORDER re 6118 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered; the defendants shall answer or otherwise respond to the complaint no later than ninety (90) days following the court's decision on the pending motion for final approval of the class settlement. Ordered by Magistrate Judge James Orenstein on 12/11/2013. (Pollock, David) (Entered: 12/11/2013) |
| --- | --- | --- |
| 12/11/2013 | 6119 | Letter *to Sandra A. Jones re: pro hac vice filing fee* by Jetblue Airways Corporation Associated Cases: 1:05-md-01720-JG-JO et al. (Zweig, Jason) (Entered: 12/11/2013) |
| 12/11/2013 | 6120 | STIPULATION *Extending Time to Answer Complaint* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 12/11/2013) |
| 12/11/2013 | 6121 | Letter *response to Visa/MasterCard Letter 11-22-2013* by Amici Objecting States (Gentile, Mitchell) (Entered: 12/11/2013) |
| 12/11/2013 | | ORDER re 6120 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered; the defendants shall answer or otherwise respond to the complaint no later than January 23, 2014. Ordered by Magistrate Judge James Orenstein on 12/11/2013. (Pollock, David) (Entered: 12/11/2013) |
| 12/11/2013 | 6122 | STIPULATION *Extending Time to Answer Complaint* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 12/11/2013) |
| 12/11/2013 | 6123 | Letter *to the Honorable John Gleeson Requesting a Pre-Motion Conference* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 12/11/2013) |
| 12/12/2013 | | ORDER re 6122 Stipulation filed by Visa U.S.A. Inc. -- The stipulation is so ordered; the defendants shall answer or otherwise respond to the complaint no later than ninety (90) days following the court's decision on the pending motion for final approval of the class settlement. Ordered by Magistrate Judge James Orenstein on 12/12/2013. (Pollock, David) (Entered: 12/12/2013) |
| 12/12/2013 | | ORDER approving the parties' 6117 updated letter revising the 6112 draft letter to be sent to merchants who signed up with SRG through the SRG/Premier referral agreement. All discovery-related matters presented in Class Counsel's 6117 letter request are respectfully referred to Magistrate Judge Orenstein. Ordered by Judge John Gleeson on 12/12/2013. (Shahabuddin, Tazneen) (Entered: 12/12/2013) |
| 12/13/2013 | 6124 | ORDER in case 1:96-cv-05238-JG-JO; granting (2111) Motion for Settlement in case 1:05-md-01720-JG-JO. For the reasons given in the attached order, the Court certifies the Rule 23 (b)(2) and (b)(3) classes for settlement purposes and approves the settlement, with one minor modification as described. The Court defers decision on, and will issue a separate order on, the 2113 matter of attorneys' fees and costs. A status conference will be held on January 10, 2014 at 3:00 PM to discuss next steps in the case in courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 12/13/2013. Associated Cases: 1:05-md-01720-JG-JO et al. (Aronoff, Peter) (Entered: 12/13/2013) |
| 12/13/2013 | 6125 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Carter's, Inc., Coborn's Incorporated, Costco Wholesale Corporation, Crate & Barrel Holdings, Inc., D'Agostino Supermarkets, Darden Restaurants, Inc., David's Bridal, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Family Dollar, Inc., Foot Locker, Inc., General Nutrition Corporation, d/b/a GNC Store, Genesco Inc., 7-Eleven Inc., Academy, Ltd., Affiliated Foods Midwest, Aldo US Inc., Alon USA Energy, Inc., Amazon.com, Inc., American Eagle Outfitters, Inc., BJ's Wholesale Club, Inc., Barnes & Noble College Booksellers, LLC, Barnes & Nobles, Inc, Best Buy Enterprise Services, Inc., HMSHost Corporation, IKEA North America Services, LLC, J. Crew Group, Inc., Kwik Trip, Inc., Lowe's Companies, Inc., Marathon Petroleum Company LP, Martin's Super Markets, Inc., Michaels Stores, Inc., NATSO, Inc., National Community Pharmacists Association, National Cooperative Grocers Association, National Railroad Passenger Corporation (Amtrak), National Restaurant Association, Nike, Inc., P.C. Richard & Son, Inc., Panda Restaurant Group, Inc., Panera, LLC, Petco Animal Supplies, Inc., Petsmart, Inc., Plaintiffs in civil action National Association of Convenience Stores et al v. Visa U.S.A., Inc. et al 05-cv-4521 |

| | | |
|---|---|---|
| | | JG-JO, Plaintiffs in civil action National Grocers Association et al v. Visa U.S.A., Inc. et al 05-cv- 5207 JG-JO, Plaintiffs in civil action Jetro Holding, Inc. et al v. Visa U.S.A., Inc. et al 05-cv-4520 JG-JO, RaceTrac Petroleum, Inc., Recreational Equipment, Inc., Retail Industry Leaders Association, Roundy's Supermarkets, Inc., Sears Holdings Corporation, Speedway LLC, Starbucks Corporation, Stein Mart, Inc., The Gap, Inc., The Gymboree Corporation, The Wendy's Company, The Wet Seal, Inc., Thermo Fisher Scientific Inc., Wal-Mart Stores, Inc., Whole Foods Market Group, Inc., Zappos.com, Inc.. Filing fee $ 505, receipt number 0207-6614959. Appeal Record due by 1/13/2014. (Shinder, Jeffrey) (Entered: 12/13/2013) |
| 12/13/2013 | 6126 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Home Depot U.S.A., Inc.. Filing fee $ 505, receipt number 0207-6615025. Appeal Record due by 12/27/2013. (Neuwirth, Stephen) (Entered: 12/13/2013) |
| 12/13/2013 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6125 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 12/13/2013) |
| 12/13/2013 | 6127 | MEMORANDUM in Support of *Class Counsel's Motion for a Prospective Order Concerning Misleading Third-Party Claims Filing Services* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order) (Bernay, Alexandra) (Entered: 12/13/2013) |
| 12/13/2013 | | First Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6126 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 12/13/2013) |
| 12/13/2013 | 6128 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Bon-Ton Stores, Inc., Chico's FAS, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation. Filing fee $ 505, receipt number 0207-6616018. (Clarick, Gregory) (Entered: 12/13/2013) |
| 12/13/2013 | | Second Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6128 Notice of Appeal,. (McGee, Mary Ann) (Entered: 12/13/2013) |
| 12/16/2013 | 6129 | NOTICE of Appearance by Sam P. Cannata on behalf of Falls Auto Gallery dba Falls Car Collection (aty to be noticed) (Cannata, Sam) (Entered: 12/16/2013) |
| 12/17/2013 | 6130 | Letter *responding to Class Counsel's December 6 letter (Dkt No. 6117) and providing a status update* by Settlement Recovery Group, LLC (Schwartz, Wendy) (Entered: 12/17/2013) |
| 12/18/2013 | 6131 | Letter *Concerning Access to Documents Previously Filed Under Seal (D.E. 6090) by 7-Eleven, Target, and E-Z Mart Plaintiffs* by Plaintiffs in Civil Action 7-Eleven Inc., et al. v. Visa Inc. et al, 1:13-cv-05746-JG-JO (Shinder, Jeffrey) (Entered: 12/18/2013) |
| 12/18/2013 | 6132 | Letter *to the Honorable John Gleeson* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 12/18/2013) |
| 12/18/2013 | 6133 | REPLY in Opposition *Letter in Response to Dec. 18, 2013 letter by Target, 7-Eleven, and E-Z Mart Plaintiffs Concerning Access to Documents Previously Filed Under Seal* filed by American Express. (Korologos, Philip) (Entered: 12/18/2013) |
| 12/18/2013 | 6134 | Letter *Responding to Defendants Request for a Pre-Motion Conference (Dkt. No. 6123)* by Plaintiffs in Civil Action 7-Eleven Inc., et al. v. Visa Inc. et al, 1:13-cv-05746-JG-JO (Shinder, Jeffrey) (Entered: 12/18/2013) |
| 12/19/2013 | 6135 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by DFS Services, LLC, Discover Bank, Discover Home Loans, Inc.. Filing fee $ 505, receipt number 0207-6625665. (Selendy, Jennifer) (Entered: 12/19/2013) |
| | | |

| 12/19/2013 | | Third Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6135 Notice of Appeal. (McGee, Mary Ann) (Entered: 12/19/2013) |
|---|---|---|
| 12/19/2013 | 6136 | Letter *from Class Counsel to The Honorable Judge John Gleeson* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 12/19/2013) |
| 12/20/2013 | 6137 | ORDER REGARDING MISLEADING THIRD-PARTY CLAIMS FILING SERVICES.. Ordered by Judge John Gleeson on 12/19/2013. (Piper, Francine) (Entered: 12/20/2013) |
| 12/20/2013 | 6138 | NOTICE of Appearance by Eric L. Lewis on behalf of Spectrum Settlement Recovery LLC (aty to be noticed) (Lewis, Eric) (Entered: 12/20/2013) |
| 12/20/2013 | 6139 | Letter *to Judge Gleeson regarding Class Counsels motion for a prospective order (Dkt. # 6127)* by Spectrum Settlement Recovery LLC (Lewis, Eric) (Entered: 12/20/2013) |
| 12/23/2013 | 6140 | Letter MOTION to Vacate *December 20, 2013 Order Granting Class Counsel's Motion For A Prospective Order Concerning Misleading Third-Party Claims Filing Services (Dkt #6137)* by Spectrum Settlement Recovery LLC. (Lewis, Eric) (Entered: 12/23/2013) |
| 12/23/2013 | | ORDER directing the parties to the Definitive Class Settlement Agreement to submit in Word format a proposed Class Settlement Order and Final Judgment, as outlined in 6132 the parties' letter. Ordered by Judge John Gleeson on 12/23/2013. (Shahabuddin, Tazneen) (Entered: 12/23/2013) |
| 12/24/2013 | 6141 | Letter *from Class Counsel in response to Spectrum Settlement Recovery* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Attachment A) (Sweeney, Bonny) (Entered: 12/24/2013) |
| 12/26/2013 | 6142 | Letter *in response to Class Counsel's December 24, 2013 letter (Dkt. 6141)* by Spectrum Settlement Recovery LLC (Lewis, Eric) (Entered: 12/26/2013) |
| 12/26/2013 | 6143 | Letter dated December 16, 2013 from Marion B. Cooper to Judge Gleeson, requesting to be removed from the docket sheet as a party requiring notice of filings. Also advising that the previous Notice of Appearance was filed using the name of Marion B. Johnson instead of the now newly married name of Marion B. Cooper. (Piper, Francine) (Entered: 12/26/2013) |
| 12/26/2013 | 6144 | Letter MOTION to Compel by Settlement Recovery Group, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J) (Binder, Neil) (Entered: 12/26/2013) |
| 12/27/2013 | | ORDER re 6144 Letter MOTION to Compel filed by Settlement Recovery Group, LLC -- Class Counsel is respectfully directed to respond to the motion by December 31, 2013. Ordered by Magistrate Judge James Orenstein on 12/27/2013. (Mattus, Carolyn) (Entered: 12/27/2013) |
| 12/30/2013 | | ORDER granting 6143 letter application to remove attorney Marion B. Cooper from the docket sheet and from the list of counsel requiring notice of court filings. Ordered by Judge John Gleeson on 12/30/2013. Shahabuddin, Tazneen) (Entered: 12/30/2013) |
| 12/30/2013 | 6145 | Letter dated December 4, 2013 from Richard White to Judge Gleeson, regarding fee settlement. (Piper, Francine) (Entered: 12/30/2013) |
| 12/30/2013 | 6146 | Letter *from Class Plaintiffs in Response to Settlement Recovery Group, LLC* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Sweeney, Bonny) (Entered: 12/30/2013) |
| 12/30/2013 | 6147 | ORDER regarding third-party claims filing services' communications with members of the merchant class. Any person or entity wishing to be heard on the 6137 December 20 Order may do so in writing on or before January 3, 2014 and orally in courtroom 6C South before Judge John Gleeson on January 10, 2014 at 3:30 PM. Class Counsel are directed to post a copy of this Order on the website for the case and to serve a copy forthwith on the claims filing services listed in 6127 document 6127-2. Ordered by Judge John Gleeson on |

| | | |
|---|---|---|
| | | 12/30/2013. (Shahabuddin, Tazneen) (Entered: 12/30/2013) |
| 12/30/2013 | | ORDER: Class Counsel are respectfully directed to respond in writing on or before 1/8/14 to the fears expressed in 6145 the letter from Richard R. White of Dick & Jane, Inc. Ordered by Judge John Gleeson on 12/30/2013. (Shahabuddin, Tazneen) (Entered: 12/30/2013) |
| 01/02/2014 | 6148 | NOTICE OF APPEAL as to (15 in 1:13-cv-03059-JG-JO) Order on Motion for Settlement,, by National Retail Federation. Filing fee $ 505, receipt number 0207-6644744. (Celli, Andrew) (Entered: 01/02/2014) |
| 01/03/2014 | 6149 | Letter *to Honorable Judge Gleeson in response to the Court's December 30, 2013 Order* 6147 by Managed Care Advisory Group, Inc. (Sheehan, Patrick) (Entered: 01/03/2014) |
| 01/03/2014 | 6150 | MOTION to Vacate *December 20 Order* by Spectrum Settlement Recovery LLC. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Decl. of David Morgenstein, # 3 Exhibit B - 12/20 E.Lewis Ltr to Judge Gleeson) (Lewis, Eric) (Entered: 01/03/2014) |
| 01/06/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. (46 in 1:07-cv-00592-JG-JO, 94 in 1:05-cv-05881-JG-JO, 16 in 1:13-cv-03059-JG-JO, 47 in 1:06-cv-01830-JG-JO, 47 in 1:06-cv-01829-JG-JO, 193 in 1:05-cv-04650-JG-JO, 142 in 1:05-cv-05352-JG-JO, 159 in 1:05-cv-05081-JG-JO, 148 in 1:05-cv-03925-JG-JO, 170 in 1:05-cv-04194-JG-JO, 199 in 1:05-cv-05319-JG-JO, 95 in 1:05-cv-05883-JG-JO, 161 in 1:05-cv-05070-JG-JO, 47 in 1:06-cv-00078-JG-JO, 6148 in 1:05-md-01720-JG-JO, 156 in 1:05-cv-05866-JG-JO, 47 in 1:06-cv-01831-JG-JO, 54 in 1:06-cv-02534-JG-JO, 160 in 1:05-cv-05069-JG-JO, 94 in 1:05-cv-05882-JG-JO, 138 in 1:05-cv-05153-JG-JO, 152 in 1:05-cv-03924-JG-JO, 89 in 1:05-cv-05880-JG-JO, 36 in 1:06-cv-05583-JG-JO, 47 in 1:06-cv-01832-JG-JO, 94 in 1:05-cv-05884-JG-JO, 194 in 1:05-cv-04799-JG-JO, 142 in 1:05-cv-04131-JG-JO, 167 in 1:05-cv-05075-JG-JO, 92 in 1:05-cv-05870-JG-JO, 146 in 1:05-cv-03800-JG-JO, 183 in 1:05-cv-04728-JG-JO, 1653 in 1:96-cv-05238-JG-JO, 157 in 1:05-cv-05072-JG-JO, 159 in 1:05-cv-05082-JG-JO, 96 in 1:05-cv-05868-JG-JO, 183 in 1:05-cv-05073-JG-JO, 93 in 1:06-cv-00039-JG-JO, 209 in 1:05-cv-04520-JG-JO, 159 in 1:05-cv-05074-JG-JO, 159 in 1:05-cv-05071-JG-JO, 84 in 1:05-cv-05869-JG-JO, 208 in 1:05-cv-04521-JG-JO, 48 in 1:06-cv-05765-JG-JO, 90 in 1:05-cv-05871-JG-JO, 89 in 1:05-cv-05879-JG-JO, 94 in 1:05-cv-05885-JG-JO, 87 in 1:05-cv-05878-JG-JO, 154 in 1:05-cv-05078-JG-JO, 53 in 1:06-cv-02532-JG-JO, 27 in 1:09-cv-03225-JG-JO, 161 in 1:05-cv-05076-JG-JO, 136 in 1:05-cv-04974-JG-JO, 158 in 1:05-cv-05077-JG-JO, 129 in 1:05-cv-04677-JG-JO, 27 in 1:09-cv-02264-JG-JO, 162 in 1:05-cv-05083-JG-JO, 205 in 1:05-cv-05207-JG-JO, 162 in 1:05-cv-05083-JG-JO) Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/06/2014) |
| 01/06/2014 | 6151 | Letter *from Class Plaintiffs to the Court in Response to Dec 23 2013 Order* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Proposed Class Settlement and Final Judgment Order, # 2 Exhibit 1 to Proposed Class Settlement and Final Judgment Order, # 3 Exhibit 2 to Proposed Class Settlement and Final Judgment Order) (Montague, H.) (Entered: 01/06/2014) |
| 01/06/2014 | 6152 | Letter *from Class Plaintiffs to the Court in Response to Court's December 30 2013 Order re* 6145 by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit 1) (Montague, H.) (Entered: 01/06/2014) |
| 01/06/2014 | 6153 | Letter *Brief* by Financial Recovery Services, Inc. (Attachments: # 1 [FRS'S PROPOSED] Order Regarding Third-Party Claims Filing Services, # 2 Declaration of Glenn Guior, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F) (Green, Jonathan) (Entered: 01/06/2014) |
| 01/06/2014 | 6159 | MOTION for Extension of Time to File Response/Reply as to 6147 Order,, *filed by Class Action Recovery Service*. (Piper, Francine) (Entered: 01/08/2014) |
| 01/07/2014 | 6154 | DECLARATION */Third Report of the Class Administrator* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Attachment A, # 2 Attachment B) (Montague, H.) (Entered: 01/07/2014) |

| | | |
|---|---|---|
| 01/07/2014 | 6155 | ORDER regarding January 10, 2014 status conference. Ordered by Judge John Gleeson on 1/7/2014. Associated Cases: 1:05-md-01720-JG-JO et al. (Shahabuddin, Tazneen) (Entered: 01/07/2014) |
| 01/07/2014 | 6156 | MEMORANDUM in Opposition re 6150 MOTION to Vacate *December 20 Order [Class Counsel's Memorandum of Law in Opposition to Spectrum Settlement Recovery's Motion to Vacate or in the Alternative, Modify the Court's December 20, 2013 Order]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Bernay, Alexandra) (Entered: 01/07/2014) |
| 01/07/2014 | 6157 | Notice of MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6652977. by Listed Entities. (Attachments: # 1 Affidavit of Daniel A. Sasse, # 2 Proposed Order Granting Daniel A. Sasse Admission to Practice Pro Hac Vice) (Currie, Kelly) (Entered: 01/07/2014) |
| 01/07/2014 | 6158 | Notice of MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6652986. by Listed Entities. (Attachments: # 1 Affidavit of Deborah E. Arbabi, # 2 Proposed Order Granting Deborah E. Arbabi Admission to Practice Pro Hac Vice) (Currie, Kelly) (Entered: 01/07/2014) |
| 01/08/2014 | 6160 | Letter dated January 3, 2014 from J.J. Thomas to Judge Gleeson, submitting this letter as an outline of CAC's questions and issues that is believed to benefit the clients and class members. (Piper, Francine) (Entered: 01/08/2014) |
| 01/08/2014 | 6161 | ORDER granting 6158 Motion for Leave to Appear Pro Hac Vice -- Attorney Deborah E. Arbabi, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By January 15, 2014, Ms. Arbabi shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Ms. Arbabi shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Ms. Arbabi shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 1/8/2014. (Pollock, David) (Entered: 01/08/2014) |
| 01/08/2014 | 6162 | ORDER granting 6157 Motion for Leave to Appear Pro Hac Vice -- Attorney Daniel A. Sasse, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By January 15, 2014, Mr. Sasse shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Sasse shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Sasse shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 1/8/2014. (Pollock, David) (Entered: 01/08/2014) |
| 01/08/2014 | 6163 | STATUS REPORT *(Joint) by Plaintiffs and Defendants in Opt-Out Cases and Declaratory Judgment Actions, including* by 7-Eleven, Mastercard Incorporated, Mastercard International Incorporated, Target Corporation, Visa International Service Association, Visa U.S.A. Inc. (Herlihy, Kimberly) (Entered: 01/08/2014) |
| 01/08/2014 | 6164 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by American Express Co., American Express Publishing Corp., American Express Travel Related Services Company, Inc., Serve Virtual Enterprises, Inc., ANCA 7 LLC d/b/a Vente Privee, USA AMEX Assurance Company and Accertify, Inc. . Filing fee $ 505, receipt number 0207-6655524. (Korologos, Philip) Modified on 1/9/2014 (McGee, Mary Ann). Modified on 3/5/2014 (Marziliano, August). (Entered: 01/08/2014) |
| 01/08/2014 | | ORDER granting 6159 Motion for Extension of Time to File Response/Reply as to 6147 Order. Class Action Recovery Service ("CARS") may respond in writing before close of business tomorrow, January 9, 2014. CARS today electronically submitted a letter application yet to be docketed which requests permission to appear telephonically at the January 10 status conference. That application is denied. Ordered by Judge John Gleeson on 1/8/2014. (Shahabuddin, Tazneen) (Entered: 01/08/2014) |
| 01/08/2014 | 6165 | REPLY in Support re 6150 MOTION to Vacate *December 20 Order* filed by Spectrum Settlement Recovery LLC. (Attachments: # 1 Declaration Second Declaration of David Morgenstein, # 2 Declaration Declaration of Cristian Santesteban) (Lewis, Eric) (Entered: |

| | | |
|---|---|---|
| | | 01/08/2014) |
| 01/09/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6164 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/09/2014) |
| 01/09/2014 | 6166 | Motion to Appear by Telephone *for Status Conference set for January 10, 2014 at 3:00 filed by Class Action Recovery Service.* (Piper, Francine) (Entered: 01/09/2014) |
| 01/09/2014 | 6167 | Letter *to the Honorable John Gleeson and the Honorable James Orenstein* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 01/09/2014) |
| 01/09/2014 | 6168 | Letter *in response to December 20, 2013 Order* by Class Action Recovery Service (Campbell, Dennis) (Entered: 01/09/2014) |
| 01/09/2014 | 6170 | MOTION for Leave to Appear Pro Hac Vice by Class Action Recovery Service. (Attachments: # 1 Propose Order, # 2 Receipt of Filing Fee #0207-6658362) Associated Cases: 1:05-md-01720-JG-JO, 1:05-cv-05075-JG-JO (Marziliano, August) (Entered: 01/10/2014) |
| 01/10/2014 | 6169 | ORDER in case 1:96-cv-05238-JG-JO; granting (2113) Motion for Attorney Fees in case 1:05-md-01720-JG-JO. For the reasons given in the attached order, the Court grants attorneys' fees of $544.8 million and costs and expenses of $27,037,716.97. The request for incentive payments is denied without prejudice to renewal. Ordered by Judge John Gleeson on 1/10/2014. Associated Cases: 1:05-md-01720-JG-JO et al. (Aronoff, Peter) (Entered: 01/10/2014) |
| 01/10/2014 | 6171 | NOTICE of Appearance by Daniel A. Sasse on behalf of Listed Entities (aty to be noticed) (Sasse, Daniel) (Entered: 01/10/2014) |
| 01/10/2014 | 6172 | NOTICE of Appearance by Deborah E. Arbabi on behalf of Listed Entities (aty to be noticed) (Arbabi, Deborah) (Entered: 01/10/2014) |
| 01/10/2014 | 6173 | ORDER granting 6170 Motion for Leave to Appear Pro Hac Vice -- Attorney Dennis M. Campbell, Esq., is permitted to argue or try this case in whole or in part as counsel or advocate. By January 17, 2014, Mr. Campbell shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Campbell shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Campbell shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 1/10/2014. (Pollock, David) (Entered: 01/10/2014) |
| 01/10/2014 | 6174 | NOTICE OF APPEAL by Objectors State of California and State of Arizona. Appeal Record due by 1/13/2014. (Pachter, Tamar) Modified on 6/4/2014 (Marziliano, August). Modified on 6/4/2014 (Marziliano, August). (Entered: 01/10/2014) |
| 01/10/2014 | 6175 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by R&M Objectors. Filing fee $ 505, receipt number 0207-6661163. Appeal Record due by 1/14/2014. (Parker, Jerrold) (Entered: 01/10/2014) |
| 01/10/2014 | 6176 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Blue Cross Blue Shield entities, WellPoint, Inc.. Filing fee $ 505, receipt number 0207-6661901. Appeal Record due by 1/14/2014. (Schwartz, Wendy) (Entered: 01/10/2014) |
| 01/10/2014 | 6177 | Minute Entry for proceedings held before Judge John Gleeson and Judge Orenstein: Case called. (Please see attached sheet for attorney appearances.) Status Conference held on 1/10/2014 regarding various motions 2113 , 6140 , 6144 , 6150 and other motions and discovery issues among the more recent opt-out cases. The Court is going to look into consolidating the opt-out cases at this time. A joint Status Report regarding any discovery issues shall be filed by 2/10/14 to Judge Orenstein. A further conference was held with counsel from the claim processors. These joint submissions between the claim processors and class counsel shall be filed by 2/7/14 to Judge Gleeson. The Hearing with SRG remains |

| | | |
|---|---|---|
| | | scheduled on Friday, January 17, 2014 at 11:30 AM in courtroom 6C South before Judge John Gleeson. The Court will also issue a separate order via ECF.(Anyone seeking to order a copy of this transcript may contact Lisa Schmid via email at: LisaSchmidCCR.RMR@gmail.com) (Court Reporter Lisa Schmid.) Associated Cases: 1:05-md-01720-JG-JO et al. (Lee, Ilene) (Lee, Ilene). (Entered: 01/10/2014) |
| 01/10/2014 | 6178 | NOTICE OF APPEAL as to 6169 Order on Motion for Attorney Fees, 6124 Order on Motion for Settlement,, by Daniel Hall aand Rick Bandas. Appeal Record due by 1/14/2014. (Attachments: # 1 Exhibit A - Order approving settlement, # 2 Exhibit B - Order awarding attorneys fees) (Stein, David) Modified on 2/14/2014 (Marziliano, August). (Entered: 01/10/2014) |
| 01/10/2014 | 6179 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by First Data Corporation, First Data Government Solutions, First Data Merchant Services Corporation, TASQ Technology, Inc., TRS Recovery Services Inc., Telecheck Services Inc.. Filing fee $ 505, receipt number 0207-6662073. (Yurasek, Jason) (Entered: 01/10/2014) |
| 01/10/2014 | 6180 | NOTICE OF APPEAL as to 6169 Order on Motion for Attorney Fees, 6124 Order on Motion for Settlement,, by Jon M Zimmerman. Filing fee $ 505, receipt number 0207-6662110. Appeal Record due by 1/14/2014. (Furman, Joshua) (Entered: 01/10/2014) |
| 01/10/2014 | 6181 | NOTICE of Appearance by Benjamin R. Rossen on behalf of Wells Fargo & Company (aty to be noticed) (Rossen, Benjamin) (Entered: 01/10/2014) |
| 01/10/2014 | 6182 | NOTICE OF APPEAL as to 6169 Order on Motion for Attorney Fees, 6124 Order on Motion for Settlement,, by The Iron Barley Restaurant. Filing fee $ 505, receipt number 0207-6662127. Appeal Record due by 1/14/2014. (Miller, Steve) (Entered: 01/10/2014) |
| 01/10/2014 | | APPEAL FILING FEE DUE re 6174 Notice of Appeal Please either come to the clerks office or mail the filing fee in the amount of $505.00. (McGee, Mary Ann) Modified on 1/14/2014 (McGee, Mary Ann). (Entered: 01/14/2014) |
| 01/11/2014 | 6183 | NOTICE OF APPEAL by Falls Auto Gallery dba Falls Car Collection. Appeal Record due by 1/14/2014. (Cannata, Sam) (Entered: 01/11/2014) |
| 01/11/2014 | | APPEAL FILING FEE DUE re 6183 Notice of Appeal Please either come to the clerks office or mail the filing fee in the amount of $505.00. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/13/2014 | 6184 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 01/10/2014, before Judge John Gleeson. Court Reporter/Transcriber Lisa Schmid, Telephone number (718)613-2644. Email address: LisaSchmidCCR.RMR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/3/2014. Redacted Transcript Deadline set for 2/13/2014. Release of Transcript Restriction set for 4/14/2014. (Schmid, Lisa) (Entered: 01/13/2014) |
| 01/13/2014 | 6185 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 01/10/2014, before Judge John Gleeson. Court Reporter/Transcriber Lisa Schmid, Telephone number (718)613-2644. Email address: LisaSchmidCCR.RMR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/3/2014. Redacted Transcript Deadline set for 2/13/2014. Release of Transcript Restriction set for 4/14/2014. (Schmid, Lisa) (Entered: 01/13/2014) |
| 01/13/2014 | 6186 | Letter dated 1/9/14 from Dennis Campbell, Tania Varela to Judge Gleeson, requesting modification of the December 20, 2013 order. (Piper, Francine) (Entered: 01/13/2014) |
| 01/13/2014 | 6187 | NOTICE of Appearance by Dennis M. Campbell on behalf of Class Action Recovery Services (aty to be noticed) (Campbell, Dennis) (Entered: 01/13/2014) |
| 01/13/2014 | 6188 | NOTICE OF APPEAL by Fiesta Restaurant Group, Inc.. Filing fee $ 505, receipt number |

| | | 0207-6663394. (Greenberg, Sanford) (Entered: 01/13/2014) |
|---|---|---|
| 01/13/2014 | | ORDER granting in part and denying in part 6144 Motion to Compel -- as set forth on the record at the hearing on January 10, 2014, the class plaintiffs will provide notice of the witnesses and records they anticipate introducing at the hearing; in all other respects the motion to compel is denied. Ordered by Magistrate Judge James Orenstein on 1/13/2014. (Orenstein, James) (Entered: 01/13/2014) |
| 01/13/2014 | | ORDER denying 2533 Motion in Limine: The motion to exclude part of the declaration of Dr. Alan Frankel is denied. Ordered by Judge John Gleeson on 1/13/2014. (Shahabuddin, Tazneen) (Entered: 01/13/2014) |
| 01/13/2014 | 6189 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by **OBJECTOR** U.S. Public Research Interest Group. Filing fee $ 505, receipt number 0207-6663695. (Begleiter, Robert) **Modified on 3/20/2014 to change party text from Amicus to Objector.** (Marziliano, August). (Entered: 01/13/2014) |
| 01/13/2014 | 6190 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Consumer Union of United States, Inc. d/b/a Consumer Reports. Filing fee $ 505, receipt number 0207-6663719. (Begleiter, Robert) (Entered: 01/13/2014) |
| 01/13/2014 | 6191 | Letter *from Class Counsel enclosing Proposed Final Judgments concerning Fees and Expenses* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Proposed Final Judgment Awarding Attorneys' Fees, # 2 Proposed Final Judgment Awarding Expenses) (Davidoff, Merrill) (Entered: 01/13/2014) |
| 01/13/2014 | 6192 | NOTICE OF APPEAL by Etc. Optical. Filing fee $ 505, receipt number 0207-6663904. (Bacharach, N.) (Entered: 01/13/2014) |
| 01/13/2014 | 6193 | ORDER regarding third-party claims filing companies. Ordered by Judge John Gleeson on 1/13/2014. (Shahabuddin, Tazneen) (Entered: 01/13/2014) |
| 01/13/2014 | 6194 | NOTICE OF APPEAL by Vicente Consulting LLC as to 6124 and 6169 Order on Motion for Settlement, Filing fee $ 505, receipt number 0207-6665612. (Siegel, Edward) Modified on 3/17/2014 (Marziliano, August). (Entered: 01/13/2014) |
| 01/13/2014 | 6195 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Furniture Row BC, Inc., Furniture Row, LLC. Filing fee $ 505, receipt number 0207-6665638. Appeal Record due by 1/27/2014. (Attachments: # 1 Exhibit A) (Alper, Michael) (Entered: 01/13/2014) |
| 01/13/2014 | 6196 | NOTICE OF APPEAL as to 6124 Order on Motion for Settlement,, by Einstein Noah Restaurant Group, Inc.. Filing fee $ 505, receipt number 0207-6665647. Appeal Record due by 1/27/2014. (Attachments: # 1 Exhibit A) (Alper, Michael) (Entered: 01/13/2014) |
| 01/14/2014 | | First Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6174 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | Second Supplemtal Electronic Index to Record on Appeal sent to US Court of Appeals. 6175 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | Third Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6176 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | 4th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6178 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |

| 01/14/2014 | | Fifth Electronic Index to Record on Appeal sent to US Court of Appeals. 6180 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
|---|---|---|
| 01/14/2014 | | Sixth Electronic Index to Record on Appeal sent to US Court of Appeals. 6179 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | Seventh Electronic Index to Record on Appeal sent to US Court of Appeals. 6182 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | Eighth Electronic Index to Record on Appeal sent to US Court of Appeals. 6183 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | Ninth Electronic Index to Record on Appeal sent to US Court of Appeals. 6188 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | Tenth Electronic Index to Record on Appeal sent to US Court of Appeals. 6189 Notice of Appeal by **Objector U.S. Public Research Interest Group** Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) **Modified on 3/20/2014 to change party title from Amicus to Objector** (Marziliano, August). (Entered: 01/14/2014) |
| 01/14/2014 | | 11th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6190 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | 12th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6192 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | 13th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6194 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | 14th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6195 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | 15th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6196 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/14/2014) |
| 01/14/2014 | | ORDER: The 6151 Class Settlement and Final Judgment Order, 6191 Final Judgment Awarding Attorneys' Fees, and 6191 Final Judgment Awarding Expenses have been signed by the Court and sent to be docketed. Ordered by Judge John Gleeson on 1/14/2014. (Shahabuddin, Tazneen) (Entered: 01/14/2014) |
| 01/14/2014 | 6197 | FINAL JUDGMENT AWARDING ATTORNEYS FEES in the amount of $544,800,000.. |

| | | |
|---|---|---|
| | | Ordered by Judge John Gleeson on 1/14/2014. (Piper, Francine) (Entered: 01/14/2014) |
| 01/14/2014 | 6198 | FINAL JUDGMENT AWARDING EXPENSES in the amount of $27,037,716.97.. Ordered by Judge John Gleeson on 1/14/2014. (Piper, Francine) (Entered: 01/14/2014) |
| 01/14/2014 | 6199 | CLASS SETTLEMENT ORDER AND FINAL JUDGMENT.. Ordered by Judge John Gleeson on 1/14/2014. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Piper, Francine) (Entered: 01/14/2014) |
| 01/14/2014 | 6200 | NOTICE of Change of Address and Firm Affiliation by Justin S. Chang (Chang, Justin) (Entered: 01/14/2014) |
| 01/14/2014 | 6201 | MOTION for Leave to Electronically File Document under Seal *Attachment "B", Report of Exclusion Requests - Sealed Version and Digital Images of Timely and Properly Made Exclusion Requests Attached to the Third Report of the Class Administrator, Filed January 7, 2014 6174* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 SEALED Version of Attachment B, Report of Exclusions to Third Report of the Class Administrator 6174, # 2 Image of DVD - Digital Images of Timely and Properly Made Exclusion Requests [to be filed manually under seal]) (Montague, H.) (Entered: 01/14/2014) |
| 01/14/2014 | 6204 | USCA Appeal Fees received $ 505.00 receipt number 4653068861 re 6178 Notice of Appeal, filed by Daniel Hall (McGee, Mary Ann) (Entered: 01/15/2014) |
| 01/15/2014 | | ORDER granting 6201 Motion for Leave to Electronically File Document under Seal. Counsel is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at www.nyed.uscourts.gov. Ordered by Judge John Gleeson on 1/15/2014. (Shahabuddin, Tazneen) (Entered: 01/15/2014) |
| 01/15/2014 | 6202 | EXHIBIT *SEALED Version of Attachment B to the Third Report of Class Administrator 6154* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. Related document: 6154 Declaration filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Image of DVD / Digital Images of Timely and Properly Made Exclusion Requests Through Dec 31 2013 [Filed Manually Under Seal]) (Montague, H.) (Entered: 01/15/2014) |
| 01/15/2014 | 6203 | USCA Appeal Fees received $ 505.00 receipt number 4653068993 re 6174 Notice of Appeal filed by Amici Objecting States. (McGee, Mary Ann) (Entered: 01/15/2014) |
| 01/15/2014 | 6205 | USCA Appeal Fees received $ 505.00 receipt number 4653068861 re 6178 Notice of Appeal, filed by Daniel Hall (McGee, Mary Ann) (Entered: 01/15/2014) |
| 01/15/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6203 Fee Paid 6205 Fee paid. (McGee, Mary Ann) (Entered: 01/15/2014) |
| 01/15/2014 | 6206 | JPMDL Conditional Transfer Order: pursuant to 28 U.S.C. § 1407, this action is transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable John Gleeson for inclusion in the coordinated or consolidated pretrial proceedings. (Attachments: # 1 transfer request, # 2 tranfer request) (Marziliano, August) (Entered: 01/15/2014) |
| 01/15/2014 | 6207 | PRETRIAL MEMORANDUM by Settlement Recovery Group, LLC (Binder, Neil) (Entered: 01/15/2014) |
| 01/16/2014 | 6208 | USCA Appeal Fees received $ 505.00 receipt number 4653069049 re 6183 Notice of Appeal filed by Falls Auto Gallery dba Falls Car Collection. (McGee, Mary Ann) (Entered: 01/16/2014) |
| 01/16/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6183 Notice of Appeal 6208 Fee paid (McGee, Mary Ann) (Entered: 01/16/2014) |
| 01/17/2014 | 6210 | NOTICE of Appearance by Sarah S. Rabinovici on behalf of Sunoco, Inc. (R&M) (aty to be noticed) (Rabinovici, Sarah) (Entered: 01/17/2014) |

| 01/17/2014 | 6211 | NOTICE of Appearance by Arthur Christopher Young on behalf of Sunoco, Inc. (R&M) (aty to be noticed) (Young, Arthur) (Entered: 01/17/2014) |
| 01/17/2014 | 6216 | Minute Entry for proceedings held before Judge John Gleeson:Preliminary Injunction Hearing held with SRG (Settlement Recovery Group)on 1/17/2014. Oral Argument control date is set for March 17, 2014 at 2:00 and shall be canceled if a decision is made prior to this date by the court. All requests for today's transcript shall be emailed to Marie Foley at marie_foley@nyed.uscourts.gov. (Court Reporter Marie Foley.) (see document for more details) (Piper, Francine) (Entered: 01/23/2014) |
| 01/17/2014 | 6217 | Exhibit and Witness List (Preliminary Injunction Hearing with SRG) (Piper, Francine) (Entered: 01/23/2014) |
| 01/21/2014 | 6212 | Subsequent NOTICE OF APPEAL as to Order on Motion in Limine, 6199 Order of Settlement, 6124 Order on Motion for Settlement,, by Bon-Ton Stores, Inc., C.S. Ross Company, Chico's FAS, Inc., Closeout Distribution, Inc., Abercrombie & Fitch Co., American Signature, Inc., Ascena Retail Group, Inc., Big Lots Stores, Inc., J.C. Penney Corporation, Inc., Kohl's Corporation, L Brands, Inc., Luxottica U.S. Holdings Corp., Macy's, Inc., Office Depot, Inc., OfficeMax Incorporated, PNS Stores, Inc., Saks Incorporated, Staples, Inc., TJX Companies, Inc., Target Corporation . Filing fee $ 505, receipt number 0207-6680430. Appeal Record due by 2/4/2014. (Clarick, Gregory) (Entered: 01/21/2014) |
| 01/21/2014 | 6213 | Letter *from the Parties regarding Managed Care Advisory Group, Inc.* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 01/21/2014) |
| 01/22/2014 | 6214 | Letter *from Class Counsel regarding status of other potential evidentiary hearings* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Sweeney, Bonny) (Entered: 01/22/2014) |
| 01/22/2014 | 6215 | STIPULATION *Extending Time to Answer Complaint* by Mastercard Incorporated, Mastercard International Incorporated (Freimuth, Matthew) (Entered: 01/22/2014) |
| 01/23/2014 |      | ORDER re 6215 Stipulation filed by Mastercard International Incorporated, Mastercard Incorporated -- The proposed stipulation is so ordered; each defendant shall answer or otherwise respond to the complaint no later than March 13, 2014. Ordered by Magistrate Judge James Orenstein on 1/23/2014. (Pollock, David) (Entered: 01/23/2014) |
| 01/23/2014 |      | Electronic Index to Record on Appeal sent to US Court of Appeals. 6212 Subsequent Notice of Appeal,, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/23/2014) |
| 01/23/2014 | 6218 | STIPULATION by Visa U.S.A. Inc. (Mason, Robert) (Entered: 01/23/2014) |
| 01/23/2014 |      | ORDER re 6218 Stipulation filed by Visa U.S.A. Inc. -- The proposed stipulation is so ordered; each defendant shall answer or otherwise respond to the complaint no later than February 24, 2014. Ordered by Magistrate Judge James Orenstein on 1/23/2014. (Pollock, David) (Entered: 01/23/2014) |
| 01/23/2014 |      | SCHEDULING ORDER: In light of Class Counsel's 6214 letter update related to third party claims filing services, evidentiary hearings on the activities of the identified entities will be held according to the following schedule. The hearing regarding Spectrum will be held on February 28, 2014 at 2:00 PM. The hearing regarding Refund Recovery will be held on March 7, 2014 at 2:00 PM. The hearings regarding FRS and MCAG will be held on March 28, 2014 at 2:00 PM. All evidentiary hearings will take place in courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 1/23/2014. (Shahabuddin, Tazneen) (Entered: 01/23/2014) |
| 01/23/2014 | 6219 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 1/17/14, before Judge Gleeson. Court Reporter/Transcriber Marie Foley, Telephone number 718-613-2596. Email address: Marie_Foley@nyed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for |

| | | |
|---|---|---|
| | | Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/13/2014. Redacted Transcript Deadline set for 2/24/2014. Release of Transcript Restriction set for 4/23/2014. (Foley, Marie) (Entered: 01/23/2014) |
| 01/24/2014 | 6220 | Letter dated January 16, 2014 from Ty Hardison to Judge Gleeson, in regards to claim-filing services. (Piper, Francine) (Entered: 01/24/2014) |
| 01/27/2014 | 6221 | NOTICE OF APPEAL by Bishop d/b/a Hat & Gown, Unlimited Vacations and Cruises Inc. Filing fee $ 505, receipt number 0207-6693002. (Pentz, John) (Entered: 01/27/2014) |
| 01/27/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6221 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/27/2014) |
| 01/27/2014 | 6222 | NOTICE OF APPEAL as to 6199 Order of Settlement by Sunoco, Inc. (R&M). Filing fee $ 505, receipt number 0207-6693473. (Rabinovici, Sarah) (Entered: 01/27/2014) |
| 01/27/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6222 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/27/2014) |
| 01/27/2014 | 6223 | NOTICE OF APPEAL as to (6197 in 1:05-md-01720-JG-JO) Judgment on Attorney Fees, (6199 in 1:05-md-01720-JG-JO) Order of Settlement, (6198 in 1:05-md-01720-JG-JO) Judgment by Etc. Optical. Filing fee $ 505, receipt number 0207-6694809. (Bacharach, N.) (Entered: 01/27/2014) |
| 01/28/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6223 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/28/2014) |
| 01/28/2014 | 6224 | Subsequent NOTICE OF APPEAL by Falls Auto Gallery dba Falls Car Collection *Amended Notice of Appeal*. (Cannata, Sam) (Entered: 01/28/2014) |
| 01/29/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6224 Subsequent Notice of Appeal (McGee, Mary Ann) (Entered: 01/29/2014) |
| 01/30/2014 | 6225 | Letter *to the Honorable James Orenstein* by Visa U.S.A. Inc. (Attachments: # 1 Proposed Order) (Mason, Robert) (Entered: 01/30/2014) |
| 01/30/2014 | | Email Notification Test - DO NOT REPLY (Lee, Tiffeny) (Entered: 01/30/2014) |
| 01/31/2014 | 6226 | NOTICE OF APPEAL by Daviss Donuts and Deli, Orange County Bldg Materials, Top Gun Wrecker. Filing fee $ 505, receipt number 0207-6705893. (Pentz, John) (Entered: 01/31/2014) |
| 01/31/2014 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 6226 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 01/31/2014) |
| 01/31/2014 | 6227 | NOTICE OF APPEAL as to 6197 Judgment on Attorney Fees, 6198 Judgment, 6124 Order on Motion for Settlement,, 6199 Order of Settlement by Daniel Hall and Rick Bandas. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6) (Stein, David) Modified on 2/14/2014 (Marziliano, August). (Entered: 01/31/2014) |
| 01/31/2014 | 6228 | Notice of MOTION for Attorney Fees by Jon M Zimmerman. (Furman, Joshua) (Entered: 01/31/2014) |
| 01/31/2014 | 6229 | MEMORANDUM in Support re 6228 Notice of MOTION for Attorney Fees filed by Jon M Zimmerman. (Furman, Joshua) (Entered: 01/31/2014) |



| 02/03/2014 |      | Electronic Index to Record on Appeal sent to US Court of Appeals. 6227 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 02/03/2014) |
| 02/04/2014 | 6230 | Letter *from Kimberly Weber Herlihy to Judge Orenstein on behalf of Opt-Out Plaintiffs, including* by Target Corporation (Broz, Alycia) (Entered: 02/04/2014) |
| 02/05/2014 | 6231 | RESPONSE in Opposition re 6228 Notice of MOTION for Attorney Fees filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Montague, H.) (Entered: 02/05/2014) |
| 02/06/2014 |      | ORDER re 6225 Letter filed by Visa U.S.A. Inc. -- The proposed order regarding access to documents previously filed under seal is so ordered. Notice shall be provided to third parties pursuant to the order no later than February 18, 2014. Objections shall be filed no later than March 7, 2014. There will be a hearing on March 26, 2014, at 10:30 a.m. at which any party or third party may be heard with regard to such objections. Ordered by Magistrate Judge James Orenstein on 2/6/2014. (Pollock, David) (Entered: 02/06/2014) |
| 02/07/2014 | 6232 | Letter *to The Honorable James Orenstein re: Docketing Issues* by Visa U.S.A. Inc. (Mason, Robert) (Entered: 02/07/2014) |
| 02/07/2014 |      | SCHEDULING ORDER: re 6232 Letter filed by Visa U.S.A. Inc. -- There will be a telephone conference on February 10, 2014, at 2:30 p.m. for counsel who wish to discuss the proposed order. Counsel are not, however, required to appear. Any counsel who wishes to participate is respectfully requested to contact Mr. Mason; it is further respectfully requested that Mr. Mason establish a telephone conference call, conference in chambers when all interested counsel are on the line, and provide chambers with a list of appearances following the call. Ordered by Magistrate Judge James Orenstein on 2/7/2014. (Pollock, David) (Entered: 02/07/2014) |
| 02/07/2014 | 6233 | Letter *to Judge Gleeson* by Claims Compensation Bereau, LLC (Sirota, Howard) (Entered: 02/07/2014) |
| 02/07/2014 | 6234 | NOTICE OF APPEAL as to (6199 in 1:05-md-01720-JG-JO) Order of Settlement by National Federation of Independent Businesses. (Begleiter, Robert) (Entered: 02/07/2014) |
| 02/07/2014 | 6235 | Letter *to Honorable John Gleeson in accordance with Court's January 13, 2014 Order* by Class Action Recovery Services (Campbell, Dennis) (Entered: 02/07/2014) |
| 02/07/2014 | 6236 | MEMORANDUM in Support re 6193 Order *[Class Counsel's Response to the Court's January 13, 2014 Order Regarding Proposed Disclaimers by Third-Party Claims-Filing Companies]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit 1) (Sweeney, Bonny) (Entered: 02/07/2014) |
| 02/07/2014 |      | 16th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6234 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 02/07/2014) |
| 02/07/2014 | 6237 | MEMORANDUM in Support re 6216 Status Conference, *Class Plaintiffs' [Proposed] Findings of Fact and Conclusions of Law Relating to Settlement Recovery Group, LLC's Agency Relationship with Premier Enterprises Group, Inc.* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A) (Montague, H.) (Entered: 02/07/2014) |
| 02/07/2014 | 6238 | NOTICE OF APPEAL as to 6199 Order of Settlement by Blue Cross Blue Shield entities, WellPoint, Inc.. Filing fee $ 505, receipt number 0207-6720900. Appeal Record due by 2/21/2014. (Shelley, Anthony) (Entered: 02/07/2014) |
| 02/10/2014 | 6239 | Notice of Related Case indicated on the civil cover sheet in case 14cv873(SJF)(GRB). (McMahon, Carol) (Entered: 02/10/2014) |

| 02/10/2014 | | SCHEDULING ORDER: re 6232 Letter filed by Visa U.S.A. Inc. -- Due to a conflict on the court's calendar, the telephone conference previously scheduled for February 10, 2014, at 2:30 p.m. is rescheduled to February 13, 2014, at 3:00 p.m. Ordered by Magistrate Judge James Orenstein on 2/10/2014. (Pollock, David) (Entered: 02/10/2014) |
| --- | --- | --- |
| 02/10/2014 | | 17th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6238 Notice of Appeal. (McGee, Mary Ann) (Entered: 02/10/2014) |
| 02/10/2014 | 6240 | STATUS REPORT *(Joint) by Plaintiffs and Defendants in Opt-Out Cases and Declaratory Judgment Actions* by Mastercard Incorporated, Mastercard International Incorporated (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Freimuth, Matthew) (Entered: 02/10/2014) |
| 02/11/2014 | 6241 | MOTION for Refund of Fees Paid Electronically by Blue Cross Blue Shield entities, WellPoint, Inc.. (Attachments: # 1 Proposed Order, # 2 Exhibit 1- docket sheet excerpt, # 3 Exhibit 2 - payment in error, # 4 Exhibit 3 - correct payment) (Shelley, Anthony) (Entered: 02/11/2014) |
| 02/12/2014 | | ORDER granting 6241 Motion for Refund of Fees Paid Electronically: Counsel for Blue Cross and Blue Shield and WellPoint Inc. seek a refund of $505. A mistake was made (not by them, of course, but by an identified paralegal) in the initial effort to electronically file the notice of appeal that appears on the docket sheet as entry 6238. The correction of the mistake in refiling the notice caused Blue Cross and Blue Shield and WellPoint Inc. to pay the $505 filing fee not just once, but twice. Hence the motion for a refund, which was submitted by two partners in the firm that represents Blue Cross and Blue Shield and two partners in the firm that represents WellPoint Inc. The motion is supported by three exhibits and also includes a proposed order. No interest is requested, so I assume none is sought. The motion is granted.. Ordered by Judge John Gleeson on 2/12/2014. (Shahabuddin, Tazneen) (Entered: 02/12/2014) |
| 02/12/2014 | 6242 | Subsequent NOTICE OF APPEAL as to 6199 Order of Settlement by American Express Co., American Express Travel Related Services Company, Inc., Serve Virtual Enterprises, Inc., ANCA 7 LLC d/b/a Vente Privee, USA AMEX Assurance Company and Accertify, Inc.. (Korologos, Philip) Modified on 3/5/2014 (Marziliano, August). (Entered: 02/12/2014) |
| 02/12/2014 | | Eighteenth Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6242 Subsequent/Amended Notice of Appeal (McGee, Mary Ann) (Entered: 02/12/2014) |
| 02/12/2014 | 6243 | Letter *requesting postment of February 28, 2014 hearing* by Spectrum Settlement Recovery LLC (Lewis, Eric) (Entered: 02/12/2014) |
| 02/12/2014 | 6244 | Letter *to the Court regarding potential date for Manor Capital Recovery LLC Evidentiary Hearing* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 02/12/2014) |
| 02/13/2014 | 6245 | Subsequent NOTICE OF APPEAL as to 6197 Judgment on Attorney Fees, 6199 Order of Settlement by The Iron Barley Restaurant . Filing fee $ 505, receipt number 0207-6731246. Appeal Record due by 2/27/2014. (Miller, Steve) (Entered: 02/13/2014) |
| 02/13/2014 | 6246 | Minute Entry for proceedings held before Magistrate Judge James Orenstein. Telephone Conference held on 2/13/2014. See attached list of appearances. SCHEDULING: The next status conference will be held on February 25, 2014, at 1:00 p.m. SUMMARY: As discussed on the record, I will enter an order relating to docketing procedures for the opt-out and declaratory judgment actions. The parties will submit a slightly revised version of the proposed order and list of included cases. (Attachments: # 1 Appendix) (Pollock, David) (Entered: 02/13/2014) |
| 02/13/2014 | 6247 | Subsequent NOTICE OF APPEAL as to 6199 Order of Settlement by Wal-Mart Stores, Inc. . Filing fee $ 505, receipt number 0207-6731486. (Schoeman, Paul) (Entered: 02/13/2014) |
| 02/13/2014 | 6248 | Subsequent NOTICE OF APPEAL as to 6199 Order of Settlement, 6124 Order on Motion for Settlement,, by Home Depot U.S.A., Inc. . Filing fee $ 505, receipt number 0207-6731704. Appeal Record due by 2/27/2014. (Neuwirth, Stephen) (Entered: 02/13/2014) |
| 02/13/2014 | 6249 | Subsequent NOTICE OF APPEAL as to 6199 Order of Settlement, 6124 Order on Motion for |

| | | |
|---|---|---|
| | | Settlement,, by Coborn's Incorporated, 7-Eleven Inc. *, Objecting Plaintiffs and Objectors*. Filing fee $ 505, receipt number 0207-6731766. Appeal Record due by 2/27/2014. (Shinder, Jeffrey) (Entered: 02/13/2014) |
| 02/13/2014 | 6250 | NOTICE of Appearance by Michael C Rakower on behalf of Retail Industry Leaders Association (aty to be noticed) (Rakower, Michael) (Entered: 02/13/2014) |
| 02/13/2014 | 6251 | NOTICE OF APPEAL by Retail Industry Leaders Association. Filing fee $ 505, receipt number 0207-6731771. (Rakower, Michael) (Entered: 02/13/2014) |
| 02/14/2014 | | 19th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6245 Subsequent Notice of Appeal (McGee, Mary Ann) (Entered: 02/14/2014) |
| 02/14/2014 | | 20th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6247 Subsequent Notice of Appeal (McGee, Mary Ann) (Entered: 02/14/2014) |
| 02/14/2014 | | 21st Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6248 Subsequent Notice of Appeal (McGee, Mary Ann) (Entered: 02/14/2014) |
| 02/14/2014 | | 22nd Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6249 Subsequent Notice of Appeal. (McGee, Mary Ann) (Entered: 02/14/2014) |
| 02/14/2014 | | 23rd Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6251 Notice of Appeal (McGee, Mary Ann) (Entered: 02/14/2014) |
| 02/14/2014 | 6252 | NOTICE of Appearance by Richard Todd Victoria on behalf of American Eagle Outfitters, Inc. (aty to be noticed) (Attachments: # 1 Certificate of Service) (Victoria, Richard) (Entered: 02/14/2014) |
| 02/14/2014 | 6253 | Letter *to the Honorable James Orenstein re: Docketing Issues* by Visa International Service Association, Visa U.S.A. Inc. (Attachments: # 1 Proposed Order) (Mason, Robert) (Entered: 02/14/2014) |
| 02/14/2014 | 6254 | **ORDER** re 6253 Letter filed by Visa International Service Association, Visa U.S.A. Inc --- The proposed order is *So Ordered*; the Clerk of Court is respectfully directed to list all opt-out and declaratory judgment actions listed on exhibit 1 of this Order, and any future actions transferred to or filed in this District (collectively, the "New Actions") as member cases in MDL 05-1720 (JG)(JO). The New Actions will also be listed in MDL 14-1720 (JG)(JO), a separate docket opened purely as an administrative mechanism, as member cases. **SEE ATTACHED ORDER.**. Ordered by Magistrate Judge James Orenstein on 2/14/2014. (Guy, Alicia) (Entered: 02/14/2014) |
| 02/18/2014 | 6255 | MOTION to Withdraw as Attorney by Blue Cross Blue Shield entities. (Attachments: # 1 Declaration Declaration of Wendy H. Schwartz in Support, # 2 Appendix Appendix A to Declaration) (Schwartz, Wendy) (Entered: 02/18/2014) |
| 02/18/2014 | 6256 | CERTIFICATE OF SERVICE by Blue Cross Blue Shield entities re 6255 MOTION to Withdraw as Attorney (Schwartz, Wendy) (Entered: 02/18/2014) |
| 02/18/2014 | 6257 | Subsequent NOTICE OF APPEAL as to 6197 Judgment on Attorney Fees, 6198 Judgment, 6124 Order on Motion for Settlement,, 6199 Order of Settlement by Temple Eagle Partners LLC AND 1001 Property Solutions LLC - *Second Amended Notice of Appeal*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4) (Stein, David) Modified on 2/19/2014 (Marziliano, August). Modified on 2/19/2014 (Marziliano, August). (Entered: 02/18/2014) |
| 02/18/2014 | | ORDER granting 6255 Motion to Withdraw as Attorney -- The application is granted; Attorney Wendy H. Schwartz terminated. Ordered by Magistrate Judge James Orenstein on 2/18/2014. (Pollock, David) (Entered: 02/18/2014) |
| 02/19/2014 | | 24th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6257 Subsequent Notice of Appeal. (McGee, Mary Ann) (Entered: 02/19/2014) |

| | | |
|---|---|---|
| 02/19/2014 | 6258 | NOTICE of Appearance by Jill D. Helbling on behalf of American Eagle Outfitters, Inc. (notification declined or already on case) Associated Cases: 1:05-md-01720-JG-JO, 1:14-cv-00321-JG-JO (Helbling, Jill) (Entered: 02/19/2014) |
| 02/19/2014 | 6259 | Letter dated 2/7/14 from J.J Thomas, Esq. to Judge Gleeson, advising the court of the discussions with class counsel regarding disclaimers. (Piper, Francine) (Entered: 02/19/2014) |
| 02/19/2014 | | ORDER granting 6243 Spectrum Settlement Recovery's letter request to reschedule the February 28, 2014 evidentiary hearing. Spectrum is directed to submit to the court proposed alternate dates for the hearing no later than February 28, 2014. Ordered by Judge John Gleeson on 2/19/2014. (Shahabuddin, Tazneen) (Entered: 02/19/2014) |
| 02/20/2014 | | ORDER re 6254 Order -- Paragraph 4 of Order 6254 , creating administrative docket MDL 14-1720 (JG)(JO) for all opt-out and declaratory judgment actions, is hereby amended as follows. Paragraph 4 shall now provide: "The court clerk is hereby directed to create a separate service list for the New Actions under 1:14-md-01720-JG-JO, which shall include all counsel who have entered an appearance in any of those cases to date. Any other counsel or party who wishes to receive service of electronic court filings in the consolidated actions may do so by making a request in writing to Case Administrative Supervisor August Marziliano at August_Marziliano@nyed.uscourts.gov." Ordered by Magistrate Judge James Orenstein on 2/20/2014. (Pollock, David) (Entered: 02/20/2014) |
| 02/21/2014 | 6260 | Letter *Regarding Available Hearing Date* by Spectrum Settlement Recovery LLC (Lewis, Eric) (Entered: 02/21/2014) |
| 02/21/2014 | 6261 | Proposed Findings of Fact by Settlement Recovery Group, LLC (Binder, Neil) (Entered: 02/21/2014) |
| 02/24/2014 | 6262 | Letter *to Sandra A. Jones re: pro hac vice filing fee* by Minnesota Twins LLC Associated Cases: 1:05-md-01720-JG-JO et al. (Zweig, Jason) (Entered: 02/24/2014) |
| 02/24/2014 | | ORDER: The motions-to-dismiss schedule proposed in 6240 the joint status report of the parties to the pending opt-out cases and declaratory judgment actions is hereby endorsed. The following briefing schedule is set: the motion to be filed by the Networks and the Banks and the motion to be filed by Wal-Mart are due on or before 3/13/14; responses to the motions are due on or before 4/28/14; and replies are due on or before 5/28/14. Oral argument is scheduled for July 11, 2014 at 11:00 AM in courtroom 6C South before Judge John Gleeson. The opt-out plaintiffs' request that the Court limit the grounds upon which the Networks and the Banks may make their proposed motion to dismiss is denied. The motion to dismiss made by the Networks and the Banks in the Target action is hereby denied without prejudice as it will be subsumed within the single motion to dismiss to be filed against all opt-out complaints. Finally, it seems appropriate to the Court that it resolve the Trade Association Case defendants' proposed motion to dismiss before deciding whether it is appropriate to permit the Networks and the Banks to file a summary judgment motion in that case. Accordingly, the following briefing schedule is set for the Trade Association Case defendants' motion: the motion is due on or before 3/13/14; the plaintiffs' response to the motion is due on or before 4/28/14; and the defendants' reply is due on or before 5/28/14. Oral argument is scheduled for July 11, 2014 at 12:00 PM in courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 2/24/2014. (Shahabuddin, Tazneen) (Entered: 02/24/2014) |
| 02/24/2014 | | SCHEDULING ORDER: The 6260 letter request submitted by Spectrum Settlement Recovery is granted. The evidentiary hearing is scheduled for May 2, 2014 at 2:00 PM in courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 2/24/2014. (Shahabuddin, Tazneen) (Entered: 02/24/2014) |
| 02/25/2014 | | ORDER: The Court is considering the dispute among Class Counsel and certain third-party claims filing companies regarding disclaimer language proposed by Class Counsel in its 6236 response to my January 13, 2014 Order for inclusion in third-party claims filing companies solicitations. Whatever language is approved, the Court is inclined to also require it to be included not only on initial solicitations made to members of the merchant class but also on any contracts drafted by third-party claims filing services to be signed by class members. Any persons or entities, including Class Counsel and claims filing companies, wishing to be heard |

| | | |
|---|---|---|
| | | on this issue may do so in writing on or before March 12, 2014. Class Counsel are directed to post a copy of this Order on the website for the case and to serve a copy forthwith on the claims filing services listed in 6127 document 6127-2.. Ordered by Judge John Gleeson on 2/25/2014. (Shahabuddin, Tazneen) (Entered: 02/25/2014) |
| 02/25/2014 | 6263 | Subsequent NOTICE OF APPEAL as to 6199 Order of Settlement by R&M Objectors . Appeal Record due by 2/27/2014. (Parker, Jerrold) (Entered: 02/25/2014) |
| 02/25/2014 | | 25th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6263 Subsequent Notice of Appeal (McGee, Mary Ann) (Entered: 02/25/2014) |
| 02/25/2014 | 6264 | NOTICE of Change of address by Joe R. Whatley, Jr (Whatley, Joe) (Entered: 02/25/2014) |
| 02/25/2014 | 6265 | ORDER: The Court intends to appoint Robin Wilcox as a Special Master for disputes regarding the administration of the Rule 23(b)(3) settlement fund. Ordered by Judge John Gleeson on 2/25/2014. (Attachments: # 1 Affidavit) (Shahabuddin, Tazneen) (Entered: 02/25/2014) |
| 02/26/2014 | 6266 | NOTICE of Change of Address by Bruce Levinson (Levinson, Bruce) (Entered: 02/26/2014) |
| 02/26/2014 | 6267 | Letter *from Class Counsel regarding the Court's February 25, 2014 Order* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Sweeney, Bonny) (Entered: 02/26/2014) |
| 02/27/2014 | 6268 | Letter *from Class Counsel to add Class Plaintiffs' names to Docket* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Sweeney, Bonny) (Entered: 02/27/2014) |
| 02/28/2014 | | ORDER re 6268 Letter filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation --- The application is Granted. The Clerk of Court is respectfully directed to list Class Plaintiffs Traditions, Ltd, CHS Inc., Crystal Rock LLC, and Leon's Transmission Service, Inc. on the docket. Ordered by Magistrate Judge James Orenstein on 2/28/2014. (Guy, Alicia) (Entered: 02/28/2014) |
| 02/28/2014 | | Email Notification Test - DO NOT REPLY (Levine, Evelyn) (Entered: 02/28/2014) |
| 02/28/2014 | 6269 | MEMORANDUM in Opposition re 6261 Proposed Findings of Fact *[Class Plaintiffs' Response to Settlement Recovery Group, LLC's [Proposed] Findings of Fact and Conclusions of Law]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Sweeney, Bonny) (Entered: 02/28/2014) |
| 03/03/2014 | 6270 | Letter *from Alexandra S. Bernay regarding potential date for Manor Capital Recovery evidentiary hearing* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 03/03/2014) |
| 03/04/2014 | | SCHEDULING ORDER: The Court being unavailable, the evidentiary hearing regarding Manor Capital Recovery will not occur on the date proposed in Class Counsel's 6270 letter request. The evidentiary hearing is scheduled for May 16, 2014 at 10:00 AM in courtroom 6C South before Judge John Gleeson. Ordered by Judge John Gleeson on 3/4/2014. (Shahabuddin, Tazneen) (Entered: 03/04/2014) |
| 03/05/2014 | 6271 | MOTION to Withdraw as Attorney *(Jason S. Cowart, Esq.)* by Fairmont Orthopedics & Sports Medicine, PA, Gary FS Inc.. (Attachments: # 1 Proposed Order) Associated Cases: 1:05-md-01720-JG-JO, 1:05-cv-05076-JG-JO (Cowart, Jason) (Entered: 03/05/2014) |
| 03/05/2014 | 6272 | MOTION to Withdraw as Attorney *(Jason S. Cowart, Esq.)* by Baltimore Avenue Foods, LLC. (Attachments: # 1 Proposed Order) Associated Cases: 1:05-md-01720-JG-JO, 1:05-cv-05080-JG-JO (Cowart, Jason) (Entered: 03/05/2014) |
| 03/05/2014 | 6273 | MOTION to Withdraw as Attorney *(Jason S. Cowart, Esq.)* by NuCity Publications, Inc.. (Attachments: # 1 Proposed Order) Associated Cases: 1:05-md-01720-JG-JO, 1:05-cv-05075-JG-JO (Cowart, Jason) (Entered: 03/05/2014) |
| | | |

A813

| | | |
|---|---|---|
| 03/05/2014 | 6274 | MOTION to Withdraw as Attorney *(Jason S. Cowart, Esq.)* by Resnick Amsterdam & Leshner P.C.. (Attachments: # 1 Proposed Order) Associated Cases: 1:05-md-01720-JG-JO, 1:05-cv-03924-JG-JO (Cowart, Jason) (Entered: 03/05/2014) |
| 03/05/2014 | | ORDER granting 6271 Motion to Withdraw as Attorney; granting 6272 Motion to Withdraw as Attorney; granting 6273 Motion to Withdraw as Attorney; granting 6274 Motion to Withdraw as Attorney -- The application is granted; attorney Jason S. Cowart terminated. Ordered by Magistrate Judge James Orenstein on 3/5/2014. (Pollock, David) (Entered: 03/05/2014) |
| 03/06/2014 | 6275 | ORDER appointing Robin Wilcox as a Special Master regarding referred disputes relating to the In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation Rule 23 (b)(3) settlement fund. Please refer to the attached memorandum for the terms and conditions of the appointment. Ordered by Judge John Gleeson on 3/6/2014. (Shahabuddin, Tazneen) (Entered: 03/06/2014) |
| 03/07/2014 | 6276 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 25, receipt number 0207-6776216. by Refund Recovery Services, LLC. (Attachments: # 1 Affidavit in Support Robert M. Gardner, # 2 Proposed Order Admission to Practice Pro Hac Vice) (Gardner, Robert) (Entered: 03/07/2014) |
| 03/07/2014 | 6277 | Minute Entry for proceedings held before Judge John Gleeson:Preliminary Injunction Hearing with Refund Recovery Services held on 3/7/2014. Proposed fact findings and conclusions of this hearing shall be briefed as follows: Simulatanous filings are all due by 3/24/14 as agreed by the parties. (please see attached list for counsel) (Court Reporter Tony Mancuso.) (Piper, Francine) (Entered: 03/10/2014) |
| 03/07/2014 | 6278 | Exhibit and Witness List (Piper, Francine) (Entered: 03/10/2014) |
| 03/10/2014 | 6279 | ORDER granting 6276 Motion for Leave to Appear Pro Hac Vice -- Attorney Robert M. Gardner, Esq. is permitted to argue or try this case in whole or in part as counsel or advocate. By March 17, 2014, Mr. Gardner shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Gardner shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Gardner shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 3/10/2014. (Pollock, David) (Entered: 03/10/2014) |
| 03/13/2014 | 6280 | Letter *from Class Plaintiffs Requesting Approval of Settlement Administrative Costs* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A) (Wildfang, K.) (Entered: 03/13/2014) |
| 03/14/2014 | | ORDER: The 6216 oral argument scheduled for March 17, 2014 at 2:00 PM is hereby adjourned without date. If the parties wish to address the 6281 letter regarding Settlement Recovery Group which was mailed to the Court, they may do so in writing in a letter to the Court. Ordered by Judge John Gleeson on 3/14/2014. (Shahabuddin, Tazneen) (Entered: 03/14/2014) |
| 03/14/2014 | 6282 | Letter *from Alexandra S. Bernay regarding Dkt No. 6281* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 03/14/2014) |
| 03/14/2014 | | ORDER: The Court has received Class Counsel's 6280 letter application for approval of the tax accountants' request for funding. Because the Court is unable to determine whether there are duplicative entries in the invoices dated 2/3/14 or those dated 3/6/14, Class Counsel is directed to provide the Court with more detailed information about the work associated with each escrow account, including what charges are discrete and which are shared, if any, between the accounts. Ordered by Judge John Gleeson on 3/14/2014. (Shahabuddin, Tazneen) (Entered: 03/14/2014) |
| 03/17/2014 | 6283 | Letter *Regarding Dkt. No. 6281* by Settlement Recovery Group, LLC (Binder, Neil) (Entered: 03/17/2014) |
| 03/17/2014 | 6284 | USCA Appeal Fees received $ 505.00 receipt number 4653071445 re 6234 Notice of Appeal filed by National Federation of Independent Businesses (McGee, Mary Ann) (Entered: |

| | | |
|---|---|---|
| | | 03/17/2014) |
| 03/17/2014 | | 26th Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6234 Notice of Appeal 6284 USCA Fee (McGee, Mary Ann) (Entered: 03/17/2014) |
| 03/18/2014 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 6257 Subsequent Notice of Appeal, 6178 Notice of Appeal, **by 1001 Property Solutions LLC or Temple Eagle Partners LLC, the actual Objectors. These objectors have replaced Rick Bandas and Daniel Hall on the docket as Objectors.** (Marziliano, August) (Entered: 03/18/2014) |
| 03/18/2014 | | ORDER granting Settlement Recovery Group's 6283 letter request that the 6281 March 4 letter be placed under seal. Ordered by Judge John Gleeson on 3/18/2014. (Shahabuddin, Tazneen) (Entered: 03/18/2014) |
| 03/19/2014 | 6285 | **AMENDED NOTICE OF APPEAL by Vicente Consulting LLC . which is amending 6194 NOTICE OF APPEAL by Vicente Consulting LLC as to 6124 and 6169 Order on Motion for Settlement, This Amended Notice of Appeal is withdrawing its appeal as to the ORDER 6124 and leaving The Notice of Appeal related to the Memorandum and Order on the Motion for Attorneys Fees 6169 Modified on 3/21/2014 to Correct the Textto reflect Amended Notice of Appeal. (Marziliano, August). (Entered: 03/19/2014)** |
| 03/20/2014 | | AMENDED Supplemental Record on Appeal transmitted to US Court of Appeals re 6189 Notice of Appeal, as to OBJECTOR U.S. Public Research Interest Group. **The Court docket sheet has changed the Parties role from Amicus to Objector.** (Marziliano, August) (Entered: 03/20/2014) |
| 03/21/2014 | 6286 | Letter MOTION to Adjourn Conference - *A Consented Request to Reschedule the March 28 Hearing* by Managed Care Advisory Group, Inc.. (Sheehan, Patrick) Modified on 3/21/2014 to correct the date. (Brucella, Michelle). (Entered: 03/21/2014) |
| 03/21/2014 | | 29 Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals 6285 Subsequent/Amended Notice of Appeal, (McGee, Mary Ann) (Entered: 03/21/2014) |
| 03/21/2014 | 6287 | *Letter from Alexandra S. Bernay regarding MCAG evidentiary hearing* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 03/21/2014) |
| 03/24/2014 | | ORDER granting 6286 Motion to Adjourn Conference: The evidentiary hearing regarding MCAG will be held on May 30, 2014 at 2:00 PM in courtroom 6C South before Judge John Gleeson. The hearing regarding FRS will take place as previously scheduled on March 28, 2014 at 2:00 PM. Ordered by Judge John Gleeson on 3/24/2014. (Shahabuddin, Tazneen) (Entered: 03/24/2014) |
| 03/24/2014 | 6288 | MEMORANDUM in Support *[Class Plaintiffs' [Proposed] Findings of Fact and Conclusions of Law Relating to Refund Recovery Services, LLC]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit 1) (Bernay, Alexandra) (Entered: 03/24/2014) |
| 03/24/2014 | 6289 | Proposed Findings of Fact by Refund Recovery Services, LLC (Gardner, Robert) (Entered: 03/24/2014) |
| 03/27/2014 | 6290 | Letter MOTION to Adjourn Conference - *A Consented Request to Reschedule the May 30 Hearing* by Managed Care Advisory Group, Inc.. (Sheehan, Patrick) (Entered: 03/27/2014) |
| 03/28/2014 | 6291 | JPMDL Conditional Transfer Order CTO-12: Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of New York for the reasons stated in the order of October 19, 2005, and, with the consent of that court, assigned to the Honorable John Gleeson. (Attachments: # 1 Letter Transfer Request, # 2 Transfer Request) (Marziliano, August) (Entered: 03/28/2014) |
| 03/28/2014 | | ORDER granting 6290 Motion to Adjourn Conference: The evidentiary hearing regarding MCAG will take place on May 16, 2014 at 10:00 AM in courtroom 6C South before Judge |

| | | |
|---|---|---|
| | | John Gleeson. Ordered by Judge John Gleeson on 3/28/2014. (Shahabuddin, Tazneen) (Entered: 03/28/2014) |
| 03/28/2014 | 6292 | Minute Entry for proceedings held before Judge John Gleeson:Preliminary Injunction Hearing held with Financial Services (FRS) on 3/28/2014. Proposed fact findings and conclusion of this hearing shall be briefed as follows: Simultaneous filings are due by 4/21/14 as agreed upon by the parties. Any responses to these filings are due by 4/25/14. (Court Reporter Ronald Tolkin.) (Piper, Francine) (Entered: 03/31/2014) |
| 03/28/2014 | 6293 | Exhibit and Witness List (Piper, Francine) (Entered: 03/31/2014) |
| 04/01/2014 | 6294 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on March 28, 2014, before Judge Gleeson. Court Reporter/Transcriber Ronald E. Tolkin, Official Court Reporter, Telephone number 718-613-2647. Email address: ronald_tolkin@nyed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/22/2014. Redacted Transcript Deadline set to 5/2/2014. Release of Transcript Restriction set for 6/30/2014. (Tolkin, Ronald) (Entered: 04/01/2014) |
| 04/02/2014 | 6295 | NOTICE of Appearance by David G. Trachtenberg on behalf of Retail Industry Leaders Association (aty to be noticed) (Trachtenberg, David) (Entered: 04/02/2014) |
| 04/02/2014 | 6296 | NOTICE of Consent to Change Attorney by David G. Trachtenberg (Trachtenberg, David) (Entered: 04/02/2014) |
| 04/07/2014 | 6297 | Redaction of 6294 Transcript,, (Tolkin, Ronald) (Entered: 04/07/2014) |
| 04/09/2014 | 6298 | MOTION to Withdraw as Attorney *of Thomas B. Hatch* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Wildfang, K.) (Entered: 04/09/2014) |
| 04/09/2014 | | ORDER granting 6298 Motion to Withdraw as Attorney. Attorney Thomas B. Hatch terminated. Ordered by Magistrate Judge James Orenstein on 4/9/2014. (Pollock, David) (Entered: 04/09/2014) |
| 04/10/2014 | 6299 | JPMDL Conditional Transfer Order CTO-13: Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. §1407 to the Eastern District of New York for the reasons stated in the order of October 19, 2005, and, with the consent of that court, assigned to the Honorable John Gleeson. (Attachments: # 1 Letter Requesting Case Transfer, # 2 Notification, August) (Entered: 04/10/2014) |
| 04/14/2014 | 6300 | MEMORANDUM in Support *[Class Counsel's Proposed Communications Regarding Third-Party Claims Filing Companies]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Bernay, Alexandra) (Entered: 04/14/2014) |
| 04/21/2014 | 6301 | Letter *from Class Plaintiffs providing additional information on March 13, 2014 Request for Approval of Settlement Administrative Costs of Damasco* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Wildfang, K.) (Entered: 04/21/2014) |
| 04/21/2014 | 6302 | Letter *from Class Plaintiffs re Request for Approval of Settlement Administrative Costs* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Exhibit A) (Wildfang, K.) (Entered: 04/21/2014) |
| 04/21/2014 | 6303 | MEMORANDUM in Support *Class Counsel's [Proposed] Findings of Fact and Conclusions of Law Relating to Financial Recovery Strategies* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit 1) (Bernay, Alexandra) (Entered: 04/21/2014) |
| 04/21/2014 | 6304 | Proposed Findings of Fact by Financial Recovery Services, Inc. (Attachments: # 1 Appendix A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 |

| | | |
|---|---|---|
| | | Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13) (Green, Jonathan) (Entered: 04/21/2014) |
| 04/25/2014 | 6305 | Consent MOTION to Adjourn Conference *Evidentiary Hearing* by Manor Capital Recovery, LLC. (Trigg, Mark) (Entered: 04/25/2014) |
| 04/25/2014 | 6306 | REPLY in Opposition *(Financial Recovery Services' Reply to Class Counsel's [Proposed] Findings of Fact and Conclusions of Law)* filed by Financial Recovery Services, Inc.. (Arbisser, Ethan) (Entered: 04/25/2014) |
| 04/25/2014 | 6307 | REPLY in Opposition re 6304 Proposed Findings of Fact, *[Class Counsel's Response to Financial Recovery Services [Proposed] Findings of Fact and Conclusions of Law]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Bernay, Alexandra) (Entered: 04/25/2014) |
| 04/28/2014 | | ORDER granting 6305 Motion to Adjourn Conference. The evidentiary hearing regarding Manor Capital is rescheduled for June 6, 2014 at 1:00 PM. Ordered by Judge John Gleeson on 4/28/2014. (Shahabuddin, Tazneen) (Entered: 04/28/2014) |
| 04/29/2014 | | ORDER granting Class Counsel's requests for 6302 Class Administrator's funding in the amount of $805,878.85 and 6301 payment of the tax accountant's invoices totaling $32,321.50. In light of the costs incurred by the Class Administrator, Class Counsel is respectfully directed to inform Epiq that at the appropriate time, the Court will likely seek expert assistance to ensure these funds are properly being disbursed. See No. 96-cv-5238, ECF No. 1327. Ordered by Judge John Gleeson on 4/29/2014. (Shahabuddin, Tazneen) (Entered: 04/29/2014) |
| 05/02/2014 | 6308 | First MOTION for Leave to Appear Pro Hac Vice *by Mark Gerald Trigg on behalf of non-party Manor Capital Recovery, LLC* Filing fee $ 25, receipt number 0207-6900364. by Manor Capital Recovery, LLC. (Trigg, Mark) (Entered: 05/02/2014) |
| 05/02/2014 | 6309 | AFFIDAVIT/DECLARATION in Support re 6308 First MOTION for Leave to Appear Pro Hac Vice *by Mark Gerald Trigg on behalf of non-party Manor Capital Recovery, LLC* Filing fee $ 25, receipt number 0207-6900364. filed by Manor Capital Recovery, LLC. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Proposed Order for Pro Hac Vice Admission) (Trigg, Mark) (Entered: 05/02/2014) |
| 05/02/2014 | 6310 | AFFIDAVIT/DECLARATION in Support re 6308 First MOTION for Leave to Appear Pro Hac Vice *by Mark Gerald Trigg on behalf of non-party Manor Capital Recovery, LLC* Filing fee $ 25, receipt number 0207-6900364. *CORRECTED AFFIDAVIT, EXHIBIT & ORDER* filed by Manor Capital Recovery, LLC. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Proposed Order for Admission Pro Hac Vice) (Trigg, Mark) (Entered: 05/02/2014) |
| 05/02/2014 | 6311 | Minute Entry for proceedings held before Judge John Gleeson:Preliminary Injunction Hearing with Spectrum Claims Processor held on 5/2/2014. Proposed fact findings of conclusions of this hearing shall be brief as follows: Simultaneous filings are due by 5/30/14 as agreed upon by the parties. Any responses to these filings are due by 6/13/14. (Court Reporter Allan Sherman.) (Piper, Francine) (Entered: 05/05/2014) |
| 05/02/2014 | 6312 | Exhibit and Witness List (Piper, Francine) (Entered: 05/05/2014) |
| 05/05/2014 | 6313 | ORDER granting 6308 Motion for Leave to Appear Pro Hac Vice -- Attorney Mark G. Trigg, Esq., is permitted to argue or try this case in whole or in part as counsel or advocate. By May 12, 2014, Mr. Trigg shall register for ECF. Registration is available online at the EDNY's homepage. Once registered, Mr. Trigg shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Mr. Trigg shall also ensure that the $25 admission fee be submitted to the Clerk's Office. Ordered by Magistrate Judge James Orenstein on 5/5/2014. (Pollock, David) (Entered: 05/05/2014) |
| 05/05/2014 | 6314 | MEMORANDUM in Support *[Managed Care Advisory Group, Inc.'s Response to Class Counsel's Proposed Communications Regarding Third-Party Claims Filing Companies]* filed by Managed Care Advisory Group, Inc.. (Sheehan, Patrick) (Entered: 05/05/2014) |

| 05/05/2014 | 6315 | MEMORANDUM in Opposition *Refund Recovery Services, LLC's Objections to Class Counsel's Proposed Communications Regarding Third-Party Claims Filing Companies* filed by Refund Recovery Services, LLC. (Gardner, Robert) (Entered: 05/05/2014) |
|---|---|---|
| 05/07/2014 | 6316 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 05-2-2014, before Judge John Gleeson. Court Reporter/Transcriber Allan R Sherman, Telephone number 718-613-2529. Email address: asher99983@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/28/2014. Redacted Transcript Deadline set for 6/9/2014. Release of Transcript Restriction set for 8/5/2014. (Sherman, Allan) (Entered: 05/07/2014) |
| 05/07/2014 | 6317 | NOTICE of Appearance by Mark G. Trigg on behalf of Manor Capital Recovery, LLC (notification declined or already on case) (Trigg, Mark) (Entered: 05/07/2014) |
| 05/08/2014 | 6318 | Letter *to Judge Gleeson* by Claims Compensation Bereau, LLC (Sirota, Howard) (Entered: 05/08/2014) |
| 05/12/2014 | 6319 | REPLY in Support *[Class Counsel's Reply in Support of Its Proposed Communications Regarding Third-Party Claims Filing Companies]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Bernay, Alexandra) (Entered: 05/12/2014) |
| 05/13/2014 | 6320 | NOTICE of Change of Address by Mark P. Ladner Associated Cases: 1:05-md-01720-JG-JO et al. (Ladner, Mark) (Entered: 05/13/2014) |
| 05/15/2014 | 6321 | NOTICE of Change of Address by Michael B. Miller Associated Cases: 1:05-md-01720-JG-JO, 1:13-cv-03074-JG-JO, 1:13-cv-05746-JG-JO (Miller, Michael) (Entered: 05/15/2014) |
| 05/16/2014 | 6322 | Minute Entry for proceedings held before Judge John Gleeson:Preliminary Injunction Hearing with MCAG claims processor held on 5/16/2014. (Court Reporter Anthony Frisolone.) (Piper, Francine) (Entered: 05/19/2014) |
| 05/16/2014 | 6323 | Exhibit and Witness List (Piper, Francine) (Entered: 05/19/2014) |
| 05/21/2014 |  | NOTICE of Oral Argument adjournment regarding the third party claims filing company. Due to a Court related conflict, the new Oral Argument date is now rescheduled to Friday, May 30, 2014 at 10:00 AM in courtroom 6C South before Judge John Gleeson. (Lee, Ilene) (Entered: 05/21/2014) |
| 05/21/2014 | 6324 | Letter *to All Defendant's Counsel, Individual Plaintiff's Counsel, and All (ECF registered) Third Party Counsel re Notice of Receipt of Subpoena Compelling Production of Confidential and Highly Confidential Materials* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Wildfang, K.) (Entered: 05/21/2014) |
| 05/23/2014 | 6325 | MOTION to Withdraw as Attorney by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Proposed Order) (Cohen, Bart) (Entered: 05/23/2014) |
| 05/27/2014 |  | ORDER granting 6325 Motion to Withdraw as Attorney -- The motion is granted; Attorney Bart D. Cohen terminated. Ordered by Magistrate Judge James Orenstein on 5/27/2014. (Pollock, David) (Entered: 05/27/2014) |
| 05/27/2014 | 6326 | Letter *from Alexandra S. Bernay regarding the Court's consideration of the Declaration of Michael R. O'Connor* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Declaration of Michael R. O'Connor) (Bernay, Alexandra) (Entered: 05/27/2014) |
| 05/29/2014 | 6327 | MOTION to Withdraw as Attorney *of Patricia S. Cruz* by National City Bank of Kentucky, National City Corporation. (Majoras, John) (Entered: 05/29/2014) |
| 05/29/2014 |  | ORDER granting 6327 Motion to Withdraw as Attorney -- The motion is granted; Patricia S. Cruz terminated. Ordered by Magistrate Judge James Orenstein on 5/29/2014. (Pollock, David) (Entered: 05/29/2014) |

| 05/30/2014 | 6328 | Minute Entry for proceedings held before Judge John Gleeson: Case called. Please see the attached listing for attorney appearances. Oral Argument held on 5/30/2014 regarding the Court's 1/13/2014 order 6193 on third-party claims processing companies. The Court's decision is reserved. Class Plaintiff's counsel is directed to reach out to the counsel on the Visa/Mastercard side to see if additional opt-in requests and proposals should be made regarding this matter. A status report is to be filed by 6/20/2014 to the Court. (Court Reporter Nicole Canales.) (Lee, Ilene) (Entered: 05/30/2014) |
|---|---|---|
| 05/30/2014 | 6329 | MEMORANDUM in Support re 6311 Status Conference, *Class Plaintiffs' [Proposed] Findings of Fact and Conclusions of Law Relating to Spectrum Settlement Recovery* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A) (Kane, Michael) (Entered: 05/30/2014) |
| 05/30/2014 | 6330 | MEMORANDUM in Support re 6311 Status Conference, *Spectrum Settlement Recovery Group LLC's Proposed Findings of Fact and Conclusions of Law* filed by Spectrum Settlement Recovery LLC. (Lewis, Eric) (Entered: 05/30/2014) |
| 06/03/2014 | | ORDER: The evidentiary hearing regarding Manor Capital Recovery, LLC scheduled for this Friday, June 6, 2014 is hereby adjourned without date. The court is considering referring the hearing to Special Master Wilcox and it will be rescheduled for a future date. Ordered by Judge John Gleeson on 6/3/2014. (Shahabuddin, Tazneen) (Entered: 06/03/2014) |
| 06/03/2014 | 6331 | MANDATE of USCA as to 6174 Notice of Appeal filed by State of California, Amici Objecting States, State of Arizona. Objector-Appellants the State of Arizona and the State of California move to withdraw their notice of appeal assigned docket number 14-379. Appellees do not oppose the motion.IT IS ORDERED that the motion to withdraw is GRANTED. Issued as Mandate: 6/3/14. (McGee, Mary Ann) (Entered: 06/04/2014) |
| 06/04/2014 | 6332 | JPMDL Transfer Order: pursuant to 28 U.S.C. § 1407, this action is transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable John Gleeson for inclusion in the coordinated or consolidated pretrial proceedings. (Attachments: # 1 Transfer Request) (Marziliano, August) (Entered: 06/04/2014) |
| 06/13/2014 | 6333 | REPLY in Opposition re 6330 Memorandum in Support *Class Plaintiffs' Reply to Spectrum Settlement Recovery's [Proposed] Findings of Fact and Conclusions of Law* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Kane, Michael) (Entered: 06/13/2014) |
| 06/13/2014 | 6334 | REPLY in Opposition re 6329 Memorandum in Support, *Spectrum's Reply to Class Plaintiffs' [Proposed] Findings of Fact and Conclusions of Law* filed by Spectrum Settlement Recovery LLC. (Attachments: # 1 Exhibit) (Lewis, Eric) (Entered: 06/13/2014) |
| 06/20/2014 | 6335 | STATUS REPORT *Joint Status Report regarding opt-in and other issues* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Marth, Ryan) (Entered: 06/20/2014) |
| 06/23/2014 | 6336 | MEMORANDUM in Support *[Class Plaintiffs' [Proposed] Findings of Fact and Conclusions of Law Relating to Managed Care Advisory Group, Inc.]* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Attachments: # 1 Exhibit A) (Bernay, Alexandra) (Entered: 06/23/2014) |
| 06/23/2014 | 6337 | Proposed Findings of Fact by Managed Care Advisory Group, Inc. (Sheehan, Patrick) (Entered: 06/23/2014) |
| 06/30/2014 | 6338 | REPLY in Opposition re 6337 Proposed Findings of Fact *[Class Plaintiffs' Reply in Support of its [Proposed] Findings of Fact and Conclusions of Law Relating to Managed Care Advisory Group, Inc.* filed by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation. (Bernay, Alexandra) (Entered: 06/30/2014) |
| 06/30/2014 | 6339 | REPLY in Opposition re 6336 Memorandum in Support, *Response to Class Plaintiffs' Proposed Findings of Fact and Conclusions of Law* filed by Managed Care Advisory Group, Inc.. (Sheehan, Patrick) (Entered: 06/30/2014) |

| 07/01/2014 | 6340 | Letter dated June 25, 2014 from David Wynne to Judge Gleeson, in response to the status report recently filed with the court, document #6335. (Piper, Francine) (Entered: 07/01/2014) |
|---|---|---|
| 07/11/2014 | 6341 | Letter *from Wesley R. Powell to Judges Gleeson and Orenstein on behalf of Network Defendants and Class Plaintiffs* by Mastercard Incorporated, Mastercard International Incorporated (Powell, Wesley) (Entered: 07/11/2014) |
| 07/21/2014 | 6342 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 07/18/2104, before Judge Gleeson. Court Reporter/Transcriber Anthony Mancuso, Telephone number 718-613-2419. Email address: anthonymancuso65@msn.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/11/2014. Redacted Transcript Deadline set for 8/21/2014. Release of Transcript Restriction set for 10/20/2014. (Mancuso, Anthony) (Entered: 07/21/2014) |
| 08/26/2014 | 6343 | ORDER denying 6228 Motion for Attorney Fees: For the reasons set forth in the attached order, Zimmerman's motion is denied. Ordered by Judge John Gleeson on 8/26/2014. (Shahabuddin, Tazneen) (Entered: 08/26/2014) |
| 09/08/2014 | 6344 | MANDATE of USCA as to 6188 Notice of Appeal filed by Fiesta Restaurant Group, Inc. Appellant Fiesta Restaurant Group moves to withdraw its appeal, docketed as 14-225. IT IS HEREBY ORDERED that the motion is GRANTED. Issued as Mandate: 9/8/14. (McGee, Mary Ann) (Entered: 09/08/2014) |
| 09/16/2014 | 6345 | STATUS REPORT *[Joint Status Conference Statement]* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Bernay, Alexandra) (Entered: 09/16/2014) |
| 09/19/2014 | 6346 | Letter *from Alexandra S. Bernay, with permission of settling parties, providing Court with Proposed Notice and Proposed Form to class members who previously opted opt of settlement to provide option of rejoining cash settlement class* by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Proposed Notice: Notice to Rejoin Cash Settlement Class and Share in Monetary Recovery, # 2 Proposed Form: Notice of Intention to Rejoin the Cash Settlement Class) (Bernay, Alexandra) (Entered: 09/19/2014) |
| 09/23/2014 | 6347 | NOTICE OF APPEAL as to (6343 in 1:05-md-01720-JG-JO) Order on Motion for Attorney Fees by Jon M Zimmerman. Filing fee $ 505, receipt number 0207-7216374. (Furman, Joshua) (Entered: 09/23/2014) |
| 09/23/2014 | 6348 | Minute Entry for proceedings held before Magistrate Judge James Orenstein:Status Conference held on 9/23/2014. SCHEDULING: There are no further conferences scheduled before me at this time. SUMMARY: (1) As set forth on the record, I reiterated that in the *Savelson* matter, as decided on July 18, 2014, formal discovery is stayed pending resolution of the motion to dismiss, but the parties will meet and confer to propose a schedule to take effect once the motion is decided as well as the production of relevant information already produced in the merchant class litigation and easily provided again here. *See* Docket Entry 103 . (2) After hearing the arguments of counsel, I directed the parties to omit the contested language concerning franchisees from the proposed notice to merchants who may wish to opt in to the class settlement. *See* 05-MD-1720 (JG) (JO), DE 6346-1 at 1. (3) The parties will confer and submit proposed dates for future status conferences.(Court Reporter Michelle Nardone.) (Attachments: # 1 Appearances) (Guy, Alicia) (Entered: 09/23/2014) |
| 09/23/2014 |  | Electronic Index to Record on Appeal sent to US Court of Appeals. (18 in 1:13-cv-05347-JG-JO, 141 in 1:05-cv-04677-JG-JO, 23 in 1:13-cv-05350-JG-JO, 205 in 1:05-cv-04650-JG-JO, 29 in 1:13-cv-03355-JG-JO, 16 in 1:04-cv-01604-JG-JO, 59 in 1:06-cv-00078-JG-JO, 10 in 1:14-cv-00276-JG-JO, 30 in 1:14-cv-02318-JG-JO, 221 in 1:05-cv-04521-JG-JO, 174 in 1:05-cv-05076-JG-JO, 168 in 1:05-cv-05866-JG-JO, 15 in 1:13-cv-06424-JG-JO, 182 in 1:05-cv-04194-JG-JO, 15 in 1:13-cv-06370-JG-JO, 102 in 1:05-cv-05871-JG-JO, 106 in 1:05-cv-05881-JG-JO, 65 in 1:06-cv-02532-JG-JO, 217 in 1:05-cv-05207-JG-JO, 11 in 1:14-cv-00880-JG-JO, 18 in 1:13-cv-06503-JG-JO, 61 in 1:13-cv-03074-JG-JO, 66 in 1:06-cv-02534-JG-JO, 26 in 1:14-cv-00321-JG-JO, 154 in 1:05-cv-05352-JG-JO, 101 in 1:05-cv-05879-JG-JO, 40 in 1:13-cv-05746-JG-JO, 106 in 1:05-cv-05882-JG-JO, 171 in 1:05-cv- |

| | | |
|---|---|---|
| | | 05074-JG-JO, 165 in 1:05-cv-03924-JG-JO, 58 in 1:07-cv-00592-JG-JO, 60 in 1:06-cv-05765-JG-JO, 171 in 1:05-cv-05082-JG-JO, 96 in 1:05-cv-05869-JG-JO, 175 in 1:05-cv-05080-JG-JO, 150 in 1:05-cv-05153-JG-JO, 39 in 1:09-cv-03225-JG-JO, 171 in 1:05-cv-05081-JG-JO, 13 in 1:13-cv-06508-JG-JO, 172 in 1:05-cv-05071-JG-JO, 19 in 1:13-cv-05352-JG-JO, 1665 in 1:96-cv-05238-JG-JO, 80 in 1:14-cv-03529-JG-JO, 172 in 1:05-cv-05069-JG-JO, 59 in 1:06-cv-01832-JG-JO, 166 in 1:05-cv-05078-JG-JO, 108 in 1:05-cv-05868-JG-JO, 169 in 1:05-cv-05072-JG-JO, 13 in 1:13-cv-03474-JG-JO, 182 in 1:05-cv-05075-JG-JO, 173 in 1:05-cv-05070-JG-JO, 59 in 1:06-cv-01829-JG-JO, 160 in 1:05-cv-03925-JG-JO, 48 in 1:06-cv-05583-JG-JO, 6347 in 1:05-md-01720-JG-JO, 16 in 1:13-cv-06548-JG-JO, 59 in 1:06-cv-01831-JG-JO, 32 in 1:13-cv-03059-JG-JO, 16 in 1:14-cv-00261-JG-JO, 101 in 1:05-cv-05880-JG-JO, 211 in 1:05-cv-05319-JG-JO, 21 in 1:13-cv-05349-JG-JO, 148 in 1:05-cv-04974-JG-JO, 222 in 1:05-cv-04520-JG-JO, 13 in 1:13-cv-07175-JG-JO, 39 in 1:09-cv-02264-JG-JO, 170 in 1:05-cv-05077-JG-JO, 104 in 1:05-cv-05870-JG-JO, 16 in 2:14-cv-00873-JG-JO, 195 in 1:05-cv-05073-JG-JO, 106 in 1:05-cv-05884-JG-JO, 15 in 1:13-cv-05344-JG-JO, 18 in 1:13-cv-05348-JG-JO, 195 in 1:05-cv-04728-JG-JO, 158 in 1:05-cv-03800-JG-JO, 105 in 1:06-cv-00039-JG-JO, 8 in 1:14-cv-00984-JG-JO, 109 in 1:13-cv-05745-JG-JO, 59 in 1:06-cv-01830-JG-JO, 7 in 1:14-cv-02086-JG-JO, 14 in 1:13-cv-06339-JG-JO, 206 in 1:05-cv-04799-JG-JO, 174 in 1:05-cv-05083-JG-JO, 99 in 1:05-cv-05878-JG-JO, 17 in 1:13-cv-05345-JG-JO, 154 in 1:05-cv-04131-JG-JO, 8 in 1:14-cv-01980-JG-JO, 10 in 1:14-cv-00716-JG-JO, 18 in 1:13-cv-05346-JG-JO, 8 in 1:14-cv-02551-JG-JO, 106 in 1:05-cv-05885-JG-JO, 107 in 1:05-cv-05883-JG-JO, 19 in 1:13-cv-03473-JG-JO) Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 09/23/2014) |
| 10/03/2014 | 6349 | ORDER: Memorandum and order (1) granting permanent injunction against Premier Enterprises Group, Inc.; (2) declining to grant permanent injunction against other third party claims filing companies, i.e., Settlement Recovery Group, LLC, Managed Care Advisory Group, Spectrum Settlement Recovery, Financial Recovery Services, Inc., and Refund Recovery Services, Inc.; and (3) ordering the Court-mandated language be included on any contracts drafted by third party claims filing companies to be signed by class members. Ordered by Judge John Gleeson on 10/3/2014. Associated Cases: 1:05-md-01720-JG-JO et al. (Ross, Peter) (Entered: 10/03/2014) |
| 10/14/2014 | 6350 | Letter by Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Attachments: # 1 Attachment A) (Bernay, Alexandra) (Entered: 10/14/2014) |
| 11/03/2014 | 6351 | NOTICE OF APPEAL as to 6349 Order,, by Claims Compensation Bureau, LLC. Fee due by Attoney. (Marziliano, August) (Entered: 11/03/2014) |
| 11/03/2014 | | APPEAL FILING FEE DUE re 6351 Notice of Appeal Please either come to the clerks office or mail the filing fee in the amount of $505.00. (Marziliano, August) (Entered: 11/03/2014) |
| 11/03/2014 | | 31 Supplemental Electronic Index to Record on Appeal sent to US Court of Appeals. 6351 Notice of Appeal (McGee, Mary Ann) (Entered: 11/03/2014) |
| 11/05/2014 | | ORDER: Regarding the letter from Class Counsel 6350 , the Court agrees with Class Counsel and hereby orders that (i) if a third-party claims filing company has previously alerted its customers to the Court's requirements as set forth in its October 3, 2014 order 6349 , it will not be necessary to amend their previously-entered contracts, and (ii) Class Counsel shall provide the Court a report regarding third-party claims filing companies every six months, with the first such report due April 13, 2015. Ordered by Judge John Gleeson on 11/5/2014. (Ross, Peter) (Entered: 11/05/2014) |
| 11/06/2014 | 6352 | USCA Appeal Fees received $ 505 receipt number 4653080872 re 6351 Notice of Appeal filed by Claims Compensation Bureau, LLC (Marziliano, August) (Entered: 11/06/2014) |
| 11/19/2014 | 6353 | NOTICE TO WITHDRAW APPEARANCE OF ATTORNEY by Wesley Railey Powell, Matthew Stephen Freimuth. Associated Cases: 1:05-md-01720-JG-JO et al. (Marziliano, August) (Entered: 11/19/2014) |
| 11/26/2014 | 6354 | Letter *jointly filed by Class Plaintiffs, Defendants and* by Target Corporation (Attachments: # |

|  |  |  |
|---|---|---|
|  |  | 1 Letter to Class Plaintiffs' Counsel dated 9/29/14, # 2 Attachment to Letter to Class Plaintiffs' Counsel) (Herlihy, Kimberly) (Entered: 11/26/2014) |
| 12/03/2014 | 6355 | NOTICE of Appearance by Brian Dale Graifman on behalf of Claims Compensation Bureau, LLC (aty to be noticed) Associated Cases: 1:05-md-01720-JG-JO et al. (Graifman, Brian) (Entered: 12/03/2014) |
| 12/03/2014 | 6356 | NOTICE OF INTERLOCUTORY APPEAL by Claims Compensation Bureau, LLC. Filing fee $ 505, receipt number 0207-7374286. (Graifman, Brian) (Entered: 12/03/2014) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 12/04/2014 11:24:40 | | |
| **PACER Login:** | php10east0660:2616006:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-md-01720-JG-JO |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# A822

A CERTIFIED TRUE COPY

OCT 1 9 2005

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

OCT 1 9 2005

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1720*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION

## BEFORE WM. TERRELL HODGES,* CHAIRMAN, JOHN F. KEENAN,* D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of fourteen actions: eight actions in the Southern District of New York, three actions in the District of Connecticut, two actions in the Northern District of California, and one action in the Northern District of Georgia. Before the Panel are two motions seeking centralization, pursuant to 28 U.S.C. § 1407, of some or all of these actions for coordinated or consolidated pretrial proceedings. Plaintiffs in one Northern California action seek centralization of only the "no-surcharge rule" actions in the Northern District of California; plaintiffs in several actions and potential tag-along actions support this motion. These responding defendants alternatively suggest the Eastern District of Pennsylvania as transferee district. Moving defendants[1] seek centralization of all actions[2] – no-surcharge rule actions and "interchange fee" actions – in the Northern District of Georgia or other geographically central district. The Southern New York plaintiffs in the only individual action now before the Panel agree that centralization of all fourteen actions in one MDL docket is appropriate, but suggest the Southern District of New York as transferee district. Plaintiff in a potentially related Eastern New York action (*GMRI*) suggests centralization of all actions in the Eastern District of New York, where *GMRI* is involved in MDL-1575–*In re Visa/MasterCard Antitrust Litigation* before Judge John H. Gleeson. Remaining responding plaintiffs support selection of either the Eastern or Southern District of New York as transferee district.

---

* Judges Hodges and Keenan took no part in the decision of this matter.

[1] Visa U.S.A., Inc.; Visa International Service Association; MasterCard International Inc.; MasterCard Inc.; Bank of America Corp.; Bank of America, N.A.; National Processing, Inc.; Bank One Corp.; Bank One, Delaware, N.A.; Chase Manhattan Bank USA, N.A.; JP Morgan Chase & Co.; Fleet Bank (RI), N.A.; Fleet National Bank; Capital One Bank; Capital One F.S.B.; Capital One Financial Corp.; Citicorp; Citigroup, Inc.; Citibank, N.A.; First National Bank of Nebraska; First National Bank of Omaha; HSBC Finance Corp.; HSBC North America Holdings, Inc.; MBNA America Bank, N.A.; National City Corp.; National City Bank of Kentucky; Providian Financial Corp.; Providian National Bank; RBC Centura Banks, Inc.; RBC Royal Bank of Canada; People's Bank; RBS NB; Royal Bank of Scotland Group, plc; Suntrust Bank, Inc.; Texas Independent Bancshares, Inc.; USAA Federal Savings Bank; Wachovia Corp.; and Wachovia Bank, N.A.

[2] The Panel has been notified that 21 potentially related actions have been filed in multiple federal districts. These and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

# A823

- 2 -

On the basis of the papers filed and hearing session held, the Panel finds that the fourteen actions in this litigation involve common questions of fact, and that centralization in the Eastern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions share factual questions arising out of allegations that the imposition of a no-surcharge rule and/or the establishment of the interchange fee causes the merchant discount fee to be set at supracompetitive levels in violation of the federal antitrust laws. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary.

Opponents of Section 1407 centralization of all actions in one multidistrict docket argue that the presence of unique questions of fact relating to either the no-surcharge rule actions or the interchange fee actions should produce a different result. We are unpersuaded by this argument. Transfer under Section 1407 has the salutary effect of placing all actions before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. The transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation. In any event, we leave the extent and manner of coordination or consolidation of these actions to the discretion of the transferee court. *In re Mutual Funds Investment Litigation*, 310 F.Supp.2d 1359 (J.P.M.L. 2004). We are confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims.

The Panel is persuaded that the Eastern District of New York is an appropriate transferee district for this litigation. Judge Gleeson is already familiar with the operation of the credit card networks. In addition, he is well situated to conduct remaining proceedings in *GMRI* as they relate to both MDL-1575 and the litigation now before the Panel.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the attached Schedule A are transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable John H. Gleeson for coordinated or consolidated pretrial proceedings.

FOR THE PANEL:

D. Lowell Jensen
Acting Chairman

# A824

## SCHEDULE A

<u>MDL-1720 -- In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation</u>

### Northern District of California

*Rookies, Inc., et al. v. Visa U.S.A., Inc., et al.*, C.A. No. 3:05-2933
*Randall Jasperson v. Visa U.S.A., Inc., et al.*, C.A. No. 3:05-2996

### District of Connecticut

*Photos Etc. Corp., et al. v. Visa U.S.A., Inc., et al.*, C.A. No. 3:05-1007
*Tabu Salon & Spa, Inc. v. Visa U.S.A., Inc., et al.*, C.A. No. 3:05-1111
*East Goshen Pharmacy, Inc., etc. v. Visa U.S.A., Inc., et al.*, C.A. No. 3:05-1177

### Northern District of Georgia

*Animal Land, Inc. v. Visa U.S.A., Inc.*, C.A. No. 1:05-1210

### Southern District of New York

*Nucity Publications, Inc. v. Visa U.S.A., Inc., et al.*, C.A. No. 1:05-5991
*Fairmont Orthopedics & Sports Medicine, PA, et al. v. Visa U.S.A., Inc., et al.*,
  C.A. No. 1:05-6259
*Parkway Corp., et al. v. Visa U.S.A., Inc., et al.*, C.A. No. 1:05-6349
*The Kroger Co., et al. v. Visa U.S.A., Inc., et al.*, C.A. No. 1:05-6409
*Baltimore Avenue Foods, LLC v. Visa U.S.A., Inc., et al.*, C.A. No. 1:05-6532
*Broken Ground, Inc. v. Visa U.S.A., Inc., et al.*, C.A. No. 1:05-6543
*Lakeshore Interiors v. Visa U.S.A., Inc., et al.*, C.A. No. 1:05-6683
*Bonte Wafflerie, LLC, et al. v. Visa U.S.A., et al.*, C.A. No. 1:05-6708

## A825

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE                                          MASTER FILE NO. 1:05-md-1720-JG-JO

PAYMENT CARD INTERCHANGE FEE
AND MERCHANT-DISCOUNT
ANTITRUST LITIGATION

This Document Relates To: All Class Actions

| | | |
|---|---|---|
| 1:05-cv-03800 | 1:05-cv-05081 | **FIRST CONSOLIDATED AMENDED** |
| 1:05-cv-03924 | 1:05-cv-05082 | **CLASS ACTION COMPLAINT** |
| 1:05-cv-04194 | 1:05-cv-05083 | |
| 1:05-cv-04520 | 1:05-cv-05153 | **JURY TRIAL DEMANDED** |
| 1:05-cv-04521 | 1:05-cv-05207 | |
| 1:05-cv-04728 | 1:05-cv-05319 | |
| 1:05-cv-04974 | 1:05-cv-05866 | |
| 1:05-cv-04974 | 1:05-cv-05868 | |
| 1:05-cv-05069 | 1:05-cv-05869 | |
| 1:05-cv-05070 | 1:05-cv-05870 | |
| 1:05-cv-05071 | 1:05-cv-05871 | |
| 1:05-cv-05072 | 1:05-cv-05878 | |
| 1:05-cv-05073 | 1:05-cv-05879 | |
| 1:05-cv-05074 | 1:05-cv-05880 | |
| 1:05-cv-05075 | 1:05-cv-05881 | |
| 1:05-cv-05076 | 1:05-cv-05882 | |
| 1:05-cv-05077 | 1:05-cv-05883 | |
| 1:05-cv-05080 | 1:05-cv-05885 | |

America's largest banks unlawfully fix the fees charged to merchants for transactions over the Visa and MasterCard Networks and enact restrictions that prevent merchants from protecting themselves against those fees. In this Complaint, two nationwide classes of merchants seek monetary damages to compensate them for the overcharges caused by this illegal conspiracy and equitable relief to protect themselves against continuing and future harm.

Plaintiffs Affiliated Foods Midwest Cooperative, Inc.; Capital Audio Electronics, Inc.; CHS Inc.; Coborn's Incorporated; Crystal Rock LLC; D'Agostino Supermarkets; Discount

A826

Optics, Inc.; Jetro Holdings, Inc. and Jetro Cash & Carry Enterprises, Inc.; Leon's
Transmission Service, Inc.; Parkway Corp.; Payless ShoeSource, Inc.; Photos Etc.
Corporation; and Traditions, LTD. (collectively the "Merchant Plaintiffs"), American
Booksellers Association; National Association of Convenience Stores; NATSO, Inc.; National
Community Pharmacists Association; National Cooperative Grocers Association; National
Grocers Association; and National Restaurant Association (collectively the "Trade-
Association Plaintiffs") on behalf of themselves and two classes of merchants, by their
undersigned attorneys herein, allege for their Complaint against Visa U.S.A., Inc. ("Visa"),
MasterCard International Incorporated ("MasterCard"), and the other Defendants named in
this Complaint ("Bank Defendants") (collectively referred to as "Defendants").

This Complaint is set forth in three parts.  Part One relates to all claims that the
Plaintiffs assert.  Part Two relates to the First through Twelfth Claims that challenge the
collective fixing of uniform Credit Card Interchange Fees by Visa and MasterCard member
banks and the imposition of various Anti-Steering Restraints and tying, bundling, and
exclusive dealing arrangements on merchants by Defendants.  Part Three relates to the
Thirteenth through Sixteenth Claims that challenge the collective fixing of uniform Offline-
Debit-Card Interchange Fees.  The Plaintiffs' allegations are upon knowledge with respect to
their own acts and upon information and belief with respect to all other matters, as follows:

## PART ONE: ALLEGATIONS COMMON TO ALL CLAIMS

### I.

### INTRODUCTION

1.     The Merchant Plaintiffs operate commercial businesses throughout the United
States that have accepted Visa and MasterCard Credit Cards and Debit Cards as forms of

- 2 -

payment along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards.

2. The Trade-Association Plaintiffs are comprised of members that operate commercial establishments in the United States and accept Visa and MasterCard Credit Cards and Offline-Debit Cards as forms of payment along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards.

3. Together, the Plaintiffs represent two classes of millions of merchants that accept Visa and MasterCard Credit and Debit Cards as forms of payment along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards and challenge the collusive and anticompetitive practices of the Defendants under the antitrust laws of the United States and the State of California. The contracts, combinations, conspiracies, and understandings entered into by the Defendants harm competition and cause Plaintiffs and members of the Classes to pay supracompetitive, exorbitant, and fixed prices in the market for General Purpose Card Network Services and Debit Card Network Services and raise the prices paid by all of their retail customers.

4. The contracts, combinations, and conspiracies in restraint of trade, are illegal under § 1 of the Sherman Act and the California Cartwright Act. Further, the Anti-Steering Restraints and other exclusionary practices constitute illegal monopolization under § 2 of the Sherman Act.

## II.

## JURISDICTION AND VENUE

5. This Complaint is filed under § 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and for

- 3 -

# A828

damages under § 4 of the Clayton Act, 15 U.S.C. § 15. This Court has jurisdiction over Plaintiffs' federal antitrust claims under 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

6.     This Court has original jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1332. The aggregate amount in controversy for this class action exceeds $5,000,000 and less than one-third of all class members reside in New York. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

7.     Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391 and 15 U.S.C. §§ 15, 22, and 26. Several of the Merchant Plaintiffs operate retail outlets in the District. The Trade-Association Plaintiffs' members include merchants that transact business in the Eastern District of New York. Defendants transact business and are found in the Eastern District of New York. Thousands of merchants located in the Eastern District of New York accept Visa and/or MasterCard Credit Cards and Debit Cards issued by one or more Defendants and, thus, are members of the Classes. Hundreds of member banks of Visa and/or MasterCard, including many of the banks named as Defendants, issue Visa and MasterCard Credit Cards and Debit Cards and/or acquire retail merchant transactions for Visa and/or MasterCard in the Eastern District of New York. A substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on in part within the Eastern District of New York. The acts complained of have had, and will have, substantial anticompetitive effects in the Eastern District of New York.

**A829**

### III.

### <u>DEFINITIONS</u>

8.    As used in this Complaint, the following terms are defined as:

a.    "Acquiring Bank" means a member of Visa and/or MasterCard that acquires payment transactions from merchants and acts as a liaison between the merchant, the Issuing Bank, and the Payment-Card Network to assist in processing the payment transaction. Visa and MasterCard rules require that an Acquiring Bank be a party to every merchant contract. In a typical payment transaction, when a customer presents a Visa or MasterCard card for payment, the merchant relays the transaction information to the Acquiring Bank. The Acquiring Bank then contacts the Issuing Bank via the network for authorization based on available credit or funds. Acquiring Banks compete with each other for the right to acquire payment transactions from merchants.

b.    "All-Outlets Rule" is a rule of the Visa and MasterCard Networks that requires a merchant with multiple outlets to accept Visa or MasterCard, respectively, in all of its outlets, even if those outlets are owned by a separate corporate entity, operated under a different brand name, or employ a different business model.

c.    "Anti-Steering Restraints" are the rules of the Visa and MasterCard Networks that forbid merchants from incenting consumers to use less expensive payment forms, including: the No-Surcharge Rule; the policies against seeking to "steer" consumers to cheaper payment media; the No-Minimum-Purchase Rule; and the Networks' so-called "anti-discrimination rules," which prohibit merchants from treating any other Payment Card or medium more advantageously than the Defendants' cards. The Defendants' standard-form-merchant agreements proscribe steering by preventing merchants from establishing procedures that favor, discourage, or discriminate against the use of any particular Card.

d.    "Assessment" refers to an amount computed and charged by the Networks on each transaction amount to the Acquiring and Issuing Banks.

e.    "Authorization" is the process by which a merchant determines whether a cardholder is authorized by his or her Issuing Bank to make a particular transaction. The merchant sends the cardholder's information to its Acquiring Bank or a Third-Party Processor, which sends it to Visa or MasterCard, which then sends it to the issuer or the issuer's processor, to obtain authorization. If authorization is given, the process is repeated in reverse.

- 5 -

# A830

Restraints and Miscellaneous Exclusionary Restraints, and the tying, bundling and exclusive-dealing arrangements alleged herein.

## VI.

## TRADE AND INTERSTATE COMMERCE

94. The trade and interstate commerce relevant to this action is General Purpose Card Network Services and Debit Card Network Services.

95. During all or part of the Class Period, each of the Defendants, directly or through their affiliates or subsidiaries, participated in the market for General Purpose Card Network Services and Debit Card Network Services in a continuous and uninterrupted flow of interstate commerce.

96. The activities of Defendants and their co-conspirators, as described herein, were within the flow of and had a substantial effect on interstate commerce.

## VII.

## CLASS ACTION ALLEGATIONS

97. Plaintiffs represent two classes that bring this action as a Class Action under Rule 23(b)(1), (2) and (3), Fed. R. Civ. P., for violations of 15 U.S.C. §§ 1 & 2, and Cal. Bus. & Prof. Code § 16700 *et seq.*

    a. The first class, "Class I," seeks damages only for violations of 15 U.S.C. §§ 1 & 2, and Cal. Bus. & Prof. Code § 16700 *et seq.* and is defined as:

> All persons, business, and other entities that have accepted Visa and/or MasterCard Credit and/or Debit Cards in the United States at any time from and after January 1, 2004. This Class does not include the named Defendants, their directors, officers, or members of their families, or their co-conspirators.

    b. The second class, "Class II," seeks declaratory and injunctive relief only for violations of 15 U.S.C. §§ 1 & 2, and Cal. Bus. & Prof. Code § 16700 *et seq.* and is defined as:

> All persons, business and other entities, and entities that currently accept Visa and/or MasterCard Credit and/or Debit Cards in the United States. This Class does not include the named Defendants, their directors, officers, or members of their families, or their co-conspirators.

98.     Plaintiffs AFMW, Capital Audio, CHS, Coborn's, Crystal Rock, D'Agostino, Discount Optics, Jetro, Leon's Transmission, NACS, NATSO, NCPA, N.G.A., NRA, Parkway, Payless, Photos Etc., and Traditions bring this action under Federal Rules of Civil Procedure 23(a), and (b)(3), on behalf of themselves and Class I. These Plaintiffs are members of Class I, their claims are typical of the claims of the other Class I members, and Plaintiffs will fairly and adequately protect the interests of Class I. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class-action antitrust litigation. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other member of Class I.

99.     Plaintiffs Capital Audio, CHS, Coborn's, Crystal Rock, D'Agostino, Discount Optics, Jetro, Leon's Transmission, Parkway, Payless, Photos Etc., and Traditions, bring this action under F.R.C.P. 23(a) and (b)(2), on behalf of themselves and Class II. These Plaintiffs are members of Class II, their claims are typical of the claims of the other Class II members, and Plaintiffs will fairly and adequately protect the interests of Class II. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class-action antitrust litigation. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of Class II.

100.     Plaintiffs ABA, AMFW, NACS, NATSO, NCGA, NCPA, N.G.A., and NRA bring this action under F.R.C.P. 23(a) and (b)(2), on behalf of their members and Class II. These Plaintiffs' members are members of Class II, their members' claims are typical of the claims of the other Class II members, and these Plaintiffs will fairly and adequately protect

the interests of Class II. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class-action antitrust litigation. Plaintiffs' members' interests are coincident with, and not antagonistic to, those of the other members of Class II.

101. The anticompetitive conduct of Defendants alleged herein has imposed a common antitrust injury on the members of the Classes. The members of the Classes are so numerous that joinder of all members is impracticable.

102. Defendants' relationships with the members of the Classes and Defendants' anticompetitive conduct have been substantially uniform. Common questions of law and fact will predominate over any individual questions of law and fact.

103. Defendants have acted, continue to act, refused to act, and continue to refuse to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

104. There will be no extraordinary difficulty in the management of this Class Action. Common questions of law and fact exist with respect to all members of the Classes and predominate over any questions solely affecting individual members. Among the questions of law and fact common to the Classes, many of which cannot be seriously disputed, are the following:

    a.    Whether Defendants and their co-conspirators illegally fixed and continue to fix uniform Credit-Card Interchange Fees charged to merchants in the market for General Purpose Card Network Services, thereby causing the Classes to pay supracompetitive Interchange Fees and Merchant-Discount Fees;

    b.    Whether Defendants and their co-conspirators illegally fixed uniform Offline-Debit-Card Interchange Fees charged to merchants in the market for Debit Card Network Services, and, thereby caused the Classes to pay supracompetitive Offline-Debit-Card Interchange Fees and Merchant-Discount Fees;

c.    Whether Visa, MasterCard, and their members possess and exercise market power or monopoly power in the markets alleged in this Complaint;

d.    Whether Visa, MasterCard, and their dual member banks conspired with each other to fix the price of Credit-Card Interchange Fees;

e.    Whether Visa, MasterCard, and their member banks conspired with each other to fix the price of Offline-Debit-Card Interchange Fees;

f.    Whether Defendants' price-fixing arrangements are illegal under § 1 of the Sherman Act;

g.    Whether the Anti-Steering Restraints imposed by Defendants violated §§ 1 or 2 of the Sherman Act;

h.    Whether Defendants' tying and bundling practices are illegal under § 1 of the Sherman Act;

i.    Whether Defendants' exclusive-dealing practices are illegal under § 1 of the Sherman Act; and

j.    The proper measure of damages sustained by Class I as a result of the conduct described herein.

105.    This Class Action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members is not only impracticable, but impossible. The damages suffered by many members of the Classes are small in relation to the expense and burden of individual litigation, and therefore, it is highly impractical for such members of the Classes to individually attempt to redress the wrongful anticompetitive conduct alleged herein.

106.    A class virtually identical to the Classes alleged herein above was certified, and affirmed on appeal, in *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001).

## VIII.

## FACTUAL ALLEGATIONS

**A834**

107.    Visa and MasterCard (collectively the "Networks") are international bank-card Networks whose members include banks, regional-banking associations, and other financial institutions. Visa and MasterCard were established by their members to develop, promote, and operate national Credit-Card Networks.

108.    Visa and MasterCard evolved from regional and local Credit-Card systems formed during the 1960's.

109.    Visa's predecessor, Bank Americard, was the local Credit-Card program of Bank of America, then based in California.  In 1970, the program was introduced throughout the United States under the name National Bank Americard, Inc. ("NBI").  In 1977, NBI changed its name to Visa.

110.    MasterCard is the successor to Mastercharge, which was created in 1967 when the Interbank Card Association of New York banks merged with the Western States Bankcard Association.

111.    During the early years of the Visa and MasterCard Networks, merchants that accepted Credit Cards used paper forms called "drafts" to conduct transactions, which were then passed to the merchant's Acquiring Bank and transmitted through the Network to the consumer's card-issuing bank.

112.    In the mid 1980's, technology evolved such that many transactions were processed electronically and paper drafts were not needed for most Payment-Card transactions.  Since that time, the costs to Visa and MasterCard of the various components of Credit-Card-transaction processing (for example, computer hardware, telephone service, network service, and data-processing services) have decreased significantly.  These changes

- 36 -

# A835

led to significant reductions in the costs for Visa and MasterCard of processing Payment-Card transactions.

113.    Since Visa and MasterCard began operating on a national scale, use of their cards has increased dramatically.   The percentage of U.S. households with Credit Cards increased from 16% in 1970 to 76% in 2004.

114.    Since 1970, the number of Visa member banks has increased from approximately 1400 to nearly 14,000 in the United States and over 22,000 worldwide.   U.S. consumers now carry more than 429 million Visa-branded Credit-, Debit-, commercial-, and prepaid cards.

115.    MasterCard has experienced similar growth and now includes more than 23,000 member banks worldwide.   During MasterCard's 2004 fiscal year, there were 337 million MasterCard-branded cards in the United States.

116.    In 2005, the top five Visa Card-Issuing Banks accounted for 75% of all Visa Credit Card transaction volume in the United States.

117.    In 2005, the top five MasterCard Card-Issuing Banks accounted for 89% of all MasterCard Credit Card transaction volume in the United States.

118.    In 2004, 71% of Visa and MasterCard transaction volume was acquired by seven member banks.

119.    Visa and MasterCard utilized their dominance in Credit Cards to become the dominant Debit-Card networks.   Visa and MasterCard initiated their Visa Check and MasterMoney (the predecessor to MasterCard Debit) programs in 1979.   At that time, Offline-Debit-Card transactions represented only a small portion of all Payment-Card transactions.

120.    By tying their Offline-Debit Cards to their dominant Credit Cards, Visa and MasterCard increased the volume of Visa Check and MasterMoney cards to over 47 million by 1996.  By 2004, the number of Visa and MasterCard Offline-Debit Cards in circulation had grown to 228 million.

121.    The tying practices described above led to a lawsuit by a class of merchants, in which this Court granted partial summary judgment for the class and denied summary judgment for the defendants.  *In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003).

122.    The Visa and MasterCard Networks have also experienced substantial consolidation among their member banks.

123.    Unlike Payment-Card transactions in other jurisdictions, the fees imposed by banks on merchants for Payment-Card transactions in the United States are almost completely unregulated.   Thus, the General Purpose Card Network Services Market can reach an equilibrium between supply and merchants' demand for those services, only if market forces are effective.

A.    <u>Interchange Fees In The Context Of A Payment-Card Transaction</u>

124.    The Visa and MasterCard networks are standard-setting organizations in the markets for General Purpose Card Network services and Debit Card Network Services that facilitate the exchange of transaction data and funds among merchants, Acquiring Banks, Issuing Banks, and consumers.

125.    When a consumer makes a payment with a Credit- or Offline-Debit Card, the merchant sends an electronic transmission to its Acquiring Bank or Third-Party Processor. The Acquiring Bank or processor then sends an electronic transmission to the Networks.  The

# A837

Network relays the transaction to the cardholder's Issuing Bank or its Third-Party Processor, which makes a payment to the Acquiring Bank, through the Network for the purchase amount minus the Interchange Fee.  The Acquiring Bank then credits the merchant's account for the transaction amount minus the Merchant-Discount Fee.  Finally, the Issuing Bank charges the cardholder's credit account for the full amount of the purchase.  During the Grace Period between the purchase and the date payment is due from the consumer, the Issuing Bank extends free credit to the consumer.  Under this system, the Issuing Bank earns revenue from annual fees and interest charged to cardholders, as well as the amount of the Interchange Fee, while the Acquiring Bank earns revenue from the difference between the Merchant-Discount Fee and the Interchange Fee.

126.    The Bylaws of Defendant Visa U.S.A. require that all "Principal Member [Banks]," which include the Bank-Defendant members of Visa U.S.A. and the vast majority of all member banks, "[s]hall issue Cards bearing the Visa service mark."  Visa U.S.A., Bylaws § 2.04(a) (May 15, 2004).

127.    Similarly, MasterCard's Bylaw 2.9 (2005) requires that member banks "must have issued and outstanding a reasonable number of MasterCard cards."  If a member bank fails to issue the requisite number of cards, it will be assessed a penalty by the MasterCard Network.

128.    Visa and MasterCard rules also require that a member bank be a party to every merchant contract for the acceptance of Visa and MasterCard Payment Cards.  This rule applies even to merchants and banks that use Third-Party Processors.

129.    Visa and MasterCard do not use the Interchange Fee to fund their operations.  The majority of Visa and MasterCard revenues are derived from operation fees that the

- 39 -

Networks charge member banks. These fees include fees for authorization and clearing of transactions, network-access fees, and currency-conversion fees. The other substantial source of Visa and MasterCard revenues are assessments that the Networks levy on member banks.

130. The Visa and MasterCard Networks can and do perform their functions of authorizing and clearing Credit-Card transactions, acting as standard-setting entities for Credit- and Debit-Card transactions, promoting their respective Networks, and paying other operating expenses through the operations fees and assessments that their member banks pay.

131. Visa and MasterCard do not act as single entities when their member banks collectively fix Interchange Fees. Visa and MasterCard member banks — direct, horizontal competitors of each other — effectively control the decisions of both Networks. These banks do not share a unity of interest. Nor do they owe a fiduciary duty to each other or the Visa and MasterCard Networks with respect to the setting of Interchange Fees.

132. The member banks of Visa and MasterCard charge an Interchange Fee to merchants even for On-Us Transactions in which the Issuing and Acquiring Banks are the same.

133. The Bank Defendants, acting as members of Visa by and through the Visa Board of Directors, fixed and continue to fix uniform Interchange Fees for various merchants and transactions for all Visa General Purpose Card and Debit Card transactions that they agreed to impose upon merchants.

134. Those same Bank Defendants, acting by and through the Board of Directors of MasterCard, set similar uniform Interchange Fees for various merchants and transactions for all MasterCard General Purpose Card transactions that they agreed to impose upon merchants.

- 40 -

**A839**

135.    The Bank Defendants, by jointly setting Interchange Fees that they charge to merchants in the competing Visa and MasterCard Networks, ensure that the Interchange Fees of Visa and MasterCard increase in parallel and stair-step fashion, rather than decreasing in response to competition from each other.

136.    Interchange Fees were devised in the early days of the Visa and MasterCard Networks.  Interchange Fees purportedly helped pay for the costs of initial card issuance, marketing, transferring transactional paper between Acquiring- and Issuing Banks, and purportedly balanced Network costs between Issuers and Acquirers.  These early Interchange Fees were cost-based, set with the help of independent auditing firms.

137.    Credit-Card Interchange Fees were purportedly necessary in the early days of the Visa and MasterCard Networks to induce banks to issue cards to cardholders and "acquire" merchants for the Networks.

138.    Those initially proffered justifications for collectively set, uniform Credit-Card Interchange Fees are no longer valid.  The Networks no longer must transfer large numbers of paper receipts between member banks, and Interchange Fees are no longer cost-based.

139.    The collective setting of Interchange Fees neither performs the standard setting function of Visa and MasterCard, nor enables the Networks to perform that function.

140.    Unlike in the early days of the Networks, Visa and MasterCard now, jointly and separately, have market power in the market for General Purpose Card Network Services. Even in the face of frequent and significant increases in Interchange Fees, merchants have no choice but to continue to accept Visa's and MasterCard's dominant Credit Cards.  *United States v. Visa*, 163 F. Supp. 2d at 340, *aff'd*, 344 F.3d at 240.

141.   Visa and MasterCard also have market power in the market for Debit Card Network Services.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, (E.D.N.Y. Apr. 1, 2003) (finding that Visa has market power as a matter of law and that fact issues remained with respect to MasterCard).

142.   Therefore, given the ubiquity of Visa and MasterCard Payment Cards, banks now would find it in their best interest to issue Visa and MasterCard Payment Cards and acquire merchants for the Networks, even without the promise of large Interchange Fee revenues.

143.   Acquiring Banks, each of which is a participant in the conspiracies to collectively fix Interchange Fees, charge retailers a Merchant-Discount Fee for each Credit- and Debit-Card transaction completed on the Defendants' Networks.  Interchange Fees, fixed by the Visa and MasterCard member banks, are the major component of these Merchant-Discount Fees.  It would, therefore, not be feasible for Acquiring Banks to set a Merchant-Discount Fee below the Interchange Fee set by Visa and MasterCard.  For this reason, the Interchange Fee acts as a minimum Merchant-Discount Fee paid by the Plaintiffs and members of the Classes.

144.   The Visa and MasterCard Networks could function efficiently without uniform, collectively fixed Interchange Fees.  Even if the member banks of Visa and MasterCard did not fix uniform Interchange Fees, the Visa and MasterCard Networks could continue in their roles as standard-setting organizations for Payment-Card transactions.  There are many examples of similar networks that function efficiently without collectively set uniform Interchange Fees and many more examples of networks that operate efficiently with dramatically lower Interchange Fees.

145.    The collective fixing of uniform Interchange Fees is not a core function of the Visa and MasterCard Credit- and Offline-Debit Networks.  It is not reasonably necessary to the operation of the Visa and MasterCard Networks.  Even if some Interchange Fees were reasonably necessary, the collectively fixed Interchange Fee is more restrictive than is necessary to effectuate the business of Visa and MasterCard.  Other four-party, two-sided markets function efficiently without Interchange Fees, or with Interchange Fees that are dramatically less restrictive than Visa and MasterCard Credit-Card Interchange Fees.

**B.    Acquiring Banks Of Visa And MasterCard Have No Ability Or Incentive To Seek Redress For The Collective-Fixing Of Interchange Fees.**

146.    Visa U.S.A.'s Operating Regulation 1.15 specifies that "Visa has no liability of any nature to any Member arising from any cause or circumstance."  Regulation 1.15A clarifies that the liability limitation "appl[ies] to all products, programs, services, specifications, standards or other matters or items provided by [Visa and its member banks]."  Thus, if a Visa member bank determined that it was harmed by the collectively fixed Interchange Fee, Regulation 1.15A prevents it from suing Visa.

147.    MasterCard's Bylaw 1.1 states that "[e]ach member shall...hold harmless [MasterCard]...from any actual or threatened claim, demand, [or] obligation,...resulting from and/or arising in connection with...the compliance or non-compliance with the standards by the member."  Thus, if a MasterCard member bank determined that it was harmed by the collectively fixed Interchange Fee, Bylaw 1.1 prevents it from suing MasterCard.

148.    In a technical manual issued to its member banks, MasterCard states that "MasterCard shall have no liability to any member, member processor, or other person acting on behalf of the member for any loss, cost, or other damage arising out of or in connection

because they were forced to pay higher Credit-Card Interchange Fees and Merchant-Discount Fees in the market for General Purpose Card Network Services than they would have paid in the absence of the Defendants' anticompetitive conduct.

233.    These restraints on competition alleged in this Third Claim for Relief are illegal *per se*.  They are not reasonably related to the operations of the Visa and MasterCard Networks, and even if they were reasonably necessary, they are broader than necessary to effectuate the business of Visa and MasterCard.

**FOURTH CLAIM FOR RELIEF:**
**CLASS I VS. VISA AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATION OF SHERMAN ACT § 1 UNREASONABLE RESTRAINT OF TRADE BY VISA AND ITS MEMBER BANKS IN IMPOSING AND ENFORCING ANTI-STEERING RESTRAINTS**

234.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

235.    Visa has and exercises market power in the relevant markets identified above.

236.    The No-Surcharge Rule and the other Anti-Steering Restraints, imposed upon merchant plaintiffs by Visa and its member banks, represent an unlawful contract in restraint of trade in violation of Sherman Act § 1.

237.    In addition, the collective adoption and enforcement of the No-Surcharge Rule and the other Anti-Steering Restraints by Visa and its member banks constitute a contract, combination, or conspiracy in unreasonable restraint of trade.

238.    The Anti-Steering Restraints (and particularly the No-Surcharge Rule) are anticompetitive vertical restraints.  Among their anticompetitive effects are the inflationary pressure they exert on consumer goods and services, the compulsion of subsidies running from users of low-cost payment media to users of Defendants' high-cost payment media, the

# A843

entrenchment of Defendants' market positions, and the insulation of Defendants from any competitive threat from a rival offering cheaper or more efficient Payment Card services.

239.    No procompetitive justifications exist for the Anti-Steering Restraints.

240.    As a direct and foreseeable result of Defendants' willful imposition of the Anti-Steering Restraints, the Classes have suffered damages to their business and property.

**FIFTH CLAIM FOR RELIEF:**
**CLASS I VS. MASTERCARD AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATION OF SHERMAN ACT § 1 UNREASONABLE RESTRAINT OF TRADE BY MASTERCARD AND ITS MEMBER BANKS IN IMPOSING AND ENFORCING ANTI-STEERING RESTRAINTS**

241.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

242.    MasterCard has and exercises market power in the relevant markets identified above.

243.    The No-Surcharge Rule and other Anti-Steering Restraints, imposed upon merchant plaintiffs by MasterCard and its member banks, represent an unlawful contract in restraint of trade in violation of Sherman Act § 1.

244.    In addition, the collective adoption and enforcement of the No-Surcharge Rule and other Anti-Steering Restraints by MasterCard and its member banks constitute a contract, combination, or conspiracy in unreasonable restraint of trade.

245.    The Anti-Steering Restraints (and particularly the No-Surcharge Rule) are anticompetitive vertical restraints.  Among their anticompetitive effects are the inflationary pressure they exert on consumer goods and services, the compulsion of subsidies running from users of low cost payment media to users of Defendants' high cost payment media, the

A844

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER FILE NO. CV-96-5238
(Gleeson, J.) (Mann, M.J.)

IN RE VISA CHECK/MASTERMONEY
ANTITRUST LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement" or "Agreement") is made as of the 4th day of June 2003, by Defendant Visa U.S.A. Inc. ("Visa") and Plaintiffs in In Re Visa Check/MasterMoney Antitrust Litigation, No. 96-CV-5238 (JG), a Class Action (the "Class Action" or "Action"), on behalf of each and every member of the Class defined herein (collectively, the "Plaintiffs" or "Class Members").

WHEREAS the first of the complaints comprising this Action was filed on October 25, 1996;

WHEREAS, by Order dated December 27, 1996, the Court (i) consolidated the original complaint with numerous additional complaints filed subsequent to the filing of the original complaint alleging similar or identical claims against Visa and MasterCard International Incorporated ("MasterCard"), and (ii) designated the law firms of Constantine & Partners ("C&P") and Hagens Berman ("HB") as Plaintiffs' Co-Lead Counsel.

WHEREAS the operative complaint in this Action, the Second Amended Consolidated Class Action Complaint and Jury Demand (the "Complaint"), was filed on May 26, 1999;

1

# A846

financing using the Settlement Fund. Plaintiffs shall reimburse Visa from the Settlement Fund for Visa's reasonable costs in connection with such assistance. Such assistance shall include, but not be limited to, providing to appropriate parties, on a confidential basis, reasonable information and documents and reasonably cooperating with rating agencies (such as Standard and Poors and Moody's) to rate any financial instrument that may be issued to facilitate the sale, assignment, securitization, or the use for financing of the Settlement Fund. Visa agrees to deliver Settlement Fund payments to either (i) the Settlement Fund Account, or (ii) an account of any trustee, paying agent or other entity designated by Plaintiffs' Co-Lead Counsel in order to effect the sale, assignment, securitization or the use for financing of the Settlement Fund, provided, however, that any such account referenced in (ii) above shall also qualify as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1. Such payment instructions may be modified by Plaintiffs' Co-Lead Counsel from time to time as may be required and upon reasonable notice to Visa (provided that any new account designated shall also qualify as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1).

## **Visa's Commitments**

Unbundling of Debit and Credit

4.     (a)     Visa shall adopt rules that will, effective January 1, 2004, unbundle, and Visa agrees not to bundle in the future, merchant acceptance of Visa POS Debit Devices and merchant acceptance of any Other Visa Products. "Unbundle" as used herein means that Visa shall not require that as a condition of accepting Other Visa Products, merchants must accept Visa POS Debit Devices, and vice versa.

12

(b)      These rules shall provide that, commencing January 1, 2004, with respect to any contract existing on that date under which a merchant accepts Visa Branded Products: (i) merchants may choose to stop accepting Visa POS Debit Devices by providing no less than thirty (30) days advance written notice to their acquirers (which may be given prior to January 1, 2004); and (ii) merchants may choose to stop accepting Other Visa Products by providing no less than thirty (30) days advance written notice to their acquirers (which may be given prior to January 1, 2004).  The rules shall further provide that merchants who want to begin accepting Visa Branded Products  after January 1, 2004 will be free to accept Visa POS Debit Devices only, Other Visa Products only, or both Visa POS Debit Devices and Other Visa Products.

(c)      These rules shall also require that any contract used by an acquirer with any merchant shall provide the clear option (including a statement of applicable merchant discount rates by product) for the merchant to elect to accept Visa POS Debit Devices, Other Visa Products, or both.

(d)      Visa shall immediately require that, from August 1, 2003 through January 1, 2004, acquirers provide, in their regular communications with merchants, but no more often than monthly, clear and conspicuous notice to merchants that as of January 1, 2004 they will have the right to (i) accept Visa POS Debit Devices without accepting Other Visa Products, and (ii) accept Other Visa Products without accepting Visa POS Debit Devices.  Attached hereto as Exhibit I is an exemplar of the notice that will be provided under this provision.

(e)      Nothing herein shall prevent Visa from adopting and enforcing an Honor All Cards rule that requires merchants who choose to accept any Visa POS Debit

Device to accept all, or any subset of, Visa POS Debit Devices.  However, nothing in this Agreement requires any merchant to purchase or install a PIN pad in order to continue to accept Visa POS Debit Devices which are authorized by signature.  Nor do Plaintiffs agree that anything in this Agreement or otherwise, including the Honor All Cards rule for Visa POS Debit Devices contemplated in this paragraph, permits Visa to apply any honor all cards rule to require merchants to install a PIN pad in order to continue accepting Visa POS Debit Devices which are authorized by signature.

(f)     Nothing herein shall prevent Visa from adopting and enforcing an Honor All Cards rule that requires merchants who choose to accept any Other Visa Product to accept all, or any subset of, Other Visa Products.

(g)     On or about June 30, 2003 and on or about December 31, 2003, Visa shall provide Plaintiffs' Co-Lead Counsel with notice of any Visa products, devices, programs, or services that Visa then currently expects to offer by December 31, 2004 that would qualify as either a Visa POS Debit Device or an Other Visa Product (or a multi-function Visa Branded Product as described below) that are not identified on Exhibits G and E.  Such notice will be provided by letter to Plaintiffs' Co-Lead Counsel; this information shall not be used for any purpose other than the enforcement or interpretation of this Agreement and shall not be disclosed to anyone other than those employees of the named Plaintiffs to whom such disclosure is necessary for that purpose.

(h)     If Visa offers a Visa Branded Product that incorporates the payment functions of both a Visa POS Debit Device and an Other Visa Product, a merchant will be free to accept the Visa POS Debit Device payment function only, the Other Visa Product payment function only, or both the Visa POS Debit Device and Other

14

# A849

Visa Product payment functions, consistent with the terms set forth in paragraph 4.  Any such multi-function Visa Branded Product will satisfy, so far as practicable, the requirements for the clear and conspicuous identifier and unique electronic identity, consistent with the terms set forth in paragraphs 5 and 7 below, that would enable merchants to identify visually any such Visa Branded Product and to identify electronically its different payment functions.  Visa shall provide Plaintiffs' Co-Lead Counsel within sixty (60) days before it is implemented written notice of the unique identifier (*e.g.,* "Relationship Card") that would be used to denote the multi-function nature of such a product.

Clear and Conspicuous Debit Identifier

5.      (a)      Visa shall implement rules, effective January 1, 2004, requiring issuers in the United States to place on the face of all Visa POS Debit Devices, subject to section (b) below, the debit identifier "CHECK CARD."  This debit identifier must be clear and conspicuous and used consistently and uniformly on all Visa POS Debit Devices.  Specifically, the preceding sentence shall require that for all Visa POS Debit Devices, the debit identifier be in at least 11 point font, all capital letters, placed in the identical location in the upper right portion of the card immediately above the Visa hologram, in a color clearly contrasted with the background color over which the debit identifier is laid, and clearly separate from any other wordmark or symbol on the card.  Notwithstanding the foregoing, Visa shall have the right after execution of the Agreement, but before October 1, 2003, to propose an equally or more clear, conspicuous, consistent and uniform alternative scheme for displaying a debit identifier on the card based on conclusions from market research, and Plaintiffs' Co-Lead Counsel

15

**A850**

# EXHIBIT 4

# A851

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE VISA CHECK/MASTERMONEY
ANTITRUST LITIGATION

MASTER FILE NO. CV-96-5238
(Gleeson, J.) (Mann, M.J.)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement" or "Agreement") is made as of the 4th day of June 2003, by Defendant MasterCard International, Incorporated ("MasterCard") and Plaintiffs in In Re Visa Check/MasterMoney Antitrust Litigation, No. 96-CV-5238 (JG), a Class Action (the "Class Action" or "Action"), on behalf of each and every member of the Class defined herein  (collectively, the "Plaintiffs" or "Class Members").

WHEREAS the first of the complaints comprising this Action was filed on October 25, 1996;

WHEREAS, by Order dated December 27, 1996, the Court (i) consolidated the original complaint with numerous additional complaints filed subsequent to the filing of the original complaint alleging similar or identical claims against MasterCard and Visa U.S.A. Inc. ("Visa"), and (ii) designated the law firms of Constantine & Partners ("C&P") and Hagens Berman ("HB") as Plaintiffs' Co-Lead Counsel.

WHEREAS the operative complaint in this Action, the Second Amended Consolidated Class Action Complaint and Jury Demand (the "Complaint"), was filed on May 26, 1999;

WHEREAS, the Complaint alleges, among other things, that MasterCard has violated the Sherman Act (15 U.S.C. §§ 1 and 2) based on the following claims, among others: (i) MasterCard has illegally tied merchant acceptance of its debit card services to merchant

financing using the Settlement Fund, they must apply to the Court for approval, upon

notice to MasterCard.  MasterCard will not oppose any such application and will provide

reasonable assistance to Plaintiffs in the event Plaintiffs seek to sell, assign, securitize, or

obtain financing using the Settlement Fund.  Plaintiffs shall reimburse MasterCard from

the Settlement Fund for MasterCard's reasonable costs in connection with such

assistance.  Such assistance shall be limited to reasonably cooperating in providing

information necessary for credit rating purposes.  MasterCard agrees to deliver

Settlement Fund payments to either (i) the Settlement Fund Account, or (ii) an account of

any trustee, paying agent or other entity designated by Plaintiffs' Co-Lead Counsel in

order to effect the sale, assignment, securitization or the use for financing of the

Settlement Fund, provided, however, that any such account referenced in (ii) above shall

also qualify as, and shall not disqualify the Settlement Fund Account as, a Qualified

Settlement Fund within the meaning of Treasury Regulation § 1.468B-1.  Such payment

instructions may be modified by Plaintiffs' Co-Lead Counsel from time to time as may be

required and upon reasonable notice to MasterCard (provided that any new account

designated shall also qualify as, and shall not disqualify the Settlement Fund Account as,

a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1).

### **MasterCard's Commitments**

Unbundling of Debit and Credit

      4.      (a)      MasterCard shall adopt rules in the continental United States (and

Alaska and Hawaii) that will, effective January 1, 2004, unbundle, and MasterCard

agrees not to bundle in the future, merchant acceptance of MasterCard POS Debit

Devices and merchant acceptance of any Other MasterCard Products.  "Unbundle" as

12

used herein means that MasterCard shall not require that as a condition of accepting Other MasterCard Products, merchants must accept MasterCard POS Debit Devices, and vice versa.

       (b)     These rules shall provide that, commencing January 1, 2004, with respect to any contract existing on that date under which a merchant accepts MasterCard Branded Products: (i) merchants may choose to stop accepting MasterCard POS Debit Devices by providing no less than thirty (30) days advance written notice to their acquirers (which may be given prior to January 1, 2004); and (ii) merchants may choose to stop accepting Other MasterCard Products by providing no less than thirty (30) days advance written notice to their acquirers (which may be given prior to January 1, 2004). The rules shall further provide that merchants who want to begin accepting MasterCard Branded Products after January 1, 2004 will be free to accept MasterCard POS Debit Devices only, Other MasterCard Products only, or both MasterCard POS Debit Devices and Other MasterCard Products.

       (c)     These rules shall also require that any contract used by an acquirer with any merchant shall provide the clear option (including a statement of applicable merchant discount rates by product) for the merchant to elect to accept MasterCard POS Debit Devices, Other MasterCard Products, or both.

       (d)     MasterCard shall require that, from August 1, 2003 through January 1, 2004, acquirers provide, in any regular communications with merchants, but no more often than monthly, clear and conspicuous notice to merchants that as of January 1, 2004 they will have the right to (i) accept MasterCard POS Debit Devices without accepting Other MasterCard Products, and (ii) accept Other MasterCard Products without

13

accepting MasterCard POS Debit Devices.  On or before July 1, 2003, MasterCard will provide Plaintiffs' Co-Lead Counsel an exemplar of its communication to its acquirers requiring compliance with this provision.

(e)     Nothing herein shall prevent MasterCard from adopting and enforcing an Honor All Cards rule that requires merchants who choose to accept any MasterCard POS Debit Device to accept all, or any subset of, MasterCard POS Debit Devices.  However, nothing in this Agreement requires any merchant to purchase or install a PIN pad in order to continue to accept MasterCard POS Debit Devices which are authorized by signature. The parties agree that nothing in this Agreement or otherwise, including the Honor All Cards rule for MasterCard POS Debit Devices contemplated in this paragraph, permits MasterCard to apply any honor all cards rule to require merchants to install a PIN pad in order to continue accepting MasterCard POS Debit Devices which are authorized by signature.

(f)     Nothing herein shall prevent MasterCard from adopting and enforcing an Honor All Cards rule that requires merchants who choose to accept any Other MasterCard Product to accept all, or any subset of, Other MasterCard Products.

(g)     On or about June 30, 2003, December 31, 2003, June 30, 2004, and December 31, 2004, MasterCard shall provide Plaintiffs' Co-Lead Counsel with written notice of any MasterCard products, devices, programs, or services that MasterCard is then offering or has announced it will offer to issuers that would qualify as either a MasterCard POS Debit Device or an Other MasterCard Product (or a multi-function MasterCard Branded Product as described below) that are not identified on Exhibits A and G as either a MasterCard POS Debit Device or an Other MasterCard Product.

# A855

(h)     If MasterCard offers in the United States a MasterCard Branded Product that incorporates the payment functions of both a MasterCard POS Debit Device and an Other MasterCard Product, a merchant will be free to accept the MasterCard POS Debit Device payment function only, the Other MasterCard Product payment function only, or both the MasterCard POS Debit Device and Other MasterCard Product payment functions, consistent with the provisions of this Agreement.  Any such multi-function MasterCard Branded Product will satisfy, so far as practicable, the requirements for the clear and conspicuous identifier and unique electronic identity, consistent with the terms set forth in paragraphs 5 and 7 below, that would enable merchants to identify any such MasterCard Branded Product and its different payment functions.  MasterCard shall provide Plaintiffs' Co-Lead Counsel within sixty (60) days before it is implemented written notice of the unique identifier (*e.g.,* "Relationship Card") that would be used to denote the multi-function nature of such a product.

Clear and Conspicuous Debit Identifier

5.     (a)     On or before January 1, 2004, MasterCard shall implement rules requiring issuers in the United States to place on the face of a MasterCard POS Debit Device the word "Debit" in clear and conspicuous letters, or another term, name or mark, so long as the word, term, name or mark is used consistently and uniformly for all MasterCard POS Debit Devices.  MasterCard shall provide Plaintiffs' Co-Lead Counsel within 30 days before they become effective, and in no event later than December 1, 2003 (i) a copy of the rules adopted by MasterCard that implement the design requirements of this paragraph, and (ii) an exemplar of a MasterCard POS Debit Device that complies with the rules.

**A856**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | MASTER FILE NO. 1:05-md-1720-JG-JO |
| PAYMENT CARD INTERCHANGE FEE<br>AND MERCHANT-DISCOUNT<br>ANTITRUST LITIGATION | |
| This Document Relates To:  All Class Actions | |

| | | |
|---|---|---|
| 1:05-cv-03800 | 1:05-cv-05081 | **FIRST AMENDED SUPPLEMENTAL** |
| 1:05-cv-03924 | 1:05-cv-05082 | **CLASS ACTION COMPLAINT** |
| 1:05-cv-04194 | 1:05-cv-05083 | |
| 1:05-cv-04520 | 1:05-cv-05153 | **JURY TRIAL DEMANDED** |
| 1:05-cv-04521 | 1:05-cv-05207 | |
| 1:05-cv-04728 | 1:05-cv-05319 | |
| 1:05-cv-04974 | 1:05-cv-05866 | |
| 1:05-cv-04974 | 1:05-cv-05868 | |
| 1:05-cv-05069 | 1:05-cv-05869 | |
| 1:05-cv-05070 | 1:05-cv-05870 | |
| 1:05-cv-05071 | 1:05-cv-05871 | |
| 1:05-cv-05072 | 1:05-cv-05878 | |
| 1:05-cv-05073 | 1:05-cv-05879 | |
| 1:05-cv-05074 | 1:05-cv-05880 | |
| 1:05-cv-05075 | 1:05-cv-05881 | |
| 1:05-cv-05076 | 1:05-cv-05882 | |
| 1:05-cv-05077 | 1:05-cv-05883 | |
| 1:05-cv-05080 | 1:05-cv-05885 | |

## I.

## <u>PREAMBLE</u>

1.      Plaintiffs' allegations in this First Amended Supplemental Class Action Complaint ("Amended Supplemental Complaint") are directed at the conduct of MasterCard and its Member Banks in events leading up to and culminating in its Initial Public Offering ("IPO") on May 25, 2006.  Plaintiffs bring claims under the antitrust laws and for fraudulent conveyance.

2.      The MasterCard Member Banks that controlled MasterCard (hereinafter "Member Banks") transformed MasterCard from a privately held stock company—owned and governed

- 1 -

representation, the largest Member Banks continue to exercise undue influence and effective control in the day-to-day business of MasterCard.

d.  Before the Restructuring, MasterCard recognized that Merchant class action antitrust litigation (such as MDL No. 1720) threatened "ruinous liability" of as much as $200 billion.  (Garabedian Exh. 34029A, Hanft Exh. 28216.)  As a result, New MasterCard's single most important business decision is how to resolve the pending Merchant antitrust class action in a way that will preserve New MasterCard's business.  However, the MasterCard Member Banks caused Old MasterCard to surrender the right of New MasterCard to assess its Member Banks to cover its liabilities.  This means that MasterCard's fate remains in the hands of the Member Banks who alone have the resources to resolve this litigation in a way that would preserve New MasterCard's business.  Without the resources of its Member Banks, MasterCard would surely become insolvent in the event of a judgment in favor of the Class Plaintiffs in MDL 1720.

e.  Even though New MasterCard could, in theory, collect Interchange Fees from Merchants and keep that substantial revenue, it has not done so.  Rather, the Board of Directors of New MasterCard, has continued to use Interchange Fees to redistribute wealth from Merchants to Issuing Banks.

f.  The current New MasterCard Board of Directors undoubtedly understands that it lacks the resources to fund a significant adverse litigation judgment or settlement, such as this action (MDL 1720) without the consent of the Member Banks.  Post-IPO, the largest Member Banks have retained sufficient control over MasterCard to prevent it from settling this action on terms that involve lowering Interchange Fees.  Thus, even if MasterCard is highly motivated to resolve the pending litigation, it cannot do so without the consent of its largest Member Banks.

g.  
.

150.    The Restructuring adopted by MasterCard is akin to the members of a cartel who, having been caught fixing prices in violation of the Sherman Act, have spun-off their competing

# A858

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | MASTER FILE NO. 1:05-md-1720-JG-JO |
| PAYMENT CARD INTERCHANGE FEE AND MERCHANT-DISCOUNT ANTITRUST LITIGATION | |

This Document Relates To:  All Class Actions

| | | |
|---|---|---|
| 1:05-cv-03800 | 1:05-cv-05081 | **SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| 1:05-cv-03924 | 1:05-cv-05082 | |
| 1:05-cv-04194 | 1:05-cv-05083 | |
| 1:05-cv-04520 | 1:05-cv-05153 | **JURY TRIAL DEMANDED** |
| 1:05-cv-04521 | 1:05-cv-05207 | |
| 1:05-cv-04728 | 1:05-cv-05319 | |
| 1:05-cv-04974 | 1:05-cv-05866 | |
| 1:05-cv-04974 | 1:05-cv-05868 | |
| 1:05-cv-05069 | 1:05-cv-05869 | |
| 1:05-cv-05070 | 1:05-cv-05870 | |
| 1:05-cv-05071 | 1:05-cv-05871 | |
| 1:05-cv-05072 | 1:05-cv-05878 | |
| 1:05-cv-05073 | 1:05-cv-05879 | |
| 1:05-cv-05074 | 1:05-cv-05880 | |
| 1:05-cv-05075 | 1:05-cv-05881 | |
| 1:05-cv-05076 | 1:05-cv-05882 | |
| 1:05-cv-05077 | 1:05-cv-05883 | |
| 1:05-cv-05080 | 1:05-cv-05885 | |

## I.  PREAMBLE

1.      For more than 40 years America's largest banks have fixed the fees imposed on

Merchants for transactions processed over the Visa and MasterCard Networks and have collectively

imposed restrictions on Merchants that prevent them from protecting themselves against those fees.

Despite the Networks' and the banks' recent attempts to avoid antitrust liability by re-structuring

the Visa and MasterCard corporate entities, their conduct continues to violate the Sherman Act.  In

this Complaint, two nationwide classes of Merchants seek monetary damages to compensate them

for the overcharges caused by this illegal conspiracy and equitable relief to protect themselves

**A859**

acts and upon information and belief with respect to all other matters.

## PART ONE: ALLEGATIONS COMMON TO ALL CLAIMS

### I.

### INTRODUCTION

1.      The Merchant Plaintiffs operate commercial businesses throughout the United States that have accepted Visa and MasterCard Credit Cards, Offline Debit Cards, and Interlink PIN-Debit Cards as forms of payment, along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards.

2.      The Trade-Association Plaintiffs are each comprised of members that operate commercial establishments in the United States which accept Visa and MasterCard Credit Cards and Offline Debit Cards and/or Interlink PIN-Debit Cards as forms of payment along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards.

3.      Together, the Merchant Plaintiffs and the Trade-Association Plaintiffs (hereinafter "Plaintiffs") represent two classes of millions of Merchants that accept Visa and MasterCard Credit and Offline Debit Cards and Interlink PIN-Debit Cards as forms of payment, and challenge the collusive and anticompetitive practices of the Defendants under the antitrust laws of the United States and the State of California.  The contracts, combinations, conspiracies, and understandings entered into by the Defendants harm competition and impose upon Plaintiffs and Class Members supracompetitive, exorbitant, and collectively-fixed prices in the Relevant Markets defined herein.

4.      The contracts, combinations, and conspiracies in restraint of trade, are illegal under Section 1 of the Sherman Act and the California Cartwright Act.  Further, the Anti-Steering Restraints and other exclusionary practices constitute illegal monopolization under Section 2 of the Sherman Act.

- 3 -

**A860**

## II.

## JURISDICTION AND VENUE

5.      This Complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. Section 26, to prevent and restrain violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and for damages under § 4 of the Clayton Act, 15 U.S.C. § 15.   This Court has jurisdiction over Plaintiffs' federal antitrust claims under 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

6.      This Court has original jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1332.  The aggregate amount in controversy for this class action exceeds $5,000,000 and less than one-third of all class members reside in New York.  This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

7.      Venue in the Eastern District of New York is proper under 28 U.S.C. §§ 1391, 1407 and 15 U.S.C. §§ 15, 22, and 26.  Several of the Merchant Plaintiffs operate retail outlets in the District.  The Trade-Association Plaintiffs' members include Merchants that transact business in this District.  Defendants transact business and are found in the Eastern District of New York. Thousands of Merchants located in the Eastern District of New York accept Visa and/or MasterCard Credit Cards and Debit Cards issued by one or more Defendants and, thus, are Class Members.  Hundreds of Visa and/or MasterCard Member Banks, including many of the banks named as Defendants, issue Visa and MasterCard Credit Cards and Debit Cards and/or acquire retail Merchant transactions for Visa and/or MasterCard in the Eastern District of New York.  A substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on in part within the Eastern District of New York.  The acts complained of have had, and will have, substantial anticompetitive effects in the Eastern District of New York.

- 4 -

# A861

## III.

## DEFINITIONS

8.      As used in this Complaint, the following terms are defined as:

      a.      "Access Device" means any device, including but not limited to a Payment Card or microchip, that may be used by a consumer to initiate a General Purpose Card or Debit Card transaction.

      b.      "Acquiring Bank" or "Acquirer" means a member of Visa and/or MasterCard that acquires payment transactions from Merchants and acts as a liaison between the Merchant, the Issuing Bank, and the Payment-Card Network to assist in processing the payment transaction. Visa and MasterCard rules require that an Acquiring Bank be a party to every Merchant contract.  In a typical payment transaction, when a customer presents a Visa or MasterCard card for payment, the Merchant relays the transaction information to the Acquiring Bank. The Acquiring Bank then contacts the Issuing Bank via the network for authorization based on available credit or funds.  Acquiring Banks compete with each other for the right to acquire payment transactions from Merchants but do not compete on the basis of the interchange fee, which is the subject of this Complaint.

      c.      "All-Outlets Rule" is a rule of the Visa and MasterCard Networks that requires a Merchant with multiple outlets to accept Visa or MasterCard, respectively, in all of its outlets, even if those outlets are owned by a separate corporate entity, operated under a different brand name, or employ a different business model in order for the Merchant to receive the interchange rates for which the Merchant would ordinarily qualify.

      d.      "Anti-Steering Restraints" are the rules of the Visa and MasterCard Networks that forbid Merchants from incenting consumers to use less expensive payment forms, including: the No-Surcharge Rule; the No-Minimum-Purchase Rule; and the Networks' so-called "anti-discrimination rules," which prohibit Merchants from treating any other Payment Card or medium more advantageously than the Defendants' cards.  The Defendants' standard-form-Merchant agreements proscribe steering by preventing Merchants from establishing procedures that favor, discourage, or discriminate against the use of any particular Card.

      e.      "Assessment" refers to an amount computed and charged by the Networks on each transaction amount to the Acquiring and Issuing Banks.

      f.      "Authorization" is the process by which a Merchant determines

- 5 -

# A862

whether a cardholder is authorized by his or her Issuing Bank to make a particular transaction. The Merchant sends the cardholder's information to its Acquiring Bank or a Third-Party Processor, which sends it to Visa or MasterCard, which then sends it to the issuer or the issuer's processor, to obtain authorization.  If authorization is given, the process is repeated in reverse.

g.    "Charge Card" or "Travel & Entertainment Card" (T&E) is an access device, usually a Payment Card, enabling the holder to purchase goods and services on credit to be paid on behalf of the holder by the issuer of such device. Typically, the contractual terms of such cards require that payment from the holder to the issuer be made in full each month, for all payments made on behalf of the cardholder by the issuer during the preceding month. The issuer does not extend credit to the holder beyond the date of the monthly statement, nor does it impose interest charges on the balance due except as a penalty for late payment. Examples of Charge Cards are the American Express Green, Gold, Platinum, and Centurion cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

h.    "Credit Card" is an access device, usually a Payment Card, enabling the holder to (i) effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such devices; or (ii) obtain cash with credit extended by the issuer.  Credit Cards permit consumers to borrow the money for a retail purchase from the card issuer and to repay the debt over time, according to the provisions of a revolving-credit agreement between the cardholder and the issuer.  Examples of Credit Cards are the Visa and MasterCard Credit Cards issued by members of the Defendant Bank card networks, as well as the Discover and Private Issue cards issued by Morgan Stanley, Dean Witter & Co., and the Optima and Blue-type cards issued by American Express.  Proprietary cards of individual Merchants for use only at particular Merchants' outlets are not included in this definition.

i.    "Debit Card" is an access device, usually a Payment Card, enabling the holder, among other things, to effect a cash withdrawal from the holder's depository bank account, either at an Automated Teller Machine ("ATM") or a point of sale.

j.    "Float" refers to the expense the Issuing Bank incurs by extending interest-free credit to the consumer for the Grace Period between the date of purchase and the date of payment.

k.    "General Purpose Cards" collectively refers to Credit Cards and Charge Cards.

- 6 -

l.   "Grace Period" refers to the time between a consumer's purchase and the date on which the consumer's payment is due to the Issuing Bank, during which time the consumer pays no interest.

m.   The "Honor All Cards" Rules are rules of the Visa and MasterCard Networks that require any Merchant that accepts Visa or MasterCard Credit Cards to accept all Credit Cards that are issued on that Network, and the rules of the Visa and MasterCard Networks that require any Merchant that accepts Visa or MasterCard Debit Cards to accept all Debit Cards that are issued on that Network.

n.   "Interchange Fee" in the United States General Purpose Card Network Services and Debit Card Network Services markets means a fee that Merchants pay to the Issuing Bank through the Network and the Acquiring Bank for each retail transaction in which the Issuer's card is used as a payment device at one of the Acquirer's Merchant accounts. The Interchange Fee is deducted by the Issuing Bank from amounts otherwise owed to Class Members on Payment Card transactions, and constitutes a component of and a floor for the Merchant-Discount Fee. The following example illustrates how the Visa and MasterCard Interchange Fees work. A customer presents a Visa or MasterCard card to a Merchant as a payment method. The Merchant contacts the Acquiring Bank, itself or through a Third-Party Processor, to authorize the transaction. The Acquiring Bank submits the transaction to the Network. The Network relays the transaction information to the Issuing Bank or the Issuing Bank's Third-Party Processor, which approves the transaction if the customer has a sufficient line of credit or available funds. If the transaction is authorized through the Network, the Issuing Bank pays the Acquiring Bank the payment amount minus the "Interchange Fee," which is fixed by the Member Banks of Visa and MasterCard. The Acquiring Bank then pays the Merchant the payment amount minus the Interchange Fee and other charges for processing the transaction. The total fee charged the Merchant is often referred to as the "Merchant-Discount Fee." The Interchange Fee is the largest component of the Merchant-Discount Fee. Visa Interchange Fees are fixed periodically by Visa Member Banks, acting through the Visa Board of Directors. MasterCard Interchange Fees are fixed periodically by the MasterCard Member Banks, acting through the MasterCard Board of Directors. "Merchant-Discount Fee" means the total amount that the Merchant, such as one of the Class members, pays to its Acquiring Bank for each transaction involving a Visa or MasterCard credit or Offline Debit Card.

o.   "Intra-Processed Transactions" are transactions in which the Issuing Bank and Acquiring Bank or Merchant processes transactions through the same Third-Party Processor.

- 7 -

p.    "Issuing Bank" or "Issuer" means a member of Visa and/or MasterCard that issues Visa and/or MasterCard branded Payment Cards to consumers for their use as payment systems and access devices. Issuing Banks compete with each other to issue Visa and MasterCard cards to consumers.  Visa and MasterCard rules require that all Member Banks issue, respectively, Visa and MasterCard Payment Cards.

q.    "Merchant" means an individual, business, or other entity that accepts payments in exchange for goods or services rendered, as donations, or for any other reason.

r.    "Merchant-Discount Fee" is the total sum that is deducted from the amount of money a Merchant receives in the settlement of Visa and/or MasterCard transactions.  The largest component of the Merchant-Discount Fee is the Interchange Fee.

s.    "Miscellaneous Exclusionary Restraints" refer collectively to the All-Outlets Rule, the No-Bypass Rule, and the No-Multi-Issuer Rule.

t.    "Network Services" means the services and infrastructure that Visa and MasterCard and their members provide to Merchants through which payment transactions are conducted, including authorization, clearance, and settlement of transactions, and those similar services offered by American Express and Discover.  As they currently are offered by Visa and MasterCard and their Member Banks, Network Services include Network-Processing Services and the Visa and MasterCard Payment-Card Systems that facilitate acceptance of Visa and MasterCard Payment Cards by Merchants.  "Network Services" are sometimes referred to as "Card Acceptance Services" as they relate to Merchants.

u.    "Network-Processing Services" are the services that are or may be used for authorizing, clearing, and settling Visa and MasterCard Credit and Debit Card transactions.

v.    "No-Minimum-Purchase Rule" is a rule of the Visa and MasterCard Networks that prohibits Merchants from imposing minimum-purchase amounts for Visa and MasterCard Credit-Card purchases.

w.    "No-Bypass Rule" is a rule of the Visa and MasterCard Networks that prohibits Merchants and Member Banks from bypassing the Visa or MasterCard system (thereby avoiding the supracompetitive Interchange Fees) in order to clear, authorize, or settle Credit Card transactions even if the Issuing and Acquiring Banks are the same, or even if a Third-Party Processor has agreements with both the Issuing and Acquiring Banks on any given transaction.

80059596.16

# A865

x.  "No-Multi-Issuer Rule" is a rule of the Visa and MasterCard Networks respectively, that prohibits Visa and MasterCard transactions from also being able to be processed over other Networks.

y.  "No-Surcharge Rule" is a rule of the Visa and MasterCard Networks that forbids Merchants from charging cardholders a surcharge on their Payment-Card transactions to reflect cost differences among various payment methods.   For example, Merchants are prohibited from surcharging cardholders who use a Visa Credit Card rather than a Discover-branded Credit Card, or use a Premium Credit Card rather than a standard Credit Card, or use a Credit Card rather than another form of payment.

z.  "Offline Signature Debit Card" or "Offline Debit Card" is a Debit Card with which the cardholder authorizes a withdrawal from his or her bank account usually by presenting the card at the POS and signing a receipt. Offline Signature Debit Card transactions are processed as Credit Card transactions.   Examples of Offline Signature Debit Cards include Visa's "Visa Check" product and MasterCard's "Debit MasterCard" product.

aa.  "Online PIN-Debit Card" or "PIN-Debit Card" is a Debit Card with which the cardholder authorizes a withdrawal from his or her bank account by swiping her card at the POS and entering a Personal Identification Number ("PIN").  PIN-Debit Card networks grew out of regional ATM networks and are therefore processed differently than Offline transactions.  Examples of Online PIN-Debit Card networks include Interlink, Maestro, NYCE, and Pulse.

bb.  A "Premium Card" is a General Purpose Card that carries a higher Interchange Fee than a Standard Card and is required by a network to carry a certain level of rewards or incentives to the cardholder.  Visa's "Signature" and "Traditional Rewards" card products and MasterCard's "World" card product are examples of Premium Cards.

cc.  "On-Us Transactions" are transactions in which the Acquiring Bank and the Issuing Bank are the same.  Even when the Issuing and Acquiring Banks are identical, Visa and MasterCard require that the Issuing Bank charge an Interchange Fee to the Merchant.

dd.  "Payment Card" refers to a plastic card that enables consumers to make purchases from Merchants that accept the consumer's Payment Card. The term "Payment Card" refers to several different types of cards, including, General-Purpose Cards, Debit Cards, Travel & Entertainment Cards, stored-value cards, and Merchant-proprietary cards.

- 9 -

ee.     Although "Payment Cards" are a subset of "Access Devices," the two terms are used interchangeably herein, because despite evolving technology, Payment Cards continue to constitute the vast majority of Access Devices.

ff.     "Payment-Card-System Services" means the standard-setting functions performed by Payment-Card Networks.     Payment-Card-System Services encompasses the brand of the particular card program, the rules and protocols for providing Merchant acceptance of and conducting Payment-Card transactions under that brand, and the rules and protocols for conducting transactions under that brand.  The four leading providers of Payment-Card-System Services are Visa, MasterCard, Discover, and American Express.

gg.     "Payment-Guarantee Services" refers to a service that a Merchant might purchase to insure the Merchant against Credit or Debit Card fraud, check fraud, and other forms of payment fraud, and/or assists the Merchant in minimizing the costs of such fraud.

hh.     "Relevant Markets" include markets no broader than the markets for General Purpose Cards, General Purpose Card Network Services, Offline Debit Cards, Offline Debit Card Network Services, PIN-Debit Cards, and PIN-Debit Card Network Services, as they are defined and described in ¶¶ 271-291, 358-370, and 398-408.

ii.     "Settlement" is the process by which the Merchant is reimbursed for a Payment Card transaction.  While Visa and MasterCard rules require that an Acquiring Bank be a party to all Merchant card-acceptance agreements, Merchants often use Third-Party Processors to process these transactions.  The Acquiring Bank or its processor credits the Merchant's bank account with the amount paid by the cardholder less the Merchant-Discount fee, the largest component of which is the Interchange Fee, and then transmits the transaction data to Visa or MasterCard, which sends it to the Issuing Bank or its Third-Party Processor.  The Issuing Bank then sends payment to the Acquiring Bank through Visa or MasterCard (and possibly the Acquirer's processor).  In a Credit Card or Offline Debit Card transaction, settlement occurs two to four days after authorization and clearing.  In a PIN-Debit transaction, all three processes occur in the same electronic transaction virtually instantaneously.

jj.     "Third-Party Processor" is a firm, other than Visa, MasterCard, a Member Bank, or an entity affiliated with a Member Bank, that performs the authorization, clearing, and settlement functions of a Visa or MasterCard Payment-Card transaction on behalf of a Merchant or a Member Bank.  Examples of Third-Party Processors include First Data and Transfirst.

- 10 -

the laws of Virginia, with its principal place of business in Alexandria, Virginia. NATSO represents travel plaza and truck stop owners and operators. NATSO represents more than 900 travel plazas and truck stops nationwide, owned by more than 260 corporate entities. NATSO's mission is to advance this diverse industry by serving as the official source of information on travel plazas, acting as the voice of the industry with government, and conducting the industry's only national convention and exposition.

30.     NATSO, and most of the truck stops and travel plazas it represents, accept payment by Visa and MasterCard Credit and Debit Cards. Accordingly, Defendants impose supracompetitive Interchange and Merchant-Discount Fees associated with these Visa and MasterCard transactions on NATSO and force it to abide by the Anti-Steering Restraints and other restraints that facilitate Defendants' anticompetitive practices. NATSO and its members have been injured in their business or property as a result of the unlawful conduct alleged herein.

31.     NATSO seeks declaratory and injunctive relief on behalf of itself and its members and damages on behalf of itself as a remedy and compensation for the violations of federal and state antitrust laws described in this Complaint.

32.     Plaintiff National Community Pharmacists Association ("NCPA") is a non-profit trade association operating under the laws of Virginia with its principal place of business in Alexandria, Virginia.

33.     NCPA represents the pharmacist owners, managers, and employees of nearly 25,000 independent community pharmacies across the United States. Some of NCPA's members are located in the Eastern District of New York.

34.     Most of the pharmacies and pharmacists represented by NCPA accept payment by Visa and/or MasterCard Credit and Debit Cards. Accordingly, Defendants impose

- 17 -

80059596.16

# A868

National Bank (n/k/a Washington Mutual Card Services, Inc.), Providian Financial Corporation, and Wells Fargo & Company, (collectively "Bank Defendants"), are Member Banks of the Visa and MasterCard networks.  The Bank Defendants are actual or potential competitors for the issuance of Credit Cards and acquisition of Merchants.  All of the Bank Defendants belong to both networks and have conspired with each other and with the Visa and MasterCard Associations to fix the level of Interchange Fees that they charge to Merchants.

94.   Many of the Bank Defendants are, or were during the relevant period, represented on the Visa and/or MasterCard Boards of Directors at the times when those Boards collectively fixed uniform Interchange Fees and imposed the anticompetitive Anti-Steering Restraints and Miscellaneous Exclusionary Restraints, tying and bundling arrangements, and exclusive-dealing. The Bank Defendants delegated to the Visa and MasterCard Boards of Directors the authority to take those actions.  Each of the Bank Defendants had actual knowledge of, participated in, and consciously committed itself to the conspiracies alleged herein.

95.   Before Visa's IPO, Section 5.01(a) of the Bylaws of Visa U.S.A. (May 15, 2004) limited seats on its Board of Directors to (i) "officers of [Visa U.S.A.]," (ii) "officers of Charter Members [with some exceptions]...having at least the equivalent rank of Chief Executive Officer or Chief Administrative Officer, or [for larger Member Banks] a person who in their performance of his regular duties reports to such an officer."  Individuals who "previously held the title of Chairman, Vice Chairman, or Chief Executive Officer of a Charter Member were allowed to hold the post of "Second Special Director At Large" or "Third Special Director At Large for Technology," provided that the latter is "well qualified in systems and technology issues of importance to [Visa U.S.A.'s] Payment Services."  Even after the IPO, representatives of Member Banks maintain substantial representation on the Board of Visa, Inc.

- 33 -

96.     Similarly, prior to MasterCard's IPO, Article IV-1 of its Bylaws required that each Director "be an officer of a member institution of MasterCard International Incorporated or an individual otherwise uniquely qualified to provide guidance as to the Corporation's affairs." Even after the IPO, the Member Banks retain substantial representation on Board of New MasterCard.

97.     Bank Defendants are therefore directly responsible for collectively fixing Interchange Fees within each Network and between the two Networks.  Bank Defendants, acting by and through the Boards of Directors of Visa and MasterCard, are also directly responsible for the tying and bundling of separate and distinct services together in those Interchange Fees, the imposition of the Anti-Steering Restraints and engaging in the other anticompetitive conduct alleged herein.  Collectively, the Bank Defendants, through their operation of Visa and MasterCard, adopted and approved the above-mentioned policies and have significantly profited from those policies.

98.     Even after the corporate restructuring of the Visa and MasterCard Networks, the banks continue to conspire to fix Interchange Fees.  Each of the Bank Defendants belongs to Visa and MasterCard and has agreed that Visa and MasterCard may apply uniform schedules of default Interchange Fees to their Payment Card businesses.

99.     ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

80059596.16

# A870

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████ .

100.     Acquiring banks enter into acceptance contracts with Merchants agreeing either implicitly or explicitly that the Networks' uniform schedule of Interchange Fees will apply to all of the Merchant's transactions that are initiated by Visa or MasterCard Payment Cards.  These Acquiring Banks understand that the same uniform schedule of Interchange Fees will be applied to transactions conducted by all other Acquiring Banks for those banks' Merchant customers.  Issuing Banks enter into issuing contracts with the Networks, agreeing and understanding that they will receive Interchange Fees from Merchants based upon the Networks' uniform schedule of Interchange Fees.

## V.

## <u>CO-CONSPIRATORS</u>

101.     The Second Circuit noted that Visa and MasterCard "are not single entities; they are consortiums of competitors."   Before the corporate restructuring described below, they were "owned and effectively operated by over 22,000 banks, which compete with one another in the issuance of Payment Cards and the acquiring of Merchants' transactions."   *United States v. Visa*, 344 F.3d 229, 242 (2d Cir. 2003).  Because of this judgment, among other things, the Networks and their Member Banks recognized that the Networks were "structural conspiracies" and "walking conspiracies."

102.     Various persons, firms, corporations, organizations, and other business entities, some unknown and others known, have participated as co-conspirators in the violations alleged and have performed acts in furtherance of the conspiracies.  Co-conspirators include, but are not limited

- 35 -

continuous and uninterrupted flow of interstate commerce.

107.    The activities of Defendants and their co-conspirators, as described herein, were within the flow of and had a substantial effect on interstate commerce.

## VII.

## CLASS ACTION ALLEGATIONS

108.    Plaintiffs seek to represent two classes (collectively the "Class Members") under Rule 23(b)(1), (2) and (3), Fed. R. Civ. P., for violations of 15 U.S.C. §§ 1 & 2, and Cal. Bus. & Prof. Code § 16700 *et seq.*

      a.    The first class, "Class I," seeks damages only for violations of 15 U.S.C. § 1, and Cal. Bus. & Prof. Code § 16700 *et seq.* and is defined as:

           All persons, businesses, and other entities, that have accepted Visa and/or MasterCard Credit and/or Debit Cards in the United States at any time from and after January 1, 2004. This Class does not include the named Defendants, their directors, officers, or members of their families, or their co-conspirators or the United States Government.

      b.    The second class, "Class II," seeks declaratory and injunctive relief only for violations of 15 U.S.C. §§ 1 & 2, and Cal. Bus. & Prof. Code § 16700 *et seq.* and is defined as:

           All persons, businesses and other entities that currently accept Visa and/or MasterCard Credit and/or Debit Cards in the United States or the United States Government. This Class does not include the named Defendants, their directors, officers, or members of their families, or their co-conspirators.

109.    Plaintiffs Photos Etc., Traditions, Capital Audio, CHS, Coborn's, Crystal Rock, D'Agostino, Discount Optics, Jetro, Leon's Transmission, NACS, NATSO, NCPA, N.G.A., NRA, Parkway, and Payless bring this action under Federal Rules of Civil Procedure 23(a), and (b)(3), on behalf of themselves and Class I. These Plaintiffs are members of Class I, their claims are typical of the claims of the other Class I members, and Plaintiffs will fairly and adequately protect the interests of Class I. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class-action antitrust litigation. Plaintiffs' interests are coincident with, and not

- 37 -

**A872**

burden of individual litigation, and therefore, it is highly impractical for such Class Members to individually attempt to redress the wrongful anticompetitive conduct alleged herein.

119.    A class virtually identical to Class Members alleged herein above was certified, and affirmed on appeal, in *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001).

**VIII.**

**FACTUAL ALLEGATIONS**

### A.    The Evolution of the Visa and MasterCard Networks

120.    Visa and MasterCard (collectively the "Networks") are international bank-card networks whose members include banks, regional-banking associations, and other financial institutions. The Networks were established by their members to develop, promote, and operate national Credit Card networks.

121.    The Networks evolved from regional and local Credit Card systems formed during the 1960's.

122.    Visa's predecessor, Bank Americard, was the local Credit Card program of Bank of America, then based in California.  In 1970, the program was introduced throughout the United States under the name National Bank Americard, Inc. ("NBI").  In 1977, NBI changed its name to Visa.

123.    MasterCard is the successor to Mastercharge, which was created in 1967 when the Interbank Card Association of New York banks merged with the Western States Bankcard Association.

124.    During the early years of the Networks, Merchants that accepted Credit Cards used paper forms called "drafts" to conduct transactions.

125.    In the mid 1980's, technology evolved such that many transactions were processed

- 41 -

electronically and paper drafts were not needed for most Payment Card transactions. Since that time, the costs to Visa and MasterCard of the various components of Credit Card transaction processing (for example, computer hardware, telephone service, network service, and data-processing services) have decreased significantly. These changes led to significant reductions in the costs for Visa and MasterCard of processing Payment Card transactions.

126. Since Visa and MasterCard began operating on a national scale, use of their cards has increased dramatically. In 1970, only 16% of households had a credit card. By 2006, 77% of U.S. adults had at least one credit card.

127. Since 1970, the number of Visa Member Banks has increased from approximately 1,400 to nearly 14,000 in the United States and over 22,000 worldwide. U.S. consumers now carry more than 512 million Visa-branded Credit, Debit, commercial, and prepaid cards.

128. MasterCard has experienced similar growth and now includes more than 23,000 Member Banks worldwide. During 2006, there were over 360 million MasterCard-branded cards in circulation in the United States.

129. The Networks have also experienced substantial consolidation among their Member Banks. For example, in 2006 Bank of America acquired MBNA and immediately became the second largest issuer of Credit Cards in the United States. Similarly, in 2004 when Chase – then already the nation's fourth largest card issuer – acquired Bank One, the combined entity became the largest issuer in the United States, accounting for 23.5% of all General Purpose Card transaction volume. After Chase's acquisition of the Washington Mutual assets described in paragraph 88 Chase's share of GPC transaction volume is estimated to be 25% of the credit card market.

130. In 2007, the top five Visa Credit Card-Issuing Banks accounted for 69.7% of all Visa Credit Cards in circulation in the United States.

- 42 -

131.    In 2007, the top five MasterCard Credit Card-Issuing Banks accounted for 75.8% of all MasterCard Credit Cards in circulation in the United States.

132.    In 2007, the top five Credit Card-Issuing Banks accounted for 71.4% of all Visa and MasterCard purchase volume in the United States.

133.    In 2007, 72.9% of Visa and MasterCard transaction volume was acquired by five Member Banks.

134.    Unlike Payment Card transactions in other jurisdictions, the fees imposed by banks on Merchants for Payment Card transactions in the United States are almost completely unregulated by any level or unit of government.  Rather, those fees, and the rules that apply to all Payment Card transactions, are privately and comprehensively regulated by Visa, MasterCard, and their Member Banks.  Thus, the Relevant Market alleged in this complaint can reach an equilibrium between supply and Merchants' demand for those services only if market forces are effective.  At all times relevant to this action, Visa, MasterCard and their Member Banks have conspired to restrain competitive market forces.

### B.    Visa and MasterCard Utilized Their Dominance in Credit Cards to Become the Dominant Debit Card Networks

135.    Visa and MasterCard initiated their Visa Check and MasterMoney (the predecessor to MasterCard Debit) programs in 1979.  At that time, Offline Debit Card transactions represented only a small portion of all Payment Card transactions.

136.    At that time, PIN-Debit networks were beginning to spring up from regional ATM networks. Before the early 1990s, PIN-Debit networks operated successfully either without Interchange Fees, or with "negative" Interchange Fees, whereby the Merchant received a small sum of money on each transaction to incent it to install PIN pads, the equipment necessary at the point-of-sale for a Merchant to accept a PIN-Debit transaction.

- 43 -

# A875

137.    The Interchange-Fee-free period of PIN-Debit networks came to a close, however, when Visa acquired the Interlink network and soon thereafter imposed an Interchange-Fee rate equivalent of 45 cents on a 100 dollar purchase.

138.    Offline Debit Cards carried higher Interchange Fees than PIN-Debit Cards, and therefore were slow to gain Merchant acceptance.  Accordingly, in the early 1990s, PIN-Debit transactions accounted for over 60% of all Debit Card transactions.  At that time, PIN-Debit transactions were growing at a rate of 40% annually and were poised to grow even faster.

139.    Because of the rapid growth in PIN-Debit transactions and the superiority of the PIN-Debit product, Visa's advisors predicted that PIN-Debit would wipe out Offline Debit.

140.    PIN-Debit also had the potential to eat into Credit-Card transaction volume, and thereby drive down Credit-Card Interchange Fees.  The Regional PIN-Debit networks were viewed by the Networks as potential threats to their dominance in the market for General Purpose Payment Card Network Services.

141.    To counteract the slow growth in Merchant acceptance of Offline-Debit Cards, the Networks required Merchants that accepted their dominant Credit Cards to also accept their Offline Debit Cards.

142.    By tying their Offline Debit Cards to their dominant Credit Cards, Visa and MasterCard increased the number of Visa Check and MasterMoney cards to over 47 million by 1996.  By 2004, the number of Visa and MasterCard Offline Debit Cards in circulation had grown to 228 million.

143.    The tying practices described above led to a lawsuit by a class of Merchants, in which this Court granted partial summary judgment for the class and denied summary judgment for the defendants.  *In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568 (E.D.N.Y.

- 44 -

# A876

Apr. 1, 2003).

144.    After the court's summary-judgment ruling in *Visa Check*, Visa and MasterCard entered into settlement agreements with the class, which required Visa and MasterCard to abandon the part of their "Honor All Cards" rules that required Merchants that accepted Visa and MasterCard Credit Cards to also accept the Networks' Offline Debit Cards.

145.    Fearing that Merchants would abandon its more expensive Offline Debit cards, Visa utilized its market power to cause "convergence" of PIN-Debit and Offline Debit Interchange Fee rates. Through this "convergence" strategy, Visa sought to increase the Interchange Fee levels on its Interlink PIN-Debit transactions both to decrease the incentive of Merchants to steer consumers to PIN-Debit transactions away from Offline Debit transactions and to incent banks to issue Interlink cards. Visa's ultimate goal is to eliminate the competitive threat of PIN-debit networks that are not dominated by Visa Member Banks by making Merchants indifferent at the point of sale between PIN-Debit and Offline Debit.

146.    Visa has offered incentives to Issuing Banks to become exclusive issuers of Interlink PIN-Debit Cards. Although MasterCard has at times provided superior economic offers to these banks for issuance of Maestro PIN-Debit cards, banks have been migrating to Interlink, based on Visa's promise that once Interlink achieves a significant share of Debit Card transactions, Visa will gain greater pricing power. With this increased pricing power in hand, Visa plans to expedite the "convergence" in Interchange rates between PIN-Debit and Offline Debit transactions, which will permanently marginalize the competitive threat from the PIN-Debit Networks.

147.    Even after rescinding parts of the Honor All Cards Rule as required by the settlement in *Visa Check*, Visa has continued its anticompetitive practices in the Debit Card market. For example, it has recently waived the requirement for some Merchants that they obtain the

- 45 -

cardholders's signature on Credit Card and Debit Card transactions under 25 dollars. Visa enacted a rule, however, that prevented this exception from applying when a consumer wished to use his or her card as a PIN-Debit card. In those instances, the consumer would have to enter a PIN regardless of the transaction amount. Recognizing the anticompetitive effects of this discrimination, the Department of Justice opened an investigation into Visa's practices. After the investigation was initiated, Visa agreed to repeal the prohibition on waiving the PIN-entry requirement.

### C.   Interchange Fees In The Context Of A Payment-Card Transaction

148.    The Networks operate as standard-setting organizations in the markets for General Purpose Card Network services, Offline Debit Card Network Services and PIN-Debit Card Network Services that facilitate the exchange of transaction data and funds among Merchants, Acquiring Banks, Issuing Banks, and consumers.

149.    When a consumer makes a payment with a Credit or Offline Debit Card, the Merchant sends an electronic transmission to its Acquiring Bank or Third-Party Processor. The Acquiring Bank or processor then sends an electronic transmission to the Networks. The Networks relay the transaction to the cardholder's Issuing Bank or its Third-Party Processor, which makes a payment to the Acquiring Bank, through the Networks for the purchase amount minus the Interchange Fee. The Acquiring Bank then credits the Merchant's account for the transaction amount minus the Merchant-Discount Fee, the largest component of which is the Interchange Fee. Finally, the Issuing Bank charges the cardholder's credit account for the full amount of the purchase. Under this system, the Issuing Bank earns revenue from annual fees and interest charged to cardholders, as well as the amount of the Interchange Fee, while the Acquiring Bank earns revenue from the difference between the Merchant-Discount Fee and the Interchange Fee.

- 46 -

150.   Visa's Operating Regulation 9.5 (2006) requires that Visa's default Interchange Fee applies to every Visa transaction in which the Issuing and Acquiring Banks have not executed a bilateral Interchange Fee agreement.

151.   Similarly, Rule 10.4 of MasterCard's Bylaws and Rules requires that the MasterCard default Interchange Fee applies to every MasterCard transaction in which the Issuing and Acquiring Bank have not executed a bilateral agreement.

152.   A typical transaction is depicted below:



153.   When a consumer makes a payment with a PIN-Debit card, the consumer swipes a Payment Card at a POS terminal and enters a (usually four-digit) personal identification number ("PIN") on a numeric keypad. After the PIN is entered, the POS terminal transmits the transaction and Payment Card information to an Acquiring Bank or Third-Party Processor acting on the bank's behalf. The Acquiring Bank or processor then sends the information to the PIN-Debit Network, which then switches the transaction to the Issuing Bank or a Third-Party Processor acting on its behalf. The Issuing Bank or its processor assesses the consumer's account to verify the PIN and

- 47 -

harmed by the imposition of those fees.

188.    Therefore no realistic possibility exists that any Third-Party Processor will sue Visa or MasterCard over any of the practices described in this Complaint.

> **E.    The Anti-Steering Restraints Insulate Visa and MasterCard From Inter-Network Competition In The General Purpose and Debit Card Network Services Markets, Among Other Anticompetitive Effects**

189.    Because consumers do not know the actual costs of the Interchange Fees and Merchant-Discount Fees paid by Merchants, Merchants are unable to assist them in choosing more cost-effective payment methods.

190.    Visa and MasterCard impose the No-Surcharge Rule and other Anti-Steering Restraints to prevent Merchants from incenting consumers to use less-expensive payment methods. *See* Visa U.S.A. Op. Reg. 5.2F (2006); MasterCard Op. R. 9.12.  By implementing and enforcing these rules, Visa and MasterCard have fully insulated themselves from any competitive threat.  It is the consumer who selects which card to use in making a purchase.  The No-Surcharge Rule and other Anti-Steering Restraints guarantee that the consumer will make this selection without regard to the cost to the Merchant of accepting the card; the consumer cannot know how expensive his or her chosen card is to the Merchant, because the Anti-Steering Restraints ensure that the costs of the transaction will be borne, but without his or her knowledge.

191.    The No-Surcharge Rule is reflected in the rules and Merchant agreements of Visa, MasterCard, and their Member Banks.  Visa's Operating Regulation 4.2 and MasterCard's Bylaw 9.8 and Operating Rule 9.1.2 mandate that Merchant agreements require Merchants to abide by their respective operating regulations, which include the Anti-Steering restraints.

192.    Under the Bank Defendants' standard-form Merchant agreements, Merchants "shall not impose any surcharge or fee for accepting a [Visa-branded or MasterCard-branded] Card."  The MasterCard Member Service Provider Rules Manual, published April 2005, likewise admonishes

- 55 -

# A880

Merchants that they "must not directly or indirectly require any MasterCard cardholder to pay a surcharge" (§ 9.12.2), and the Card Acceptance and Chargeback Management Guide for Visa Merchants, revised October 2007, provides "you may not impose any surcharge on a Visa transaction."

193.    Accordingly, a Credit or Debit Card Network that charges Merchant-Discount Fees that are lower than the Defendant Associations will not be able to make inroads on the monopoly positions of Visa and MasterCard.  While potential new market entrants and competitors such as Discover stand ready, willing, and able to compete with the Defendants by offering lower fees charged to Merchants, the Defendants' rules prevent and restrain any such competition by ensuring that increased efficiency and lower prices will not lead to increased market share for competitors in the Network-Services Markets.

194.    Likewise, the Anti-Steering Restraints have a profound inflationary effect on retail goods and services.  The Defendants' rules ensure that Merchants seeking to pass along these costs must raise prices to all consumers, including cash-payers, PIN-Debit Card users, and those who would otherwise seek to avoid the high cost of Defendants' Interchange Fees.  But for these rules, consumer prices would be lower.  The prices of goods and services would fall because those prices would no longer be marked up to reflect the supracompetitive costs of Credit Card acceptance. Instead, those supracompetitive prices would be borne by the consumer choosing to use the Defendants' expensive payment products.  Faced with transparent high prices for Defendants' Payment Cards, consumers would seek to use lower cost forms of payment.

195.    In fact, MasterCard admitted, in a submission to the Reserve Bank of Australia, that surcharging can place downward pressure on Merchant fees because "[Networks] set interchange fees to avoid widespread surcharging and other forms of card usage discouragement behavior."

Payment System Regulation, Response by MasterCard Worldwide to the Issues for the 2007/08 Review.  Visa has made similar statements.

196.   Similarly, Robert Towne, Visa's former Senior Vice President of "acceptance economics," admitted that he believed that charges imposed by Merchants on cardholders would suppress consumers' demand to use Visa-branded Payment Cards. (Towne Dep. 373:24-375:8.)

197.   In addition to insulating Defendants from competition and raising prices for all consumers, the No-Surcharge Rule compels inequitable and anticompetitive subsidies, running from the least-affluent U.S. consumers to the most-affluent.  Because Merchants must mark up the prices of all goods to cover the costs of accepting Visa and MasterCard products, rather than impose a discrete surcharge on users of those products, the No-Surcharge Rule effectively compels cash payers and users of other low-cost payment forms to subsidize all of the costly perquisites given by Issuing Banks to consumers using more expensive payment forms such as Visa and MasterCard Payment Cards, including frequent-flier miles, rental-car insurance, free gifts, and even cash-back rewards.

198.   The other Anti-Steering Restraints also serve to protect the Defendants' elevated Interchange Fees.  In the face of Merchant prompting — and particularly faced with the prospect of incurring surcharges — consumers would migrate towards less-expensive payment products, causing Defendants to drop their Interchange Fees in order to maintain market share.  In the absence of the Anti-Steering Restraints, therefore, Defendants' Interchange Fees, would be lower.

199.   Finally, no procompetitive justification exists for the Anti-Steering Restraints.  These rules are naked restraints on trade, are not ancillary to the legitimate and competitive purposes of the Defendant Networks, and have profound anticompetitive effects.

**E.    Defendants Tie And Bundle Several Distinct Services In Their Interchange Fees And Enter Into Agreements With Merchants For The**

- 57 -

# A882

of Interchange Fees "apply in all circumstances where Members have not set their own financial terms for the Interchange of Visa Transactions or where Visa has entered into confidential business arrangements to secure acceptance and promote Card usage."

240.    Throughout the relevant time period, Visa has also enforced its longstanding "Honor All Cards" rule, embodied in Operating Regulation 5.2.B.3.a., which requires Merchants that accept Visa Payment Cards to accept all Visa cards within the "categories of acceptance" that it accepts, regardless of the identity of the issuing bank or the level of Interchange Fee it charges.

241.    Similarly, Rule 9.1 of MasterCard's Bylaws and Rules requires Merchants that accept MasterCard-branded Payment Cards to "honor all valid MasterCard cards without discrimination when properly presented for payment."

242.    And as with Visa's Operating Regulations, Rule 10.4 of MasterCard's Bylaws and Rules requires the payment of MasterCard's uniform schedule of default Interchange Fees on all MasterCard transactions.

243.    Even after the corporate restructuring described in Part Five below, these uniform schedules of Interchange Fees were collectively agreed upon by MasterCard's Member Banks.  For example, in April 2007, MasterCard Rule 10.5 stated that "[t]he interchange fee applied to intracountry transactions is called an intracountry interchange fee and shall be the fee agreed to by members doing business within the country.  Furthermore, in October 2008, Rule 9.5 allowed default intracountry Interchange Fees to be established "by agreement of Member [Banks] in the country as set forth in Rule 9.5.1" or through "application of intraregional interchange and service fees to Intracountry Transactions and intracountry cash disbursements as set forth in Rule 9.5.2."

244.    By enacting and enforcing the "Honor All Cards" and Interchange Fee payment rules noted above, the Defendants have created a situation in which the payment of an Interchange

- 68 -

Fee is required on all transactions, regardless of the Issuing Bank.  Because of this problem – a problem entirely of Defendants' own creation – Defendants now claim that uniform schedules of "fall back" Interchange Fees actually benefit Merchants by preventing the Issuing Bank from "holding up" the Merchant by demanding an Interchange Fee that is as high as the Issuer would like, knowing that the Honor All Cards rule prevents the Merchant from refusing that transaction.

245.    But for the rules described in this section, Merchants would have the option to reject a given Visa or MasterCard payment card for a given transaction if the benefit the Merchant receives from accepting the card or allowing the transaction is not commensurate with the associated Merchant fee.

### H.    The Practices Described Above Harm Competition

246.    The rules requiring the payment of Interchange Fees on every transaction, the collective setting of uniform schedules of Interchange Fees, and the continued imposition of these fees on all Merchants that accept Visa and MasterCard Payment Cards restrains competition between Visa and MasterCard Member Banks in the markets for General Purpose Card Network Services, Offline Debit Card Network Services and PIN-Debit Card Network Services.  This harms competition by imposing large and ever-increasing Interchange Fees, which thereby elevates Merchant-Discount Fees to supracompetitive levels.

247.    The Anti-Steering Restraints harm competition by allowing Defendants to insulate themselves from competition from lower-priced General Purpose Card and Debit Card Network Service providers, by inflating prices for all consumers, by compelling inequitable subsidies that affect the least-affluent U.S. consumers, and by allowing Defendants to continue their practices of collectively fixing supracompetitive, uniform Interchange Fees.

248.    The damages suffered by the Class Members accumulate and increase with each

# A884

Cards from antitrust liability.

## PART TWO: ALLEGATIONS RELATING TO CREDIT-CARD CLAIMS

### IX.

### RELEVANT MARKETS

271.    A relevant market exists, the product dimension of which is no broader than General Purpose Cards.  *In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3 (E.D.N.Y. Apr. 1, 2003); *United States v. Visa*, 163 F. Supp. 2d 322, 335 (S.D.N.Y. 2001).  The geographic dimension of this market is the United States ("General Purpose Card Market").  *United States v. Visa*, 163 F. Supp. 2d at 339-40 (S.D.N.Y. 2001), *aff'd*, 344 F.3d at 239 (2d Cir. 2003).

272.    A relevant market exists, the product dimension of which is no broader than General Purpose Card Network Services.  *In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3 (E.D.N.Y. Apr. 1, 2003); *United States v. Visa*, 163 F. Supp. 2d at 338, *aff'd*, 344 F.3d at 239.  The geographic dimension of this market is the United States ("General Purpose Card Network Services Market").

273.    Both Visa and MasterCard, "together with their Member Banks," jointly and separately, have market power in the market for General Purpose Cards and General Purpose Card Network Services.  *United States v. Visa*, 163 F. Supp. 2d at 340, *aff'd*, 344 F.3d at 239.

274.    The market shares of Visa and MasterCard indicate that each has market power in the General Purpose Card Network Services market.  In 1999, Visa had a 47% share of the General Purpose Card transactions by dollar volume in the United States, while MasterCard's share was 26%.  Visa and MasterCard had a combined market share of 73%.  *United States v. Visa*, 163 F. Supp. 2d at 341.  At that time, Visa and MasterCard collectively issued 85% of the General Purpose Cards in the United States.  *Id.*

275.    In 2007, Visa transactions accounted for 43% of U.S. General Purpose Card

- 75 -

purchase volume, which included American Express, and Discover. Visa's market share is significantly higher if Charge Cards are excluded from the market.

276. In 2007, MasterCard transactions accounted for 29% of all General Purpose Card purchase volume in the United States. Again, this figure would be even higher if Charge Cards were excluded from the market. As was the case seven years earlier when Judge Jones decided that Visa and MasterCard possessed market power, Visa and MasterCard collectively accounted for 71% of General Purpose Card purchase volume in 2007.

277. Concerted activity between Visa and MasterCard allows the Networks to collectively assert market power. *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3 (E.D.N.Y. Apr. 1, 2003) (noting evidence of collusion between Visa and MasterCard with respect to their Debit Card strategies).

278. Merchants do not view Offline Debit Card Network Services and PIN-Debit Card Network Services as acceptable substitutes to Credit Card Network Services. This is demonstrated by the fact that Merchants continue to accept Visa and MasterCard Credit Cards even though the Interchange Fees associated with Credit Card transactions is significantly higher than the fees associated with Debit Card transactions.

279. More recently, both Visa and MasterCard have increased Interchange Fees by large amounts without losing any Merchants as a result.

280. None of the recent increases in Visa and MasterCard's Credit Card Interchange Fees have been attributable to increases in the level of costs associated with the operations of the Networks.

281. Visa and MasterCard have exercised their market power in the General Purpose Card Network Services market. As the court noted in the United States' action against the

- 76 -

**A886**

290.    Single-brand markets may exist because, from a Merchant's perspective, the acceptance of Visa Payment Card transactions does not substitute for the acceptance of MasterCard Payment Card transactions and vice versa. When a consumer presents a Visa Payment Card to a Merchant, for example, the Merchant cannot accept that transaction unless it has an agreement with a Visa Member Bank to acquire Visa transactions. An agreement with a MasterCard Member Bank to process MasterCard transactions does not provide the Merchant with the services it needs to process this Visa transaction.

291.    As former Federal Trade Commission Chairman (and Visa's paid consultant) Tim Muris noted, "[m]ost Merchants cannot accept just one major card because they are likely to lose profitable incremental sales if they do not take the major payment cards. Because most consumers do not carry all of the major payment cards, refusing to accept a major card may cost the Merchant substantial sales." Timothy J. Muris, Payment Card Regulation and the (Mis)application of the Economics of Two-Sided Markets, 2005 Colum. Bus. L. Rev. 515, 522 (2005).

## FIRST CLAIM FOR RELIEF:
**CLASS I VS. VISA AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATIONS OF SHERMAN ACT, § 1, 15 U.S.C. § 1 UNLAWFUL PRICE FIXING OF CREDIT CARD INTERCHANGE FEES BY VISA AND ITS MEMBER BANKS**

292.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

293.    Visa and its Member Banks, including the Bank Defendants — direct, horizontal competitors of each other — engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1.

294.    The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among Visa's issuing and

- 79 -

# A887

acquiring members including the Bank Defendants and Visa, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Credit Card Interchange Fees that are imposed on Merchants in the market for General Purpose Card Network Services.

295.    The Visa Board of Directors, which included representatives from several Bank Defendants, acted on behalf of the Member Banks to fix, raise, maintain, or stabilize the Interchange Fees for Visa transactions, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

296.    All of the Member Banks of Visa, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

297.    The contract, combination, conspiracy, and agreement alleged in this First Claim has had, and/or is likely to have, among others, the following anticompetitive effects which are common to Plaintiffs and Class Members:

a.    Actual and potential competition in the General Purpose Card Network Services market was substantially excluded, suppressed, and effectively foreclosed;

b.    Defendants acquired and maintained market power in the relevant markets of General Purpose Card and General Purpose Card Network Services;

c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees imposed on Class Members in the market for General Purpose Card Network Services;

d.    All Class members were required to pay supracompetitive Credit Card Interchange Fees for Visa transactions in the market for General Purpose Card Network Services;

e.    Defendants derived direct and substantial economic benefits from the supracompetitive Credit Card Interchange Fees for Visa transactions in the market for General Purpose Card Network Services;

f.    But for the anticompetitive conduct of Visa and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for Visa transactions in the market for General Purpose Card Network Services; and

- 80 -

80059596.16

        g.    The specific amount of damages suffered by Class I have not yet been determined, as such determination will require additional discovery and expert analysis, but the Class estimates damages will range in the tens of billions of dollars.

298.    The collectively fixed Interchange Fees are illegal.  They are not necessary to accomplish any procompetitive benefits of the Visa Network.  Even if some horizontal agreement were necessary to promote the efficiencies of the Visa Network, the collectively-set Interchange Fee is significantly more restrictive than necessary to bring about those efficiencies.  Visa and its Member Banks' price fixing achieves few — if any —procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the General Purpose Card Network Services market.  The supra-competitive levels of Interchange continue to the present date.

**SECOND CLAIM FOR RELIEF:**
**CLASS I VS. MASTERCARD AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATIONS OF SHERMAN ACT, § 1, 15 U.S.C. § 1, UNLAWFUL PRICE FIXING OF CREDIT CARD INTERCHANGE FEES BY MASTERCARD AND ITS MEMBER BANKS**

299.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

300.    MasterCard and its Member Banks, including Bank Defendants — direct, horizontal competitors of each other — engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

301.    The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among MasterCard's issuing and acquiring members, including Bank Defendants and MasterCard, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Credit-Card Interchange Fees that are imposed on Merchants in the market for General Purpose Card Network Services.

- 81 -

# A889

302.    The MasterCard Board of Directors, which included representatives from several Bank Defendants, acted on behalf of the Member Banks to fix, raise, maintain, or stabilize the Interchange Fees for MasterCard transactions, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

303.    All of the Member Banks of MasterCard, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

304.    The contract, combination, conspiracy, and agreement alleged in this Second Claim has had, and/or is likely to have, among others, the following anticompetitive effects which are common to Plaintiffs and Class Members:

a.    Actual and potential competition in the General Purpose Card Network Services market was substantially excluded, suppressed, and effectively foreclosed;

b.    Defendants acquired and maintained market power in the relevant markets of General Purpose Card and General Purpose Card Network Services;

c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees imposed on Class Members in the market for General Purpose Card Network Services;

d.    All Class members were required to pay supracompetitive Credit Card Interchange Fees for MasterCard transactions in the market for General Purpose Card Network Services;

e.    Defendants derived direct and substantial economic benefits from the supracompetitive Credit Card Interchange Fees for MasterCard transactions in the market for General Purpose Card Network Services;

f.    But for the anticompetitive conduct of MasterCard and its Member Banks, competition among MasterCard's Member Banks would have eliminated or greatly reduced the Interchange Fees for MasterCard transactions in the market for General Purpose Card Network Services; and

g.    The specific amount of damages suffered by Class I have not yet been determined, as such determination will require additional discovery and expert analysis, but the Class estimates damages will range in the tens

- 82 -

# A890

of billions of dollars.

305.   The collectively fixed Interchange Fees are illegal.  They are not necessary to accomplish any procompetitive benefits of the MasterCard Network.  Even if some horizontal agreement were necessary to promote the efficiencies of the MasterCard network, the collectively-set Interchange Fee is significantly more restrictive than necessary to bring about those efficiencies. MasterCard and its Member Banks' price fixing achieves few — if any — procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the General Purpose Card Network Services market. The supra-competitive levels of Interchange continue to the present date.

## THIRD CLAIM FOR RELIEF:
**CLASS I VS. VISA AND MASTERCARD AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATION OF THE SHERMAN ACT, § 1, UNLAWFUL PRICE FIXING OF CREDIT CARD INTERCHANGE FEES BETWEEN AND AMONG DEFENDANTS VISA AND MASTERCARD AND THEIR MEMBER BANKS**

306.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

307.   Visa and MasterCard, together with Bank Defendants and other Member Banks, have colluded with the purpose to, and the effect of, fixing, raising, maintaining, or stabilizing Credit Card Interchange Fees in the market for General Purpose Card Network Services at similar supracompetitive levels, and have agreed not to reduce such Interchange Fees.

308.   Visa and MasterCard consciously engaged in parallel conduct at the direction of the Bank Defendants with respect to Interchange Fees and other conduct that supports the inference of the above-described agreement.   In addition to consciously-parallel conduct, the Defendants' conduct exhibits the following "plus factors," among others, which support an inference of the existence of the above-described agreement:

- 83 -

# A891

a.   Many of the same Member Banks issue both Visa and MasterCard Payment Cards, which provides fertile ground for collusion between the two Networks.   A high level of communication regarding Interchange Fees, other fees, and promotions exists between and among Visa and MasterCard, both directly and through the Bank Defendants and other dual Member Banks;

b.   The Interchange-Fee-setting activities of Visa are transparent to MasterCard and its Member Banks and vice versa;

c.   The Network Services that Visa, MasterCard, and their Member Banks provide to Merchants are indistinguishable from each other;

d.   Credit-Card Interchange Fees for both Visa and MasterCard move in parallel and stair-step fashion.   Virtually without exception, an increase in Interchange Fees by one Association was met with an increase by the other;

e.   The Bank Defendants and other Member Banks of Visa and MasterCard have a profit motive to ensure that the Interchange Fees of both Networks increase in parallel and stair-step fashion;

f.   But for the conspiracy between Visa and MasterCard, neither Network would have had an incentive to match a price increase by the other Network; and

g.   Both Visa and MasterCard each have substantial market power and have the incentive and ability to maintain Interchange Fees at supracompetitive levels to protect their profits from competition from each other.

h.   The Member Banks of Visa and MasterCard have caused each Network to adopt the Anti-Steering Restraints and Miscellaneous Exclusionary Restraints.   The effect of these Restraints is such that the usual competitive mechanism of sellers offering a lower price to generate more sales is ineffective.   Thus, Visa, MasterCard and their Member Banks have structured the market such that there is no incentive for Issuers to offer Merchants lower Interchange Fees

i.   Both Visa and MasterCard have instituted, announced and publicized policies that they will not be "competitively disadvantaged" with respect to Interchange Fees, which provides assurances to each Network that an Interchange Fee increase by it will be met by an equally substantial increase by the other Network.

309.   Visa, MasterCard, the Bank Defendants, and their Co-Conspirators achieved their anticompetitive objectives, in part, by agreeing, separately and together, to establish, implement,

- 84 -

**A892**

and maintain a price-fixing scheme whereby they fixed supracompetitive Credit-Card Interchange Fees in the market for General Purpose Card Network Services.

310.    The conspiracy by Visa and MasterCard to fix, raise, maintain or stabilize the price of Credit Card Interchange Fees to be imposed on Merchants in the market for General Purpose Card Network Services has had, and/or is likely to have, among others, the following intended and actual anticompetitive effects, which are common to the entire Class of Plaintiffs:

> a.   Actual and potential competition in the General Purpose Card Network Services markets was substantially excluded, suppressed, and effectively foreclosed;
>
> b.   Defendants acquired and maintained market power in the relevant markets;
>
> c.   Defendants controlled, maintained, and elevated above competitive levels the Credit-Card Interchange Fees imposed on Plaintiffs and Class members for General Purpose Card Network Services;
>
> d.   All Class members were required to pay supracompetitive Credit-Card Interchange Fees to Issuing Banks in the market for General Purpose Card Network Services;
>
> e.   Defendants derived direct and substantial economic benefits from the supracompetitive Credit-Card Interchange Fees charged to Merchants; and
>
> f.   The specific amount of damages suffered by Class I have not yet been determined, as such determination will require additional discovery and expert analysis, but the Class estimates damages will range in the tens of billions of dollars.

311.    As a consequence of the Defendants' illegal conduct, Plaintiffs and Class Members suffered a common injury to their business and property, in part, because higher Credit Card Interchange Fees and Merchant-Discount Fees were imposed on them in the market for General Purpose Card Network Services than they would have paid in the absence of the Defendants' anticompetitive conduct.

312.    These restraints on competition alleged in this Third Claim for Relief are illegal *per*

- 85 -

**A893**

*se*.  They are not reasonably related to the operations of the Visa and MasterCard networks, and even if they were reasonably necessary, they are broader than necessary to effectuate the business of Visa and MasterCard.  The supra-competitive levels of Interchange continue to the present date.

### FOURTH CLAIM FOR RELIEF:
**CLASS I V. VISA AND BANK DEFENDANTS FOR VIOLATION OF THE CARTWRIGHT ACT, § 16700 *ET SEQ.* OF THE CALIFORNIA BUSINESS AND PROFESSIONAL CODE, UNLAWFUL PRICE FIXING OF CREDIT CARD INTERCHANGE FEES**

313.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

314.    Until its reorganization and IPO, Visa and its Member Banks, including the Bank Defendants — direct, horizontal competitors of each other — engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of § 16700 *et seq.* of the Cartwright Act (Cal. Bus. & Prof. Code, § 16700 *et seq.*).  These unlawful contracts, combinations, and conspiracies were entered into and effectuated within the State of California.

315.    The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among Visa's issuing and acquiring members, including the Bank Defendants and Visa, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Credit Card Interchange Fees charged to Merchants by Issuing Banks in the market for General Purpose Card Network Services.

316.    The Visa Board of Directors, which included representatives from several Bank Defendants, voted to fix, raise, maintain, or stabilize the Credit Card Interchange Fees for Visa transactions, in violation of § 16700 *et seq.* of the Cartwright Act.

317.    All of the Member Banks of Visa, including the Bank Defendants, have had actual

- 86 -

# A894

competition that would otherwise exist in a free market.

**TENTH CLAIM FOR RELIEF:**
**CLASS I VS. VISA AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATIONS OF SHERMAN ACT, § 1, 15 U.S.C. § 1, UNLAWFUL PRICE FIXING OF OFFLINE DEBIT CARD INTERCHANGE FEES BY VISA AND ITS MEMBER BANKS**

371.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

372.   Throughout the relevant period, Visa and its Member Banks, including the Bank Defendants — direct horizontal competitors of each other — engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

373.   The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among Visa's issuing and acquiring members, including the Bank Defendants and Visa, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Offline Debit Card Interchange Fees imposed on Merchants in the market for Offline Debit Card Network Services.

374.   The Visa Board of Directors, which includes representatives from several Bank Defendants, acted on behalf of the Member Banks to fix, raise, maintain, or stabilize the Interchange Fees for Visa Offline Debit Card transactions, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

375.   All of the Member Banks of Visa, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

376.   The contract, combination, conspiracy, and agreement alleged in this Claim has, had, and/or is likely to have, among others, the following anticompetitive effects which

- 96 -

# A895

are common to Plaintiffs and Class Members:

    a.    Actual and potential competition in the Offline Debit Card Network Services market was substantially excluded, suppressed, and effectively foreclosed;

    b.    Defendants acquired and maintained market power in the relevant markets of Offline Debit Card and Offline Debit Card Network Services;

    c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees charged to Class Members in the market for Offline Debit Card Network Services;

    d.    Defendants imposed supracompetitive Offline Debit Card Interchange Fees on all Class Members for Visa transactions in the market for Offline Debit Card Network Services;

    e.    Defendants derived direct and substantial economic benefits from the supracompetitive Offline Debit Card Interchange Fees for Visa transactions in the market for Offline Debit Card Network Services;

    f.    But for the anticompetitive conduct of Visa and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for Visa transactions in the market for Offline Debit Card Network Services; and

    g.    The specific amount of damages suffered by Class Members has not yet been determined, as such determination will require additional discovery and expert analysis, but the Class Members estimate damages will range in the tens of billions of dollars.

377.   The collectively fixed Interchange Fee is illegal.   It is not necessary to accomplish any procompetitive benefit of the Visa network.   Even if some horizontal agreement were necessary to promote the efficiencies of the Visa network, the collectively-set Interchange Fee is significantly more restrictive than necessary to bring about those efficiencies.   Visa and its Member Banks' price fixing achieves few — if any — procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the Offline Debit Card Network Services market. The supra-competitive levels of Interchange continue to the present date.

- 97 -

# A896

**ELEVENTH CLAIM FOR RELIEF:**

**CLASS I VS. MASTERCARD AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATIONS OF SHERMAN ACT, § 1, 15 U.S.C. § 1, UNLAWFUL PRICE FIXING OF OFFLINE DEBIT CARD INTERCHANGE FEES BY MASTERCARD AND ITS MEMBER BANKS**

378.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

379.   Throughout the relevant period, MasterCard and its Member Banks, including the Bank Defendants — direct horizontal competitors of each other — engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

380.   The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among MasterCard's issuing and acquiring members, including the Bank Defendants and MasterCard, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Offline Debit Card Interchange Fees imposed on Merchants in the market for Offline Debit Card Network Services.

381.   The MasterCard Board of Directors, which includes representatives from several Bank Defendants, acted on behalf of the Member Banks to fix, raise, maintain, or stabilize the Interchange Fees for MasterCard Offline Debit Card transactions, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

382.   All of the Member Banks of MasterCard, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

383.   The contract, combination, conspiracy, and agreement alleged in this Claim has, had, and/or is likely to have, among others, the following anticompetitive effects which are common to Plaintiffs and Class Members:

- 98 -

80059596.16

a.   Actual and potential competition in the Offline Debit Card Network Services market was substantially excluded, suppressed, and effectively foreclosed;

b.   Defendants acquired and maintained market power in the relevant markets of Offline Debit Card and Offline Debit Card Network Services;

c.   Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees charged to Class Members in the market for Offline Debit Card Network Services;

d.   Defendants imposed supracompetitive Offline Debit Card Interchange Fees on all Class Members for MasterCard transactions in the market for Offline Debit Card Network Services;

e.   Defendants derived direct and substantial economic benefits from the supracompetitive Offline Debit Card Interchange Fees for MasterCard transactions in the market for Offline Debit Card Network Services;

f.   But for the anticompetitive conduct of MasterCard and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for MasterCard transactions in the market for Debit Card Network Services; and

g.   The specific amount of damages suffered by Class Members has not yet been determined, as such determination will require additional discovery and expert analysis, but Class Members estimate damages will range in the tens of billions of dollars.

384.   The collectively fixed Interchange Fee is illegal.  It is not necessary to accomplish any procompetitive benefit of the MasterCard network.  Even if some horizontal agreement were necessary to promote the efficiencies of the MasterCard network, the collectively-set Interchange Fee is significantly more restrictive than necessary to bring about those efficiencies.  MasterCard and its Member Banks' price fixing achieves few — if any — procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the Debit Card Network Services market.  The supra-competitive levels of Interchange continue to the present date.

# A898

Interlink network and began to lure banks to issue Interlink cards by increasing the

Interchange Fees associated with Interlink transactions.

**FOURTEENTH CLAIM FOR RELIEF**:
**CLASS I VS. VISA AND BANK DEFENDANTS FOR DAMAGES UNDER § 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR VIOLATIONS OF § 1 OF THE SHERMAN ACT, 15 U.S.C. § 1, UNLAWFUL PRICE FIXING OF PIN-DEBIT CARD INTERCHANGE FEES BY VISA AND ITS MEMBER BANKS**

409.    Plaintiffs repeat and re-allege each and every allegation contained in the

foregoing paragraphs with the same force and effect as it fully set forth here.

410.    Throughout the relevant period until Visa's recent IPO, Visa and its Member

Banks, including the Bank Defendants – direct horizontal competitors of each other – engaged

in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate

trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

411.    The unlawful contracts, combinations, and conspiracies consisted of

continuing agreements, understandings, and concerts of action between and among Visa's

issuing and acquiring members, including the Bank Defendants and Visa, the substantial

terms of which were to illegally fix, raise, maintain, or stabilize the PIN-Debit Card

Interchange Fees imposed on Merchants in the market for PIN-Debit Card Network Services.

412.    The Visa Board of Directors, which included representatives from several

Bank Defendants, acted on behalf of the Member Banks to fix, raise, maintain, or stabilize the

Interchange Fees for Visa Interlink PIN-Debit Card transactions, in violation of Section 1 of

the Sherman Act, 15 U.S.C. § 1.

413.    All of the Member Banks of Visa, including the Bank Defendants, have actual

knowledge of, and have knowingly participated in, the conspiracy alleged herein.

414.    The contract, combination, conspiracy, and agreement alleged in this Claim,

has, had, and/or is likely to have, among others, the following anticompetitive effects which

- 105 -

# A899

are common to Plaintiffs and Class Members:

    a.    Actual and potential competition in the PIN-Debit Card Network Services market was substantially excluded, suppressed, and effectively foreclosed;

    b.    Defendants acquired and maintained market power in the relevant markets of PIN-Debit Cards and PIN-Debit Card Network Services;

    c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees imposed on Class Members in the market for PIN-Debit Card Network Services;

    d.    Defendants imposed supracompetitive PIN-Debit Card Interchange Fees on all Class members for Visa Interlink transactions in the market for PIN-Debit Card Network Services;

    e.    Defendants derived direct and substantial economic benefits from the supracompetitive PIN-Debit Card Interchange Fees for Visa Interlink transactions in the market for PIN-Debit Card Network Services;

    f.    But for the anticompetitive conduct of Visa and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for Visa transactions in the market for PIN-Debit Card Network Services;

    g.    The specific amount of damages suffered by Class Members has not yet been determined, as such determination will require additional discovery and expert analysis, but Class Members estimate damages will range in the tens of billions of dollars.

    415.    The collectively fixed Interchange Fee is illegal. It is not necessary to accomplish any procompetitive benefit of the Visa Interlink network. Even if some horizontal agreement were necessary to promote the efficiencies of the Visa Interlink network, the collectively-set Interchange Fee is significantly more restrictive than necessary to bring about those efficiencies. Visa and its Member Banks' price fixing achieves few – if any – procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the PIN-Debit Card Network Services Market. The supra-competitive levels of Interchange continue to the present date.

# A900

rules.   After the IPO, MasterCard's rules continued to provide that MasterCard Member Banks agreed among themselves on the setting of Interchange Fees.

435.    And because those bylaws and rules remain unchanged after the restructuring attempts and the IPOs, every Merchant that accepts Visa or MasterCard Payment Cards has a Merchant agreement with a Visa or MasterCard Member Bank, which requires the Merchant to abide by the Networks' bylaws and rules.

436.    Just as before the Networks' restructuring attempts and the IPOs, the Networks' bylaws and rules require that all Merchants that accept Visa or MasterCard Payment Cards (with the exception of the handful of Merchants that choose not to accept the Networks' Credit or Offline Debit Cards) accept all Payment Cards of that network, regardless of the identity of the Issuing Bank or the level of Interchange Fee attributable to a particular card.

437.    Even after the Networks' restructuring attempts and the IPOs, the Networks' bylaws and rules require that their default uniform schedules of Interchange Fees apply to all transactions, regardless of the identity of the bank that issued the card that is presented to the Merchant for a particular transaction.  Each Member Bank Issuer is guaranteed by Visa, and by MasterCard, that it will receive Interchange Fees identical to the Interchange Fees received by every other Issuer, on similar transactions.  This is true regardless of the cost-structure, efficiency, size, location or any other characteristic of the Issuer.

438.    Even after the Networks' restructuring attempts and the IPOs, the Networks continue to monitor their Member Banks' compliance with the default interchange fees by supervising the application of the correct, uniform, default interchange fee to each transaction processed over the Visa or MasterCard network. By monitoring the banks' compliance with

- 111 -

**A901**

**SEVENTEENTH CLAIM FOR RELIEF:**
**CLASS I V. VISA AND ITS MEMBER BANKS FOR DAMAGES UNDER SECTION 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, CONTINUING VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**

443.    Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

444.    Since Visa's recent IPO, Visa and its Member Banks, including the Bank Defendants – direct horizontal competitors of each other – have engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Member Banks, including the Bank Defendants, have simply designated a common agent to fix the levels of Interchange Fees to which all agree to adhere.

445.    The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among Visa's issuing and acquiring members, including the Bank Defendants and Visa, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Interchange Fees for Credit Cards, Offline Debit Cards, and PIN-Debit Cards imposed on Merchants in the respective Relevant Markets.

446.    The Visa Board of Directors established and approved uniform schedules of Interchange Fees for all Visa Credit Card, Offline Debit Card, and PIN-Debit Card transactions in the Relevant Markets. Visa's Member Banks, including the Bank Defendants, in turn agree to abide by Visa's bylaws and Operating Regulations, which apply Visa's uniform schedules of default Interchange Fees on all Visa transaction. Each Member Bank agrees and understands that all other Member Banks will agree to abide by the same uniform schedule of default Interchange Fees.

- 113 -

80059596.16

# A902

447.    All of the Member Banks of Visa, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

448.    The contract, combination, conspiracy, and agreement alleged in this Claim, has had, and/or is likely to have, among others, the following anticompetitive effects which are common to Plaintiffs and Class Members:

    a.    Actual and potential competition in the relevant markets was substantially excluded, suppressed, and effectively foreclosed;

    b.    Defendants acquired and maintained market power in the relevant markets;

    c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees imposed on Class Members in the relevant markets;

    d.    Defendants derived direct and substantial economic benefits from the supracompetitive Interchange Fees imposed on Merchants in the relevant market;

    e.    But for the anticompetitive conduct of Visa and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for Visa transactions in the relevant markets;

    f.    The specific amount of damages suffered by Class Members has not yet been determined, as such determination will require additional discovery and expert analysis, but Class Members estimate damages will range in the tens of billions of dollars.

449.    Visa's uniform schedule of default Interchange Fees is illegal. It is not necessary to accomplish any procompetitive benefit of the Visa network. Even if some agreement were necessary to promote the efficiencies of the Visa network, Visa's uniform schedules of default Interchange Fees is significantly more restrictive than necessary to bring about those efficiencies. Visa and its Member Banks' price fixing achieves few – if any – procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the relevant markets.

- 114 -

**A903**

## EIGHTEENTH CLAIM FOR RELIEF:
### CLASS I V. MASTERCARD AND ITS MEMBER BANKS UNDER SECTION 4 OF THE CLAYTON ACT, 15 U.S.C. § 15, FOR CONTINUING VIOLATIONS OF SECTION 1OF THE SHERMAN ACT, 15 U.S.C. § 1

450.　Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

451.　Since MasterCard's recent IPO, MasterCard and its Member Banks, including the Bank Defendants – direct horizontal competitors of each other – have engaged in unlawful contracts, combinations, and conspiracies in an unreasonable restraint of interstate trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Member Banks, including the Bank Defendants, have simply designated a common agent to fix the levels of Interchange Fees to which all agree to adhere.

452.　The unlawful contracts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among MasterCard's issuing and acquiring members, including the Bank Defendants and MasterCard, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Interchange Fees for Credit Cards, and Offline Debit Cards imposed on Merchants in the respective Relevant Markets.

453.　The MasterCard Board of Directors established and approved uniform schedules of Interchange Fees for all MasterCard Credit Card, and Offline Debit Card transactions in the Relevant Markets. MasterCard's Member Banks, including the Bank Defendants, in turn agree to abide by MasterCard's Bylaws and Operating Regulations, which apply MasterCard's uniform schedules of default Interchange Fees on all MasterCard transaction. Each Member Bank agrees and understands that all other Member Banks will agree to abide by the same uniform schedule of default Interchange Fees.

- 115 -

# A904

454.    All of the Member Banks of MasterCard, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

455.    The contract, combination, conspiracy, and agreement alleged in this Claim, has had, and/or is likely to have, among others, the following anticompetitive effects which are common to Plaintiffs and Class Members:

  a.    Actual and potential competition in the relevant markets was substantially excluded, suppressed, and effectively foreclosed;

  b.    Defendants acquired and maintained market power in the relevant markets;

  c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees imposed on Class Members in the relevant markets;

  d.    Defendants derived direct and substantial economic benefits from the supracompetitive Interchange Fees imposed on Merchants in the relevant market;

  e.    But for the anticompetitive conduct of MasterCard and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for MasterCard transactions in the relevant markets;

  f.    The specific amount of damages suffered by Class Members has not yet been determined, as such determination will require additional discovery and expert analysis, but Class Members estimate damages will range in the tens of billions of dollars.

456.    MasterCard's uniform schedule of default Interchange Fees is illegal. It is not necessary to accomplish any procompetitive benefit of the MasterCard Network. Even if some agreement were necessary to promote the efficiencies of the MasterCard Network, MasterCard's uniform schedules of default Interchange Fees is significantly more restrictive than necessary to bring about those efficiencies. MasterCard and its Member Banks' price fixing achieves few – if any – procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive

- 116 -

# A905

effects in the relevant markets.

## NINETEENTH CLAIM FOR RELIEF:
## CLASS I VS. VISA AND ITS MEMBER BANKS FOR VIOLATION OF THE CARTWRIGHT ACT § 16700 *ET SEQ*. OF THE CALIFORNIA BUSINESS AND PROFESSIONAL CODE, CONTINUING ILLEGAL CONDUCT BY VISA AND ITS MEMBER BANKS

457.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

458.    Since Visa's recent IPO, Visa and its Member Banks, including the Bank Defendants – direct, horizontal competitors of each other – have engaged in unlawful contracts, combinations, and conspiracies in an unreasonable retrain of interstate trade and commerce in violation of the Cartwright Act (Cal. Bus. & Prof. Code, § *et seq*.).  These unlawful contracts, combinations, and conspiracies were entered into and effectuated within the State of California. The Member Banks, including the Bank Defendants, have simply designated a common agent to fix the levels of Interchange Fees to which all agree to adhere.

459.    The unlawful contacts, combinations, and conspiracies consisted of continuing agreements, understandings, and concerts of action between and among Visa's issuing and acquiring members, including the Bank Defendants and Visa, the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Interchange Fees for Credit Cards, Offline Debit Cards, and PIN-Debit Cards imposed on Merchants in the respective Relevant Market.

460.    The Visa Board of Directors established and approved uniform schedules of Interchange Fees for all Visa Credit Card, Offline Debit Card, and PIN-Debit Card transactions in the Relevant Markets. Visa's Member Banks, including the Bank Defendants, in turn agree to abide by Visa's bylaws and Operating Regulations, which apply Visa's uniform schedules of default Interchange Fees on all Visa transaction. Each Member Bank

- 117 -

# A906

agrees and understands that all other Member Banks will agree to abide by the same uniform schedule of default Interchange Fees.

461.    All of the Member Banks of Visa, including the Bank Defendants, have actual knowledge of, and have knowingly participated in, the conspiracy alleged herein.

462.    The contract, combination, conspiracy, and agreement alleged in this Claim, has, had, and/or is likely to have, among others, the following effects which are common to Plaintiffs and Class Members:

> a.    Actual and potential competition in the relevant markets was substantially excluded, suppressed, and effectively foreclosed;
>
> b.    Defendants acquired and maintained market power in the relevant markets;
>
> c.    Defendants controlled, maintained, and elevated above competitive levels the Interchange Fees imposed on Class Members in the relevant markets;
>
> d.    Defendants derived direct and substantial economic benefits from the supracompetitive Interchange Fees imposed on Merchants in the relevant market;
>
> e.    But for the anticompetitive conduct of Visa and its Member Banks, competition among banks would have eliminated or greatly reduced the Interchange Fees for Visa transactions in the relevant markets;
>
> f.    The specific amount of damages suffered by Class Members has not yet been determined, as such determination will require additional discovery and expert analysis, but Class Members estimate damages will range in the tens of billions of dollars.

463.    Visa's uniform schedule of default Interchange Fees is illegal. It is not necessary to accomplish any procompetitive benefit of the Visa network. Even if some agreement were necessary to promote the efficiencies of the Visa network, Visa's uniform schedules of default Interchange Fees is significantly more restrictive than necessary to bring about those efficiencies. Visa and its Member Banks' price fixing achieves few – if any –

- 118 -

procompetitive benefits to counterbalance the price-fixing's demonstrated anticompetitive effects in the relevant markets.

<u>TWENTIETH CLAIM FOR RELIEF</u>:
**CLASS II VS. ALL DEFENDANTS FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER § 16 OF THE CLAYTON ACT AND 28 U.S.C. § 201 FOR VIOLATIONS OF THE SHERMAN ACT, § 1, BY DEFENDANTS VISA AND MASTERCARD AND THEIR MEMBER BANKS**

464.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth here.

465.    Plaintiffs have been injured and will continue to be injured in their business and property as a result of Defendants' continuing conduct in violation of Section 1 of Sherman Act, as described in this Complaint, including Claims Seventeen and Eighteen.

466.    Plaintiffs request a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a), that Defendants' aforementioned conduct constitutes unlawful price fixing Interchange Fees as detailed in Claims Seventeen and Eighteen and in violation of Section 1 of the Sherman Act and the Cartwright Act.

467.    Defendants' conduct described herein is likely to continue unless enjoined.

468.    Plaintiffs further request that the Court enjoin and restrain Defendants' wrongful conduct, alleged herein, pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26.

**XI.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.    Declare, adjudge, and decree that Defendants have committed the violations of the federal and state antitrust laws as alleged herein;

B.    Order that Defendants, their directors, officers, employees, agents, successors, members, and all persons in active concert and participation with them be enjoined and restrained from, in any manner, directly or indirectly, committing the violations of the Cartwright and Sherman Acts, in which they and co-

- 119 -

# A908

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | MASTER FILE NO. 1:05-md-1720-JG-JO |

PAYMENT CARD INTERCHANGE FEE
AND MERCHANT-DISCOUNT
ANTITRUST LITIGATION

This Document Relates To: All Class Actions

| | | |
|---|---|---|
| 1:05-cv-03800 | 1:05-cv-05081 | **SECOND SUPPLEMENTAL CLASS** |
| 1:05-cv-03924 | 1:05-cv-05082 | **ACTION COMPLAINT** |
| 1:05-cv-04194 | 1:05-cv-05083 | |
| 1:05-cv-04520 | 1:05-cv-05153 | **JURY TRIAL DEMANDED** |
| 1:05-cv-04521 | 1:05-cv-05207 | |
| 1:05-cv-04728 | 1:05-cv-05319 | |
| 1:05-cv-04974 | 1:05-cv-05866 | |
| 1:05-cv-04974 | 1:05-cv-05868 | |
| 1:05-cv-05069 | 1:05-cv-05869 | |
| 1:05-cv-05070 | 1:05-cv-05870 | |
| 1:05-cv-05071 | 1:05-cv-05871 | |
| 1:05-cv-05072 | 1:05-cv-05878 | |
| 1:05-cv-05073 | 1:05-cv-05879 | |
| 1:05-cv-05074 | 1:05-cv-05880 | |
| 1:05-cv-05075 | 1:05-cv-05881 | |
| 1:05-cv-05076 | 1:05-cv-05882 | |
| 1:05-cv-05077 | 1:05-cv-05883 | |
| 1:05-cv-05080 | 1:05-cv-05885 | |

## I.

## PREAMBLE

1.      Class Plaintiffs' allegations in this Supplemental Complaint are brought under the

antitrust laws to challenge the conduct of Visa and its Member Banks in the events leading up to

and culminating with its Initial Public Offering (IPO) on March 18, 2008.

2.      From its inception in the 1960s until today, Visa has facilitated the transfer of

funds from Merchants to Issuing Banks. In the early 2000s, Visa realized what courts and

regulatory bodies had understood for some time -- that Visa's practice of requiring the payment

of Interchange Fees and establishing the level of those fees posed substantial harms to

# A909

## II.

## <u>INTRODUCTION</u>

10.     Class Plaintiffs hereby incorporate each and every factual allegation and definition of the Second Consolidated Amended Class Action Complaint as if fully set forth herein.

11.     The Merchant Plaintiffs operate commercial businesses throughout the United States that have accepted Visa and MasterCard Credit Cards, Offline Debit Cards, and Interlink PIN-Debit Cards as forms of payment along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards.

12.     The Trade-Association Plaintiffs are each comprised of members that operate commercial establishments in the United States which accept Visa and MasterCard Credit Cards, Offline Debit Cards, and Interlink PIN-Debit Cards as forms of payment along with cash, checks, travelers checks, and other plastic Credit, Debit, and Charge Cards.

13.     Together, the Merchant Plaintiffs and the Trade-Association Plaintiffs (hereinafter "Plaintiffs") represent two classes of millions of Merchants that accept Visa and MasterCard Credit and Offline Debit Cards and Interlink PIN-Debit Cards as forms of payment and challenge the collusive and anticompetitive practices of the Defendants under the antitrust laws of the United States.

14.     The Restructuring alleged herein is illegal under Section 7 of the Clayton Act, 15 U.S.C. § 18.

15.     The contracts, combinations, and conspiracies in restraint of trade alleged herein, are illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1.

-5-

# A910

### III.

### <u>JURISDICTION AND VENUE</u>

16.     This Complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain violations of Section 1 of the Sherman Act, 15 U.S.C. §1 and Section 7 of the Clayton Act, 15 U.S.C. § 18, and for damages under § 4 of the Clayton Act, 15 U.S.C. § 15. This Court has jurisdiction over Plaintiffs' federal antitrust claims under 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

17.     Venue in the Eastern District of New York is proper under 28 U.S.C. §§ 1391, 1407 and 15 U.S.C. §§ 15, 22, and 26.  Several of the Merchant Plaintiffs operate retail outlets in the District.  The Trade-Association Plaintiffs' members include Merchants that transact business in this District.  Defendants transact business and are found in the Eastern District of New York.  Thousands of Merchants located in the Eastern District of New York accept MasterCard Credit Cards and Debit Cards issued by one or more Defendants and, thus, are Class Members.  Hundreds of Member Banks of Visa, including many of the banks named as Defendants, issue Visa Credit Cards and Debit Cards and/or acquire retail Merchant transactions for Visa in the Eastern District of New York.  A substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on in part within the Eastern District of New York.  The acts complained of have had, and will have, substantial anticompetitive effects in the Eastern District of New York.

### IV.

### <u>DEFINITIONS</u>

18.     As used in this Complaint, the following terms are defined as:

>     a.     "Agreements" means the contracts, agreements, and mutual
>             understandings by, between and among Old Visa, the members of its
>             Board of Directors, and its Member Banks, relating in any way to the

# A911

to how potential litigation and regulation would affect each structural option. (Partridge Dep. 337:12-22.)

112.    Project Heights provided its Final Report and Recommendations to the Visa International Board on May 8, 2006. (Partridge Exh. 32849 at VI-IC-02755900.) After considering two specific implementations of Option 2 (the Global Float with Regionality discussed above), Heights settled upon and recommended what it referred to as Option 2A whereby "Visa Europe would be a Licensee Region, owned 5 percent by the Global Company [Visa Inc.] and 95 percent by local financial institutions." (*Id*. at VI-IC-02755901.)

## 2.      The final Restructuring plan.

113.    After the final Restructuring plan was agreed upon, various Visa entities entered into a series of mergers that resulted in one entity known as Visa, Inc. and another separately-incorporated entity known as Visa Europe. Under these mergers, Visa U.S.A., Visa Canada, and Innovant, LLC became subsidiaries of Visa, Inc. Visa, Inc. then issued common stock to the financial-institution members of Visa U.S.A., the financial-institution members of Visa Canada, the financial-institution members of three unincorporated geographic regions of Visa International, Visa U.S.A., Visa Europe, and Visa Europe's subsidiary, VESI.  The transactions that produced Visa, Inc. and Visa Europe were completed by October 3, 2007.

114.    After the merger phase of the Restructuring was completed, Visa, Inc. conducted an Initial Public Offering of 406,000,000 shares of Class A common stock in Visa, Inc. on March 18, 2008. By redeeming those shares and reclassifying them as publicly-held class A shares, the IPO had the effect of Visa, Inc. purchasing the Member Banks' shares in it. In exchange for redeeming the formerly-bank-held shares, Visa provided the banks with a large part of the proceeds of the IPO as well as Class B shares and C shares in Visa, Inc.

115.    The types of shares that the banks could own post-Restructuring were limited by geographic region. Class B shares could be held only by members of the former Visa U.S.A. Former members of Visa Canada, AP (Asia Pacific), LAC (Latin America/Caribbean), and CEMEA (Central Europe/Middle East/Africa) acquired Class C (series I) common stock. Member Banks in Visa Europe acquired Class C (series II, III, and IV) common stock. A portion of these Class B and C shares were subject to a mandatory redemption following the IPO and a redemption of Class C (series II and III) stock occurred in October 2008.

116.    Similar to MasterCard's Restructuring, the Visa Restructuring placed several limitations on New Visa that were intended to preserve the anticompetitive market structure that Visa and its Member Banks has created. For example, New Visa's Board of Directors must provide advance approval before any person may own more than 15 % of the aggregate shares of Class A common stock. In addition, the holders of Class B and C shares (Visa's Member Banks) will be able to elect 6 of 17 directors over the three years following the IPO.

117.    The Member Banks that hold Class B or C stock are entitled to voting rights governing certain extraordinary transactions that relate to the consolidation or merger of New Visa, or its exit from the core payments business. In addition, approving a merger, consolidation, or exit of the core business requires an 80% approval of voting shares. This supermajority provision, in combination with the Member Banks' right to vote on these types of occurrences gives the banks veto powers that allow them to prevent the sale of Visa or prevent a change in the core business of Visa, just as the Member Banks of MasterCard retained certain veto rights through their Class M shares in the MasterCard Restructuring.  In addition, the holders of Visa, Inc. Class B and C stock must approve any changes to New Visa's certificate of Incorporation that would take away this veto right.

80543347.5

118.   Class B stock – the stock that is held by the U.S. Member Banks – is non-transferable (with limited exceptions) until three years after the close of the IPO and the final resolution of this and other litigation. Class C stock is non-transferable until three years after the closing of the IPO.

119.   Another aspect of the Restructuring involved a collective agreement among Old Visa and the U.S. Member Banks regarding this litigation.

120.   As part of the Restructuring, Visa U.S.A. and its Member Banks in the United States entered into a series of agreements known as the Retrospective Responsibility Plan. This Plan included a judgment-sharing agreement whereby the signatory banks agree to fix their respective liabilities for any monetary-damage judgment against them or New Visa in this and other actions.   The purpose of this agreement is to attempt to fix, at a lower level than competition would otherwise generate, the level of rebates that are provided to Class Members for the Interchange-Fee overcharges that they sustained as a result of the conduct that Plaintiffs are challenging in this litigation.

121.   Also as part of the Retrospective Responsibility Plan, the Visa Member Banks in the United States appointed a Litigation Committee composed of representatives of those Member Banks. The Litigation Committee is charged, among other things, with making recommendations with regard to the settling these actions. This constitutes concerted action by Visa and its U.S. Member Banks with respect to the level of rebates of overcharges that Defendants might agree on, and provides these Member Banks another mechanism by which they can control New Visa.

80543347.5

If Merchants collectively could acquire control of Visa with the prospect of saving more on Interchange Fees than it would cost to acquire control of Visa, Merchants might very well do so.

155.    The Ownership and Control Restrictions also enable the Member Banks of Visa to protect the supra-competitive profits that they earn as MasterCard Member Banks. If those restrictions did not exist and a single firm could acquire Visa, that acquiring firm could lower Interchange Fees to attract Merchant transaction volume, thereby forcing the MasterCard Member Banks to respond by lowering their fees.  This is precisely what occurred in Australia when Visa and MasterCard's Interchange Fees were substantially reduced.  There, competitive forces caused American Express to reduce their Merchant fees by almost the same amount.

156.    The 15-percent ownership limitation acts as a barrier to entry in the relevant market, and as such has an immediate adverse effect on competition and inflationary impact on prices.

157.    The Member Banks' acquisition of Class B and C shares in New Visa also harms competition and imposes antitrust injury on Class Plaintiffs.

158.    Because the banks view the setting of Interchange Fees as the central feature of Visa's value proposition to them, the Class B and C shareholders (banks) could block an attempt by the Board of New Visa to eliminate or greatly reduce Interchange Fees or reform them to be more "transparent" and "competitive[ly]" set.

159.    The intended and actual effect of the Ownership and Control Restrictions, and the Restructuring *in toto* is similar placing an airplane on auto-pilot, or setting the rudder of a ship at a certain point, and then turning over control of the plane or ship to a new captain.  Both cause the vessel to move in the previously fixed direction, unless the new captain has the knowledge, experience and wherewithal to change directions.  As described above, the Member Banks of

-48-

# A915

Old Visa carefully designed the Relevant Markets, the business strategy of Old Visa, and the Restructuring, to assure that New Visa would be unable to change directions.

## IX.

## <u>RELEVANT MARKETS</u>

160.     There exists a relevant market, the product dimension of which is no broader than General Purpose Cards.  *In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3 (E.D.N.Y. Apr. 1, 2003); *United States v. Visa*, 163 F. Supp. 2d 322, 335 (S.D.N.Y. 2001). The geographic dimension of this market is the United States ("General Purpose Card Market"). *United States v. Visa*, 163 F. Supp. 2d at 339-40 (S.D.N.Y. 2001), *aff'd*, 344 F.3d at 239 (2d Cir. 2003).

161.     There exists a relevant market, the product dimension of which is no broader than General Purpose Card Network Services.  *In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3 (E.D.N.Y. Apr. 1, 2003); *United States v. Visa*, 163 F. Supp. 2d at 338, *aff'd*, 344 F.3d at 239.  The geographic dimension of this market is the United States ("General Purpose Card Network Services Market").

162.     Both Visa and MasterCard, "together with their Member Banks," jointly and separately, have market power in the market for General Purpose Cards and General Purpose Card Network Services.  *United States v. Visa*, 163 F. Supp. 2d at 340, *aff'd*, 344 F.3d at 239.

163.     The market shares of Visa indicate that it has market power in the General Purpose Card Network Services market.  In 1999, Visa had a 47% share of the General Purpose Card transactions by dollar volume in the United States, while Visa and MasterCard had a combined market share of 73%.  *United States v. Visa*, 163 F. Supp. 2d at 341.  At that time, Visa and MasterCard collectively issued 85% of the General Purpose Cards in the United States. *Id.*

# A916

164.    In 2007, Visa transactions accounted for 43% of U.S. General Purpose Card purchase volume, which included American Express and Discover.  Visa's market share is significantly higher if Charge Cards are excluded from the market.  Visa and MasterCard collectively accounted for 71% of General Purpose Card purchase volume, the same share of purchase volume that they had when Judge Jones ruled that Visa and MasterCard possessed market power six years earlier.

165.    Concerted activity between Visa and MasterCard allows the Networks to collectively assert market power.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3 (E.D.N.Y. Apr. 1, 2003) (noting evidence of collusion between Visa and MasterCard with respect to their Debit Card strategies).

166.    Merchants do not view Offline Debit Card Network Services and PIN-Debit Card Network Services as acceptable substitutes to General Purpose Card Network Services. This is demonstrated by the fact that Merchants continue to accept Visa and MasterCard Credit Cards even though the Interchange Fees associated with Credit Card transactions is significantly higher than the fees associated with Debit Card transactions.

167.    More recently, New Visa has increased Interchange Fees by large amounts without losing any Merchants as a result.

168.    None of the recent increases in New Visa's Credit Card Interchange Fees have been attributable to increases in the level of costs associated with the operations of the Networks.

169.    Old Visa and its Member Banks exercised their market power in the General Purpose Card Network Services market.  As the court noted in the United States' action against the Networks, Old Visa raised Credit Card Interchange Fees charged to Merchants a number of times without losing Merchants. *United States v. Visa*, 163 F. Supp. 2d at 340.  New Visa

-50-

continues its practice of increasing Interchange Fees, again without losing significant Merchant acceptance.

170.    Old Visa and its Member Banks also demonstrated their market power by "price discriminating" in the level of Interchange Fees that were imposed on various Merchants and for various types of transactions. *United States v. Visa*, 163 F. Supp. 2d at 340. Since the United States' action, New Visa has only increased its price-discrimination practices.

171.    Visa's price-discrimination among categories of Merchants is not based on cost but is based instead on its perception of the "elasticity of demand" (*i.e.*, the Merchants' willingness to pay) of the various categories of Merchants. It is Visa's practice to impose the highest fees on those Merchants that have the fewest options to discontinue acceptance as fees increase.

172.    The Networks' pricing policies are reflected in the comments of MasterCard's Associate General Counsel before the European Commission in 2007. The Associate General Counsel discussed that when MasterCard performs a cost study, it attempts to answer the following question: "How high could interchange fees go before we would start having serious acceptance problems, where Merchants would say: we don't want this product anymore, or by Merchants trying to discourage the use of the card either by surcharging or discounting for cash." E.C. Decision at 56.

173.    The ability of Visa to set prices to Merchants based on the Merchant's elasticity of demand is referred to by economists as setting a "reservation price." This pricing strategy is used by firms with monopoly power.

174.    Old Visa also forced Premium Credit Cards upon Merchants that accept its Credit Cards. These Premium Cards carry higher Interchange Fees than non-premium cards and many

Merchants would refuse to accept them if they had the power to do so. Old Visa rules required Merchants that accepted Visa Credit Cards to also accept these "Premium Cards." The inability of Merchants to resist the imposition of higher Interchange Fee cards further demonstrated Visa's substantial market power. New Visa's continued market power is demonstrated that it has continued the practices described in this paragraph after its Restructuring.

175.    There are significant barriers to entry in the General Purpose Card Network Services Market. Because of these barriers, the only successful market entrant since the 1960's has been Discover, which was introduced by Sears and benefited from its extensive network of stores, its extensive base of customers who carried Sears' store card, and its relationship with Dean Witter. New entry into the General Purpose Card Network Services Market would be extremely costly and would involve a "chicken-and-egg problem of developing a Merchant acceptance network without an initial network of cardholders who, in turn, are needed to induce Merchants to accept the system's cards in the first place." *United States v. Visa*, 163 F. Supp. 2d at 342.

176.    Visa's former CEO, J.P. Coghlan, estimated that it would cost a new entrant ▮▮ ▮▮ to establish a competitive Payment-Card Network. (Coghlan Dep. 160:17-161:23.)

177.    There exists a relevant market, the product dimension of which is Offline Debit Cards. The geographic dimension of this market is the United States.

178.    In the alternative, there exists a relevant market, the product dimension of which is no broader than Debit Cards. *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *2 (E.D.N.Y. Apr. 1, 2003).

179.    There exists a relevant market, the product dimension of which is Offline Debit Card Network Services.  The geographic dimension of this market is the United States.  The evidence may also establish that "single-brand" markets exist in the market as well.

180.    In the alternative, there exists a relevant market, the product dimension of which is no broader than Debit Card Network Services. *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *7 (E.D.N.Y. Apr. 1, 2003).

181.    Offline Debit Cards and Offline Debit Card Network Services are a unique bundle of services.  Consumers who use Offline Debit Cards either want to or have to make contemporaneous payment for their purchases with funds in their depository accounts.  These consumers either cannot borrow money for those purchases (because they may not be deemed credit-worthy by Credit Card Issuing Banks) or choose not to.

182.    From a consumer's perspective, Offline Debit Cards are not interchangeable with PIN-Debit Cards.  Offline Debit Cards carry a Visa or MasterCard "Bug" and therefore are accepted by virtually all Merchants that accept Visa and MasterCard Payment Cards.  On the other hand, PIN-Debit Cards are accepted at many fewer Merchant locations and therefore a consumer who prefers to pay for purchases with a PIN-Debit Card must necessarily carry an alternate form of payment as well.

183.    Because Offline Debit Cards uniquely enable consumers to make certain types of purchases, the acceptance of Offline Debit Cards is also unique from a Merchant's perspective.  There are therefore no other services that are reasonably substitutable for Offline Debit Card Network Services.

184.    PIN-Debit transactions require a PIN pad and are not processed by a paper receipt.  This means that there is a greater upfront cost to the Merchant of accepting PIN

transactions, and in some situations, the use of a PIN-Debit Card may require a change in business procedures.  For example, in a restaurant, if customers did not pay at a central location, the server would have to bring a wireless PIN pad to the table.  This practice is common in countries in which Zero-Interchange-Fee PIN-Debit Card Networks are well-established.

185.   Visa and MasterCard have market power in the market for Offline Debit Card Network Services.  In 2007, Visa's Offline Debit Card product had a 74% share of the purchase volume in the Offline Debit Card Network Services market. Visa and MasterCard collectively had a 100% share of the purchase volume in the Offline Debit Card Network Services market.

186.   Visa and MasterCard's market power in the Offline Debit Card and Offline Debit Card Network Services markets is reinforced by the fact that the major Visa-Check-Issuing Banks are members of MasterCard and major MasterCard-Debit-Issuing Banks are members of Visa.  This makes the Interchange Fee structures between Visa and MasterCard transparent to them and minimizes the incentives of the Networks to undercut each other's fees.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 2003 WL 1712568, at *3, *6 (E.D.N.Y. Apr. 1, 2003) (citing incidents of concerted activity between Visa and MasterCard).

187.   Few, if any, Merchants would stop accepting Visa or MasterCard Offline Debit Cards even in the face of a substantial increase in Merchant-Discount Fees.  In fact, even after the settlement in *Visa Check* allowed Merchants to refuse acceptance of Defendants' Offline Debit Cards while continuing to accept Defendants' Credit Cards, few Merchants have actually availed themselves of this opportunity.

188.   There exists a relevant market the product dimension of which is PIN-Debit Cards. The geographic dimension of this market is the United States.

# A921



LEXISNEXIS' FILE & SERVE
19761346
E-SERVICE
May 8 2008
11:52PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD : | |
| INTERCHANGE FEE AND : | MDL Docket No. 1720 |
| MERCHANT DISCOUNT : | |
| ANTITRUST LITIGATION : | MASTER FILE NO. |
| : | 1:05-md-1720-JG-JO |
| This Document Relates To: : | |
| : | |
| ALL CLASS ACTIONS : | |
| : | |
| : | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**FILED UNDER SEAL**

# REDACTED

# A922

## I.  INTRODUCTION

Plaintiffs' claims are ideally suited for class certification.  Defendants have engaged in a uniform course of anticompetitive conduct, causing like harms to all members of the merchant class.  Proof of that conduct and those harms will be the same for all class members.  This Court certified a similar class in *In re VisaCheck/Master Money Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000) ("*VisaCheck/Master Money I*"), *aff'd*, 280 F.3d 124 (2d Cir. 2001) ("*VisaCheck/Master Money II*").  While this is the only litigation pending in the United States that addresses Defendants' anticompetitive conduct,[1] multiple forums outside the United States have addressed that conduct and made findings that are substantially consistent with Plaintiffs' allegations, after considering legal and factual issues that related to virtually all merchants who deal with Visa and/or MasterCard within the geographic areas affected by those proceedings.[2]

Defendants Visa, MasterCard and their member banks have engaged in anticompetitive practices, including collusion, that artificially inflated the interchange fee that all merchants paid (and continue to pay) to accept Visa- and MasterCard-branded credit and debit cards.[3]

---

[1] Other plaintiffs have raised similar claims in other courts, all of which were dismissed for reasons other than the merits. *See Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 442 F.3d 741 (9th Cir. 2006) (claims barred by releases in *VisaCheck/Master Money*); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ("*Kendall*") (claims dismissed for inadequate pleading).

[2] *See, e.g.,* Ex. 1 to the Declaration of Michael J. Kane in Support of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Declaration of Gustavo Bamberger, Ph.D. ("Bamberger Decl. "; all other exhibits appended to the Kane Declaration will be referred to as "Ex. __") ¶¶ 14-15; Ex. 2, Commission Decision (E.C.) COMP/34.579 of 19 DecemberDec. 2007 ("*E.C. Decision*"); Ex. 3, Office of Fair Trading, Decision No. CA 98/05/05 − Investigation of the Multilateral Interchange Fees Provided for in the UK Domestic Rules of MasterCard UK Members Forum Limited (formerly known as MasterCard/Europay UK Limited), Case No. CP/0090/00/S (Sept. 6, 2005); Ex. 4, Reserve Bank of Australia, *Reform of Credit Card Schemes in Australia IV* (August 2002).

[3] Defendant Visa USA, Inc. was, during the relevant time prior to its recent initial public offering, a group-member of Visa International Service Association.  Visa International licensed

# A923

Interchange fees, which are neither cost-based nor negotiated between merchants and the banks with whom they deal directly ("acquiring banks"), raise merchant discount fees (*i.e.*, fees merchants effectively pay, which include interchange fees) to supracompetitive levels and have generated enormous profits for the Bank Defendants. Defendants have colluded, and continue to collude, with respect to interchange fees in violation of Section 1 of the Sherman Act, pursuant to three separate (but interrelated) conspiracies, those being between and among:

    a.    The Visa network and its member banks;

    b.    The MasterCard network and its member banks; and

    c.    The Visa network, the MasterCard network, and their respective member banks.

The purposes of each conspiracy are the same: (a) to perpetuate the imposition of interchange fees, which are not necessary to the efficient operation of Visa's and MasterCard's networks; and (b) to repeatedly increase interchange fees to ever higher artificial levels, even as information technology costs associated with processing credit and debit cards continue their long term decline.

Each conspiracy has been, and continues to be, successful for a number of reasons. Those reasons include, *inter alia*: (a) each network and its member banks, and both networks together, have at all times maintained the market power necessary to profitably raise prices above competitive levels; (b) the operating rules of each network, which are incorporated into the contracts between acquiring banks and their merchant customers, as required by the networks, contain "anti-steering restraints" that Defendants enforce to maintain and enhance the networks' market power, by preventing merchants from applying even minimal competitive

---

the Visa name and symbol to its group-members, including Visa USA. Defendants Visa USA and Visa International are collectively referred to herein as "Visa."

2

# A924

pressure on Defendants with respect to interchange fees; and (c) the interchange fee system is structured by the networks and member banks in such a way that there is virtually no transparency to consumers, and thus there is no competitive pressure from consumers to reduce or eliminate interchange fees. In short, *no* participant adversely affected by interchange fees (*i.e.*, consumers or merchants) is able to impose competitive pressure on Defendants with respect to interchange fees.[4]

Defendants' collusive imposition and enforcement of the anti-steering restraints facilitates the conspiracies, and has enabled Visa to obtain and maintain monopoly power in the relevant market, in violation of section 2 of the Sherman Act. These anti-steering restraints generally prevent merchants from influencing a customer's choice of payment method at the point of sale. The foremost example is the "no surcharge" rule, which prevents merchants from surcharging credit card transactions to recoup the costs associated with credit card usage (the largest of which by far is the interchange fee), and thus acts to perpetuate Defendants' market power.

In an to attempt to avoid liability for their continuing anticompetitive conduct, MasterCard and the banks that owned it converted their joint venture into a single MasterCard entity through an initial public offering ("IPO"), in May 2006.[5] Plaintiffs have challenged MasterCard's IPO under Section 1 of the Sherman Act and Section 7 of the Clayton Act. MasterCard and its member banks entered agreements and took actions leading to the IPO which violated Section 1 of the Sherman Act by consolidating the member banks' market power in the

_____

[4] Merchants pay the interchange fee and it inflates prices to consumers to the extent that merchants are able to adjust their prices, although competition often thwarts efforts to pass on interchange fees. *See* Ex. 5, Class Pls.' Answers to Agreed Upon First Set of Interrogs. Propounded to Each Class Representative by All Defs., at 9.

[5] *See, e.g.*, Ex. 6, Murphy Dep. Tr. 507:3-509:4.

3

# A925

new MasterCard, allowing the member banks to retain significant control over the new MasterCard, all while perpetuating the member banks' business strategy of setting interchange fees at supracompetitive levels. The consummation of the IPO violated Section 7 of the Clayton Act by threatening substantially to lessen competition in the relevant market. The IPO confers upon the new MasterCard market power in a relevant market, which when unilaterally exercised harms competition.

Absent Defendants' anticompetitive conduct, the payment card industry would be very different. There would be no interchange fee and no anti-steering restraints, or alternatively, interchange fees would be set in the least restrictive manner possible, resulting in substantially lower fees. Thus, virtually all merchants are adversely impacted by the above-referenced conspiracies and are damaged in a way that can be established through common proof. Likewise, Defendants' conduct applies generally to the class, and the injunctive relief Plaintiffs request is uniformly applicable to and beneficial to the merchant class.

Plaintiffs seek certification of two classes: (1) an Injunctive Relief Class and (2) a Damages Class. The Injunctive Relief Class seeks injunctive relief pursuant to Plaintiffs' claims under the Sherman Act, 15 U.S.C. §§ 1 & 2, and the California Cartwright Act, CAL. BUS. & PROF. CODE § 16700 *et seq.*, for the threatened damage to Plaintiffs and the members of the class by reason of Defendants' anticompetitive conduct. The Injunctive Relief Class is defined as:

> All persons, businesses, and other entities that currently accept Visa and/or MasterCard Credit and/or Debit Cards in the United States. This Class does not include the named Defendants, their directors, officers, or members of their families, or their co-conspirators, or the United States Government.

Plaintiffs move for certification of an Injunctive Relief Class for the following claims:

# A926

- Against all Defendants seeking to enjoin Defendants' anticompetitive conduct with respect to credit cards as set forth in Claims 1-6 and 11 of the First Consolidated Amended Class Action Complaint ("FCACAC");

- Against all Defendants seeking to enjoin Defendants' anticompetitive conduct with respect to off-line debit cards as set forth in Claims 13-15 of the FCACAC;[6] and

- Against MasterCard and the banks named as Defendants in the First Supplemental Complaint, seeking to enjoin the illegal conduct alleged in that Complaint.[7]

The Damages Class seeks damages arising from Plaintiffs' claims under the Sherman Act, 15 U.S.C. § 1 and section 16700, *et seq.*, of the Cartwright Act, to recover for the injury to Plaintiffs' and class members' business or property attributable to the amount of the overcharges they have paid. The Damages Class is defined as:

> All persons, businesses, and other entities that have accepted Visa and/or MasterCard Credit and/or Debit Cards in the United States at any time from and after January 1, 2004. This Class does not include the named Defendants, their directors, officers, or members of their families, or their co-conspirators, or the United States Government.

Plaintiffs move for certification of a Damages Class for the following claims:[8]

- Conspiracy between Visa and its member banks to fix the price of interchange fees for credit cards in violation of section 1 of the Sherman Act (Claim 11 of the FCACAC);

- Conspiracy between MasterCard and its member banks to fix the price of interchange fees for credit cards in violation of section 1 of the Sherman Act (Claim 2 of the FCACAC);

---

[6] Class Plaintiffs will move for certification of a similar class with regard to Visa's PIN debit cards after filing the next amended complaint.

[7] Plaintiffs will move for the certification of a similar class with regard to Visa's IPO after filing the Second Supplemental Complaint.

[8] In the forthcoming amended complaint, Plaintiffs will seek only injunctive relief, not damages, as to claims 4-6 of the FCACAC. In addition, Plaintiffs will eliminate claims 7-10 of the FCACAC as independent stand alone claims seeking damages and injunctive relief, but will continue to allege that Defendants' tying and bundling and exclusive dealing practices have facilitated Defendants' anticompetitive conduct. Thus, as to claims 7-10, Plaintiffs are not moving for class certification.

# A927

appropriate were the plaintiffs to succeed on the merits." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 20 (2d Cir. 2003) (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001)); *see also Velez*, 244 F.R.D. at 270-71; *Brown*, 244 F.R.D. at 228. Both of these elements are present and common to the Injunctive Relief Class here, and significantly, no government proceedings are pending that could achieve comparable equitable relief.

Where, as in this case, declaratory or injunctive relief is an important aspect of the overall relief sought, certification is warranted under Rule 23(b)(2). See Visa Check/*Master Money I*, 192 F.R.D. at 88-89; *Brown*, 244 F.R.D. at 228. In *VisaCheck/Master Money I*, this Court certified a merchant class pursuant to Rule 23(b)(2), in addition to a separate Rule 23(b)(3) class, because the conduct at issue was "'generally applicable' to all members of the class, and the request for an injunction ending it is central to the plaintiffs' suit." *Id.* at 88. This Court found that "the highly significant injunctive relief sought [t]here is as important as the damages claimed." *Id.*; *see also NASDAQ*, 169 F.R.D. at 517 ("the requested declaratory and injunctive relief will be necessary to ensure that Nasdaq investors are not harmed in the future by Defendants' anticompetitive conduct.").

The circumstances in this case are, in this context, identical to those in *VisaCheck/Master Money*. Defendants' anticompetitive conduct is generally applicable to all Plaintiffs and class members. In fact, Dr. Bamberger concludes that Defendants' conspiracy, if proven, would have injured virtually all merchants and thus, merchant class members would generally benefit from injunctive relief prohibiting such conduct. Bamberger Decl. ¶¶ 72, 90, 93-94, 98, 103, 122. All Plaintiffs and class members would seek to enjoin that conduct, because if Defendants are permitted to maintain their scheme, future damage to the class will total tens of billions of dollars

# A928

annually.[90] If the Court enjoins Defendants' conduct, the class will be spared those damages, without in any way undermining the efficiency of the payment card networks.[91] For these reasons alone, the injunctive relief Plaintiffs seek is as important as the damages Plaintiffs seek. As the court held in *Velez*, "[i]f Plaintiffs prevail on the merits, that injunctive relief will be appropriate and reasonably necessary, because it would serve little purpose to award money damages for discrimination without addressing the institutional structure that perpetuates it." *Velez*, 244 F.R.D. at 271.

It is for these reasons that district courts in this Circuit have recognized that injunctive relief for ongoing antitrust violations goes hand-in-hand with damages for past violations, and have repeatedly certified Rule 23(b)(2) classes in antitrust cases where plaintiffs also sought monetary damages. *See, e.g.*, *VisaCheck/Master Money I*, 192 F.R.D. at 88-89; *Currency Conversion*, 224 F.R.D. at 567; *NASDAQ*, 169 F.R.D. at 515-17.

## 2. The Requirements of Rule 23(b)(3) Are Met

To meet the requirements of Rule 23(b)(3) ("Damages Class"), the Court must be satisfied that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to other available methods of adjudication. The Damages Class meets both of these requirements.

### a. Common Questions of Law and Fact Predominate as to Plaintiffs' Claims

Plaintiffs satisfy the predominance requirement for each of their claims because they "are subject to generalized proof, and thus applicable to the class as a whole," and the issues

---

[90]

REDACTED

[91] *See* Ex. 2, *E.C. Decision* ¶¶ 4, 556-57, 751.

# A929

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| **IN RE PAYMENT CARD** | : | |
| **INTERCHANGE FEE AND** | : | **MDL Docket No. 1720** |
| **MERCHANT DISCOUNT** | : | |
| **ANTITRUST LITIGATION** | : | **MASTER FILE NO.** |
| | : | **1:05-md-1720-JG-JO** |
| **This Document Relates To:** | : | |
| | : | |
| **ALL CLASS ACTIONS** | : | |
| | : | |
| | : | |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# A930

**B.**   **Plaintiffs Adequately Allege that the Networks' Rules Requiring the Payment of an Interchange Fee on Every Transaction Constitute a Restraint of Trade.**

Defendants' argument that Plaintiffs have not adequately alleged a restraint of trade within the meaning of Section 1 of the Sherman Act is fundamentally flawed for at least two reasons.[12]  First, price-fixing agreements necessarily limit price competition and thus are a restraint of trade.  Second, Defendants' argument does not even address the restraint at issue in this case, but instead focuses primarily on whether Visa's and MasterCard's member banks are free to compete as issuers for cardholders of general purpose and private label payment cards.

Moreover, Defendants' reliance on *Buffalo Broadcasting Co., Inc. v. ASCAP*, 744 F.2d 917 (2d Cir. 1984) ("*Buffalo Broadcasting*"), is misplaced.  Plaintiffs' factual allegations are distinguishable in their entirety from the evidence in *Buffalo Broadcasting*.  And, to the limited extent that any "rule" might derive from that case, it is limited to the unique facts that were before the court.

**1.**   **The Network Defendants' Rules Mandating Payment of an Interchange Fee are a Restraint of Trade because they Restrict Price Competition.**

Plaintiffs generally must allege a "contract, combination or conspiracy …in restraint of trade" to plead a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  For pleading purposes, the restraint of trade element is easily established because, as the Supreme Court has recognized, "every contract is a restraint of trade" as "[t]o bind, to restrain, is of their very essence."  *Nat'l Collegiate Athletic Ass'n v. Board of Regents of Univ. of Oklahoma*, 468 U.S.

---

failed to raise it at that point.  Defendants claimed that they might still be entitled to raise it at the summary judgment stage only.  *Id*. at 27.

[12] Defendants notably do not dispute that they have collusively imposed and fixed the fees at issue.  For the purposes of this motion, the Court may assume that they have done that.

12

85, 98 (1984); *Board of Trade of Chicago v. United States*, 246 U.S. 231, 238 (1918).  A horizontal restraint is "an agreement among competitors on the way in which they will compete with one another."  *N.C.A.A.*, 468 U.S. at 99.  Trade is restrained within the meaning of the statute even where the restraint does not completely eliminate competition.  *See United States v. Socony-Vacuum Oil, Co.*, 310 U.S. 150, 220 (1940) (agreements which curtail but do not eliminate price competition are illegal).

Here, Plaintiffs allege that Visa and its member banks and MasterCard and its member banks have restrained price competition for card acceptance services through their collusive rules and conduct, which allows them to artificially fix and maintain interchange fees.  Defendants' argument that Plaintiffs do not allege a restraint focuses solely on the allegations regarding the rules requiring payment of an interchange fee, and ignores these other rules which allow Defendants to raise interchange fees without competitive pressure.  Price competition is restrained not only through the networks' rules requiring an interchange fee on every payment card transaction, but also by fixing uniform fee schedules for those transactions.  In addition, Defendants impose and enforce anti-steering restraints to maintain and enhance the networks' market power by preventing merchants from applying even minimal competitive pressure on interchange fees.  *See, e.g.*, SCACAC ¶¶ 190-98, 238-47, 292-312, 328-30, 336-38.  Plaintiffs further allege that price competition is restrained through the network Defendants' Honor All Cards rules.  *See, e.g.*, SCACAC ¶¶ 244-45.  Specifically, Plaintiffs allege the following:

●    Before the IPOs, Bank Defendants, acting through the Visa and MasterCard Boards of Directors, collectively adopted and enforced rules that required the payment of an interchange fee set at Visa's and MasterCard's uniform levels for all transactions on the respective networks.  Since the IPOs, those rules have remained in place, and the Bank Defendants have agreed to abide by them.  SCACAC ¶¶ 155, 163-164, 184-185, 238-239, 242-243;

# A932

37459724

May 6 2011
9:51PM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL Docket No. 1720 (JG)(JO) <br><br> # REDACTED |

---

**Class Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Unannotated)**

K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth

Robins, Kaplan, Miller & Ciresi L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel: 612-349-8500
Fax: 612-339-4181

Patrick J. Coughlin
Bonny E. Sweeney
David W. Mitchell
Alexandra S. Bernay

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: 619-231-1058
Fax: 619-231-7423

H. Laddie Montague, Jr.
Merrill G. Davidoff
Bart D. Cohen
Michael J. Kane

Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604

Co-Lead Counsel for MDL 1720 Class Plaintiffs

CONTAINS HIGHLY CONFIDENTIAL MATERIAL – TO BE FILED UNDER SEAL

# A933

*VKK Corp. v. NFL*, 244 F.3d 114, 121 (2d Cir. 2001). Class Plaintiffs do not allege that the *Visa Check* release operates in that way.

## II. Public policy against releasing future antitrust claims precludes this Court from immunizing Defendants' anticompetitive conduct, which inflicted new and continuing antitrust injury on merchants on and after January 1, 2004.

Releases that would effectively immunize defendants from future antitrust liability are unenforceable for public-policy reasons. For example, in *Lawlor*, the Supreme Court recognized that, to hold otherwise would "confer on [defendants] a partial immunity from civil liability for future violations," which is inconsistent with antitrust laws. *Lawlor v. Nat'l Screen Serv.*, 349 U.S. 322, 328 (1955). More recently, the Second Circuit recognized the "firm principle of antitrust law that an agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy." *In re Am. Express Merchs.' Litig.*, No. 06-1871-cv, 2011 U.S. App. LEXIS 4507, at *27 (2d Cir. Mar. 8, 2011). Other courts have also recognized the policy against immunity from future antitrust violations. *See Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *Minnesota Mining and Mfg. Co. v. Graham-Field, Inc.*, No. 96 cv 3839, 1997 U.S. Dist. LEXIS 4457, at *3 (S.D.N.Y. Apr. 9, 1997); *Redel's Inc. v. Gen. Elec. Co*, 498 F.2d 95, 99 (5th Cir. 1974).[8] To afford the Release

---

[8]       *See also, Fox Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955) (it is against public policy to absolve a party from liability of future anticompetitive conduct; *Mktg. Assistance Plan, Inc. v. Assoc. Milk Producers, Inc.*, 338 F. Supp. 1019, 1022 (S.D. Tex. 1972) (release "could not settle disputes which had not yet arisen or serve as a license to engage in unlawful monopoly activities against the releasors; [s]uch an absolution would violated public policy"); *Flying J v. TA Operating Corp.*, No. 1:06-CV-30-TC, 2008 U.S.

- 20 -

CONTAINS HIGHLY CONFIDENTIAL MATERIAL – TO BE FILED UNDER SEAL

# A934

prospective application to bar Class Plaintiffs' current claims would grant Defendants perpetual antitrust immunity for conduct that harms merchants in the amount of over $40 billion per year[9], and would clearly conflict with public policy.[10]

Defendants' reliance on *Crivera* in this context is also misplaced. Plaintiffs are not seeking an opportunity to pursue claims based on events that were known in their entirety when they agreed to settle in the *Visa Check* litigation. *Crivera v. City of New York*, 03 CV 447 (JG), 2004 U.S. Dist. LEXIS 2571, at *4-9, 12-15 (E.D.N.Y. Feb. 23, 2004) (finding sexual harassment and discrimination claims against plaintiff's ex-husband were matters outside the marriage that were known to the plaintiff at the time her divorce settlement release was executed). The Release is specifically limited in scope to conduct prior to January 1, 2004. (Defs.' SUF ¶ 20.) Class Plaintiffs' claims are predicated on the proven evidence of Defendants' conduct occurring on or after January 1, 2004. Accordingly, the public policy against prospective waivers of antitrust claims supports a construction of the Release that extinguishes Defendants' liability only for conduct prior to January 1, 2004.

---

Dist. LEXIS 92852, at *12 (D. Utah Nov. 14, 2008) (concluding "prospective release of antitrust claims would be void as against public policy").

[9]   *See* Frankel Rpt. Fig. 9.1.

[10]   *See also United States v. Gen. Elec. Co.*, 358 F. Supp. 731, 740 (S.D.N.Y. 1973) (relying on *Lawlor* and acknowledging the "public policy considerations against giving a defendant . . . perpetual immunity" for future violations). And as the Court pointed out during the parties' Rule 12 oral arguments, to suggest that as long as Defendants do not change their rules there is no new conduct would leave Defendants with an incentive to not change rules in a way that may benefit merchants, etc., which would go against public policy. Hr'g Tr. 162:08-25;163:24-164:22 (Nov. 18, 2009) (K. Gallo).

CONTAINS HIGHLY CONFIDENTIAL MATERIAL – TO BE FILED UNDER SEAL

# A935

35916837

Feb 12 2011
1:15AM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

IN RE PAYMENT CARD INTERCHANGE FEE AND
MERCHANT DISCOUNT ANTITRUST LITIGATION

Master File No. 05-MD-1720 (JG)(JO)

*This Document Relates To*:

Hy-Vee, Inc. v. Visa U.S.A. Inc., et al.,
Case No.1:05-CV-03925

Supervalu Inc. v. Visa U.S.A. Inc., et al.,
Case No: 1:05-CV-4650

Publix Super Markets, Inc. v. Visa U.S.A. Inc., et
al., Case No: 1:05-CV-4677

Raley's v. Visa U.S.A. Inc., et al.,
Case No: 1:05-CV-4799

The Kroger Company, et al. v. MasterCard, et al.,
Case No: 1:06-CV-0039

The Kroger Company, et al. v. Visa U.S.A. Inc., et
al., Case No: 1:05-CV-05078

Rite Aid Corporation, et al. v. MasterCard
Incorporated, et al., Case No: 1:06-CV-0078

Rite Aid Corporation, et al. v. Visa U.S.A. Inc., et
al., Case No: 1:05-CV-05352

BI-LO, LLC, et al. v. MasterCard Incorporated, et
al., Case No: 1:06-CV-2534

BI-LO, LLC, et al. v. Visa U.S.A. Inc., et al.,
Case No: 1:06-CV-02532

QVC, Inc. v. Visa U.S.A Inc., et al.,
Case No: 1:07-CV-0592

Wakefern Food Corp. v. Visa U.S.A. Inc., et al.,
Case No: 1:06-CV-5765

Meijer, Inc., et al v. Visa U.S.A. Inc., et al.;
Case No: 1:05-CV-4131

**INDIVIDUAL PLAINTIFFS'
STATEMENT OF MATERIAL
UNDISPUTED FACTS**

***CONTAINS HIGHLY
CONFIDENTIAL
INFORMATION***

## TO BE FILED UNDER SEAL

14.     MasterCard's banks have the right to issue MasterCard cards and to acquire transactions from merchants that accept MasterCard cards so long as the banks follow MasterCard's Rules.[14]

15.     The number of Visa cardholders has increased significantly over time.  In 1988, Visa had approximately 70.5 million cardholders, and by 2006, there were approximately 100.4 million Visa cardholders.[15]

16.     The number of MasterCard cardholders has also increased significantly over time. In 1988, MasterCard had approximately 49.7 million cardholders, and by 2006, there were approximately 99 million MasterCard cardholders.[16]

17.     The number of merchants that accept Visa and MasterCard credit cards has increased significantly over time as well.  Since 1988, Visa and MasterCard have been accepted at virtually the same number of merchants, increasing from approximately 2 million merchants in 1988 to 5.3 million merchants in 2006.[17]

## II.   THE STRUCTURE OF A VISA OR MASTERCARD CREDIT CARD TRANSACTION

18.     A Visa or MasterCard credit card transaction involves the following parties: (1) the cardholder; (2) the merchant; (3) the acquirer; (4) the issuing bank; and (5) the Network.[18]

19.     The acquirer acts as a liaison between the Visa or MasterCard Network and the merchant that is accepting the Network's card for payment.[19]

---

[14]     *Id.*

[15]     *See* Expert Report of Dr. Christopher Vellturo ("Vellturo Report"), Exhibit 6 (citing yearly data reported in The Nilson Report).

[16]     *See id.*

[17]     *See id.*

[18]     *See, e.g.*, Sheedy Ex. 34825, VUSAMDL1-06306949-79 at 5 (slide depicting the flow of funds in a credit card transaction).

[19]     *See Visa II*, 344 F.3d at 235.

6

- The Merchant discount fee is any fee a Merchant pays to an acquirer so that the Acquirer will acquire the Transactions of the Merchant.[42]

41. In MasterCard's Rules dated December 2010, MasterCard's No-Surcharge Rule was renumbered from MasterCard Rule 5.9.2 to MasterCard Rule 5.11.2, but the wording of the rule did not change.[43]

### B. *The No-Discount Rule*

42. The No-Discount Rule prohibits a merchant from offering a price discount at the point of sale to a cardholder who uses a credit card other than a Network's credit card.  For example, a merchant that offers a discount to a cardholder for using a Visa credit card, but does not offer the discount to the cardholder for using a MasterCard credit card, violates MasterCard's No-Discount Rule.[44]

43. In Visa's Operating Regulations dated November 15, 2003, Rule 5.2.D reads as follows:

> A merchant may offer a discount as an inducement for a Cardholder to use a means of payment that the Merchant prefers, provided that the discount is:
>
> - Clearly disclosed from the standard price **and**
>
> - Non-discriminatory as between a Cardholder who pays with a Visa Card and a cardholder who pays with a "comparable card."
>
> A "comparable card" for purposes of this rule is any other branded, general purpose payment card that uses the cardholder's signature as the primary means of cardholder authorization (e.g., MasterCard, Discover, American Express). Thus, any discount made available to cardholders who pay with "comparable cards" must also be made available to Cardholders who wish to pay with Visa

---

[42]   MasterCard Rules, Rule 5.9.2 (Mar. 2008), MCI_MDL02_11822076-295, at -198.

[43]   MasterCard Rules, Rule 5.11.2 (Dec. 2010), at 5-19, 5-20.

[44]   *See, e.g.*, Visa Operating Regulations, Rule 5.2.D.2 (Oct. 15, 2010), at 405; MasterCard Rules, U.S. Region Rule 5.13 (Dec. 2010), at 15-12.

# A938

Cards. Any discount made available to a Cardholder who pays with a Visa Card need not be offered to cardholders who pay with "comparable cards."[45]

44. Visa Rule 5.2.D.2 is also included, with identical wording, in Visa's Operating Regulations dated May 15, 2004; November 15, 2004; May 15, 2005; November 15, 2005; May 15, 2006; November 15, 2006; May 15, 2007; and November 15, 2008.[46]

45. In Visa's Operating Regulations dated October 15, 2010, U.S. Region Rule 5.2.D.2 provides:

> In the U.S. Region, any purchase price advertised or otherwise disclosed by the Merchant must be the price associated with the use of a Visa Card or Visa Electron Card.
>
> A U.S. Merchant may offer a discount as an inducement for a Cardholder to use a means of payment that the Merchant prefers, provided that the discount is:
>
> • Clearly disclosed as a discount from the standard price
>
> • Non-discriminatory, as between a Cardholder who pays with a Visa Card and a cardholder who pays with a "comparable card"
>
> A "comparable card" for purposes of this rule is any other branded, general purpose payment card that uses the cardholder's signature as the primary means of cardholder authorization (e.g., MasterCard, Discover, American Express). Any discount made available to cardholders who pay with "comparable cards" must also be made available to Cardholders who wish to pay with Visa Cards. Any discount made available to a Cardholder who pays with a Visa Card is **not** required to be offered to cardholders who pay with "comparable cards."[47]

---

[45] Visa Operating Regulations, Rule 5.2.D.2 (Nov. 15, 2003), VUSAMDL00041978-43129, at -2366.

[46] Visa Operating Regulations, Rule 5.2.D.2 (May 15, 2004), VUSAMDL00043941-5268, at -4418; Visa Operating Regulations, Rule 5.2.D.2 (Nov. 15, 2004), VUSAMDL00047974-9127, at -8351; Visa Operating Regulations (May 15, 2005), Rule 5.2.D.2, VUSAMDL00046334-7401, at -6737; Visa Operating Regulations, Rule 5.2.D.2 (Nov. 15, 2005), VUSAMDL00007206-8287, at −7636-37; Visa Operating Regulations, Rule 5.2.D.2 (May 15, 2006), VUSAMDL00051390-2453, at -1826; Visa Operating Regulations, Rule 5.2.D.2 (Nov. 15, 2006), VUSAMDL00174211-5306, at -4666; Visa Operating Regulations (May 15, 2007), VUSAMDL00175837-6966, at -6308; Visa Operating Regulations (Nov. 15, 2008), VUSAMDL000224944-6019, at -5403.

[47] Visa Operating Regulations, Rule 5.2.D.2 (Oct. 15, 2010), at 405 (emphasis in original).

13

# A939

46.     In MasterCard's Rules dated October 2003, Rule 3.11 reads as follows:

> Subject to other MasterCard Standards, a MasterCard card may not access a discount or other point-of-interaction (POI) benefit unless such discount or other POI benefit may be accessed by any valid MasterCard card.  In addition, MasterCard prohibits the promotion at the POI of discounts or other POI benefits on transactions effected with a particular MasterCard card.
>
> The following are the only discount practices permitted in conjunction with a particular MasterCard card:
>
> •   A discount or other point of interaction benefit accessed after the transaction has been effected (for example, credit on the billing statement, rebates, and so on); and
>
> •   A discount or other POI benefit accessed at the time of or after the transaction has been effected by a separate instrument and not by the MasterCard card (for example, a coupon or voucher).[48]

47.     MasterCard Rule 3.11 was also included, with identical wording, in MasterCard's Rules dated April 2004, April 2005 and October 2005.[49]

48.     In MasterCard's Rules dated March 2008, MasterCard's No-Discount Rule was renumbered from MasterCard Rule 3.11 to MasterCard Rule 11.5B.4 and reads as follows:

> Subject to other Standards, a Card or Access Device may not access a discount or other benefit at the Point of Interaction (POI) unless such discount or other benefit may be accessed by any valid and properly presented Card.
>
> The following are the only discount practices permitted in conjunction with a particular Card at the POI:
>
> •   A discount or other benefit accessed after the Transaction has been completed (for example, credit on the billing statement or a rebate), and

---

[48]     MasterCard Rules, Rule 3.11 (Oct. 2003), MCI_MDL02_00017665-993, at -7805.

[49]     MasterCard Rules, Rule 3.11 (Apr. 2004), MCI_MDL02_07293874-4209, at -4020, MasterCard Rules, Rule 3.11 (Apr. 2005), MCI_MDL02_00017994-8355, at -8150; MasterCard Rules, Rule 3.11 (Oct. 2005), MCIMDL02_00018356-718, at -511.

14

- A discount or other benefit accessed at the time of or after the Transaction has been effected by a separate instrument and not by the Card (for example, a coupon or voucher).

The promotion at the POI of a discount or other benefit that may be accessed by any particular Card is prohibited.[50]

49.     In MasterCard's Rules dated December 2010, MasterCard's No-Discount Rule was renumbered from MasterCard Rule 11.5B.4 to MasterCard U.S. Region Rule 5.13 and reads as follows:

> Subject to other Standards, a Card may not access a discount or other benefit at a Point of Interaction (POI) located in the United States Region unless such discount or other benefit may be accessed by any valid and properly presented Card.
>
> The following are the only discount practices permitted in conjunction with a particular Card at the POI:
>
> - A discount or other benefit accessed after the Transaction has been completed (for example, credit on the billing statement or a rebate), and
>
> - A discount or other benefit accessed at the time of or after the Transaction has been effected by a separate instrument and not by the Card (for example, a coupon or voucher).
>
> The promotion at the POI of a discount or other benefit that may be accessed by any particular Card is prohibited.[51]

**C.      The Honor-All-Cards Rule**

50.     The Honor-All-Cards Rule requires a merchant who accepts one type of Network credit card to accept all types of that Network's credit cards.  For example, a merchant that accepts Visa "Traditional" credit cards must also accept all Visa "Signature" credit cards and any other Visa credit cards.[52]

---

[50]     MasterCard Rule 11.5B.4 (Mar. 2008), MCI_MDL02_11822076-295, at -288-89.

[51]     MasterCard Rules, U.S. Region Rule 5.13 (Dec. 2010) at 15-12.

[52]     *See, e.g.*, Visa Operating Regulations, U.S. Region Rule 5.2.B (Oct. 15, 2010) at 406; MasterCard Rules, U.S. Region Rule 5.8.1 (Dec. 2010), at 5-16.

# A941



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Payment Card Interchange Fee And Merchant Discount Antitrust Litigation<br><br>This Document Relates to All Class Actions | Case No. 1:05-MD-1720 (JG)(JO) |

**Class Plaintiffs' Memorandum of Law In Support of Their Motion for Summary Judgment**

ROBBINS, KAPLAN, MILLER & CIRESI L.L.P.
K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Tel: 612-349-8500
Fax: 612-339-4181

BERGER & MONTAGUE, P.C.
H. Laddie Montague
Merrill Davidoff
Bart Cohen
Michael Kane
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604

ROBBINS GELLER RUDMAN & DOWD LLP
Bonny Sweeney
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619-231-1058
Fax: 619-231-7423

*Co-Lead Counsel for Class Plaintiffs*



81561318.14

# A942

prevent issuers from placing multiple debit-network bugs on one payment device.[16] A
recent proposed consent decree with the Department of Justice's Antitrust Division will
require the Defendants to make the same modifications to their no-discrimination rules,
and will also give merchants the option of providing differential discounts to customers
who use debit cards or standard credit cards instead of the networks' premium cards.
*See* Competitive Impact Stmt., *United States v. American Express Co.*, No. CV-10-4496, 10-
11 (E.D.N.Y. Oct. 4, 2010), *available at http://www.justice.gov/atr/cases/f262800/262873.htm.*
Even though these developments will improve merchants' ability to influence
consumers' payment-method choices, they cannot immediately reverse the
anticompetitive effects of interchange fees being set at supracompetitive levels, in part
because merchants lacked these tools for so many years. And even the Durbin
Amendment and the DOJ consent decree leave intact the networks' prohibitions on
surcharging, which experts on both sides of this case acknowledge to be the most
effective tool for merchants to influence consumers' payment choices. (Frankel Rep.
§ 5.2.3, Ariely Rep. at 12-14, Kahn Rep. ¶¶ 97-108.)

Both before and after the corporate restructurings, the rules of Visa and
MasterCard guarantee that the member banks are involved in every step of a payment-
card transaction. In the networks' standard agreements with their member banks,
which also remained unchanged after the IPOs (SUF ¶ 4.), the banks agree to abide by
each of the networks' rules, including the honor-all-cards rule, the default-interchange
rule, and the anti-steering restraints. (SUF ¶¶ 19-25.) Moreover, for those member banks

---

[16]     *Id.*

- 8 -

# A943

other forms of payment and to recover the cost of accepting cards specifically from the customers who use them, rather than also from customers who choose to use less costly means of payment. (SUF ¶¶ 31iii; 32iii; 76; 106.) The networks' rules also prevented merchants from steering consumers by discounting purchases made on competing networks' cards until Congressional legislation and the DOJ Consent Judgment forced the Defendants to modify some of their rules.[33] (SUF ¶¶ 31vii; 32vii; 76.) In public statements, the Defendants acknowledge that surcharging allows merchants to put competitive pressure on price and Defendants therefore implicitly admit that their anti-steering restraints restrain trade. (SUF ¶ 76c-d, f.)

The European Commission found that the MasterCard interchange fee "forms part of a network of inter-related or similar arrangements that, taken together, have a cumulative restrictive effect on competition." (E.C. Decision ¶ 653; Kahn Rep. ¶ 96; Kahn Dep. 214:8-215:1 (describing how network rules "work together").) Many of the findings that supported the E.C.'s conclusion that MasterCard's interchange fees violated the European equivalent of Section 1 of the Sherman Act, are not specific to Europe, and further support the conclusion that Defendants' rules "restrain trade" within the meaning of Section 1 of the Sherman Act. For example, the Commission found that the MasterCard interchange fee and other rules have "the effect of appreciably restricting and distorting competition to the detriment of merchants." E.C.

---

[33]     Visa and MasterCard entered into a preliminary settlement with the Department of Justice which, when finalized, will require Visa and MasterCard to repeal or modify many of their rules that restrict merchants from providing preferential discounts to consumers who use non-Visa or MasterCard cards. Competitive Impact Stmt., *United States v. Am. Express Co.*, No. CV-10-4496 (S.D.N.Y. Oct. 4, 2010)., *available at http://www.justice.gov/atr/cases/f262800/262873.pdf.*

- 36 -

81561318.14

# A944

market power because it can demand any price it desires (or "hold up" the merchant), knowing that the merchant must both accept its card *and* pay it a fee (*Id.*) Thus, although Plaintiffs' and Defendants' experts disagree on the implications of this "hold-up" problem, there is no disagreement that it exists. Benjamin Klein, Kevin Murphy, *et al., Competition In Two-Sided Markets: The Antitrust Economics of Payment Card Interchange Fees,* 73 Antitrust L.J. 571, 574 (2006).

Defendants' no-surcharge rules and other forms of anti-steering rules prevent any erosion of Defendants' market power. The rules limit steering by prohibiting surcharging, preventing merchants from processing Visa or MasterCard transactions over alternative networks, and preventing issuers from issuing cards that can process transactions over alternative general-purpose-card networks. (SUF ¶¶ 31ix; 32x.) Defendants and their experts admit that steering is an effective means of influencing consumer choice. (Klein Rep. ¶¶ 51-52; Murphy Rep. ¶¶130, 211.) In submissions to the European Commission, for example, MasterCard admitted that in Europe (where it permits surcharging) it sets interchange fees as high as it can without merchants dropping its cards *or "trying to discourage the use of the card either by surcharging or discounting for cash."* (E.C. Decision ¶ 175 (emphasis added).) And internal documents from both networks acknowledge that merchant surcharging would have the effect of increasing merchants' ability to influence the choice of payment-card network at the point of sale. (SUF ¶¶ 76; 106.) In denying MasterCard's motion to dismiss the Individual Plaintiffs' Section 2 claims, the Court concluded that the rules give merchants a "strong incentive to accept all cards" and "a strong disincentive to

- 54 -

# A945



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL Docket No. 1720 (JG)(JO) |

**Class Plaintiffs' Statement of Undisputed Facts
Pursuant to Local Rule 56.1**

**Updated March 9, 2011**

K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Tel: 612-349-8500
Fax: 612-339-4181

Bonny E. Sweeney

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: 619-231-1058
Fax: 619-231-7423

H. Laddie Montague
Merrill Davidoff
Bart D. Cohen
Michael J. Kane

BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604

Co-Lead Counsel for MDL 1720 Class Plaintiffs



82003581.2

# A946

18.     Several of the Bank Defendants have had representatives on MasterCard committees throughout the relevant time period.[57]

**Adoption, implementation and enforcement of the networks' rules**

19.     The Visa U.S.A. Board of Directors agreed to and approved – and from time to time modified – the Rules that Plaintiffs challenge in this litigation, including the Default Interchange Fee Rule, and the Anti-Steering Restraints.

   a.    Visa's Rule 30(b)(6) designee on merchant rules testified that between 1980 and July 2006, all revisions to Visa rules and bylaws were the responsibility of the Member Rules department, and any change to Visa's operating regulations had to be approved by Visa's Board of Directors.[58]

   b.    An internal Visa document dated October 1, 2001, entitled "Visa Department Template Application – Who We Are: Mbr Rules & Policy Compliance" states, "All revisions to the Visa U.S.A. Operating Regulations must be approved by the Visa U.S.A. Board of Directors."[59]

20.     The Board of Directors of the Visa International Service Association agreed to and approved – and from time to time modified – the Rules that Plaintiffs challenge in this litigation, including the Default Interchange Fee Rule, and the Anti-Steering Restraints.[60]

21.     As a condition of membership in Visa U.S.A., each bank agrees to abide by and enforce the Visa U.S.A. Operating Regulations, including the Default Interchange Rule,  the Anti-Steering Restraints, and the Honor-All-Cards Rule.[61]

---

[57]     MasterCard's Supplemental Responses to Interrogatories Nos. 3-5 of All Plaintiffs' Consolidated First Set of Omnibus Discovery Requests to Network Defendants, as reflected in October 2, 2006 letter from Powell to Kane at p. 2 (SUFEX062), Oct. 22, 2007 letter from Powell to Marth at p. 3-37 (SUFEX063) and August 12, 2009 letter from Freimuth to Marth & Almon at p. 2-21. (SUFEX064)

[58]     Baum Dep. 26:25-28:13. (SUFEX065)

[59]     Aafedt Dep. Ex. 21001, at VUSAMDL1-03157562. (SUFEX066)

[60]     Hunt Dep. 28:13-29:14, 35:1-3, 42:14-23, Jan. 30, 2008 (SUFEX067); Howe 30(b)(6) Dep. 61:11-62:8, July 27, 2006. (SUFEX043)

[61]     Visa U.S.A. Inc. Operating Regulations, Section 1.2.A and 1.2.C at p. 1-2 (May 15, 2008) (SUFEX068); CITI INT 115512 (SUFEX012); WF 0010142-43 (Wells Fargo Visa Brand Agreement providing that Visa's Regulations govern the agreement, effective Oct. 2006) (SUFEX035); CHASE000127302
*Footnote continued on next page . .*

87003581.2

    a.    On October 15, 2008, Bank of America's 30(b)(6) designee for Merchant Rules, Kelly Ann Davila, testified that Bank of America's merchant contracts have "always contained a provision which required the merchants to comply with the subject rules" and that "Bank of America has always been required to enforce the subject rules with respect to merchants."[62]

    b.    On September 17, 2008, Chase's 30(b)(6) designee for Merchant Rules, Robert Nadeau, testified that the acquirers are responsible for enforcing the Visa and MasterCard rules.[63]

    c.    On December 4, 2008, Wells Fargo's 30(b)(6) designee for Merchant Rules, Veronica Flanagan, testified, "So we ensure that our Merchant Agreement includes the Subject Rules. And we investigate and respond to any notices from the payment networks, advising us that we have a merchant that may be out of compliance."[64]

22.    Visa International Rules required that its "Members "must comply when operating and participating in the Visa, Visa Electron, Visa Cash, Plus, Interlink, and TravelMoney Programs, unless Visa specifically grants a variance," and its "Member[s] must comply with the Visa International By-laws, the Visa International Operating Regulations, and the Regional Operating Regulations."[65]

23.    The MasterCard Board of Directors adopted – and from time to time modified – the Rules and Bylaws that Plaintiffs challenge in this litigation, including the Default Interchange Fee Rule, and the Anti-Steering Restraints. In 2000, the Board delegated rule-making authority to the CEO. Even after that time—both before and after the IPO—MasterCard

---

*. . . footnote continued from prior page*

JPMorgan Chase Bank Master Agreement same, effective Jan. 1, 2005) (SUFEX069); BFC 0001175-1229 (MasterCard Brand Agreement with Juniper Bank, dated Jan. 1, 2002) (SUFEX070); WMB0000I511-1541 (MasterCard Brand Agreement with Washington Mutual, dated Oct. 2005) (SUFEX071); Somerville 30(b)(6) Dep. 439:3-12, Apr. 7, 2009 (SUFEX072); Flourn Dep. 83:8-84:2, Dec. 2, 2008 (SUFEX073); Banaugh Dep. 83:12-25, May 9, 2008 (SUFEX074); Sabiston Dep. 80:15-19, 202:19-24, 204:4-15, Apr. 24, 2008 (SUFEX075); Banaugh 30(b)(6) Dep. 190:1-6, Aug. 4, 2006. (SUFEX076)

[62] Davila 30(b)(6) Dep. 133:9-134:9, Oct. 15, 2008.

[63] Nadeau 30(b)(6) Dep. 123:8-13, Sep. 17, 2008.

[64] Flanagan 30(b)(6) Dep. 94:12-16, Dec. 4, 2008.

[65]    Visa International Operating Regulations, Sections 1.1B and 1.1.C.4 (May 15, 2008). (SUFEX077)

82003581.2

# A948

continues to solicit "input [from the banks] as to how, when, where to make a rules change."[66]

24.  Pursuant to MasterCard Rules "Member[s] must agree . . . that [they] will comply with all applicable provisions of the Certificate of Incorporation and the Standards of this Corporation as in effect from time to time, and with applicable law."[67]

25.  As a condition of membership in MasterCard International Incorporated, each bank agrees to abide by and enforce MasterCard's ByLaws and Rules, including the Default Interchange Rule, the Anti-Steering Restraints, and the Honor-All-Cards Rule.[68]

    a.  The European Commission found that even after the MasterCard IPO, "the decisions of [MasterCard's] management bodies are still binding upon the organization's members and no bank can participate in the card activities of the MasterCard organization without complying in all respects with all [its] bylaws, rules, and published policies of the organization."[69]

26.  Section 2.04(a)(2) of the June 15, 2006, edition of the Visa U.S.A. Bylaws states, "**Principal Member**. As conditions of membership, a Principal Member . . . Shall issue Cards bearing the Visa service mark or other marks adopted by the Corporation, which requirement may be satisfied by the issuance of Cards by its Affiliates which are members."[70]

27.  MasterCard Rule 2.6, entitled "Obligation to Issue Cards," requires its Member Banks to "have issued and outstanding a reasonable number of

---

[66]  Doyle 30(b)(6) Dep. 215:97-25, 217:23-218:21, 329:14-331:4, 331:9-18, Apr. 22, 2008. (SUFEX078)

[67]  MasterCard Rule 1.3 (May 15, 2008) (SUFEX079); Doyle Dep. 22:23-23:2, Apr. 22, 2008 (SUFEX078.

[68]  ████████████████████████████████████████████████████████

*see also* SUF ¶ 21 a-c.

[69]  E.C. decision at 102. (SUFEX081)

[70]  Visa U.S.A. Inc. Certificate of Incorporation and Bylaws, June 15, 2006, VUSAMDL1-07904056-132, at VUSAMDL1-07904082. (SUFEX082)

15

# A949

aggregating spends to one card.

- The need to establish a program that would appeal to new customers, existing customers or potential new Amex cardholders.

Based on member views, it was generally agreed that key characteristics of the programs should include:

- A new and distinctive program both in look and content that stands out from existing offerings

- Program advertising

- Low cost to implement and maintain (positive ROI within two years was a common requirement)

- A strong rewards component.[98]

### The Visa and MasterCard rules challenged in this case

31.     The challenged rules of Visa

    a.     Honor-All-Cards Rule

        i.     Pre-IPO Visa U.S.A.

            A.     In the November 2005 edition of the Visa U.S.A. Operating Regulations, under the heading "Honoring Cards," Section 5.2.B.3.a states in relevant part, "A Merchant that wishes to accept Visa Cards must accept any valid Visa Card in its category of acceptance, as specified in *Section 5.2.B.1*, that a Cardholder properly presents for payment. This means that the Merchant must permit the Cardholder to choose whether he or she pays for a transaction with that Visa Card or with some other means of payment accepted by the Merchant. The Merchant may request or encourage a Cardholder to use a means of payment other than a Visa Card."[99]

---

[98]     Portelli 30(b)(6) Dep. Ex. 24885, at MCI_MDL04_00001978-79. (SUFEX101)

[99]     Visa U.S.A. Inc. Op. Regs. Nov. 15, 2005, VUSAMDL00007206-8287, at VUSAMDL00007634. (SUFEX102)

23

# A950

        ii.     Post-IPO Visa Inc.

                A.     In the April 2010 edition of the Visa Operating Regulations, Core Principle 6.2, entitled "Honor All Cards Properly Presented," states, "Visa merchants may not refuse to accept a Visa product that is properly presented for payment, for example, on the basis that the card is foreign-issued, or co-branded with a competitor's mark. Merchants may steer customers to an alternative method of payment, such as providing discounts for cash, but may not do so in a confusing manner that denies consumer choice. Merchants may decline to accept a Visa product that is not covered by their acceptance contract, and may also consider whether present circumstances create undue risk."[100] Under the heading "Honoring Cards," the April 2010 Visa Operating Regulations also state, "A Merchant must accept all Cards properly presented for payment as specified in the 'Merchant Acceptance Standards' table."[101]

        b.     Default Interchange Rule

        i.     Pre-IPO Visa U.S.A.

                A.     In the November 2005 edition of the Visa U.S.A. Operating Regulations, Section 9.5, entitled "Interchange Reimbursement Fees," states in relevant part, "This section specifies Interchange Reimbursement Fees assessed by Visa to recognize one Member's support of another. These Interchange Reimbursement Fees apply in all circumstances where Members have not set their own financial terms for the Interchange of Visa Transactions. An Acquirer pays an Interchange Reimbursement Fee for each Interchange Transaction completed within the 50

---

[100]    Visa Int'l Op. Regs. Apr. 1, 2010, at p. 391, available at
http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010. (SUFEX005)

[101]    Visa Int'l Op. Regs. Apr. 1, 2010, at p. 442, available at
http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010. (SUFEX005)

82003581 2

United States and the District of Columbia, as specified in *Section 9.5.A* through *Section 9.5.E*. An Issuer pays an Interchange Reimbursement Fee for each Interchange Transaction completed within the 50 United States and the District of Columbia, as specified in *Section 9.5F*."[102]

ii. Post-IPO Visa Inc.

A. In the April 2010 Visa Operating Regulations, Core Principle 10.2, entitled "Participants Pay or Receive Interchange for Transactions," states, "Participating acquirers and issuers pay or receive interchange every time a Visa product is used. For example, acquirers pay interchange to issuers for purchase transactions and issuers pay interchange to acquirers for cash transactions and credit vouchers. In the case of a credit or a chargeback, interchange flows in reverse."[103] Core Principle 10.3, entitled "Visa Determines Interchange Reimbursement Fees," states, "Interchange reimbursement fees are determined by Visa and provided on Visa's published fee schedule, or may be customized where members have set their own financial terms for the interchange of a Visa transaction or Visa has entered into business agreements to promote acceptance and card usage."[104]

c. No Surcharge Rule

i. Pre-IPO Visa U.S.A.

A. In the November 2005 edition of the Visa U.S.A. Operating Regulations, Rule 5.2F, entitled

---

[102]   Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007792. (SUFEX102)

[103]   Visa International Operating Regulations, April 1, 2010, p. 961 (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

[104]   Visa International Operating Regulations, April 1, 2010, p. 962 (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

82003581.2

# A952

"Prohibitions," states, "A merchant must not: . . . Add any surcharge to Transactions."[105]

 ii. Post-IPO Visa Inc.

  A. Under the heading "Surcharges 5.1C," the April 2010 edition of the Visa International Operating Regulations states, "A Merchant must not add any surcharges to Transactions, unless local law expressly requires that a Merchant be permitted to impose a surcharge. Any surcharge amount, if allowed, must be included in the Transaction amount and not collected separately."[106]

 d. Rules require that a Member Bank be a party to every merchant agreement.

  i. Pre-IPO Visa U.S.A.

   A. In the November 2005 edition of the Visa U.S.A. Operating Regulations, under the heading "Merchant Agreement Requirements," Section 4.2.C.1.a states, "An Acquirer must have a Merchant Agreement with each of its Merchants."[107] Section 4.2.C.1.b states, "An Acquirer may only accept Transaction Receipts from a Merchant with which it has a valid Merchant Agreement."[108]

  ii. Post-IPO Visa Inc.

   A. Under the heading "Merchant Agreement Requirements," the April 2010 edition of Visa's Operating Regulations state, "An Acquirer must:

---

[105] Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007637-38. (SUFEX102)

[106] Visa International Operating Regulations, April 1, 2010, at p. 449 "Merchant Agreement Requirements" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

[107] Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007528. (SUFEX102)

[108] Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007528. (SUFEX102)

82003581.2

# A953

> Have a Merchant Agreement with each of its Merchants [and] . . . Ensure that its Merchant complies with the Visa International Operating Regulations regarding payment acceptance [and] Ensure that required acceptance requirement provisions are included in its Merchant Agreement or as a separate addendum [and] Only accept Transaction Receipts from a Merchant with which it has a valid Merchant Agreement."[109]

e.  Rules require that all card-acceptance agreements with merchants require the merchant to abide by Network Rules.

    i.  Pre-IPO Visa U.S.A.

        A.  In the November 2005 edition of the Visa U.S.A. Operating Regulations, under the heading "Merchant Agreement Requirements" Rule 4.2.C.1.c. states, "The Acquirer must ensure that the Merchant complies with the applicable sections of the: *Visa U.S.A. Inc. Operating Regulations* • and • *Visa International Operating Regulations.*[110] Section 4.2.D, entitled "Merchant Qualification Standards," states, "Prior to entering into a Merchant Agreement, an Acquirer must determine that the prospective Merchant is financially responsible and will abide by the *Visa U.S.A. Inc. Operating Regulations* and *Visa International Operating Regulations*, as well as applicable law."[111]

    ii.  Post-IPO Visa Inc.

        A.  Under the heading "Merchant Agreement Requirements," the April 2010 edition of the Visa International Operating Regulations states, "An Acquirer must: . . . Include language in the Merchant

---

[109]  Visa International Operating Regulations, April 1, 2010, at p. 393-94 (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

[110]  Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007528. (SUFEX102)

[111]  Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007533. (SUFEX102)

82003581.2

# A954

Agreement that obligates its Merchant to . . . Comply with the *Visa International Operating Regulations* regarding use of the Visa-Owned Marks [and] Ensure that its Merchant complies with the *Visa International Operating Regulations* regarding payment acceptance . ."[112]

f.   No minimum/maximum rule.  Until the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act , Visa Operating Regulation 5.2F prohibited merchants from "[e]stablishing a minimum or maximum Transaction amount as a condition for honoring a Visa card."[113]

   i.   Pre-IPO Visa U.S.A.

      A.   In the November 2005 edition of the Visa U.S.A. Operating Regulations, Rule 5.2.F, entitled "Prohibitions," states, "A merchant must not: . . . Establish a minimum or maximum Transaction amount as a condition for honoring a Visa Card or Visa Electron Card."[114]

   ii.   Post-IPO Visa Inc.

      A.   Under the heading "Minimum Maximum – U.S. Region 5.2.F," the April 2010 edition of the Visa International Operating Regulations states, "A U.S. Merchant must not establish a minimum or maximum

---

[112]   Visa International Operating Regulations, April 1, 2010, at p. 393-94 "Merchant Agreement Requirements" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

[113]   Visa U.S.A. Inc. Operating Regulations (Nov. 15, 2005) Vol. 1 - General Rules at VUSAMDL00007637-38. These rules apply to all merchants who accept Visa cards. (SUFEX102) *See* Visa Op. Reg. (Nov. 15, 2005) Vol.1, 4.2.C titled "Merchant Agreement Requirements" and 4.2.D titled "Merchant Qualification Standards" at VUSAMDL00007528, 533 (SUFEX102); Visa International Operating Regulations, U.S. Region 5.2.F, April 1, 2010, at p. 448 "Merchant Agreement Requirements" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). ("A U.S. Merchant must not establish a minimum or maximum Transaction amount as a condition for honoring a Visa Card or Visa Electron Card.") (SUFEX005); Somerville 30(b)(6) Dep. 368:18-369:12. (SUFEX072)

[114]   Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007637-38. (SUFEX102)

82003581.2

Transaction amount as a condition for honoring a Visa Card or Visa Electron Card."[115]

g.   No discrimination rule.   Until the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Visa Rules prevented merchants from offering a discount to a customer who paid with another brand of Payment Card instead of a Visa.[116] Visa interpreted this rule to prohibit merchants from providing a discount for a consumer who used an offline-debit card or a competing brand of credit card if that discount was not also available to a consumer who used a Visa credit card.[117]

    i.   Pre-IPO Visa U.S.A.

        A.   In the November 2005 edition of the Visa U.S.A. Operating Regulations, Rule 5.2.D.2, entitled "Discounts," states, "A Merchant may offer a discount as an inducement for a Cardholder to us a means of payment that the Merchant prefers, provided that the discount is: . . . • Non-discriminatory as between a Cardholder who pays with a Visa Card and a cardholder who pays with a 'comparable card.'"[118]

    ii.   Post-IPO Visa Inc.

        A.   Under the heading "Discount Offer – U.S. Region 5.2.D.2," the April 2010 edition of the Visa International Operating Regulations states, "A U.S. Merchant may offer a discount as an inducement for a Cardholder to use a means of payment that the Merchant prefers, provided that the discount is: . . . • Non-discriminatory, as between a Cardholder who

---

[115]   Visa International Operating Regulations, April 1, 2010, at p. 448 "Merchant Agreement Requirements" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

[116]   Somerville 30(b)(6) Dep. 364:4-16. (SUFEX072)

[117]   Aafedt Dep. 46:24-48:13; 49:4-19, Jan. 29, 2008. (SUFEX103)

[118]   Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007636. (SUFEX102)

82003581.2

# A956

pays with a Visa Card and a cardholder who pays with a 'comparable card.'"[119]

h.  Visa rules prohibit an acquirer from signing up merchants located outside of the acquirer's "Country of Domicile" unless the acquirer first obtains approval from the Network.[120]

i.  Visa rules prevent Issuers from issuing cards bearing multiple networks' marks marks and prevent merchants and acquirers from processing transactions outside of the VisaNet system.[121]  These rules were in force in substantially similar form before Visa's IPO.[122]

32.  The challenged rules of MasterCard[123]

a.  Honor-All-Cards Rule

i.  Pre-IPO MasterCard

A.  In the October 2005 edition of the MasterCard Rules, Rule 9.11.1, entitled "Honor All MasterCard Cards," states, "The merchant must honor all valid MasterCard cards without discrimination when properly presented for payment. The merchant must maintain a policy that does not discriminate among

---

[119]   Visa International Operating Regulations, April 1, 2010, at p. 445 "Merchant Agreement Requirements" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (last accessed October 20, 2010). (SUFEX005)

[120]   Visa International Operating Regulations, October 15, 2010, at p. 363 "Acquirer's Jurisdiction" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) (SUFEX005); *see also* Visa International Operating Regulations, May 15, 2008, at 4.1.C.1 "Restrictions on Cross-Border Merchant Contracting." (SUFEX077)

[121]   Visa International Operating Regulations, October 15, 2010, at p. 126 "Merchant Agreement Requirements," and 599 "Clearing of Transactions Through VisaNet – U.S. Region" (available at http://usa.visa.com/download/merchants/visa-international-operating-regulations-main.pdf) ("The following must not appear on any part of a Visa or Visa Electron Card: • Any Trade Name or Mark that identifies or is associated with any entity, or its subsidiaries or affiliates, deemed competitive by Visa, including: - American Express Company - Discover Financial Services - MasterCard International (including Maestro)"). (SUFEX005)

[122]   Visa U.S.A. Inc. Operating Regulations, November 15, 2005, VUSAMDL00007206-8287 at VUSAMDL00007345, VUSAMDL00007702. (SUFEX102)

[123]   Heuer Dep. 306:22-207:21 (testifying that before and after the IPO, MasterCard had a "no surcharge rule," an "honor all cards rule," a "no discrimination rule," and a "no minimum, no maximum rule"). (SUFEX104)

# A957

customers seeking to make purchases with a MasterCard card."[124]

    ii.    Post-IPO MasterCard

        A.    In the May 2010 edition of the MasterCard Rules, Rule 5.11.2, entitled "Charges to Cardholders," states, "A Merchant must not directly or indirectly require any Cardholder to pay a surcharge or any part of any Merchant discount or any contemporaneous finance charge in connection with a Transaction. A merchant may provide a discount to its customers for cash payments. A Merchant is permitted to charge a fee (such as a bona fide commission, postage, expedited service or convenience fees, and the like) if the fee is imposed on all like transactions regardless of the form of payment used, or as the Corporation has expressly permitted in writing. For purposes of this Rule: 1. A surcharge is any fee charged in connection with a Transaction that is not charged if another payment method is used. 2 The Merchant discount fee is any fee a Merchant pays to an Acquirer so that the Acquirer will acquire the Transactions of the Merchant."[125]

    b.    Default Interchange Rule

        i.    Pre-IPO MasterCard

        A.    In the October 2005 edition of the MasterCard Rules, Rule 10.4, entitled "Interchange Fees, Cash Disbursement Accomodation Fees, and ATM Cash Disbursement Fees" states, "An interchange transaction between members results in the payment of the appropriate interchange fee, cash disbursement accomodation fee, or ATM cash disbursement fee, as applicable, as part of the net settlement process. These

---

[124]    MasterCard International Bylaw and Rules, October 2005, MCI_MDL0200018358-718 at MCI_MDL02_00018588. (SUFEX105)

[125]    MasterCard Rules, May 12, 2010, at p. 114 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010). (SUFEX079)

82003581 2

# A958

fees generally are designed to compensate a member for costs incurred as the result of the interchange of transactions. The Corporation periodically publishes a fee schedule."[126]

    ii.    Post-IPO MasterCard

        A.    In the May 2010 edition of the MasterCard Rules, Section 9.4, entitled "Interchange and Service Fees" states, "A Transaction or cash disbursement cleared and settled between Members gives rise to the payment of the appropriate interchange fee or service fee, as applicable. The Corporation has the right to establish default interchange fees and default service fees . . . it being understood that all such fees set by the Corporation apply only if there is no applicable bilateral interchange fee or service fee agreement between two members in place."[127]

  c.    No Surcharge Rule

    i.    Pre-IPO MasterCard

        A.    In the October 2005 edition of the MasterCard Rules, Rule 9.12.2, entitled "Charges to Cardholders" states, "A merchant must not directly or indirectly require any MasterCard cardholder to pay a surcharge or any part of any merchant discount or any contemporaneous finance charge in connection with a MasterCard card transaction."[128]

    ii.    Post-IPO MasterCard

        A.    In the May 2010 edition of the MasterCard Rules, Rule 5.11.2, entitled "Charges to Cardholders" states, "A merchant must not directly or indirectly require any

---

[126]    MasterCard International Bylaw and Rules, October 2005, MCI_MDL02_00018358-718 at MCI_MDL02_00018599. (SUFEX105)

[127]    MasterCard Rules, May 12, 2010, at p. 155 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010).  (SUFEX079)

[128]    MasterCard International Bylaw and Rules, October 2005, MCI_MDL02_00018358-718 at MCI_MDL02_00018588. (SUFEX105)

32

82003581.2

# A959

MasterCard cardholder to pay a surcharge or any part of any merchant discount or any contemporaneous finance charge in connection with a Transaction."[129]

d.   Rules require that a Member Bank be a party to every merchant agreement.

  i.   Pre-IPO MasterCard

    A.   In the October 2005 edition of the MasterCard Rules, Rule 9.1.1, entitled "The Merchant Agreement," states, "Each member must directly enter into a written merchant agreement with each merchant from which it acquires transactions. A member shall not submit into interchange any transaction arising in connection with any commercial entity that makes goods or services available to MasterCard cardholders for purchase with a MasterCard® card, unless the commercial entity has a valid merchant agreement with the member."[130]

  ii.   Post-IPO MasterCard

    A.   In the May 2010 edition of the MasterCard Rules, Rule 5.1 states, "Each Member in its capacity as an Acquirer must directly enter into a written Merchant Agreement with each Merchant from which it acquires Transactions, whether such Transactions are submitted to the Member directly by the Merchant or through a Member Service Provider acting for or on behalf of such Member. An acquirer shall not submit into interchange any Transaction resulting from the acceptance of a card by an entity or person except pursuant to a Merchant Agreement then in effect between the Acquirer and the entity or person. The Merchant Agreement must reflect the Acquirer's

---

[129]   MasterCard Rules, May 12, 2010, at p. 114 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010). (SUFEX079)

[130]   MasterCard International Bylaw and Rules, October 2005, MCI_MDL0200018358-718 at MCI_MDL02_00018580. (SUFEX105)

82003581.2

primary responsibility for the Merchant relationship
and must otherwise comply with the Standards."[131]

e.   Rules require that all card-acceptance agreements with merchants
require the merchant to abide by Network Rules.

    i.   Pre-IPO MasterCard

        A.   In the October 2005 edition of the MasterCard Rules,
Rule 9.8, entitled "Merchant Agreement," states,
"Each merchant agreement must contain the
substance of these Standards applicable to the nature
and manner of the merchant's business. The
agreement must reflect that the acquirer has primary
responsibility for the merchant relationship and is
responsible for ensuring the merchant's compliance
with the Standards. The merchant's failure to comply
with these provisions may result in a penalty to the
member or other disciplinary action."[132]

    ii.   Post-IPO MasterCard

        A.   In the May 2010 edition of the MasterCard Rules, Rule
5.1.2 states, "Each Merchant Agreement must contain
the substance of each of the Standards set forth in
Rules 5.6 through 5.12 . . . ."[133] Rule 5.2.2 states, "The
Acquirer is responsible for ensuring that each of its
Merchants complies with the Standards, and the
Acquirer is itself responsible to the Corporation and
to other Members for any Merchant's or Sub-
merchant's failure to do so."[134]

---

[131]   MasterCard Rules, May 12, 2010, at p. 95 (available at
http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October
20, 2010). (SUFEX79)

[132]   MasterCard International Bylaw and Rules, October 2005, MCI_MDL0200018358-718 at
MCI_MDL02_00018588. (SUFEX105)

[133]   MasterCard Rules, May 12, 2010, at p. 95 (available at
http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf ) (last accessed October
20, 2010). (SUFEX079)

[134]   MasterCard Rules, May 12, 2010, at p. 97 (available at
http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf ) (last accessed October
20, 2010). (SUFEX079)

34

82000581.2

    f.    No minimum/maximum rule. Until the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, MasterCard Rules prevented merchants from placing minimum transaction amounts on purchases made with a MasterCard card.[135]

        i.    Pre-IPO MasterCard

            A.    In the October 2005 edition of the MasterCard Rules, Rule 9.12.3, entitled "Minimum/Maximum Transaction Amount Prohibited" states, "A merchant must not require or post signs indicating that it requires, a minimum or maximum transaction amount to accept a valid MasterCard card."[136]

        ii.    Post-IPO MasterCard

            A.    In the May 2010 edition of the MasterCard Rules, Rule 5.11.3, entitled "Minimum/Maximum Transaction Amount Prohibited" states, "A Merchant must not require, or indicate that it requires, a minimum or maximum Transaction amount to accept a valid and properly presented Card."[137]

    g.    No discrimination rule. Until the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, MasterCard Rules prohibited merchants from offering a discount at the point of sale to a customer who paid with a Debit Card instead of a MasterCard Credit Card or with a PIN-Debit instead of Signature debit.

        i.    Pre-IPO MasterCard

            A.    In the October 2005 edition of the MasterCard Rules, Rule 9.12.1, entitled "Discrimination" states, "A merchant must not engage in any acceptance practice

---

[135]    MasterCard Rule 5.11.1, May 12, 2010, at p. 114 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010) (SUFEX079); Doyle 30(b)(6) Dep. 147:14-148:7. (SUFEX078)

[136]    MasterCard International Bylaw and Rules, October 2005, MCI_MDL0200018358-718 at MCI_MDL02_00018590. (SUFEX105)

[137]    MasterCard Rules, May 12, 2010, at p. 114 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010). (SUFEX079)

82003581.2

# A962

that discriminates against or discourages the use of MasterCard cards in favor of any other acceptance brand."[138]

    ii.    Post-IPO MasterCard

        A.    In the May 2010 edition of the MasterCard Rules, Rule 5.11.1, entitled "Discrimination" states, "A Merchant must not engage in any acceptance practice that discriminates against or discourages the use of a Card in favor of any other acceptance brand."[139]

        B.    MasterCard's 30b(6) designee for Merchant Rules testified that MasterCard US Region Rule 11.5B.4[140] requires that if a discount is provided for another form of payment, the discount cannot be rung up a the point of sale, but rather must appear on the cardholder's statement.[141]

  h.    MasterCard Rule 5.11.1 prevents merchants from offering a discount at the point of sale to a customer who paid with another brand of Payment Card instead of a MasterCard: "A Merchant must not engage in any acceptance practice that discriminates against or discourages the use of a Card in favor of any other acceptance brand."[142]

---

[138]    MasterCard International Bylaw and Rules, October 2005, MCI_MDL0200018358-718 at MCI_MDL02_00018589. (SUFEX105)

[139]    MasterCard Rules, May 12, 2010, at p. 113 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010). (SUFEX079)

[140]    MasterCard Rule 11.5B.4 states, "Subject to other Standards, a Card or Access Device may not access a discount or other benefit at the Point of Interaction (POI) unless such discount or other benefit may be accessed by any valid and properly presented Card. The following are the only discount practices permitted in conjunction with a particular Card at the POI: 1. A discount or other benefit accessed after the Transaction has been completed (for example, a credit on the billing statement or a rebate); and 2. A discount or other benefit accessed at the time of or after the Transaction has been effected by a separate instrument and not by the Card (for example, a coupon or a voucher). The promotion at the POI of a discount or other benefit that may be accessed by any particular Card is prohibited." Doyle 30(b)(6) Dep. Ex. 23051 at MCI_MDL02_11822288-89. (SUFEX106)

[141]    Doyle 30(b)(6) Dep. 152:17-153:7. (SUFEX078)

[142]    MasterCard Rules, May 12, 2010, at p. 113 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (last accessed October 20, 2010). (SUFEX079)

82003581.2

    i.    MasterCard Rule prohibits an acquirer from processing transactions submitted by merchants located outside of the acquirer's home region unless the acquirer first obtains approval from the Network.[143]

    j.    MasterCard Rule 4.2.12 prevents Issuers from issuing cards bearing multiple Networks' marks.[144]

### MasterCard's corporate reorganizations and the continuation of mandatory interchange fees and anti-steering restraints

33.    The bank-elected Boards of Directors of MasterCard designed the MasterCard Restructuring and IPO and voted to execute their restructuring plan.[145]

    a.    The European Commission found that "[t]he member banks were a driving force behind the new governance model and they approved the preceding and subsequent 'outsourcing' of interchange related decision making from boards of bank directors [ ] to an ███████████████ on the Global Board whose task it would be

---

[143]    MasterCard Rules, December 10, 2010, Rule 2.3.1 "Extending or Otherwise Modifying the Area of Use," at p. 2-3, and Rule 3.9, "Transaction Requirements," at p. 3-19 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) (SUFEX079); *see also* MasterCard Bylaws and Rules, April 2005, Rule 2.6 "Extension of Area of Use," at p. 2-5. (SUFEX107)

[144]    MasterCard Rules, May 12, 2010, at p. 4-8-4-9 (available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf) ("Unless expressly permitted by the Corporation, none of the following marks or any similar or related mark, or any mark owned by or affiliated with one of these entities, may appear on a Card: 1. American Express 2. JCB 3. Diners Club 4. Discover 5. Visa 6. Any other name, logo, or mark identifying or in any way associated with a payment service that the Corporation deems to be competitive with any MasterCard product or Program. Any such competitor's credit or debit POI mark, logo, or name, regardless of whether registered, may not appear on a Card, nor may a payment application of any such competitor reside on the magnetic stripe or chip of a Card.") (SUFEX079)

[145]    Sheedy Dep. Ex. 34810 at TIB_MDL_044095 (SUFEX108). Atkins Rep. ("In addition, at the Board's direction, the NCGC conducted a detailed review and analysis of a number of possible courses of action that MasterCard could pursue.) (SUFEX109); *see also id.* at 12; Murphy Dep. Ex. 21865, at MCI_MDL04_00004996 (resolving that MasterCard in its then-current form would not be an acceptable alternative) (SUFEX110); Murphy Dep. Ex. 21910, at MCI_MDL04_00005207 (resolving to approve the option 5(f) term sheet) (SUFEX111); MCI_MDL02_11888072-87 at 73-78 (resolving to approve the redemption of old MasterCard stock in the IPO) (SUFEX112). Murphy Dep. 507:3-509:4, 585:14-586:24, Feb, 29, 2008. (SUFEX022)

37

82003581 2

to manage interchange in a manner that is '███████████████ ████████████████'"[146]

  b. On July 14, 2005, Board of Directors of MasterCard Incorporated and MasterCard International Incorporated – which was composed of representatives of Member Banks – voted to approve changes to MasterCard's structure and its 2006 Initial Public Offering.[147]

  c. MasterCard expert J.T. Atkins acknowledged that "At the July 2005 [MasterCard] Board meeting, the Directors approved Option 5F. The drafting of a registration statement was commenced and the IPO was announced publicly on August 31, 2005."[148]

34. The MasterCard Restructuring was undertaken as a response to court rulings that decided it to be a "structural conspiracy."

  a. The European Commission concluded that a "clear driving force" behind MasterCard's IPO was to avoid "exposure to antitrust risks" finding that "[r]ather than modifying the business model to bring it in line with EU competition law, the banks chose to change the governance of their co-ordination specifically for antitrust sensitive decision making" and "[t]he member banks effectively *'outsourced'* this decision making to a new management body and made sure that their direct influence on the Global Board's directors would be limited to minority rights."[149]

  b. According to a MasterCard IPO Update prepared by Citibank on January 18, 2006, Rationale for IPO: (1) Defense against future lawsuits by minimizing the conflicts of interests perceived to exist with its current shareholders which are all bank members; (2) Create a more independent governance structure where bank members do not have any voting shares except under unique circumstances, as well as an infusion of $650MM to basically fight

---

[146] Commission Decision (E.C.), at 109 ¶ 379, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

[147] Selander Dep Ex. 28441 at MCI_MDL04_00005207-5208. (SUFEX111)

[148] Atkins Report at p. 13 (citing Murphy 30(b)(6) Dep. Ex. 21910 at MCI_MDL04_00005207-208). (SUFEX111)

[149] Commission Decision (E.C.), at 108 ¶ 378, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision") (emphasis in original). (SUFEX081)

82003581.2

its current legal battles (43 existing suits basically anti trust, interchange lawsuits).[150]

c.   A MasterCard Global Update presentation assessing restructuring options stated: "Status Quo: Clearly fails the antitrust standard because MasterCard, as currently constituted, has already been judged a structural conspiracy."[151]

d.   Robert Selander made a presentation to MasterCard's regional Board of Directors in the summer of 2005 illustrating, among other things, MasterCard's concern regarding "U.S. Antitrust Certainty" in connection with the various restructuing options the Board was considering.[152]



e.   "Q.   Was the primary reason [for MasterCard's IPO] ongoing litigation and regulatory investigation around the world?   A.   It was -- it was a primary reason, yes."[153]

---

[150]   Schorr Ex. 21110, at CITIINT 002519050 (SUFEX113)

[151]   Murphy Ex. 21904, at -111. (SUFEX114)

[152]   Tim Murphy Dep. Ex. 21904, at MCI_MDL02_10147110, Feb. 29, 2008. (SUFEX114)

[153]   Lance Dep. 232:24-233:4 (SUFEX115)

39

# A966

f.  Top-level MasterCard executives concluded that interchange was under a "serious threat in several key geographic markets" including the United States.[154]

g.  MasterCard's consultant Boston Consulting Group concluded that legal liability from Interchange-related suits could be as high as $200 billion.[155]

h.  Mr. Tim Murphy, President of MasterCard's U.S. Region, confirmed that the Nominating and Corporate Governance Committee was tasked with finding "a governance structure that addressed the perceived antitrust issues," and "achiev[ing] *its primary goal, which was the -- the -- the risk mitigation*, you know, and to the extent of the conflict, that the given so-called 90 percent test, that the former would prevail."[156]

i.  Mr. Murphy explained that the "so-called 90 percent standard," meant that "any structural change meriting serious consideration must afford MasterCard a high probability that an antitrust allegation would be dismissed without a trial on the merits."[157]

j.  Dato Tan Teong Hean, Global Board Director and member of the Nominating and Corporate Governance Committee, explained the new governance structure was being "devised chiefly to shield the business from further litigation and anti-competition pressures."[158]

k.  Lance Weaver, Executive Vice President of Bank of America, and member of MasterCard's Nominating and Corporate Governance Committee, agreed that the "primary reason" MasterCard considered a new business model was to address the "then pending" litigation risks[159] and "any structural change meriting

---

[154]  Heuer Ex. 27058 (SUFEX116); *see also* Selander Ex. 28413, at --51204 ("Legal risks in the US pose a significant threat to the overall business."), at --51206 ("legal and regulatory threats …"threaten the foundations of the traditional interchange system," making "the case for a new business model compelling"). (SUFEX117)

[155]  Selander Ex. 28418, at 3. (SUFEX118)

[156]  Tim Murphy Dep. 277:24-278:18, Feb. 28, 2008 (emphasis added).  (SUFEX021)

[157]  Tim Murphy Dep. 87:23-91:9 (SUFEX021), 357:13-358 (quoting Murphy, Tim Dep. Ex. 21867 at MCI_MDL04_00005437-38. (SUFEX119)

[158]  Selander Dep. Ex. 28431, at MCI_MDL02_10133527. (SUFEX120)

[159]  Weaver Dep. 231:15-233:04; 246:19-247:09, Sept. 17, 2008. (SUFEX115)

40

serious consideration must afford MasterCard a high probability that an antitrust allegation would be dismissed without a trial on the merits."[160]

l.    In a March 3, 2004 email titled "Credit card cases around the world" sent to a number of employees of competing banks as well as MasterCard personnel Chase's Richard Srednicki wrote that "After our Board discussion this is worth a read. We need to follow up with a plan and options to reduce our risk," to which National City's Jon Gorney replied in March 21st email: "I agree with you. It seems to me that we need to take a very serious look at the interchange process. If we don't, I think someone else will."[161]

m.    The European Commission found that "[t]he banks agreed to the IPO and the ensuing changes in the organization's governance in order to perpetuate the [interchange fee] as part of the business model in a form which they perceived to be less exposed to antitrust scrutiny."[162]

35.    The member banks of MasterCard that participated in MasterCard's restructuring understood that MasterCard would continue to operate in their best interest after its IPO.

a.    The European Commission found that "the member banks [of MasterCard] legitimately expected and therefore agreed that [the Global Board of Directors] would henceforth set [interchange fees] in a manner that is in their common interest."[163]

b.    A March 2005 Chase Payment Steering Committee presentation states: "A public company model could still meet issuer needs; currency to achieve this will shift from governance roles to the value of customer contracts." Next steps are to "convene a group of banks (JPMC, BofA, Wells, USB) and associated counsels to work with Visa to flesh out potential solutions and considerations. Socialize possible options with JPMC senior management . . . present coordinated recommendation to Visa." This and other

---

[160]    Lance Weaver Dep. 336:23-337:25, Sept. 17, 2008. (SUFEX115)

[161]    CHASE002971509. (SUFEX121)

[162]    Commission Decision (E.C.), at 4 ¶ 3, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

[163]    Commission Decision (E.C.), ¶ 379, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

41

versions of this document in production were widely distributed inside Chase to numerous executives including Dimon, Webb, Mandelbaum, Campbell, Scharf, Miller, Hricik.[164]

c.   Richard Fairbanks stated that he believes there will be "little-to-no change" in Capital One's relationship with MasterCard as a result of the IPO. Further, he believes that the "networks will maintain their issuer focus for many years to come."[165]

d.   Bank of America's Lance Weaver maintained the expectation that after the IPO, the new MasterCard would still act in the interests of its large bank customers:

> A:  Yeah, I – I guess my view of it was that the banks were going to become important customers of this new public company, so this new public company needed to be responsive to these large customers and that it wasn't necessary for the customers to con -- have any further control of the company other than being large customers of the company.
>
> Q.   MasterCard had a new governance structure where the banks did not maintain any control would still be acting in the interest of the banks?
>
> A.   Of their big customers.
>
> THE WITNESS: Yeah.
>
> Q.   And that was your expectation; correct?
>
> A.   That was my ex – I would summarize that as my expectation, yes.[166]

e.   Citi's Steven Freiberg testified that "MasterCard had the same objective, pre and post [IPO]…And so what drove them prior, drove them basically post. So I would say consistency from the

---

[164]   DiSimone Dep. Ex. 25550, at CHASE003802278-279, Mar. 24, 2005. (SUFEX122) [Note: Use the marked first page from the dep for the stamp but the version from Encore for the rest of the pages for compiling the SJ exhibit, because the marked copy as scanned in on CaseMap and Merrill is impossible to read]

[165]   CO0003-00645342, at CO000-00645372. (SUFEX123)

[166]   Lance Weaver Dep. 350:15-352:15, Sept. 17, 2008 (objections of counsel omitted). (SUFEX115)

82000581.2

standpoint of what drives setting interchange rates which is to maintain a competitive marketplace was the constant."[167]

    f.    MasterCard admitted in its Form S-1, filed with the SEC on May 23, 2006, its unchanged focus on its bank customers, writing: "We are, and will continue to be, significantly dependent on our relationships with our issuers and acquirers."[168]

    g.    On July 6, 2006, following the MasterCard IPO, Fifth Third Bank acknowledged that certain "industry dynamics" were "issuer-centric."[169]

36.    The Member Banks of MasterCard received assurances that MasterCard would continue to act in their best interests even after the IPO.[170]

    a.    The European Commission found that "[t]he banks were a driving force behind the IPO of MasterCard Incorporated. They agreed to it as they knew that the new management on the Global Board would continue to act in their common interest."[171]

    b.    The European Commission also found that MasterCard's member banks "agreed to the IPO of MasterCard Incorporated after MasterCard's management assured them that the banks' interests will continue to be preserved under a new 'enhanced customer approach,' and via the local input of the banks in the decision making."[172]

    c.    To allay European concerns about MasterCard competing with its issuing and acquiring member banks after the IPO, board minutes reflected that MasterCard management had "very strongly indicated its intent not to compete with its customers and efforts will be made to find effective ways for management to strongly communicate this intent."[173]

---

[167]    Steven Freiberg Dep. 165:1-170:22, Nov. 20, 2008. (SUFEX124)

[168]    McWilton Dep. Ex. 24626, at MCI_MDL02_10411177, May 23, 2006. (SUFEX125)

[169]    FT-00336375, at FT-00336390. (SUFEX126)

[170]    See Selander Dep. Ex. 28441, at MCI_MDL04_00005201-5202. (SUFEX111)

[171]    Commission Decision (E.C.), at 35 ¶ 99, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

[172]    EC Decision at ¶ 378. (SUFEX081)

[173]    Murphy Dep. Ex. 21882, at MCI_MDL02_10212862. (SUFEX127)

82003581.2

# A970

d.   An October 2004 MasterCard New Business Model / Governance Issues Update, which Selander and Heuer presented to a director, listed as the first item under "IPO Structuring Considerations," that "IPO structure should protect broad business interests of current members."[174]

e.   In the course of devising a new governance structure, MasterCard's board emphasized "the significance of protecting the legitimate present and future interests and concerns of MasterCard's owners."[175] MasterCard testimony confirms the same.[176] MasterCard's 30(b)(6) designee for Corporate Reorganization, Timothy Murphy, testified that MasterCard's Board implemented a provision that no individual entity may own more than 15% of the outstanding Class A stock.[177] Murphy testified that one reason for this provision was to avoid the possibility that "substantially all of the equity of the company could be owned by merchants."[178]

f.   In an email dated March 1, 2005, Allan Silverman, head of Citi Cards UK, wrote to Citigroup colleague Faith Massingale, "In informal discussions with [MasterCard president] Alan Heuer he seemed very clear that any new MasterCard needed to protect and even increase Interchange to keep and attract Banks."[179]

g.   A July 2006 MasterCard Annual Meeting Q & A Master Document states: "How will the IPO change your relationship with your customers?  Being a publicly traded company gives us a more stable base on which to **implement our customer-focused strategy** and bring value to our customers' payments businesses. This will only enhance our already strong customer relationships."[180]

h.   In response to the question, "So the—the goal was subject to that concern, to—to protect the business interests of the MasterCard Member Banks in pursuing the restructuring; correct?,"

---

[174]   Selander Dep. Ex. 28423, at MCI_MDL02_11829756. (SUFEX128)

[175]   Murphy Dep. Ex. 21865, at MCI_MDL04_00004996 (resolution of the Global Board of Directors). (SUFEX110)

[176]   Murphy Dep. 277:24-278:18. (SUFEX027)

[177]   Murphy 30(b)(6) Dep. 141:21-142:5, Feb. 28, 2008.  (SUFEX021)

[178]   Murphy 30(b)(6) Dep. 148:10-149:6, Feb. 28, 2008.  (SUFEX021)

[179]   Massingale Dep. Ex. 26272, at CITI INT 002518631-32. (SUFEX129)

[180]   McWilton Dep. Ex. 24627, at MCI_MDL02_11589957, July 7, 2008 (emphasis added). (SUFEX130)

44

# A971

MasterCard's Rule 30(b)(6) witness on corporate restructuring testified, "That is correct.  To give — to give recognition to and to protect the legitimate commercial interests of the banks in the restructuring as people who were — as institutions that were selling stock in an — in an enterprise that they had co-invested in as a joint venture over three decades."[181]

i.   MasterCard Board minutes of March 2, 2005 report the following regarding the discussion on MasterCard's potential restructuring: "[Mr. Tan] pointed out that, even without control, banks would remain the company's customers and thus drive the business."[182]

j.   A MasterCard Annual Meeting Q&A document posed the following question and answer:

> "Will the new governance structure change the way interchange rates are set?  No. MasterCard, not its board, will continue to determine interchange rates based on the cost incurred by issuers, competitive pressures from other payment methods (i.e., the market forces making the acceptance of cards attractive to merchants), the need to provide incentives to member banks and merchants to increase the efficiency of the system, and other market considerations."[183]

**Visa's corporate restructurings and the continuation of mandatory interchange fees and anti-steering restraints**

37.   The bank-elected Boards of Directors of Visa designed the Visa Restructuring and IPO and voted to execute their restructuring plan.

a.   In January 2005, the president of the Visa International Board of Directors, Christopher Rodrigues wrote a memorandum to Bill Campbell and Peter Hawkins entitled "Project George next steps."[184] The document states, "Context after the VI Board meeting . . . the Regions now understand that: Old Visa's days are

---

[181]   Murphy Dep. 278:25-299:13. (SUFEX021)

[182]   Weaver Dep. Ex. 21875, at MCI_MDL04_00000344, Mar. 2, 2005. (SUFEX131)

[183]   McWilton Dep. Ex. 24627, at MCI_MDL02 11589956, July 7, 2006. (SUFEX130)

[184]   Partridge Dep. Ex. 32804, at VI-IC-02710990. (SUFEX132)

45

# A972

numbered. No one can stay as they are . . . ."[185] Rodrigues also wrote, "Subject to necessary permissions being granted for an interim state (or a rapid acceptable resolution of the end state) VUSA will indemnify the rest of the world for any retrospective liability."[186]

b.   Minutes from the Visa International Board of Directors meeting on May 8-9, 2006 show that two separate projects examined the IPO question and independently arrived at the same conclusion – that Visa should pursue an IPO strategy that involved a "global float with regionality."[187] The US region promised to accept retrospective liability for "the current US litigation" if the other Visa regions agreed to this option.[188]

c.   A May 15, 2006 memorandum from Visa Asia Pacific president and Visa International board member Rupert Keeley to the Visa Asia Pacific Board of Directors reflected that the Visa International Board was considering restructuring the company and conducting an initial public offering.[189]

d.   On October 9, 2006, the heads of Visa's regional boards of directors executed a Memorandum of Understanding to change Visa's corporate structure.[190]

e.   The Visa U.S.A. Board of Directors meeting minutes for August 23, 2007 reflected that the board approved the global restructuring.[191]

f.   The current president of Visa's U.S. region, Bill Sheedy testified that there was "very strong and active engagement across the Board" from Visa member bank directors supervising the Visa restructuring process.[192]

---

[185]   *Id.* (SUFEX132)

[186]   *Id.* at VI-IC-02710991 (SUFEX132).

[187]   Sheedy Dep. Ex. 34810, at TIB_MDL_044089-90. (SUFEX108)

[188]   *Id.* at TIB_MDL_044091. (SUFEX108)

[189]   Partridge Dep. Ex. 32859, at VI-IC-02757995. (SUFEX133)

[190]   VUSAMDL00209450-519, at VUSAMDL00209482-97. (SUFEX134)

[191]   VUSAMDL00178121-53, at VUSAMDL00178125. (SUFEX135)

[192]   Sheedy Dep. Ex. 34810, at TIB_MDL_044095. (SUFEX108)

# A973

38.   Visa testimony and internal documents confirm that Visa designed its Restructuring in response to court rulings that it was a conspiracy among competing banks.

   a.   A December 2005 presentation also states "Legal antitrust risk is primarily a USA issue, with uniquely large financial implications"[193] and observes that "Visa USA must reduce Member liability to protect the US business; while dealing with the Visa International and other Visa regions' liability exposure."[194] The document concludes that "The USA anti-trust risk mitigation is optimized via a ownership model that puts Member financial institutions in a minority position."[195]

   b.   Before it restructured, Visa concluded that it faced liability in the ███████████████████ from interchange-related lawsuits.[196]

   c.   Visa's Bill Sheedy agreed that potential antitrust liability was a reason for the restructuring: "I recall it was a factor at the time, among business people, that it was a problem that we were being sued frequently, and that the structure of the company appeared to be bringing about some of those suits."[197]

   d.   A March 2005 presentation recognized that "Key factors precipitating legal and regulatory challenges" is "Visa's joint venture structure generates a higher level of scrutiny on matters such as interchange."[198] This presentation also observes that "Legal and regulatory challenges to interchange are spreading globally."[199]

   e.   Visa's CEO testified that Visa restructured because the association model was "simply untenable for the future" in light of antitrust decisions against the network and its banks.[200]

---

[193]   Id. at VI-IC-02617144. (SUFEX136)

[194]   Id. at VI-IC-02617155. (SUFEX136)

[195]   Id. at VI-IC-02617156. (SUFEX136)

[196]   Partridge Dep. Ex. 32815. (SUFEX137)

[197]   Sheedy Dep. 89:9-24. (SUFEX083)

[198]   Sheedy Ex. 34831, at VI-IC-02736628. (SUFEX138)

[199]   Id. at VI-IC-02736629. (SUFEX138)

[200]   Saunders Dep. 156:19-158:2. (SUFEX085)

82003581.2

# A974

    f.    According to Mr. Partridge, the *Visa Check* settlement prompted Visa U.S.A. to decide "to take a look at their governance and structure" in April 2004.[201]  He agreed that attempting to reduce antitrust risk made restructuring an urgent matter.[202]

    g.    An internal memo reflected that "litigation was a key factor in our bringing on independent directors to the board (just as MC did) and turning over the interchange setting function to them. It was also a primary reason for looking at a publicly traded model similar to MC's efforts."[203]

    h.    In a document dated December 19, 2005, Visa International estimated that "[b]y 2006, it is estimated the U.S. risk as a result of interchange lawsuits could be as high as          [204]

    i.    Visa's ex-CEO, John Philip Coghlan, also confirmed that one of Visa's reasons for restructuring was that "the issue of Visa being a magnet for or a target for litigation in part as a result of its current form."[205]

39.    Visa's member banks understood that Visa would continue to operate in the their best interests after its IPO.

    a.    A 2006 ▮▮▮▮ presentation titled Associations Board Decision explains that although "by leaving the Visa regional boards, ▮▮▮▮▮ may no longer have a voice in strategic discussions and decisions affecting our business . . . [and] will also lose the "advance notice" advantage on any Visa changes, along with pieces of information gleaned from side conversations regarding our competitors [sic] strategies or derived from the very questions or concerns that are being Raised," this risk is mitigated since "Because of its size, ▮▮ accounts for over 10% of Visa's volume in the region, [therefore] **it is expected that Visa will not take any decisions that would impact** ▮▮▮ **business negatively.** Currently there is a very close relationship between the Visa regional and ▮▮▮ regional teams, and if this is further strengthened, the impact on

---

[201]    Partridge Dep. 68:3-15. (SUFEX139)

[202]    Partridge Dep. 92:13-21. (SUFEX139)

[203]    Schultz Ex. 24808, at -931. (SUFEX140)

[204]    Partridge Dep. Ex. 32815, at VI-IC-02619729. (SUFEX137)

[205]    Coghlan Dep. 171:11-172:1. (SUFEX141)

82003581 2

# A975

Visa information flow will be mitigated. ▮▮▮▮▮ will anyway need to work with the Visa regional teams to define alternative ways and channels to ways to keep the information flow."[206]

b.   ▮▮▮▮ states that it maintains the expectation that the IPO would not lessen its relationship with and influence on Visa: "The change in governance is significant as it will affect primarily the large multi-regional institutions like ▮▮▮▮▮ which as consolidation trends continue will account for the majority of the volume in the future: by 2010 Visa expect that 60% of its volume will come from multiregional members. So it is reasonable to expect that Visa will work to ensure that its large members who are no longer represented on the regional boards are not put at a competitive disadvantage and continue to receive the same level of support from Visa."[207]

c.   Visa's John Partridge testified:

Q.  Well, when you use the term "competitive structure" with respect to Visa, are you saying competitive only for the Visa entity or also successful issuing bank businesses as well?

A: I think that they are interested in Visa being successful and competitive.  They also are interested in making sure that the business of electronic payments that were – in which they participate would continue to be a viable business and a successful business.  So to the extent that they participate in that, they are interested, yes.

Q.  Right.  So take Chase, for example.  Chase had an interest in the restructuring discussion because with a large Visa issuing business, it wanted Visa, the entity, to succeed, but it also wanted Chase's Visa business card business to succeed as well?

A.  Yes.

Q.  Correct?

---



206  ▮▮▮▮▮▮ Dep. Ex. 26269, at ▮▮▮▮ 002518678 , July 19, 2006 (emphasis added). ▮▮▮▮▮

207  ▮▮▮▮▮▮ Dep. Ex. 26269, at ▮▮▮▮ 002518680 , July 19, 2006. (▮▮▮▮▮▮)

49

# A976

A. Right.

Q. So Chase and other banks who were on the board of Visa U.S.A. looked at restructuring proposals with those goals in mind; correct?

A. Well, the banks -- the banks certainly did when they had to vote on the restructuring, absolutely they had to look at that, yes.[208]

d.    The minutes from the Visa International Asia Pacific Board of Directors meeting on April 18, 2006, state that under the "Global Float" option (which was similar to the finally adopted restructuring plan) "The new corporation will be a profit-seeking entity, with a need to maximize shareholder value while serving its chosen customers better than its competition. This means it will behave differently from today's association. Over time, it can be expected to restructure and reorganize to reduce costs, change its mix of businesses and ensure commercial pricing for all customers. In the long term, we would expect the company to take these actions, *although clearly its interests will not be served by alienating its customers.*"[209] The minutes also state, "In addition, *constraints may be imposed on the actions of the new company to give comfort to members.* For example, for a transitional period, the company might not be permitted to: • Allow itself to be taken over • Sell its major assets • Merge with another company • Exit its core payments business • Remove the upper limit on ownership by a single entity . . . . These constraints may 'sunset' after a period of time or if bank ownership falls below a specified percentage."[210]

40.    Visa's Member Banks received assurances that Visa would continue to operate in their best interests even after the IPO.

a.    A May 12, 2005, Chase internal email among senior executives summarized a conversation with Visa personnel regarding Visa's consideration of implementing independent directors. The email reflected that Visa's member-bank directors preferred certain corporate reorganization options "because it will take a full vote of

---

[208]    Partridge Dep. 186:3-187:7, Sept. 4, 2008. (SUFEX139)

[209]    Partridge 30(b)(6) Dep. Ex. 32846, at VI-IC-02792351-52 (emphasis added). (SUFEX143)

[210]    Partridge 30(b)(6) Dep. Ex. 32846, at VI-IC-02792352 (emphasis added). (SUFEX143)

50

the membership (12-14M banks) to change anything about how Visa operates- so Visa believes it will always remain bank/issuer centric."[211]

b.   Visa's 30(b)(6) witness on Reorganization, John Partridge, testified that the member banks on the board of Visa U.S.A. "understood that, as a customer, you have certain control over any company that you do business with if you're a customer."[212] Partridge also testified that the banks were concerned about whether they would continue to have successful card issuing businesses after the restructuring.[213] Partridge confirmed that "the banks certainly did [have this goal in mind] when they had to vote on the restructuring."[214] Partridge also testified that Visa Board implemented a provision stating that no single entity would be permitted to own more than 15% of the stock of Visa Inc. without Board approval.[215] Partridge testified that the Visa Inc. Board could use the ownership limitation to prevent another network from acquiring a 15% interest in Visa.[216]

c.   A July 28, 2006 Visa presentation at the USA Board of Directors Meeting included a slide stating that "Visa USA is the surviving entity in the merger, and Visa USA members continue to be bound by the Visa USA charter, bylaws, Op Regs and all contractual obligations."[217]

d.   Visa's notice to its non-voting members of the changes to be made to its governance structure, including the appointment of independent directors, advised that "the changes we're making

---

[211]   Webb Dep. Ex. 27628, at CHASE001479508. (SUFEX144)

[212]   Partridge 30(b)(6) Dep. 185:5-7. (SUFEX139)

[213]   Partridge 30(b)(6) Dep. 186:18-24. (SUFEX139)

[214]   Partridge 30(b)(6) Dep. 187:2-7. (SUFEX139)

[215]   Partridge 30(b)(6) Dep. 339:8 – 342:16, Sep. 5, 2008.

[216]   Partridge 30(b)(6) Dep. 341:21-342:4, Sep. 5, 2008.

[217]   FNBO-0924613, at FNBO-0924618 (July 28, 2006 Visa presentation at the USA Board of Directors Meeting included a slide stating that "Visa USA is the surviving entity in the merger, and Visa USA members continues to be bound by the Visa USA charter, bylaws, Op Regs and all contractual obligations." (SUFEX145)

51

# A978

will not disrupt Visa's ongoing operations or change the nature of our relationship."[218]

**The process for setting Visa's default interchange fee schedules and its enforcement**

41.    Until May 2006, the levels of Default Interchange Fees for Visa U.S.A. were established by a vote of its Board of Directors.[219]

---

[218]    WFINT0000029683-85, at WFINT0000029683. (SUFEX146)

[219]    VUSAMDL1-03177861-72, at VUSAMDL1-03177871 (Visa U.S.A. Board materials from May 2000 meeting, stating, "The current interchange reimbursement fee structure was extended at the October 1999 Visa U.S.A. Board of Directors meeting. The rates, unchanged from April 1999, remain in effect through March 2001.") (SUFEX147); VUSAMDL1-03177861-72; VUSAMDL1-08090164-173, at VUSAMDL1-08090166 (Visa U.S.A. Board materials and Minutes from May 2000 meeting, approving consumer credit and corporate interchange rate adjustments effective April 2001) (SUFEX148); VUSAMDL2-00033712-18, at VUSAMDL2-00033715 (SUFEX149); VUSAMDL2-03850083-89, at VUSAMDL2-03850087 (Visa U.S.A. Board materials and Minutes from June 2001 meeting approving online debit interchange rate adjustments effective October 2001) (SUFEX150); VUSAMDL2-00002353-538, at VUSAMDL2-00002357 (Visa U.S.A. Board Minutes from October 2001 meeting, delaying scheduled online debit interchange rate increase until March 1, 2002) (SUFEX151); VUSAMDL2-00002158-352, at VUSAMDL2-00002165-66 (Visa U.S.A. Board Minutes from February 2002 meeting, approving online debit interchange rate increase effective March 2002) (SUFEX152); VUSAMDL2-08118456-648, at VUSAMDL2-08118458 (Visa U.S.A. Board Minutes from May 2002 meeting, approving consumer credit and corporate interchange rate adjustments effective October 1, 2002) (SUFEX153); VUSAMDL2-00032832-35, at VUSAMDL2-00032833 (Visa U.S.A. Board Minutes from January 2003 meeting, approving consumer credit, corporate, and offline debit interchange rate adjustments effective April 2003) (SUFEX154); VUSAMDL1-08706643-51, at VUSAMDL1-08706648 (Visa U.S.A. Board Minutes from June 2003 meeting, approving consumer credit, corporate, and offline debit interchange rate adjustments effective October 2003) (SUFEX155); TIB_MDL_037929-8002, at TIB_MDL_037933 (Visa U.S.A. Board Minutes from October 2003 meeting, approving online and offline debit interchange rate adjustments effective January 31, 2004) (SUFEX156); VUSAMDL1-08118443-55, at VUSAMDL1-08118448; VUSAMDL1-08118452 (Visa U.S.A. Board Minutes from February 2004 meeting, approving consumer credit and corporate interchange rate adjustments effective April 1, 2004, and granting management authority to "modify IRF in reaction to a second MC IRF increase for April 2004") (SUFEX157); VUSAMDL1-08117097-101, at VUSAMDL1-08117100 (SUFEX158); Lauritzen Dep. Ex. 00005, at VUSAMDL1-06210211 (Visa U.S.A. Board materials and Minutes from April 2004 meeting, approving consumer credit interchange rate adjustments effective October 2004) (SUFEX159); VUSAMDL1-08118314-58, at VUSAMDL1-08118321 (Visa U.S.A. Board Minutes from October 2004 meeting, approving online and offline debit interchange rate adjustments effective April 2005) (SUFEX160); VUSAMDL1-08118372-414, at VUSAMDL1-08118376 (Visa U.S.A. Board Minutes from July 2004 meeting, approving consumer credit interchange rate adjustments effective April 2005) (SUFEX161); VUSAMDL1-08090308-14, at VUSAMDL1-08090310 (SUFEX162); VUSAMDL1-08090287-307, at VUSAMDL1-08090296 (Visa U.S.A. Board materials and Minutes from October 2005 meeting, approving offline debit and commercial card interchange rate adjustments effective April 2006) (SUFEX163); Sheedy Amex Dep. 22:7-19, 49:11-50:13, 50:21-52:18, May 2, 2007 (SUFEX164); Charles Doyle, Texas First Banks and Texas Independent Bancshares, Chairman of the Board, Dep. 60:14-19, Nov. 29, 2006. (SUFEX165) *See, e.g.,* VUSAMDL-00407267-7268 (Board of Directors Meeting Executive Summary, May 2002) (SUFEX166); VUSAMDL1-03744136 (Visa Business Review, June 2002) (SUFEX167); VUSAMDL1-05171216 (Email from B. Sheedy to Visa U.S.A. Employees announcing Board approval of *Footnote continued on next page* . .

82003581.2

       a.    Pat Phillips, former Bank of America President of Card Services, and former Chairman of Visa USA's Board of Directors, confirmed that "at all times from 1990 through 2005, interchange fees could not be changed without a vote to that effect by the Visa Board."[220]

42.    The Visa International Board of Directors established uniform schedules of default Interchange Fees for transactions in which a Visa-branded Payment Card issued outside of the United States was used at a merchant location in the United States.[221]

43.    From May 2006 to March 18, 2008, four non-bank-representative directors of Visa U.S.A. established Default Interchange Fees for transactions conducted on the Visa Network, pursuant to the Board's decision to outsource this decisionmaking to "independent" directors. [222]

44.    Historically, Visa claimed that its interchange fees were cost based premised on a methodology devised by Arthur Andersen.[223]

45.    However, Visa's Interchange Fees are not related to the costs of providing network acceptance services. [224]

---

*. . . footnote continued from prior page*

rate increases effective Apr. 2003) (SUFEX168); VUSAMDLI-05194890-4896 (Visa Business Review, Oct. 2003) (SUFEX169); Steele Dep. 38:16-39:10. (SUFEX041)

[220]    Phillips Dep. 224:15-22. (SUFEX170)

[221]    Sheedy Dep. 325:25-327:16. (In response to the question, "How would the interchange fee be determined where a Canadian citizen makes a purchase with a Royal Bank of Canada Visa credit card issued in Canada at a merchant located in the United States," Visa's Bill Sheedy testified, "In that instance they may be different. The Canadian card used at a point of sale location in the United States acquired by a U.S. acquirer would - that transaction from an acquiring perspective would incur U.S. domestic interchange rates, and from an issuing perspective when we settle - when Visa settles that transaction with the Canadian issuer, it will be settled at international interchange rates, which is a different rate structure cross-border.") (SUFEX171)

[222]    Partridge Dep. 90:15-91:17, Sept. 4, 2008 (SUFEX139); VUSAMDL1-07065341-43, at VUSAMDL1-07065342 (SUFEX172); *Id.* at 55:10-56:9. (SUFEX139)

[223]    Visa U.S.A. & Anderson Consulting, Visa U.S.A. Inc. Interchange Reimbursement Fee Theory and Methodology 12 (Mar. 1989) (SUFEX173); VUSAMDL100057150-7450, at VUSAMDL100057174 (SUFEX174); Sheedy Dep. Ex. 0306930 (*Visa Check*). (SUFEX175)

[224]    *See, e.g.,* Bamberger Decl. ¶¶ 55, 59 (showing that "Visa and MasterCard base their interchange fees on merchants' varying elasticity of demand, or sensitivity to price increases.") (SUFEX176); Richard Morrissey, Visa Vice President of Interchange, Dep. 101:1-10, 148:18150: 13, Jan. 30, 2008 (agreeing that "Visa's goal was to try to align its interchange fees to the merchant price elasticity of demand for categories of merchants.") (SUFEX177); Tolan Steele, Visa Senior Vice President of Interchange, Dep. 314:1-320:23, Apr. 3, 2008 (stating that Visa "will look at overall economics and transactional economics on the margin as a function of understanding how Visa transactions compare both in their costs and their *Footnote continued on next page . .*

82003581.2

a.    According to an internal Visa presentation entitled "Interchange 101," "Interchange has evolved from a purely cost-based proposition to one based on a range of market factors, over time."[225]

- An October 2004 Visa presentation that Visa's Tolan Steele describes as "a standard 'IRF Overview' presentation that we use when briefing Members" contains a slide (depicted below) showing that Visa's "Interchange Fee Strategy Historical Continuum" has moved from "Transfer Costs" to "Maximize Member Profits":[226]

---

*. . . footnote continued from prior page*

revenue to issuers and acquirers relative to competitive networks.") (SUFEX178); Steven Jonas, MasterCard Vice President of Interchange, Dep. 62:5-65:13, Apr. 23, 2008 (agreeing that "there are some cases benchmarks out there that [MasterCard] may be able to turn to [determine] . . . at about [the] level, merchants should have a willingness to accept MasterCard cards.") (SUFEX179); Richard Morrissey, Visa Vice President of Interchange, Dep. Ex. 30507 at VUSAMDLI-05576121 (March 12, 2004 email from Richard Morrissey to Robert Towne, "re: Determine Elasticity_ver04.ppt," containing presentation stating Visa's objectives to "[d]evelop an economic model and process by which Visa's interchange fee structure is evaluated in the context of merchant price elasticity, with the objective of optimizing Member interchange fee revenue.") (SUFEX180); Commission Decision (E.C.) COMP/34.579 of 19 Dec. 2007 ("E.C. Decision") ¶¶ 172-75 (finding that "the cost study therefore does not serve to identify and measure specific issuing costs which are then allocated to acquirers. It is merely a tool for estimating the willingness of merchants to pay."). (SUFEX081) Nicholas Baxter Dep. Ex. 32001 at FNBO 0853837 ("Interchange rates have been rising faster than inflation over the last few years while the other costs for banks that collect that fee have been coming down.") (SUFEX181)

[225]    Steele Dep. Ex. 31421, at VUSAMDL1-08471805. (SUFEX182)

[226]    Jorgensen Dep. Ex. 24475, at VUSAMDL1-06290200; 207. (SUFEX183)

54

# A981



So, we've gone over some the factors and competitive pressure that go into the IRF fee rates; the number one objective being to increasing Member profits.

Any questions?

- A March 2006 Visa presentation entitled "SLT Strategy Effort: Core Business" explains, "As currently structured, Visa's primary role is to maximize member returns from Visa payments by optimizing across the value chain . . . Manage interchange to maximize long-term Member Net Present Value."[227]

b.      When asked whether "it would be correct to say in 1997 that the Visa interchange strategy was directed towards maximizing member shareholder value," Visa's 30(b)(6) designee for Interchange Methodology, William Sheedy, testified, "I would say that at this time, given that Visa was an association owned by financial institutions, that the Visa organization's objective was to support the interests of its member financial institutions and that the dimensions of Visa's business, interchange being an element of that, would have been meant to be aligned with that strategy."[228] Sheedy further explained, "It's my understanding that at this time

---

[227]    VUSAMDL1-07905305-12, at VUSAMDL1-07905310. (SUFEX184)

[228]    Sheedy 30(b)(6) Dep. 127:25-128:13, June 10, 2008. (SUFEX185)

87003581.2

# A982

that the financial institutions that owned Visa, the vast majority of them were profit maximizing entities and, therefore, were incented and very often had a fiduciary responsibility of increasing and optimizing their profits."[229]

c.   A November 2003 letter from John Gardner, a Visa executive who acted as a liaison between Visa and its member banks, to ███████████████ stated that, "Visa's unique business model, ownership structure, and governance are focused on maximizing profitability for your entire enterprise card business. As a bank-owned, bank-governed entity operating on a not-for-profit basis, Visa's primary focus is to develop high-value, low-cost payment solutions and tolls that will help you meet the unique business needs of your customers while enhancing profitability for your shareholders. Our association model means that Visa puts the emphasis on maximizing profitability for ███████████, and the Visa Membership, not on Visa itself."[230]

d.   Mr. Pinkerd testified that ████████████████████████ ████████████████[231]

e.   Notwithstanding reductions in transaction processing costs as reflected in declining acquirer margins, a $50 non-supermarket PIN debit card transaction incurred an Interlink interchange fee of about ███ in 1996 ███ in 1999, ███ in 2002, and ███ in 2005.[232]

f.   The various categories of Visa Interchange Fees currently bear no relationship to the costs of Visa or its Member Banks.

  •   Mr. Sheedy conceded that "Visa's costs were not an important factor in considering changes to interchange fees."[233]

---

[229]   Sheedy 30(b)(6) Dep. 128:17-23, June 17, 2008. (SUFEX185)

[230]   Gardner Dep. Ex. 32059A, at VUSAMDL1-05251026, Aug. 15, 2008. (SUFEX186)

[231]   Pinkerd Dep. 42:21-43:12, 53:22-54:3, Aug. 19, 2008. (SUFEX006)

[232]   Frankel Report ¶ 93; see, e.g., "NYCE Explains July 1 Interchange Fee Hike," American Banker, May 6, 2003 ("NYCE will raise the maximum interchange fee from 34 cents to 40 cents for the PIN debit transactions it processes. The fee structure varies by type of retailer and annual gross sales... Over the last two years, the PIN debit networks have waged fierce interchange fee competition, spurred by steep increases in Interlink, Visa's PIN debit network."). (SUFEX187)

[233]   Sheedy 30(b)(6) Dep. 155:20-156:5, June 17, 2008. (SUFEX185)

82003581 2

- Tolan Steele of Visa, Inc. also confirmed that he was aware that at one time, "one of the more central components of managing interchange was around [ ] looking at costs and cost recovery" but that currently  ."[234]

- Visa's expert Dr. Klein agreed that Visa's interchange fees are not cost-based.[235]

g.   The costs of the technology necessary to operate a Payment-Card Network have decreased significantly.

- A 2005 Wells Fargo Merchant Services marketing plan commented: "The pattern of steadily rising prices for credit card payments seems a little off, especially since the cost of processing electronic payments is undoubtedly falling with the scale and lower cost information technology."[236]

- According to a 2005 Visa Consumer Credit Card Issuer Benchmark Study, average issuer cost of authorization, clearing and settlement in 2005 was ███ per transaction, ███ less than in 1996.  Payment processing costs similarly decreased.[237]

- According to a 2000 Visa Deposit Products Study, based on extensive review of ███ Visa debit card issuers, the direct expense of operating their debit portfolios fell from ███ to ███ of POS (point of sale) transaction volume for Signature debit from 1993 to 1999 and from ███ to ███ for PIN (personal identification number) debit during the same period.[238]

---

[234]   Steele Dep. 314:01-320:23, Apr. 3, 2008; see also 323:10-324:5 (noting that Visa was not able to make arguments that interchange was cost-based because "it's value-based," not cost-based). (SUFEX178)

[235]   Klein Dep. 399:07-401:14, Mar. 24, 2010.  (SUFEX188)

[236]   WFINT0000025400. (SUFEX189)

[237]   See Haarma Dep. 104:1-107.22 (SUFEX190); Haarma Ex. 5, at VUSAMDL1-06716003-004, VUSAMDL1-06715965. (SUFEX191)

[238]   VUSAMDL00066340-6400, at VUSAMDL00066340-6345. (SUFEX192)

# A984

- According to a Visa 2007 Debit Card Study, the average expense of operating Visa debit portfolios dropped from ▮ to ▮ per transaction for Signature debit from 2003 to 2006.  And during the same time period, PIN debit expenses fell from ▮ to ▮ per transaction.[239]

h.    Fraud rates and Issuers' costs associated with fraud have rates decreased.[240]

- A May 2005 "Interchange Reimbursement Fees – Delivering Value and Driving Innovation" presentation Visa's Bill Sheedy gave to Wachovia and others at the 2005 Payments Conference in Santa Fe stated that "Fraud rates have decreased by 7% per year from 1990-2004, even as Visa volume has increased 16% annually," followed by graphs illustrating the trend.[241]

- Stacey Pinkerd, Visa Head of Consumer Debit Products, testified that the fraud rate at the POS is ▮ basis points on non-PIN debit and ▮ basis points on PIN debit

- "Fraud rates have decreased by 7% per year from 1990 – 2004, even as Visa volume has increased 16% annually."[242]

- "Overall fraud numbers for US Issuers remain at relatively low levels....Further analysis of counterfeit losses show that the average loss per account in 2006 to date has decreased approximately 18% from 2004 figures illustrating that while the number of cases has increased along with losses in absolute terms, issuers have become more effective in limiting the losses on an account basis . . . ."[243]

  - In response to an August 2004 Reuters article regarding issuers seeking reimbursement from a merchant for fraud charges due to a security breach of the merchant's

---

239    VUSAMDL00174013-4034, at VUSAMDL00174013-4020. (SUFEX193)

240    Baxter Dep. 58:7-11, May 28, 2008 (SUFEX194) ("Fraud losses to the industry increased over time, but declined as a percentage). STB_MDL16_00014402, at STB_MDL16_00014417 (SUFEX195)(fraud rates "decrease by 2/3 when cardholders are prompted to input ZIP codes.").

241    WB0076247, at WB076 (SUFEX196)

242    WFINT0000030311-323, at WFINT0000030320. (SUFEX197) *See also* WFINT0000048543-555 at 52. (SUFEX198)

243    WFINT0000058023-66, at WFINT0000058028. (SUFEX199)

systems, Rosetta Jones, Corporate Relations for Visa, wrote, "[I]f this [issuers wanting retailers to reimburse for the cost of fraud] becomes a trend, which I fear it will likely become, our messaging and external 'justification' around [Interchange] as a reimbursement for cost of doing business (i.e. fraud) becomes less believable."[244]

- Michael Wright, a Bank of America 30(b)(6) designee, testified that chip was not implemented in the United States because fraud rates were so low that it did not justify the cost as opposed to Europe where fraud was much higher.[245]

- "Ongoing security innovations and fraud prevention efforts have kept fraud rates within the Visa system low compared to historical averages."[246]

- According to the 2000 Visa Deposit Products Study, the average costs of fraud management plus net fraud losses for Visa's debit card issuers dropped from ███████████ of POS transaction volume for Signature debit from 1993 to 1999. Fraud costs for PIN debit dropped from ███████████ during the same period.[247]

- According to the Visa 2007 Debit Card Study, the average cost of fraud management plus net fraud losses for Visa's debit card issuers dropped from ███████████ of POS transaction volume for Signature debit from 2001 to 2006. Fraud costs for PIN debit stayed level at ████ during the same period, which Visa described as a ███████████[248]

46.    For years, Visa's Interchange Fees have been, and continue to be, set based on merchants' elasticity of demand not cost.[249]

---

[244]    Steven Ruwe Ex. 25322, at VUSAMDL1-03811591. (SUFEX200)

[245]    Michael Wright Dep. 52:20-53:5. (SUFEX201)

[246]    WFINT0000195079-80, at 79. (SUFEX202)

[247]    VUSAMDL00066340-6400, at VUSAMDL00066391. (SUFEX192)

[248]    VUSAMDL00174013-4034, at VUSAMDL00174031. (SUFEX193)

[249]    STB_MDL_00373189, at STB_MDL_00373232. (SUFEX203)(the card network will eventually raise the merchant fee "to the highest possible level, which may be higher than the sum of the merchants' transactional benefit and the merchants' initial margin without the cards.")

82003581.2

# A986

**The process for setting Visa' schedule of default interchange fees post-IPO**

50.   Since Visa's IPO, the non-bank-representative members of the Board of Directors of Visa U.S.A. establish uniform schedules of Default Interchange Fees that apply to all Visa transactions in the United States.

51.   Visa employs the same methodology to set interchange fees after its IPO as it used before the IPO.

   a.   After the implementation of independent directors, Visa's interchange fee-setting process did not change.[288] Visa's CEO, Joseph Saunders, acknowledged that "you still had Sheedy's group doing their thing; it just went to a different subset of the board made up of independent directors [for final approval]."[289]

**The process for setting MasterCard's schedules of default interchange fees and its enforcement**

52.   Until July 8, 2004, the levels of Default Interchange Fees for MasterCard were established by a vote of its Board of Directors.[290]

53.   From July 8, 2004 to May 26, 2006, MasterCard management established Default Interchange Fees for transactions conducted on the MasterCard

---

[288]   Saunders Dep. 147:13-148:18. (SUFEX085)

[289]   *Id.* (SUFEX085)

[290]   Marketing U.S. Region Bulletin No. 1, announcing 2000-2001 consumer and corporate interchange rates, effective June 9, 2000, MCI_MDL02_01352647-53 at MCI_MDL02_01352647 (SUFEX228); Marketing U.S. Region Bulletin No. 1, announcing 2001-2002 consumer and corporate interchange rates, effective April 6, 2001, MCI_MDL02_01353230-33 at MCI_MDL02_01353230 (SUFEX229); Marketing U.S. Region Bulletin No. 2, announcing U.S. Region Payment Transaction Interchange Rate, effective April 6, 2001, MCI_MDL02_00018771-74 at MCI_MDL02_00018771 (SUFEX230); Marketing U.S. Region Bulletin No. 2, announcing 2002-2003 consumer and corporate interchange rates, effective April 5, 2002, MCI_MDL02_01518064-67 at MCI_MDL02_01518064 (SUFEX231); Marketing U.S. Region Bulletin No.1, announcing 2003-2004 consumer and corporate interchange rates, effective April 4, 2003, MCI_MDL02_01353238-42 at MCI_MDL02_01353238 (SUFEX232); Marketing U.S. Region Bulletin No. 3, announcing Maestro rates, effective July 1, 2003, MCI_MDL02_00018760-61 at MCI_MDL02_00018760 (SUFEX233); Marketing U.S. Region Bulletin No. 4, announcing new consumer debit, consumer credit and corporate card interchange rates, effective August 1, 2003, MCI_MDL02_01350255-60 at MCI_MDL02_01350255 (SUFEX234); Marketing U.S. Region Bulletin No. 9, announcing consumer debit and Maestro interchange rates, effective April 2004, MCI_MDL02_00018749-53 at MCI_MDL02_00018750 (SUFEX235); Marketing U.S. Region Bulletin No. 1, modifying previously announced consumer debit interchange rate changes, effective April 2004, MCI_MDL02_07053271-75 at MCI_MDL02_07053271-75. (SUFEX236)

82003581.2

# A987

Network, pursuant to the Board's decision to outsource this decision-making to management. [291]

54. Historically, MasterCard claimed that its interchange fees were cost based premised on a methodology devised by Edgar Dunn & Co.[292]

    a. Steve Jonas described MasterCard's historical annual study of costs as "part of MasterCard's rate-setting process and *legal defense.*" (emphasis added).[293]

55. MasterCard's Interchange Fees are no longer cost based. [294]

    a. The European Commission found that "MasterCard's cost based benchmarks include cost items that are neither intrinsic in the payment functionality of a card nor related to services that clearly benefit the customers that bear the expenses of this [interchange fee]."[295]

---

[291]    Murphy 30(b)(6) Dep. 221:25-223:11 (SUFEX021); Selander Dep. Ex. 28416 at MCI_MDL04_00004822-4823. (SUFEX237)

[292]    MCI_MDL_00437277 (SUFEX238); MCI_MDL01_01822736 (SUFEX239); *see also* Frankel Rep. ¶¶ 417-19 (SUFEX240) (citing MasterCard's website).

[293]    Jonas Dep. Ex. 23106, at -868. (SUFEX241)

[294]    *See, e.g.,* Bamberger Decl. ¶¶ 55, 59 (SUFEX176) (showing that "Visa and MasterCard base their interchange fees on merchants' varying elasticity of demand, or sensitivity to price increases."); Morrissey Dep. 101:1-10, 148:18150: 13, Jan. 30, 2008 (SUFEX177) (agreeing that "Visa's goal was to try to align its interchange fees to the merchant price elasticity of demand for categories of merchants."); Steele Dep. 314:1-320:23, Apr. 3, 2008 (SUFEX178) (stating that Visa "will look at overall economics and transactional economics on the margin as a function of understanding how Visa transactions compare both in their costs and their revenue to issuers and acquirers relative to competitive networks."); Jonas Dep. 62:5-65:13, Apr. 23, 2008 (SUFEX179) (agreeing that "there are some cases benchmarks out there that [MasterCard] may be able to turn to [determine] . . . at about [the] level, merchants should have a willingness to accept MasterCard cards."); Morrissey Dep. Ex. 30507, at VUSAMDLI-05576121 (SUFEX180) (March 12, 2004 email from Richard Morrissey to Robert Towne, "re: Determine Elasticity_ver04.ppt," containing presentation stating Visa's objectives to "[d]evelop an economic model and process by which Visa's interchange fee structure is evaluated in the context of merchant price elasticity, with the objective of optimizing Member interchange fee revenue."); Commission Decision (E.C.) COMP/34.579 of 19 Dec. 2007 ("E.C. Decision") ¶¶ 172-75 (SUFEX081) (finding that "the cost study therefore does not serve to identify and measure specific issuing costs which are then allocated to acquirers. It is merely a tool for estimating the willingness of merchants to pay."). Nicholas Baxter Dep. Ex. 32001 (SUFEX181) at FNBO 0853837 ("Interchange rates have been rising faster than inflation over the last few years while the other costs for banks that collect that fee have been coming down.")

[295]    E.C. Decision ¶¶ 10, 147-150 (describing evolution of MasterCard's justification for interchange from costs to fictional "balancing" function). (SUFEX081)

82003581.2

# A988

    b.    Elizabeth Kapteina, MasterCard's Vice President of U.S. Region Interchange, admitted that MasterCard's interchange fees are not based on or related to costs.[296]

    c.    A December 2004 email from MasterCard's Vice President of Interchange, Steve Jonas, to Joy Thoma, MasterCard head of Business Resources, states, "I know we don't really focus on costs as a significant contributor to interchange rates."[297]

    d.    Steven Jonas stated during a presentation regarding interchange fees to MBNA that Edgar Dunn's Cost Study "does not support the business case" for setting interchange fees.[298]

    e.    In 2003, MasterCard decided it would



[299] Rather, MasterCard

[300] Jonas testified that MasterCard has

"[302]

    f.    Steve Jonas testified that for many years, MasterCard's goal in setting interchange rates was

[303]

    g.    MasterCard's current goal in setting Interchange Fees is to preserve competitive parity with Visa

[304]

    h.    In response to the question, "Looking just at interchange, keeping everything else constant, wouldn't you agree that the cost of

---

[296]    Kapteina Dep. 312:20-313:19, 371:13-373:23, Oct. 11, 2007. (SUFEX242)

[297]    MCI_MDL02_08058713-15, at MCI_MDL02_08058713. (SUFEX243)

[298]    League Dep. Ex. 22732, at BOFAIC06455261. (SUFEX244)

[299]    Jonas Dep. 91:25-92:25, Apr. 23, 2008. (SUFEX179)

[300]    Jonas Dep. 92:12-25, Apr. 23, 2008. (SUFEX179)

[301]    Jonas Dep. 93:17-95:10, Apr. 23, 2008. (SUFEX179)

[302]    Jonas Dep. 93:17-95:10, Apr. 23, 2008. (SUFEX179)

[303]    Jonas Dep. 121:19-24. (SUFEX179)

[304]    *Id*. at 123:2-4. (SUFEX179)

# A989

incentivizing issuance on the network has increased between 1995 and today?" MasterCard's head of Interchange, Steven Jonas, testified, "In the sense that MasterCard has determined that in order to continue to an issuer business we need to provide at least from interchange a better economic proposition. Yes, I think that that's fairly evident from this chart and the fact that we've even gone beyond this chart, the rates are higher than even this chart. Yes, we've clearly identified a need to deliver higher levels of revenue to issuers."[305]

    i.    An internal MasterCard document indicates that "MasterCard pricing strategies must be calibrated to maximize business growth, customer profitability, and stickiness to our customers."[306]

56.    MasterCard sets Interchange Fees for Credit-Card Network Services, and Offline-Debit-Card Network Services at merchants' "reserve prices."

    a.    The EC concluded that MasterCard's cost study is "merely a tool for estimating the willingness of merchants to pay," so that it could set interchange fees at just under the level that would prompt merchants to introduce their own store-brand cards.[307]

    b.    To the EC, MasterCard described "as erroneous the view that interchange fees are a payment for costs incurred by issuers and attributable to acquirers and merchants. Instead, interchange fees would be a *'proxy for merchants' elasticity of demand.'"*[308]

    c.    MasterCard's Associate General Counsel testified in a hearing before the European Commission that "In doing the cost study, MasterCard tries to answer the question: 'How high could interchange fees go before we would start having either serious acceptance problems, where merchants would say: we don't want this product anymore, or by merchants trying to discourage the use of the card either by surcharging or discounting for cash.'"[309]

---

[305]    Jonas Dep. 110:9-20, May 17, 2007. (SUFEX245)

[306]    MCI_MDL02_03113548-03113551 at 548. (SUFEX246)

[307]    EC Decision ¶¶ 172, 174. (SUFEX081)

[308]    EC Decision ¶ 150 (emphasis in original). (SUFEX081)

[309]    EC Decision ¶¶ 175 (quoting MasterCard Inc's Associate General Counsel). (SUFEX081)

# A990

    d.    The vice president of MasterCard's interchange group testified that one of the "measures" MasterCard takes into consideration when setting interchange fees is a [310]

    e.    In a MasterCard document titled "Update on Strategy Review" of 2004, MasterCard acknowledged the "emergence of large, mega-merchants" and "growing merchant power globally,"



    f.    The Vice President of MasterCard's Interchange Fees testified that one of the "measures" MasterCard takes into consideration when setting interchange fees is a "[312]

    g.    A report by MasterCard executive Fred Gore showed that [313]

    h.    Gore agreed that MasterCard considers [314]

---

[310]    Jonas Dep. 65:18-68:13, Apr. 23, 2008. *See also id.* at 33:09-19. (SUFEX179)

[311]    MCI_MDL02_11828209, at 212. (SUFEX247)

[312]    Jonas Dep. 65:18-68:13, Apr. 23, 2008. *See also id.* at 33:09-19. (SUFEX179)

[313]    Gore Dep. Ex. 20315, at MCI_MDL02_01161430. (SUFEX248)

[314]    Gore Dep. 215:14-18. (SUFEX249)

82003581.2

# A991

57. Steve Jonas, MasterCard's 30(b)(6) designee for Interchange Methodology, testified that despite the fact that MasterCard's justification for interchange fees is that "interchange fees are the mechanism by which operator of four-party payment systems redress the imbalance between issuers' and acquirers' costs and revenues," ██████████████ ██████████████████████████████████████[315] Jonas also testified that the purpose of interchange was to "provide an economic proposition to incent [banks] to issue MasterCard cards."[316]

58. MasterCard engages price discrimination in the setting of Interchange Fees for Credit-Card Network Services and Offline-Debit-Card Network Services.

    a. Citing an interview with Steve Jonas of MasterCard, Prof. Elzinga described MasterCard's interchange tier system as tailoring interchange fees to the circumstances of particular types of merchants.[317]

    b. MasterCard's structure is designed to deliver different interchange rates by card type to support its business objectives.[318]

    c. MasterCard establishes separate interchange rates for each merchant category and for each of its card products (credit, premium credit, commercial, signature debit, and PIN-debit).[319]

    d. MasterCard currently has over 275 categories of Interchange Fees for Credit Cards, Offline Debit Cards, and PIN-Debit Cards.[320] In

---

[315] Jonas 30(b)(6) Dep. 35:6-36:16, April 23, 2008. (SUFEX179)

[316] Jonas Dep. 44:17-25. (SUFEX179)

[317] Elzinga Rep. at 91. (SUFEX250)

[318] *Id.* at 190:19-23. (SUFEX179)

[319] Kapteina Dep. Ex. 9, at 6-9, Oct. 2007; MasterCard Worldwide U.S. and Interregional Interchange Rates, at 6-9, April 2010 (SUFEX251) , available at http://www.mastercard.com/us/merchant/pdf/MasterCard_Interchange_Rates_and_Criteria.pdf

[320] MasterCard Worldwide U.S. and Interregional Interchange Rates http://www.mastercard.com/us/merchant/pdf/MasterCard_Interchange_Rates_and_Criteria.pdf (last accessed on September 14, 2010). (SUFEX252)

82003581.2

# A992

2000, MasterCard had only 19 different categories of fees.[321] MasterCard currently has 32 different Signature Debit rates.[322]

    e.    Dr. James confirms this undisputed fact in his report stating that "MasterCard, like Visa and American Express, classifies merchants into categories such as supermarkets or restaurants and sets category-specific interchange fee."[323]

59.    MasterCard and its acquirers enforce MasterCard's default interchange fees.

    a.    MasterCard has two groups responsible for enforcing card acceptance rules, the Rule and Brand Standards groups, and requires its acquirers to monitor merchant compliance with its rules.[324]

**The process for setting MasterCard's schedules of default interchange fees Post-IPO**

60.    After the IPO, the Board of Directors of MasterCard delegated authority for setting interchange to the CEO who establishes uniform schedules of Default Interchange Fees that apply to all MasterCard transactions, including in the United States.[325]

    a.    The European Commission found that after its IPO, "MasterCard Incorporated and its subsidiaries continue co-ordinating the market behaviour of the organisation's member banks" and, for example, MasterCard "continues to publish the results of multilateral agreements on interchange fees in the payment organisation on the MOL database so that all banks know and abide by the agreements." [326] The European Commission also found that as "before the IPO the three legal entities representing the

---

[321]    MCI_MDL02_01349359 at 9365. (SUFEX253)

[322]    MasterCard Worldwide U.S. and Interregional Interchange Rates, at 6-9, April 2010, available at 74-86 http://www.mastercard.com/us/merchant/pdf/MasterCard_Interchange_Rates_and_Criteria.pdf. (SUFEX252)

[323]    James Rep. at 47. (SUFEX254)

[324]    Doyle Dep. 23:10-17, Apr. 21, 2008 (SUFEX255); Doyle 30(b)(6) Dep. 27:2-8, Apr. 22, 2008 (SUFEX078); Banaugh Dep. 83:12-25, May 9, 2008 (SUFEX074); Sabiston Dep. 202:19-204:4-15, Apr. 24, 2008 (SUFEX075); Banaugh 30(b)(6) Dep. 190:1-6, Aug. 4, 2006. (SUFEX076)

[325]    MCI_MDL04_00013633. (SUFEX256)

[326]    Commission Decision (E.C.), at 103 ¶ 355, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

74

82003581.2

organisation continue to enforce interchange fee agreements between the member banks by supervising the application of the correct interchange clearing message where the scheme owner MasterCard Incorporated processes the members' card transactions."[327]

61.    The European Commission found that "[t]he banks agreed to the IPO and the ensuing changes in the organisation's governance in order to perpetuate the MIF as part of the business model in a form which they perceived to be less exposed to antitrust scrutiny."[328]

62.    MasterCard employs the same methodology to set interchange fees after its IPO as it had used before the IPO.

    a.    MasterCard's Associate General Counsel, Carl Munson, confirmed that the rate setting process is that same pre- and post-IPO: "Hopefully, maybe we are doing a little better job today, maybe we are a little more complete, but essentially the process is unchanged. Except that today we wouldn't take that final step and go to a board."[329][330] This was also confirmed by several other MasterCard executives.[331]

    b.    Stephen Freiberg of Citibank, one of MasterCard's largest U.S. issuers, testified that MasterCard's objective in setting interchange, "to maintain a competitive position in the marketplace," was the same before and after the IPO.[332]

**Facts Establishing that Visa and MasterCard Have Market Power**

---

[327]    Commission Decision (E.C.), at 103 ¶ 355, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

[328]    Commission Decision (E.C.), at 4 ¶ 3, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

[329]    Munson Dep. 162:16-167:14, 9/17/08. (SUFEX257)

[330]    Munson Dep. 167:12, Sept. 17, 2008. (SUFEX257)

[331]    Abrams Dep. 200:19-24, 201:23-202:3, Mar. 13, 2008 (SUFEX258); Murphy Dep. 225:8-13, Feb. 28, 2008 (SUFEX021); Freiberg Dep. 75:9-18, Nov. 20, 2008 (SUFEX124); Heuer Dep. 42:13-20, Oct. 16, 2008. (SUFEX104)

[332]    Freiberg Dep. 105:18-21, 170:6-22, Nov. 20, 2008. (SUFEX124)

82003581 2

# A994

63. Following are Defendants' effective interchange rates for credit cards, signature-debit cards, and PIN-debit cards from 2003 to 2009:[333]

**Effective Interchange Rates**



Apr 1999 - Aug 2003 list the effective rate for the period beginning with the listed month and ending the month prior to the next listed month.
Apr 2003 - Apr 2009 list the effective rate during the listed month
* Estimated in source documents

---

[333]   MCI_MDL02_06988826, MCJ_MDL02_00044015 (SUFEX259), NEW_YORK-246464-v1-MasterCard Systemwide Interchange Report.XLS (ICAT00810) (SUFEX261), MasterCard Systemwide Interchange Report for US (2007 Update.xls (ICAT001383) (SUFEX262), Interchange Reporting Request - Updated 23APR09.xlsm (ICAT001816) (SUFEX263), MasterCard Systemwide Interchange Report_GCMS Cleared Purchase Vol_US Issued Acquired 2009.xls (ICAT001886) (SUFEX264), MCI_MDL02_01492266 (SUFEX265), MCI_MDL02_10468758 (SUFEX266), MCI_MDL02_00026781 (SUFEX267), VUSAMDL1-00254038 (SUFEX268), VUSAMDL1-0024078 (SUFEX269), TIB_MDL_016412 (SUFEX270), VUSAMDL1-00111796 (SUFEX271), VUSAMDL1-03548885 (SUFEX272), VUSAMDL1-00108708 (SUFEX273), VUSAMDL1-00254819 (SUFEX274), VUSAMDL1-00228097 (SUFEX275), VUSAMDL1-03613527 (SUFEX276), VUSAMDL1-08118649 (SUFEX277), VUSAMDL00209974.xls (ICAT001808) (SUFEX278), Spreadsheet entitled Fig6_7_tab07.xls, produced with backup materials to expert report of William Wecker, Dec. 14, 2009. (SUFEX279)

76

# A995

**Interchange fees are revenue to credit and debit-card-issuing banks**

64.     Interchange Fees are revenues solely to Issuing Banks.[334]

a.     Visa's 2005 Consumer Credit Card Issuer Benchmark Study  The document goes on to explain that [335]

b.     According to MasterCard, "Interchange is wealth redistribution to issuers."[336]

c.     Visa's William Sheedy agreed that "interchange fees are an important revenue stream for Visa issuing banks."[337]

d.     An internal Capital One document reflects that it makes " ."[338]

e.     An internal Bank of America reflects that ."[339]

---

[334]     *See, e.g.,* JPMorgan Chase Annual Report (2009), at 54-55, 184 (SUFEX280); Bank of America Annual Report (2009), at 41, 104-05 (SUFEX281); Capital One Finance Corp., 2009 Form 10-K, at 50 (SUFEX282); HSBC Finance Corp., 2009 Form 10-K, at 123-24. (SUFEX283)

[335]     Haarma Dep. Ex. 5, at VUSAMDL1-06715956, VUSAMDL1-06715959. (SUFEX191)

[336]     Hanft Dep. Ex. 28202, at MCI_MDL_02_11822351 (2004). (SUFEX284)

[337]     Sheedy Dep. 214:24-215:3. (SUFEX083)

[338]     Gregory Ex. 35700, at 9, 14. (SUFEX285)

[339]     Pyke Dep. Ex. 31257, at BOFAIC 00486262. (SUFEX286)

77

# A996



f.   Bank Defendants' financial statements, internal documents and deposition testimony uniformly reflect that interchange fees are income for their issuing, not acquiring, businesses.[340]

g.   Visa's Income and Expense Reporting Form for Member Banks (Schedule 2) reflect interchange fees as income solely for issuers not acquirers.[341]

h.   A Citi document provides a "recap" regarding the flow of interchange and net settlement with the associations.  As Doug Morrison of Citi testified:



[342]

---

[340]   BOFAIC 00224842-946, at BOFAIC 00224861 (SUFEX287); BOFAIC 00224869 (SUFEX287); CTTI INT 001485708-5876, at CTTI INT 001485711 (SUFEX288); Wright Dep. Ex. 27717, at BOFAIC 01843496 (SUFEX289); CO0003-000139294-9319, at CO0003-000139319 (SUFEX290); Rossi Dep. 84:1-7 (SUFEX291); Barth Dep. 37:16-38:7; 75:16-76:8; 138:2-5 (SUFEX292); Kilga Dep. Ex. 25534, at HSBC_174663 (SUFEX293); CO0003-00010075-0078, at CO0003-00010076 (SUFEX294); WMB00020651-0679, at WMB00020665 (SUFEX295); WMB E 000132008-3224, at WMB E 00013221, WMB E 0013215. (SUFEX296)

[341]   NC_IF_01_0002781-86 at NC_IF_01_0002781; NC_IF_01_0002784. (SUFEX297)

[342]   Morrison Dep. 83:6-11, Apr. 30, 2008. (SUFEX298)

82000581.2

# A997

65.   Interchange fees are approximately ▇▇ of Credit Card issuing banks' revenue.[343]

**Interchange Fees Increase the Price Merchants Pay to Accept Credit, Signature Debit and PIN Debit Cards**

66.   Interchange Fees increase the price that merchants pay to accept Payment Cards.

   a.   The European Commission found that MasterCard's mandatory "fallback" interchange fees "restricts competition between acquiring banks by inflating the base on which acquiring banks set charges to merchants and thereby sets a floor under the merchant [discount] fee," which is nonnegotiable.[344]

   b.   In a memorandum to the merchant community, Visa's Victor Dahir explained, "In order to halt their share decline, [MasterCard has] substantially raised interchange. In effect, what MasterCard is doing is reaching right into [merchants'] pocket – taking your money and handing it to a card issuer to pay for conversions of Visa cards to MasterCard. It may sound absurd, but, it is true. MasterCard is using your money to grow their market share. How ironic it is that MasterCard is using increased pricing to merchants in order to fund share growth of a higher priced card product that will then detract even further from merchant profits."[345]

   c.   According to Defendants' expert Professor James, "I'm not here to argue that an increase in the interchange doesn't affect the merchant's costs, clearly it does…"[346]

---

[343]   *See, e.g.,* McCahill Decl. Ex. 66 (Bank of America e-mail referencing SEC filing: "We could cite the credit issuer statistics here - ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇") (SUFEX299); McCahill Decl. Ex. 64, McGee Dep. 76:4-10 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "▇▇▇▇▇▇▇▇▇▇▇ of revenue" for credit cards) (SUFEX300); McCahill Decl. Ex. 67, at 26 (roughly ▇ percent of Capital One's income derived from sources other than interchange) (SUFEX290); McCahill Decl. Ex. 68, Freiberg Dep. 19:12-21:8 (about ▇ percent of Citi's credit card revenue comes from interchange). (SUFEX124) Deposition of Defendants' Expert Edward Snyder 202-02 (SUFEX301) (admitting that interchange fees are approximately ▇▇ of issuer's revenue).

[344]   Commission Decision (E.C.), at ¶¶ 2, 408, 410, 412, 413, 421, 435, 503, 664, COMP/34.579 of 19 Dec. 2007 ("E.C. Decision"). (SUFEX081)

[345]   Dahir Dep. Ex. 1, at VUSAMDL00069706, Nov. 15, 2999. (emphasis in original) (SUFEX302)

[346]   James Dep. 65:9-11. (SUFEX303)

82003581.2

     k.    Tim Healy of Wells Fargo testified as follows: "At Wells Fargo Merchant Services, LLC, I'm unaware of any merchants that are priced at a discount rate that is lower than interchange."[372]

69.   Interchange Fees are not negotiable between merchants and Acquirers.[373]

     a.    Chase Paymentech CEO Mike Duffy testified that his company cannot negotiate lower interchange rates for its merchant customers.  When asked why not he replied, "We have no say in that matter."[374]

     b.    According to Julia Pukas, Business Manager of CitiGroup as an acquirer "Citi did not negotiate interchange rates" with merchants.[375]

     c.    ██████████████████████████ confirmed that interchange fee were "nonnegotiable.[376] For example, ████ ████████ testified:

> Q. Using the standard pricing as that term is used here, was the price that was told to the merchant negotiable in any fashion by the merchant?
>
> A. I think the inputs to the price were negotiable. You know, it's a conversation between the salesperson and the merchant, and the – the salesperson had a variety of levers that they could – they could play with in the pricing model, and the end result was, here's the price to charge the merchant.
>
> Q. Do you recall which inputs were negotiable?
>
> A. One of them was probably the level of spread that we were going to make. One of them was the transaction fee a

*. . . footnote continued from prior page*

371    Barth Dep. 132:11-22. (SUFEX292)

372    Tim Healy Dep. 58:11-16, May 7, 2008. (SUFEX322)

373    Friedman Dep. 77: 12 – 79:3 (SUFEX323); *See also* Exhibit 24355 MCI_MDL02_11822343. (SUFEX284)

374    Duffy Dep. 71:3-8. (SUFEX318)

375    Julia Pukas Dep. 130:24-131:04, Mar. 7, 2008. (SUFEX324)

376    ████████████████████████████████████████
████████████████

82003581.2

# A999

customer might charge. You know, I think one of them was the statement fee that a customer would pay. There may have been a few other components.

Q. Was the Interchange fee negotiable?

A. Interchange was never negotiated with a merchant.[377]

d.  testified that █████ could not negotiate interchange fee rates.[378]

e.  [379]

f. Ted Friedman of MasterCard agreed that interchange sets the floor for merchant discount rate pricing and merchants cannot negotiate interchange fees with their acquirers.[380]

g. Robert Selander testified that in the MasterCard system it is not possible for an acquirer to negotiate interchange with a merchant.[381]

h. In testifying as to a dispute Chase Paymentech resolved by offering one of its customers lower merchant discount fees, Robert Wechsler testified that these concessions did not include lower interchange because "Chase Paymentech has nothing to do with interchange fees."[382] Similarly, Michael Duffy testified that Chase Paymentech could not "negotiate a lower interchange rate" to drive down merchants' costs, because "[w]e have no say in that matter." [383]

i. When asked whether Merchants are ████████████████ ████████ Julie Pukas, a Citigroup Business Manager and member of the Visa U.S.A. Acquirers Executive Council and

---

[377] 

[378] █████████ 167:14-168:21. (SUFEX328)

[379] Barth Dep. 37:1-7. (SUFEX292)

[380] Friedman Dep. 78:16-79:3. (SUFEX323)

[381] Selander Dep. 76:2-6. (SUFEX329)

[382] Wechsler Dep. 130:25-131:14. (SUFEX330)

[383] Duffy Dep. 71:3-8. (SUFEX318)

82003581.2

MasterCard Acquirer Committee, testified, "Citi did not negotiate interchange rates."[384]

j.    Brian Emmert, Jetro's Chief Financial Officer, testified, "I do not have the ability to negotiate an interchange fee. The interchange fee is what is assessed on me and I have to pay directly to the banks. It goes through Visa and MasterCard. I have no ability to come back to them and say I want to negotiate that interchange fee. It's whatever they raise the price to is what I have to pay."[385]

70.    Defendants have increased effective interchange fees by "upgrading" consumers' cards to higher-interchange premium credit cards.

a.    A presentation entitled "Visa U.S.A. Inc. Premium Credit Strategy," given at the Visa U.S.A. Board of Directors meeting on May 11, 2006, states, "In light of major changes to the consumer credit landscape, the Board approved a new Visa consumer credit strategy •



[386]

b.    MasterCard's 30(b)(6) designee for Interchange Methodology, Steve Jonas, explained MasterCard's Account Level Processing program as follows: "[W]hile the account number remains the same, the card essentially becomes a different product type. A core might become an Enhanced, or an Enhanced might become a World. And again, the -- it delivered operational efficiencies because even though an issuer could always reissue a card and an account number. But it's because the product type has changed, Core has become Enhanced, Enhanced has become World, et cetera, that the interchange structure that would apply now changes."[387]

---

[384]    Pukas Dep. 130:24-131:4. (SUFEX324)

[385]    Emmert Dep. 320:12-21. (SUFEX306)

[386]    Buse Dep. Ex. 32637, at VUSAMDL00086430. (SUFEX331)

[387]    Jonas 30(b)(6) Dep. 567:5-18. (SUFEX332)

82003581.2

# A1001

each other to acquire transactions from merchants involving MasterCard card products; true? A. That is correct."[453]

d.    Jamie Landheer, a vice president in Fifth Third's Merchant Services department, gave the following testimony:

Q.  Now, when you negotiate to retain the business of one of your acquiring clients, do you price compete with other acquiring banks or other acquiring banks or other banks who are in the business of acquiring credit card transactions?

A.  We could, yes.

Q.  You could or you do?

A.  In the existing space with the existing merchants, it happens both ways.

Q.  And sometimes they go out and seek bids from competitors; sometimes they just negotiate with you?

A.  You are correct.

Q.  In those situations where they seek multiple bids, one from you, one from competitors, et cetera, are you price competitive with the acquiring banks, the other acquiring banks from whom goods are sought?

A.  Yes.

Q.  Do you believe that the acquiring side of the business is highly competitive?

A.  I do, yes.

Q.  Do you know of any price competition amongst issuing banks for the business of merchants?

A.  No.[454]

### Credit and Debit Card Purchase Volume Has Increased

---

[453]    Timothy Murphy 30(b)(6) Dep. 714: 15-24. (SUFEX022)

[454]    Landheer Dep. 218:23-219:23. (SUFEX374)

101

# A1002

    b.    Stacey Pinkerd, Visa Head of Consumer Debit Products, testified that the fraud rate at the POS is ▮▮ basis points on non-PIN debit and ▮▮ basis points on PIN debit. Pinkerd also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[508]

    c.    MasterCard Senior VP of Debit Products, Art Kranzley, confirmed that "credit losses and fraud losses would be lower in a PIN transaction, than on a signature debit" and that it is "because the signature debit transaction has higher credit losses and higher fraud losses, that the interchange rate is higher."[509]

92.    Defendants' expert Robert Topel admits that PIN-Debit-Card Network services and Offline-Debit-Card services are distinct products and thus in separate in markets.[510]

### Merchants Have Not Stopped Accepting Defendants' Payment Cards Despite Increased Interchange Fees

93.    Visa and MasterCard have been able to increase Interchange Fees in the markets for General-Purpose-Card Network Services, Offline-Debit-Card Network Services, and PIN-Debit-Card Network Services without losing merchant acceptance.

    a.    Defendants' expert, Dr. Klein generally agrees that merchants have not dropped acceptance despite increases in interchange fees.[511]

    b.    Prof. Elzinga agreed that despite the increase in Visa and MasterCard interchange fees, few merchants stopped accepting Visa or MasterCard cards.[512]

    c.    William Sheedy of Visa, Inc. testified that he "was not aware of any merchants that decided to stop accepting Visa as a result of [five interchange] rate increases" that occurred from 2002 to 2005.[513]

---

[508]    Pinkerd Dep. 42:21-43:12, 53:22-54:3. (SUFEX006)

[509]    Kranzley Dep. 125:22-126:11, Aug. 6, 2008. (SUFEX425)

[510]    Topel Rep. ¶ 29. (SUFEX304)

[511]    *See* Klein Rep. at 76, 78 making references to increased interchange fees and merchants not dropping interchange ("Visa increased interchange fees in response to...") and ("Rather, the fact that merchants have not dropped acceptance of Visa . . . ."). (SUFEX212)

[512]    Elzinga Rep. at 51. (SUFEX250)

[513]    Sheedy Dep. 592:10-13, June 18, 2008. (SUFEX426)

82003581.2

# A1003

d.    MasterCard is unaware of any merchants that had accepted MasterCard card products and later stopped accepting.[514] Similarly, MasterCard is not "aware of any merchants dropping acceptance of MasterCard as a result of any increase in interchange fees."[515]

e.    Visa documents indicate that interchange rates have increased since 1997.[516]

f.    MasterCard documents indicate that interchange rates have increased since 1995.[517]

g.    In a MasterCard internal document discussing MasterCard's New Business Model, MasterCard states that with regard to interchange fees, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[518]

h.    Ruth Ann Marshall of MasterCard testified that she was not aware of any merchants that had ever dropped acceptance of credit cards.[519]

i.    William Sheedy of Visa agreed that despite a ▮▮ percent increase in interchange fees related to reward-based products, the likelihood that merchants would stop accepting Visa would be "minimal."[520]

j.    Visa's former CEO, John Coghlan, testified that despite high interchange fees, he was not aware of any merchant that had stopped accepting Visa during his tenure.[521]

---

[514]   Jonas 30(b)(6) Dep. 588:19-589:17. (SUFEX332)

[515]   Jonas Dep. 119:7-19, May 17, 2007. (SUFEX245)

[516]   VUSAMDL1-07152472 at 2477 (Chart created by Visa illustrating the dramatic interchange increases from 1997 to 2003) (SUFEX427); VUSAMDL1-06291936 at 970 (SUFEX428) (Visa presentation material to BankOne titled "Interchange Fee Discussion" showing dramatic interchange increases from 1990 to 2004)

[517]   Heuer Dep. Ex. 23 (SUFEX116), MCI_MDL02_08789858 at 863 (SUFEX429) (U.S. Region Interchange Rates 1991-2000); MCAD 010213608, at 608 (SUFEX430) (Consumer Effective Rates from 1995 to 2001); Marshall Dep. 68:23-69:02, July 30, 2008 (SUFEX366) (Ruth Ann Marshall of MasterCard agreed that MasterCard overall effective interchange rates had increased from 1999 to 2006).

[518]   MCI_MDL02_11822343, at 351 (2004). (SUFEX284)

[519]   Marshall Dep. 206:07-20, July 30, 2008. (SUFEX366)

[520]   Sheedy Dep. 551:02-10, June 18, 2008. (SUFEX426)

[521]   Coghlan Dep. 133:25-134:18, Dec. 16, 2008. (SUFEX141)

115

# A1004

k.   Visa's Head of Consumer Debit Products, Stacey Pinkerd, testified since February of 2003, the overall effective rate for Interlink has increased.[522] Mr. Pinkerd also testified that he was not aware of any merchant that had stopped accepting Interlink during this time period.[523]

l.   MasterCard's 30(b)(6) designee for post-*Wal-Mart* settlement interchange fee adjustments, Steven Jonas, testified that MasterCard considered and implemented credit interchange fee increases simultaneously with its debit interchange fee reductions mandated by the *Wal-Mart* settlement.[524]

m.   Visa's 30(b)(6) deponent for Interchange Methodology, William Sheedy, gave the following testimony:

Q.  Now, you testified earlier that Visa had announced earlier in 2003 credit card interchange fee increases that took effect in April of 2003; correct?

A.  Yes, I believe I did.

Q.  And then at the end of April, 2003 the merchant plaintiffs in Wal-Mart negotiated as part of a settlement a reduction in Visa Check Card interchange fees; correct?

A.  The end of 2003?

Q.  End of April, 2003 was the initial settlement in the Wal-Mart case; correct?

A.  Yes.

Q.  And that settlement provided for reduced check card interchange fees between August and December of 2003; correct?

A.  For the class merchants.

---

[522]   Pinkerd Dep. 214:15-18, Aug. 19, 2008. (SUFEX006)

[523]   Pinkerd Dep. 175:07-09, Aug. 19, 2008. (SUFEX006)

[524]   Jonas 30(b)(6) Dep. 58:5-62:6. (SUFEX431)

116

# A1005

> Q.  Right. And then in June, Visa considers increasing credit card interchange fees as of the same date, August 1, 2003; correct?
>
> A.  I can't recall whether or not it was August 1st. I do recall that it was an August — August implementation.[525]

94.  Immediately upon the expiration of the mandatory fee decrease required under the *Visa Check* settlement, Visa and MasterCard increased signature-debit-card interchange fees.

    a.  Visa's "VisaNet Processor Digest" for January 1, 2004 states, "As a result of the recent Merchant litigation settlement, Visa bifurcated its honor all cards rule, creating effectively three acceptance choices for merchants: 1) accept all Visa products; 2) accept only Visa consumer debit products; or 3) accept only Visa credit and business-related products. A component of the settlement was the implementation of certain interchange fees for the class merchants from August to December 2003. With the expiration of these settlement rates and the change in the honor all cards rule, Visa is restructuring and modifying its offline debit interchange reimbursement fees consistent with these new acceptance choices and to effectively position the rate structure to optimize the long-term value proposition for Visa members and merchants. The document explains that the new interchange rate structure "ensures Visa Members have the interchange rates necessary to sustain offering debit products to customers, who have generated more than $270 billion in merchant sales with Visa debit cards for the period year-to-date ending November 30, 2003."[526]

    b.  MasterCard's 30(b)(6) designee for the post-*VisaCheck* adjustments, Steven Jonas, gave the following testimony:

> Q.  Taking you back to May of 6 2003, it's my understanding of your testimony earlier that it was essentially MasterCard's perception that as to credit interchange MasterCard was at a roughly ▮▮▮ basis point effective rate disadvantage in May of 2003, that was the principal driver of the proposal that you made to the board to raise credit card interchange fees; is that right?

---

[525]  Sheedy 30(b)(6) Dep. 218:22-219:24, June 17, 2008. (SUFEX185)

[526]  VUSAMDL1-07895174–82, at VUSAMDL1-07895176. (SUFEX432)

82003581.2

# A1006

A. It was one of the key drivers, yes.[527]

c. A December 2003 MasterCard Board of Directors presentation states, "On Friday, December 12, Visa announced new debit rates that are a significant departure from rates implemented pursuant to the settlement agreement" and 
█████████████████████████████████████████
████████████████████████████████████ "[528]

d. MasterCard's 30(b)(6) designee for Interchange Methodology, Steve Jonas, testified that MasterCard set its January 2004 signature debit interchange fee ███████████████████.[529]

95. Merchants have continued to accept Visa and MasterCard Credit Cards, even as the Member Banks shifted their issuing portfolios to Premium Credit Cards that carried higher Interchange Fees than standard cards.

a. Visa's Global Head of Product, Elizabeth Buse, testified that she was not aware of any merchant in the United States that had dropped the acceptance of Visa credit products in response to higher interchange fees associated with Visa Signature, Visa Mainstream, or Visa Traditional Rewards products, and Visa did not consider whether launching these products would reduce merchant acceptance of Visa cards.[530]

b. A MasterCard document titled "Options to Create A Differentiated Basis For Higher Interchange For High Transactor Business" dated April of 2005, notes that despite higher interchange on rewards-based Visa cards, the ████████████████████████████
█████████████████.[531]

c. In a MasterCard document discussing higher interchange fees associated with rewards-based cards it is noted that while some large merchants may be able to ██████████████████████████

---

[527]   Jonas 30(b)(6) Dep. 215:5-17, Sep. 18, 2007. (SUFEX431)

[528]   Jonas 30(b)(6) Dep. Ex. 23123, at MCI_MDL_02_07064926-33. (SUFEX433)

[529]   Jonas 30(b)(6) Dep. 528:7-14, 529:15-24, April 24, 2008. (SUFEX332)

[530]   Buse Dep. 173:22-174:11, Apr. 11, 2008. (SUFEX434)

[531]   MCI_MDL02_08791774 at 776. (SUFEX435)

118

# A1007



96. Merchants cannot discontinue the acceptance of Visa and MasterCard Payment Cards.

    a.    Mitchell Goldstone, owner of Plaintiff Photos, Etc., testified that he was "forced" to accept Visa and MasterCard credit products because if he did not he would go "out of business."[533]

    b.    Michael Schumann, co-owner of Plaintiff Traditions Classic Home Furnishings, testified: "I would like to not accept credit cards, but that's not a viable option for me because if I didn't accept Visa and MasterCard I would be out of business."[534]

    c.    A January 2005 MasterCard document entitled "Merchant Interviews" states, "Merchants compelled to accept cards due to strong customer demand."[535] The document also states that "Accepting cards has become a business reality" and "Small merchants feel accepting cards is essential to business."[536]

    d.    ████████████████████████████████████████

    e.    Chase Paymentech Relationship Manager, Lori Cullen, replied to an e-mail from a Gucci treasury employee complaining about an interchange increase: "the only power play you have is to not accept their cards and that is probably retail suicide."[538]

    f.    A survey by the Association of Financial Professionals of 654 financial professionals concluded "U.S. businesses have no other option but to continue accepting plastic as a form of payment . . . It

---

[532] MCI_MDL02_09052587 at 589 (2005). (SUFEX436)

[533] Goldstone Dep. 275:11-74, Aug. 6, 2008. (SUFEX437)

[534] Schumann Dep. 142:22-143:8. (SUFEX438)

[535] MCI_MDL02_08162623-99, at MCI_MDL02_08162629. (SUFEX439)

[536] MCI_MDL02_08162623-99, at MCI_MDL02_08162643-44. (SUFEX439)

[537] ████████ Dep. 307:25-308:2. (SUFEX440)

[538] Cullen Dep. Ex. 22381, at CHASE003115537. (SUFEX441)

119

# A1008

is consumers' desire to pay with credit cards that makes it nearly impossible for many organizations to refuse to accept them."[539]

g.   Brian Emmert, the Chief Financial Officer of Plaintiff Jetro, testified that at one time Jetro considered exclusive acceptance with Discover Card, but ultimately Jetro decided against it stating, "[i]t was proposed for all of the locations and we initially spoke about [how] we wanted to see what the reaction was and the only way we would do it – we didn't have – excuse the language – we didn't have the balls to see if we could do it all at every location.  We didn't want to take the risk [of losing sales]."[540]

h.   In response to the question,

█████████████████████████████████

i.   Visa's former CEO, John Coghlan, agreed that merchants had no choice but to accept rewards-based cards that carried higher interchange rates than traditional payment cards.[541]

j.   MasterCard President Ruth Ann Marshall testified MasterCard was never concerned that a major merchant such as Wal-Mart would stop accepting MasterCard products because "there are too many Wal-Mart consumers carrying the card.  And I think it would have been very detrimental to their customer service."[542]

97.   PIN debit transactions, unlike signature debit transactions, permitted cardholders to receive cash back from participating merchants; as of 2004, customers requested cash back from roughly 20 percent of all such transactions."[543]

98.   PIN-Debit Cards and Offline-Debit Cards have unique characteristics.

a.   Albert Naffah of MasterCard Australia explained in an email the low fraud rate associated with PIN debit: "Indeed the New

---

[539]   Drury Dep. Ex. 31,152 at 1. (SUFEX442)

[540]   Emmert Dep. 248:14-249:12, Jan. 17, 2008. (SUFEX306)

[541]   Coghlan Dep. 223:01-10, Dec. 16, 2008. (SUFEX141)

[542]   Marshall Dep. 249-50. (SUFEX366)

[543]   Frankel Rep. ¶ 38 (citing *United States v. First Data Corporation, and Concord EFS, Inc.*, Department of Justice, Competitive Impact Statement, January 23, 2004, p. 7.). (SUFEX443)

82003581.2

# A1009

h.   A Visa Marketing Services Project Brief dated June 6, 1997, states, "One of the goals of the mainstreaming debit initiative is to issue Visa Check Cards and Interlink cards without the regional marks . . . . Thus in the long run at which point we can offer Members product functionality as good as and better than the regional networks, we will be able to influence Members to remove all regional marks from their plastics."[595] Robert Baker, Visa's former Senior VP of Deposit & Cash Products, testified in his deposition that Visa encouraged "several of the larger issuers" to "drop the regional marks from their off-line debit point-of-sale check card and put Interlink on the card, and use Plus" as their ATM mark. In Visa's presentations to issuing banks, it emphasized the profitability differences between issuing debit cards with and without regional bugs.[596]

### Effects of the Anti-Steering Restraints

106.   Defendants' Rules leave merchants with little-to-no ability to shift transaction volume between Visa and MasterCard or to other forms of payment.

a.   An internal memorandum drafted by Visa's Interchange Strategy Team in February 2003 observed, "Experience suggests that existing merchants are unable (or unwilling to shift share significantly) . . . ██████████████████████ ██████████████ ████████████ "[597] Similarly, a presentation drafted by the same team in March 2003 states, "Learnings . . . Merchants unable or unwilling to move share"[598] and "More established merchants unable (or unwilling to shift share significantly)."[599]

b.   In a September 13, 2002 email discussing "Preferential Acceptance," Visa's Bill Sheedy stated, "merchants have not shown much appetite to influence consumers' choice of payment and I'm not sure if I've seen anything that has changed this . . . ."[600]

---

[595]   *Wal-Mart* SUF Ex. 372, at '874. (SUFEX469)

[596]   *Wal-Mart* SUF Ex. 330, at 67-68, 103-104, 136-37. (SUFEX470)

[597]   Sheedy Dep. Ex. 34811, at VUSAMDL1-00432792. (SUFEX205)

[598]   Sheedy Dep. Ex. 34812, at VUSAMDL1-08524774). (SUFEX339)

[599]   *Id*. at VUSAMDL1-08524777 (SUFEX339)

[600]   Sheedy Dep. Ex. 34814, at VUSAMDL1-06236078). (SUFEX351)

134

# A1010

c. A MasterCard Executive Management document of April 2004 states that there is "limited opportunity" to "incent share shift at merchants" because "merchants have aversion to showing payment brand preference at POS."[601]

d. A Visa document discussing "key insights" for credit cards acknowledges that "[m]erchants [are] unable (or willing to shift share significantly)," because they are "[u]nwilling to risk alienating a customer and lose a sale for small transaction cost benefit" and merchants "[h]ave limited understanding of customer's options and preferences."[602]

e. Another MasterCard Executive Management document from May 2004 sharing merchant feedback reiterated that most merchants were "unwilling to aggressively push the MasterCard brand", making them unlikely to shift share.[603]

### Market Share Information

107. Following are the market shares of Visa, MasterCard, American Express, and Discover by General-Purpose-Credit-Card transaction volume from 2006 to 2009:[604]

| General Purpose Credit | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|
| Visa | 42.5% | 42.2% | 42.4% | 43.4% |
| MasterCard | 29.1% | 28.7% | 28.2% | 27.1% |
| American Express | 23.0% | 23.7% | 24.0% | 23.8% |
| Discover | 5.5% | 5.3% | 5.5% | 5.7% |

108. Following are the market shares of Visa and MasterCard by signature-debit-card transaction volume from 2006 to 2009:[605]

---

[601] MCJ_MDL02_11615530, at 541. (SUFEX471)

[602] VUSAMDL02_00046655, at 55. (SUFEX472)

[603] MCJ_MDL02_10115432, at 5448. (SUFEX473)

[604] *Nilson Reports* Nos. 889 (SUFEX474) (Oct. 2007), 902 (SUFEX475) (May 2008), 924 (SUFEX476) (Apr. 2009), 947 (SUFEX477) (Apr. 2010).

[605] *Nilson Reports* Nos. 889 (SUFEX474) (Oct. 2007), 902 (SUFEX475) (May 2008), 924 (SUFEX476) (Apr. 2009), 947 (SUFEX477) (Apr. 2010). All years except 2006 represent Signature and PIN debit combined. 2006 represents Signature debit only.

82000581.2