# 12-4671-cv(L)

12-4708-cv(CON), 12-4765-cv(CON), 13-4719-cv(CON),
13-4750-cv(CON), 13-4751-cv(CON), 13-4752-cv(CON), 14-32-cv(CON),
14-117-cv(CON), 14-119-cv(CON), 14-133-cv(CON), 14-157-cv(CON),
14-159-cv(CON), 14-192-cv(CON), 14-197-cv(CON), 14-219-cv(CON),
14-225-cv(CON), 14-241-cv(CON), 14-250-cv(CON), 14-266-cv(CON),
14-303-cv(CON), 14-331-cv(CON), 14-349-cv(CON), 14-404-cv(CON),
14-422-cv(CON), 14-443-cv(CON), 14-480-cv(CON), 14-497-cv(CON),
14-530-cv(CON), 14-567-cv(CON), 14-584-cv(CON), 14-606-cv(CON),
14-663-cv(CON), 14-837-cv(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



IN RE PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

―――――――――

*On Appeal from the United States District Court
for the Eastern District of New York*

## FINAL FORM REPLY BRIEF FOR OBJECTORS-APPELLANTS U.S. PIRG AND CONSUMER REPORTS

Elizabeth Wolstein, Esq.
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, New York 10004
212-344-5400

*Attorneys for Objectors-Appellants
U.S. PIRG and Consumer Reports*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

    I.    Settlement Proponents Fail to Justify the Significant Anticompetitive Restraints Imposed by the Settlement ..............................1

    II.   Settlement Proponents Fail to Justify the Release's Broad Grant of Antitrust Immunity .............................................................5

CONCLUSION .........................................................................................................9

CERTIFICATE OF COMPLIANCE ......................................................................10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643 (1980)..........................................3

*Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977).....................................................7,8

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) ......................................6, 7

*Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682 (2d Cir. 1977) ...........................7

*Temple v. Circuit City Stores, Inc.*, Nos. 06-cv-5303(JG),
     06-cv-5304(JG), 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)........................8

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ...............................3

**PRELIMINARY STATEMENT**

Settlement Proponents mostly avoid the important consumer issues raised in the opening brief filed by Objectors-Appellants United States Public Interest Research Group ("U.S. PIRG" or "PIRG") and Consumers Union of United States, Inc., d/b/a Consumer Reports, two of this country's leading consumer organizations that have long advocated for reforms of the payment system. To the limited extent Proponents address these issues, they fail to justify the significant anticompetitive effects that are likely to result in harm to consumers if Defendants-Appellees are permitted to take advantage of the Settlement.

**I.  Settlement Proponents Fail to Justify the Significant Anticompetitive Restraints Imposed by the Settlement**

U.S. PIRG and Consumer Reports are seeking reversal of the district court's final approval of the Settlement because, far from remedying the anticompetitive nature of the payment card industry, the Settlement threatens to further entrench the market power of Defendants Visa and MasterCard.

Proponents do not respond to the arguments set forth in our opening brief showing that the Settlement is likely to result in further harm to millions of U.S. consumers, who are the ultimate victims of high interchange fees imposed on merchants, which fees are among the highest in the world. As the district court acknowledged, these excessive interchange fees harm consumers—including,

1

regressively, cash customers—in the form of higher retail prices. SPA33, 40, 41 (discussing artificial subsidy of credit by other payment forms). It is, of course, the ultimate consumer whose interests the antitrust laws are designed to protect.

As set out in our opening brief, this Settlement is not likely to result in any benefit to consumers. Far from fostering competition between Visa and MasterCard, the Settlement actually implements a new horizontal agreement not to compete under the guise of a level-playing-field requirement for surcharging. In the Settlement, Visa and MasterCard—horizontal competitors—agree to adopt identical rule changes that will permit surcharging by merchants only to the extent permitted by a third competitor—American Express.

Proponents fail to address our argument that the Settlement enables Visa and MasterCard to make a horizontal agreement on the limited terms on which they will permit surcharging, and then, to add insult to injury, immunizes that agreement from any future challenges. Proponents do acknowledge the principle that a court should reject a settlement authorizing clearly illegal practices. *See, e.g.*, Defs. Br. at 72; Class Br. at 77. Proponents, however, simply assume that the Settlement does not implement any *per se* illegal conduct, without ever discussing the legality of horizontal competitors agreeing to adopt identical price-related terms. The district court also failed to consider whether the Settlement Agreement

2

itself allowed competitors to agree to a clearly anticompetitive horizontal restraint of trade, which, outside of a court-approved settlement, would be *per se* illegal.

The fact that Proponents can find nothing to say to defend their horizontal agreement to impose the same surcharging rules on merchants is one of the most revealing things in their briefs. As their silence demonstrates, such a horizontal agreement to adopt identical price-related terms is indefensible.

Indeed, Proponents do not even attempt to distinguish the settled precedent cited in our opening brief holding that horizontal agreements designed to stabilize price-related terms are *per se* illegal. *See, e.g., United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 645 (1980) (horizontal agreement to standardize credit terms offered to purchasers was "just as plainly anticompetitive as a direct agreement to raise prices"). Such holdings are directly applicable here because in the Settlement Agreement, Visa and MasterCard—horizontal competitors—agree to adopt identical "level-playing-field" restrictions on surcharging that are designed to ensure that merchants cannot surcharge one network without also surcharging the other. Such an agreement between Visa and MasterCard to effectively eliminate differential surcharging, the type of surcharging that could force Visa and MasterCard to compete for merchants on price, is clearly a horizontal agreement that is designed to stabilize Visa's and MasterCard's prices to merchants. Thus,

3

not only does the Settlement fail to adequately address Defendants' past misconduct, it creates a new horizontal agreement that is *per se* prohibited under antitrust law.

Revealingly, to the extent that Proponents do discuss whether the level-playing-field provision is *per se* illegal, they discuss only the vertical aspects of that provision—not the horizontal. Proponents liken the level-playing-field provision to "most favored nations" clauses, which courts have approved when such clauses have been part of strictly vertical arrangements. *See* Defs. Br. at 75-77. None of the cases cited by Proponents approved an agreement between *competitors* to adopt identical "most favored nations" or level-playing-field provisions. Proponents' inability to find any such cases is hardly surprising given the settled Supreme Court precedent cited above, which holds that such horizontal agreements designed to stabilize price-related terms are *per se* illegal.

Because of the so-called level-playing-field provision, as long as Visa and MasterCard maintain the same cost of acceptance, merchants cannot differentially surcharge (*i.e.,* surcharge one brand over another, or in different amounts). Without the ability to differentially surcharge—or at least to threaten to do so—surcharging does not provide merchants any leverage to get Visa and MasterCard to compete on price. The agreement not to compete contained in the Settlement will essentially neutralize the possibility of differential surcharging between Visa

4

and MasterCard, ensuring that surcharging cannot be used effectively to police their rates, while also giving each network cover to raise rates without fear of losing volume to the other.

Thus, under the Settlement's terms, surcharging is highly unlikely to benefit consumers and will never be an effective means to bring about reductions in interchange fees and lower costs to merchants and consumers alike. Proponents fail to even address these criticisms of the Settlement and in fact provide no justification for the level-playing-field provision—which they drafted and inserted into the Settlement.

## II. Settlement Proponents Fail to Justify the Release's Broad Grant of Antitrust Immunity

As we set forth in our opening brief, U.S. PIRG and Consumer Reports are also concerned about the consumer harm that is likely to result due to the broad antitrust immunity that the Release approved by the district court grants to Visa and MasterCard. The Release immunizes both the new surcharging rule and all of Visa's and MasterCard's other anticompetitive practices—now, and in the future— from antitrust challenges.

The (b)(2) Release immunizes Visa's and MasterCard's future anticompetitive conduct in several ways. For example, the Release bars merchants from challenging these new, restrictive rules on surcharging, no matter how anticompetitive they prove to be in practice. The Settlement further creates a

5

perverse disincentive for Visa and MasterCard to negotiate more liberalized surcharging rules with merchants, because any such revision of the surcharging rules might cause them to lose the immunity granted by the Release.

Similarly, the Release bars merchants from challenging any of Visa's and MasterCard's other current rules and practices—again—no matter how harmful they prove to be to competition or consumers as market conditions evolve. This means that merchants will not be able to challenge rules designed to thwart competition from new technologies that might otherwise reduce the dominance of these networks.

As we showed in our opening brief, such grants of antitrust immunity are void as against public policy. *See, e.g., Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328-29 (1955) ("extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case . . . would in effect confer on [defendants] a partial immunity from civil liability for future violations"). In response, Settlement Proponents mischaracterize both the law and the arguments made in our opening brief.

Proponents argue that *Lawlor* is inapplicable here because *Lawlor* supposedly only bars releases that grant antitrust immunity to clearly illegal conduct. Defs. Br. at 72; Class Br. at 76-77. This argument is based on an egregious misreading of *Lawlor*.

In *Lawlor*, the Supreme Court condemned, as against public policy, any settlement that "would in effect confer on [defendants] a partial immunity from civil liability for future violations." 349 U.S. at 329. In fact, the alleged violations at issue in *Lawlor* consisted of conduct that was clearly not *per se* illegal, including "deliberately slow deliveries," which may have supported a monopoly claim, depending on changed market circumstances. 349 U.S. at 328.

Proponents erroneously contend that *Robertson v. National Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977), limits the *Lawlor* principle to situations in which settlements immunize clearly illegal conduct. *Robertson*, however, involved neither the *Lawlor* principle barring grants of antitrust immunity, nor a release purporting to bar claims concerning the "future effects" of rules that may not ripen for years or even decades from now. Instead, *Robertson* dealt with the separate legal principle that "a settlement that authorizes the continuation of clearly illegal conduct cannot be approved . . . ." *Id.* Even this principle provides no comfort to Proponents, however, because, as discussed above, Visa's and MasterCard's agreement to permit surcharging to only a limited extent is a classic horizontal agreement to restrain competition that is *per se* unreasonable under the antitrust laws.

Proponents also mischaracterize our opening brief by stating that certain appellants "do not cite" *Illinois Brick*—ignoring the fact that appellants explicitly

7

308769.2

coordinated their efforts to avoid duplication—and inaccurately claiming that "U.S. PIRG appears to recognize the potential merit of the *Illinois Brick* argument." Defs. Br. at 41 n.11 (citing our Opening Br. at 26 n.6).

In fact, U.S. PIRG and Consumer Reports clearly stated that the dangers of the excessively broad Release in the Settlement were heightened because Defendants could be expected to raise *Illinois Brick* as a defense to any challenge from *consumers*. Our opening brief pointed out that the district court had previously dismissed a consumer challenge to Visa and MasterCard rules, holding that merchants were the best-placed parties to "'vindicate the public interest in antitrust enforcement' by bringing an action against Visa and MasterCard themselves . . . ." *Temple v. Circuit City Stores, Inc.*, Nos. 06-cv-5303(JG), 06-cv-5304(JG), 2007 WL 2790154, at *1, *5 (E.D.N.Y. Sept. 25, 2007).

8

## CONCLUSION

In the interest of consumers, the judgment below should be reversed.

Dated: New York, New York
December 23, 2014

Respectfully submitted,

SCHLAM, STONE & DOLAN, LLP

/s
Elizabeth Wolstein
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
Fax: (212) 344-7677
ewolstein@schlamstone.com

9

308769.2

**CERTIFICATE OF COMPLIANCE**

This reply brief complies with FRAP 32(a)(7)(B)(i) because it contains 1,697 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

This reply brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

                                    SCHLAM, STONE & DOLAN, LLP

                                    /s
                                  Elizabeth Wolstein
                                  26 Broadway, 19th Floor
                                  New York, New York 10004
                                  Telephone: (212) 344-5400
                                  Fax: (212) 344-7677
                                  ewolstein@schlamstone.com